**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

This Class Action Settlement Agreement and Release, dated January 3, 2022, is made and entered into by and among the Class Representatives, for themselves individually and on behalf of the Settlement Class, and Defendant, Accellion, Inc. (collectively, the "Parties"). This Agreement fully and finally resolves and settles all of Plaintiffs' Released Claims, upon and subject to the terms and conditions hereof, and subject to the Court's approval.

**RECITALS**

WHEREAS, in December 2020 and January 2021, threat actors hacked file transfer software developed by Accellion and licensed to customers, called File Transfer Appliance ("FTA"), in a sophisticated criminal cyberattack, which permitted criminals to illegally access information stored on certain customers' FTA systems (defined below as the "Attacks").

WHEREAS, as a result of the Attacks, Personal Information of millions of individuals who are customers, employees, or otherwise affiliated with or conducted business with Accellion's FTA Customers was exfiltrated by the criminal hackers.

WHEREAS, on February 24, 2021, this Action (defined below) was commenced with the filing of a class action complaint against Accellion. Plaintiffs' Second Amended Class Action Complaint asserts claims for negligence, negligence per se, invasion of privacy (intrusion upon seclusion), violations of the North Carolina Unfair and Deceptive Trade Practices Act, violations of the Washington Consumer Protection Act, violations of the California Consumer Privacy Act, violations of the California Confidentiality of Medical Information Act, violations of the California Customer Records Act, violations of the California Unfair Competition Law, and for declaratory relief, and seeking remedies (including damages and injunctive relief) for the impact and harm they allege was caused by the Attacks.

WHEREAS, after considerable meet and confer efforts, the Parties agreed to attempt to resolve their dispute through mediation.

WHEREAS, in connection with the scheduled mediation, the Parties exchanged certain documents and information pertinent to assessing the claims and defenses in this matter.

WHEREAS, on July 19, 2021, the Parties engaged in an all-day, arm's-length mediation session before the Honorable Jay C. Gandhi (Ret.) of JAMS. The mediation did not result in an agreement, and the Parties continued to attempt to resolve their disputes through continued negotiations.

WHEREAS, on September 7, 2021, the Parties engaged in a second mediation session before Judge Gandhi. The mediation did not result in an agreement, and the Parties continued to attempt to resolve their dispute.

WHEREAS, following numerous hours of additional arm's length negotiations in the months after the second mediation session, the Parties were able to finalize all of the terms of this Settlement.

WHEREAS, pursuant to the terms set forth below, this Agreement resolves all actual and potential claims, actions, and proceedings as set forth in the release contained herein, by and on behalf of members of the Settlement Class defined herein, but excludes the claims of all Class Members who opt out from the Settlement Class pursuant to the terms and conditions herein.

WHEREAS, Class Counsel, on behalf of Plaintiffs and the Settlement Class, have thoroughly examined the law and facts relating to the matters at issue in the Action, Plaintiffs' claims, and Accellion's potential defenses, including conducting independent investigation and confirmatory discovery, conferring with defense counsel through the settlement negotiation process, as well as conducting an assessment of the merits of expected arguments and defenses throughout the litigation, including on a motion for class certification. Based on a thorough analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of continued litigation, including the risks and uncertainties associated with litigating class certification and other defenses Accellion may assert, a protracted trial and appeal(s), and Accellion's ability to withstand a large verdict, as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits as expediently as possible. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation.

WHEREAS, Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class.

WHEREAS, Accellion has similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims as stated herein of Plaintiffs and the Settlement Class.

WHEREAS, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and Accellion specifically denies any and all wrongdoing. The existence of, terms in, and any action taken under or in connection with this Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by Accellion of (i) the validity of any claim, defense, or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

## 1.    DEFINITIONS

As used in this Agreement, the following terms shall be defined as follows:

1.1     "Accellion" or "Accellion, Inc." or "Defendant" or "Defendant Accellion" means Defendant Accellion, Inc., a company incorporated in Delaware, with its principal

place of business in Palo Alto, California, and its current and former Affiliates, Parents, Subsidiaries, and Successors, including but not limited to Accellion USA, LLC.

1.2     "Accellion's Counsel" or references to counsel for Accellion means attorneys, Melanie Blunschi, Michael Rubin and other attorneys at the law firm Latham & Watkins LLP, on behalf of Accellion, Inc.

1.3     "Action" means the class action captioned as *Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353-EJD, now pending before the Honorable Edward J. Davila in the United States District Court for the Northern District of California.

1.4     "Administrative Expenses" means all expenses incurred by the Settlement Administrator in the administration of this Settlement, including, without limitation, all expenses and costs associated with the Notice Plan and providing Notice to the Settlement Class. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.5     "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.6     "Approved Claim(s)" means a claim as evidenced by a Claim Form submitted by a Settlement Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Settlement Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

1.7     "Attacks" refers to the cybersecurity attacks on customers who used FTA that occurred in December 2020 and January 2021, that are the subject of the above-captioned lawsuit.

1.8     "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

1.9     "Claimant" means a Settlement Class Member who submits a Claim Form for a Settlement Payment.

1.10    "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Settlement Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Settlement Class Member who so requests.

1.11 "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date 90 days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

1.12 "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive their given share of the Settlement Benefits and shall commence on the Notice Date and shall end on the date 90 days thereafter.

1.13 "Class Counsel" means attorneys Tina Wolfson, Robert Ahdoot, and Andrew W. Ferich of Ahdoot & Wolfson, PC, and Ben Barnow and Anthony Parkhill of Barnow and Associates, P.C.

1.14 "Class Member" means a member of the Settlement Class.

1.15 "Class Representatives" and "Plaintiffs" mean Douglas Fehlen, Tony Blake, David Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain.

1.16 "Court" means the United States District Court for the Northern District of California, the Honorable Edward J. Davila (or any judge sitting in his stead or to whom the Action may be transferred) presiding.

1.17 "Credit Monitoring and Insurance Services" and "CMIS" mean the services to be provided to Class Members who are entitled to and so select such services on their Claim Form, and as further described in Section 3.2(a), below.

1.18 "Documented Loss" refers to monetary losses incurred by a Settlement Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not traceable to the FTA Data Breach, and that are not otherwise recoverable through insurance or any other FTA Data Breach settlement. Documented Loss must be supported by Reasonable Documentation that a Settlement Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not traceable to the FTA Data Breach and incurred on or after December 16, 2020.

1.19 "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 9.1 below.

1.20 "Entity" means any person, corporation, partnership, limited liability company, association, trust, agency, or other organization of any type.

1.21 "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs awarded by the Court to Class Counsel.

1.22 "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement and dismisses the claims against Accellion with prejudice and without material change

to the Parties' agreed-upon proposed Final Approval Order and Judgment attached hereto as **Exhibit B** (Final Approval Order and Judgment).

1.23    "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

1.24    "FTA" means Accellion's File Transfer Appliance software.

1.25    "FTA Customer" means a customer of Accellion who held a license to use FTA.

1.26    "Litigation Costs" means costs and expenses incurred by Class Counsel in connection with commencing, prosecuting, settling the Action, and obtaining an order of final judgment.

1.27    "Long Form Notice" means the long form notice of settlement, substantially in the form attached hereto as **Exhibit C**.

1.28    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Service Awards approved by the Court,  (iii) any amounts approved by the Court for attorneys' fees, costs, and reimbursement of expenses, and (iv) taxes, if any.

1.29    "Non-Profit Residual Recipient" means the Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) nonprofit organization.

1.30    "Notice" means notice of the proposed class action settlement to be provided to Settlement Class Members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement. The Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website.

1.31    "Notice Date" means the date upon which Settlement Class Notice is first disseminated to the Settlement Class as set forth in Section 6 herein.

1.32    "Notice Plan" means the settlement notice program, as approved by the Court, developed by the Settlement Administrator and described in this Agreement for disseminating Notice to the Settlement Class members of the terms of this Agreement and the Final Approval Hearing.

1.33    "Objection Deadline" means the date by which Settlement Class Members must file and postmark required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and motion for (i) the Fee Award and Costs, and (ii) the Service Awards, which shall be 75 days following the Notice Date.

1.34    "Opt-Out Period" means the period in which a Settlement Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire 75 days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.35    "Parties" means the Plaintiffs and Defendant Accellion.

1.36    "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, including, without limitation, names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers (SSN), drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information.

1.37    "Preliminary Approval Order" means an order by the Court that preliminarily approves the Settlement (including, but not limited to, the forms and procedure for providing Notice to the Settlement Class), permits Notice to the proposed Settlement Class, establishes a procedure for Settlement Class Members to object to or opt out of the Settlement, and sets a date for the Final Approval Hearing, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit D**.

1.38    "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, telephone records, and receipts. Documented Loss costs cannot be documented solely by a personal certification, declaration, or affidavit from the Claimant; a Settlement Class Member must provide supporting documentation.

1.39    "Released Claims" means any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the compromise of any Class member's Personal Information arising out of the Attacks. "Released Claims" do not include any claims against any entity other than Released Parties and are subject to Section 4.1 below.

1.40    "Released Parties" means Defendant Accellion and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing and specifically excludes

all FTA Customers. Each of the Released Parties may be referred to individually as a "Released Party."

1.41    "Request for Exclusion" is the written communication by a Settlement Class Member in which he or she requests to be excluded from the Settlement Class pursuant to the terms of the Agreement.

1.42    "Service Awards" means the amount awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation, as set forth in Sections 8.1-8.3 below.

1.43    "Settlement" means this settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.44    "Settlement Administrator" means the third-party class action settlement administrator to be selected by the Parties with the approval of the Court. Under the supervision of Class Counsel, the Settlement Administrator shall oversee and implement the Notice Plan and receive any requests for exclusion from the Class. Class Counsel and Accellion may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.45    "Settlement Benefit(s)" means any Settlement Payment, the Credit Monitoring and Insurance Services, the Documented Loss Payments, the Prospective Relief set forth in Sections 2 and 3 herein, and any other benefits Settlement Class Members receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, and Administrative Expenses.

1.46    "Settlement Class" and "Class" means all natural persons who are residents of the United States whose Personal Information was stored on the FTA systems of FTA Customers and was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by an FTA Customer that their personal information may have been compromised in the Attacks. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Accellion, its subsidiaries, parent companies, successors, predecessors, and any entity in which Accellion or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

1.47    "Settlement Fund" means the sum of Eight Million One Hundred Thousand Dollars and No Cents ($8,100,000), to be paid by Accellion and its insurers, as specified in Section 3.1 of this Agreement.

1.48    "Settlement Payment" means any payment to be made to any Class Member on Approved Claims pursuant to Section 3.2 herein.

1.49    "Settlement Website" means the Internet website, at URL address www.FTADataBreach.com, to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

1.50    "Summary Notice" means the summary notices of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit E**.

1.51    "Taxes" means (i) any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Defendant Accellion or its counsel with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund; (ii) any other taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

1.52    "Unknown Claims" means any and all Released Claims that Accellion or any Class Representative or Settlement Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her, or it, might have materially affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Accellion, Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

**2.**   **SECURITY COMMITMENTS**

2.1   Accellion agrees to adopt, continue, and/or implement the following data security measures for a period of no less than 4 years from the Effective Date of this Agreement:

(a)   <u>Complete Retirement of FTA</u>. Accellion implemented end-of-life of FTA effective April 30, 2021, and represents and warrants that it has not extended any existing FTA licenses since that date except as necessary for a temporary period to ensure transition to Kiteworks. No such FTA license extension shall extend beyond January 31, 2022 for Accellion's United States customers. Accellion will use its best efforts to migrate any remaining FTA Customers to Kiteworks, or to an alternative file transfer solution, before the expiration of those customers' existing FTA license terms.

(b)   <u>Maintain Kiteworks FedRAMP Certification</u>. Accellion is committed to maintaining Kiteworks' FedRAMP certification, which it has held since 2017. Accellion will continue to comply with FedRAMP's Continuous Monitoring program, including the requirement of an Annual Security Assessment performed by a third-party assessment organization ("3PAO"). That program and assessment requires Accellion to, among other things: (a) Submit to an annual comprehensive security test and evaluation of the Kiteworks software conducted by a 3PAO, which includes penetration testing and potentially other specialized assessments, including vulnerability scanning of all operating systems, infrastructure, web applications, and databases; malicious user testing; insider threat assessment; and performance/load testing; (b) Cooperate with the 3PAO on the preparation of an annual Security Assessment Report that is submitted to participating federal Agency Authorizing Officials; (c) Complete an annual Plan of Action and Milestones report, which documents all residual risks identified in the annual security assessment and defines a plan for remediation of those risks; (d) Review, update, and submit on an annual basis a System Security Plan describing relevant security controls; (e) Conduct an annual Incident Response Plan Test and submit a test report summarizing the results; (f) Conduct an annual Contingency Plan Functional Test and submit a test report summarizing the results; and (g) Provide documented role-based security training annually and additionally as needed. Nothing in this paragraph shall be interpreted to affect or limit the confidentiality of any documents, reports, or other materials prepared or maintained by Accellion in connection with Kiteworks' FedRAMP certification, or to require Accellion to produce or otherwise make any documents, reports, or other materials available as part of this Settlement.

(c)   <u>Bug Bounty Program</u>. Accellion will continue to support a Bug Bounty program. Accellion will increase its reward offerings for this program from

$250-$25,000 per eligible vulnerability to $500-$35,000 per eligible vulnerability.

(d)     <u>Employee Training.</u> Accellion will continue to provide all employees with annual security training, under the guidance and with the oversight of Accellion's Chief Information Security Officer or similar senior security officer.

(e)     <u>Personnel Responsibilities.</u> Accellion will continue to have at least one employee within Accellion who is specifically responsible for overseeing Kiteworks product security, including oversight of internal and external security audits, penetration testing, and maintenance of Accellion's bug bounty program. This individual shall provide periodic reporting concerning this oversight to Accellion's Chief Information Security Officer or similar security executive. In the event that the senior security executive is responsible for overseeing the security and other matters provided for in this section, periodic reporting shall be made to Accellion's Chief Executive Officer. Accellion will also continue to employ at least one senior security executive (e.g., Chief Information Security Officer).

(f)     <u>Confirmation of Compliance.</u> Once annually for a period of 3 years from the Settlement Effective Date, Accellion will post a publicly available confirmation on its website, available at https://www.accellion.com/trust-center/, or a similarly publicly accessible location on Accellion's website confirming Accellion's compliance with the foregoing security commitments required as part of this Settlement under this Section.

## 3.     SETTLEMENT FUND / MONETARY PAYMENT / BENEFITS DETAILS

3.1     Defendant Accellion agrees to make or cause to be made a payment of Eight Million One Hundred Thousand Dollars and No Cents ($8,100,000) and deposit that payment into the Settlement Fund as follows: Defendant Accellion shall pay or cause to be paid Four Million Six Hundred Thousand Dollars and No Cents ($4,600,000) into an escrow account no later than ten (10) Business Days after the Parties execute this Settlement Agreement. Defendant Accellion shall pay or cause to be paid Three Million, Five Hundred Thousand Dollars and No Cents ($3,500,000) into an escrow account no later than ten (10) Business Days after the Court preliminarily approves this Settlement Agreement. The total amount in escrow, including any earned interest, will be transferred to the Settlement Fund no later than ten (10) Business Days after the Court enters the Preliminary Approval Order, which shall be available to cover reasonable costs associated with the Notice Plan and any other Administrative Expenses incurred prior to entry of the Final Approval Order and Judgment. In no circumstances shall this payment be considered a fine or penalty. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Defendant Accellion's liability shall not exceed Eight Million One Hundred Thousand Dollars and No Cents ($8,100,000) absent an express written agreement between the Parties to the contrary.

3.2    <u>Settlement Payments</u>: Each Class Member may qualify and submit a claim for one of the following:

    (a)    Credit Monitoring and Insurance Services. Two years of the Credit Monitoring and Insurance Services ("CMIS"). CMIS will include credit monitoring, fraud consultation, and identity theft restoration services. A Class Member who chooses CMIS as their respective Settlement Benefit and already maintains a credit monitoring service may elect to defer their enrollment in the CMIS for a period of 12 months for no additional charge. The CMIS will include the following services, among other features, to be provided to each Class Member who submits a valid claim for CMIS: (i) up to $1 million dollars of identity theft insurance coverage; and (ii) three-bureau credit monitoring providing notice of changes to the Class Member's credit profile.

    (b)    Documented Loss Payment. Class Members may submit a claim for a Settlement Payment of up to $10,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Class Member must choose to do so on their given Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. If a Class Member does not submit Reasonable Documentation supporting a Documented Loss Payment claim, or if a Class Member's claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason, and the Class Member fails to cure their claim, the claim will be considered for a Cash Fund Payment.

    (c)    Cash Fund Payment. Class Members may submit a claim to receive a Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.7 below.

3.3    <u>Settlement Payment Methods.</u> Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods. In the event Class Members do not exercise this option, they will receive their Settlement Payment via a physical check sent by U.S. Mail.

3.4    <u>Deadline to File Claims.</u> Claim Forms must be received postmarked or electronically within 90 days after the Notice Date.

3.5    <u>The Settlement Administrator.</u> The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete, and to what extent a Claim Form is electing to receive a Documented Loss Payment. To

the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within 10 days of making such a determination, the Settlement Administrator shall notify the Claimant of the deficiencies and that Claimant shall have 30 days to cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied and the Class Member shall be so notified.

3.6     <u>Timing of Settlement Benefits.</u> Within 90 days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member who is entitled to funds based on the selection made on their given Claim Form. Within 30 days of the Effective Date, the Settlement Administrator shall make best efforts to provide Class Members who selected CMIS with enrollment instructions for the CMIS.

3.7     <u>Distribution of Settlement Payments</u>: The Settlement Administrator will first apply the Net Settlement Fund to pay for CMIS claimed by Class Members. If Net Settlement Funds remain after paying for the CMIS, the Settlement Administrator will next use it to pay all Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied and the payments for the Credit Monitoring and Insurance Services are made shall be referred to as the "Post DC Net Settlement Fund." The Settlement Administrator shall then utilize the Post DC Net Settlement Fund to make all Cash Fund Payments pursuant to Section 3.2(c) herein. The amount of each Cash Fund Payment shall be calculated by dividing the Post DC Net Settlement Fund by the number of valid claims submitted. In the event the Net Settlement Fund is insufficient to cover the payment for the CMIS claimed by Class Members, the duration of the CMIS coverage will be reduced to exhaust the fund. In such an event, no Net Settlement Funds will be distributed to Claimants for Approved Claims for Documented Loss Payments or for Cash Fund Payments. In the event that the aggregate amount of all Documented Loss Payments and payments for the CMIS exceeds the total amount of the Net Settlement Fund, then the value of the Documented Loss Payment to be paid to each Class Member shall be reduced, on a pro rata basis, such that the aggregate value of all Documented Loss Payments and payments due for CMIS does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed to Claimants with Approved Claims for Cash Fund Payments. All such determinations shall be performed by the Settlement Administrator.

3.8     <u>Deadline to Deposit or Cash Physical Checks</u>. Settlement Class Members with Approved Claims who receive a Documented Loss Payment or a Cash Fund Payment, by physical check, shall have 60 days following distribution to deposit or cash their benefit check.

3.9     <u>Residual Funds</u>. To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement Payments to the Class Members,

a subsequent Settlement Payment will be evenly made to all Class Members with Approved Claims who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check amount in a distribution is less than Three Dollars and No Cents ($3.00). If the average check amount in a distribution would be less than Three Dollars and No Cents ($3.00), and if possible, the remaining Net Settlement Fund will be used to extend the Credit Monitoring and Insurance Services to Class Members receiving that benefit for as long as possible. Any amount remaining in the Net Settlement Fund after said extension is accomplished shall be distributed to a Non-Profit Residual Recipient.

3.10    <u>Returned Checks</u>. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to find a valid address and resend the Settlement Payment within 30 days after the check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to resend a Settlement Payment.

3.11    <u>Residue of Settlement Fund</u>. No portion of the Settlement Fund shall revert or be repaid to Accellion after the Effective Date. Any residual funds remaining in the Net Settlement Fund, after all payments and distributions are made pursuant to the terms and conditions of this Agreement, shall be distributed to the Non-Profit Residual Recipient, as approved by the Court.

3.12    <u>Custody of Settlement Fund</u>. The Settlement Fund shall be deposited in an appropriate trust established by the Settlement Administrator but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled.

(a)    In the event this Settlement Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason, any amounts remaining in the Settlement Fund after payment of Administrative Expenses paid or incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Defendant Accellion and/or its insurer, and no other person or entity shall have any further claim whatsoever to such amounts.

3.13    <u>Non-Reversionary</u>. This Settlement is not a reversionary settlement. As of the Effective Date, all rights of Defendant Accellion and/or its insurer in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as described in Section 10 of this

Agreement. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Accellion and/or its insurers.

3.14    <u>Use of the Settlement Fund</u>. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Administrative Expenses; (ii) any Service Awards; (iii) any Fee Award and Costs; (iv) any Settlement Payments and/or Settlement Benefits, pursuant to the terms and conditions of this Agreement; and (v) any Taxes.

3.15    <u>Financial Account</u>. The Settlement Fund shall be an account established and administered by the Settlement Administrator, at a financial institution recommended by the Settlement Administrator and approved by Class Counsel and Defendant Accellion, and shall be maintained as a qualified settlement fund pursuant to Treasury Regulation § 1.468 B-1, et seq.

3.16    <u>Payment / Withdrawal Authorization</u>. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and Defendant Accellion with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

3.17    <u>Payments to Class Members</u>. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Class Members pursuant to this Agreement.

3.18    <u>Treasury Regulations & Fund Investment</u>. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation ("FDIC") at a financial institution determined by the Settlement Administrator and approved by the Parties. Funds may be placed in a non-interest bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

-14-

3.19   Taxes. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.20   Limitation of Liability.

   (a)   Released Parties shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

   (b)   Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

   (c)   The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, and Released Parties harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims

-15-

asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

**4.    RELEASE**

4.1     Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Settlement Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Attacks or otherwise arises out of the same facts and circumstances set forth in the Second Amended Class Action Complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party, including, without limitation, any of Accellion's FTA customers who are not parties to this Action (including, for example, but not limited to, The Kroger Co., Flagstar Bank, Health Net/California Health and Wellness, the University of California, the Office of the Washington State Auditor, and the University of Colorado).

4.2     The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

**5.    REQUIRED EVENTS AND COOPERATION BY PARTIES**

5.1     Preliminary Approval. Class Counsel shall submit this Agreement to the Court and shall move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit D**.

5.2     Cooperation. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement.

5.3     Certification of the Settlement Class. For purposes of this Settlement only, Plaintiffs and Defendant Accellion stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1)

the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. Accellion reserves the right to contest class certification for all other purposes. Plaintiffs and Accellion further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

5.4     <u>Final Approval</u>. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing, within a reasonable time after the Objection Deadline and Opt-Out Period; and at least 90 days after Accellion notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

## 6.     CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

6.1     Notice shall be disseminated pursuant to the Court's Preliminary Approval Order.

6.2     The Settlement Administrator shall oversee and implement the Notice Plan approved by the Court. All costs associated with the Notice Plan shall be paid from the Settlement Fund.

6.3     Accellion represents that it does not have the ability to identify the persons that fall under the definition of the Settlement Class from Accellion's own records because it cannot access the data that FTA Customers transfer(red) and/or store(d) with FTA, including any data that may have been compromised. Accellion represents that it therefore does not have access to data to identify what (if any) Personal Information was compromised or to whom it relates. Records identifying individuals in the Settlement Class, to the extent they exist, are expected to be in the sole possession of FTA Customers.

6.4     <u>Notice via Internet Campaign</u>. The Settlement Administrator shall design and conduct an Internet advertisement publication notice program targeted to Class Members, which must be approved by the Parties and the Court. This internet advertisement publication notice shall commence no later than the Notice Date and shall continue through the Claims Deadline.

6.5     <u>Class List</u>. Within three (3) days after the issuance of the Preliminary Approval Order, Accellion will provide to the Settlement Administrator a list of any and all names, addresses, telephone numbers and email addresses of any Class Member that it has in its possession, custody or control, if any. Promptly following the filing of the Preliminary Approval Motion described in Section 5.1, Accellion will request from each and every FTA Customer that has (i) provided information to Accellion indicating that it had files downloaded in the Attacks or (ii) publicly announced that it was affected by the Attacks, all available contact information for any and all Class Members, to be provided directly to the Settlement Administrator (the "Request"). The Parties will take all reasonable steps necessary to ascertain the information subject to the Request in order to achieve the best notice practicable.

6.6   <u>Confidentiality</u>. Any information relating to Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to the Class Members (as set forth herein) and allowing them to recover under this Agreement; shall be kept in strict confidence by the Parties, their counsel, and the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Settlement Class Members have been made; and shall not be used for any other purpose. Moreover, because the lists will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Class Counsel, Accellion's Counsel, and counsel for the applicable FTA Customer and will ensure that any information provided to it by Settlement Class Members, Class Counsel, Accellion's Counsel, or an FTA Customer will be secure and used solely for the purpose of effecting this Settlement.

6.7   <u>Direct Notice</u>. No later than the Notice Date, and to be substantially completed within 21 days thereafter, or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate the Summary Notice to every Class Member who reasonably can be identified in the records of FTA Customers pursuant to the procedures set forth in Section 6.5 as follows:

(a)   For any Settlement Class Member for whom an email address is available, the Settlement Administrator shall email the Summary Notice to such person;

(b)   For any Settlement Class member for whom an email is not available, and to the extent a physical address is reasonably available, the Settlement Administrator will send the Summary Notice (in Post Card form) by U.S. mail, postage prepaid;

(c)   If any notice that has been emailed is returned as undeliverable, the Settlement Administrator shall attempt two other email executions and if not successful, the Settlement Administrator will send the Summary Notice (in Post Card form) by U.S. mail, postage prepaid, to the extent a current mailing address is available;

(d)   For any Summary Notice that has been mailed via U.S. mail and returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail; and

(e)   Neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail individual notices that have been mailed as provided in this Paragraph.

6.8   <u>Fraud Prevention</u>. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms

-18-

by persons other than potential Settlement Class Members, (ii) submission of more than one Claim Form per person, and (iii) submission of Claim Forms seeking amounts to which the claimant is not entitled. In the event a Claim Form is submitted without a unique Class Member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the Claim is valid.

6.9     Email Reminder. For any Settlement Class Member for whom the Settlement Administrator has an email address, and who has not submitted a valid Claim Form, the Settlement Administrator shall transmit periodic email reminders of the opportunity to file a Claim Form prior to the Claims Deadline.

6.10     Settlement Website. Prior to any dissemination of the Summary Notice and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative complaint in the Action. The Settlement Website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall also allow for submission of Requests of Exclusion electronically through the Settlement Website.

6.11     Opt-Out/Request for Exclusion. The Notice shall explain the procedure for Class Members to opt out and exclude themselves from the Settlement Class by notifying the Settlement Administrator in writing, postmarked no later than 75 calendar days after the Notice Date. Each written request for exclusion must set forth the name of the individual seeking exclusion and can only request exclusion for that one individual. The Notice shall contain instructions and a deadline for persons within the Settlement Class to request exclusion from the Settlement Class or object to the Settlement.

6.12     Objections. The Notice shall explain the procedure for Class Members to object to the Settlement by submitting written objections to the Court no later than seventy-five (75) calendar days after the Notice Date (the "Objection Deadline"). Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. If a Class Member does not enter an appearance, they will be represented by Class Counsel. Any Class Member who wishes to object to the Settlement, the Settlement Benefits, Service Awards, and/or the Fee Award and Costs, or to appear at the Fairness Hearing and show cause, if any, for why the Settlement should not be approved as fair, reasonable, and adequate to the Class, why a final judgment should not be entered thereon, why the Settlement Benefits should not be approved, or why the Service Awards and/or the Fee Award and Costs should not be granted, may do so, but must proceed as set forth in this paragraph. No Class Member or other person will be heard on such

matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within seventy-five (75) calendar days following the Notice Date. All written objections and supporting papers must (a) clearly identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a signed statement by the Class Member that he or she believes he or she is a member of the Settlement Class; (d) identify the specific grounds for the objection; (e) include all documents or writings that the Class Member desires the Court to consider; (f) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Fairness Hearing; (g) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, or by filing them in person at any location of the United States District Court for the Northern District of California; and (h) be filed or postmarked on or before the Objection Deadline, as set forth above. Any Class Member who does not make their objections in the manner and by the date set forth in this paragraph shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court

6.13    Accellion will serve the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than 10 days after this Agreement is filed with the Court.

**7.    SETTLEMENT ADMINISTRATION**

7.1    <u>Submission of Claims</u>.

    (a)    <u>Submission of Electronic and Hard Copy Claims</u>. Settlement Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

    (b)    <u>Review of Claim Forms</u>. The Settlement Administrator will review Claim Forms submitted by Settlement Class members to determine whether they are eligible for a Settlement Payment.

7.2    <u>Settlement Administrator's Duties</u>.

    (a)    <u>Cost Effective Claims Processing</u>. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this

Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner, and calculate Settlement Payments in accordance with this Agreement.

(b)     <u>Dissemination of Notices</u>. The Settlement Administrator shall disseminate the Notice as provided for in this Agreement.

(c)     <u>Maintenance of Records</u>. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Accellion's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Accellion's Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

(i)     Receive Requests for Exclusion from Settlement Class Members and provide Class Counsel and Accellion's Counsel a copy thereof no later than five (5) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Class Members after expiration of the Opt-Out Period, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Accellion's Counsel;

(ii)    Provide weekly reports to Class Counsel and Accellion's Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or Accellion's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

(iii)   Make available for inspection by Class Counsel and Accellion's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(iv)    Cooperate with any audit by Class Counsel or Accellion's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

7.3   <u>Requests For Additional Information</u>: In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class member who submits a Claim Form.

**8.   SERVICE AWARDS**

8.1   Class Representatives and Class Counsel may seek Service Awards to the Class Representative. Any requests for such an award must be filed at least 35 days before the deadline for filing objections to the Settlement.

8.2   The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives. Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, five (5) Business Days after the Effective Date.

8.3   In the event the Court declines to approve, in whole or in part, the payment of the Service Award in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the Service Award shall constitute grounds for cancellation or termination of this Agreement.

**9.   ATTORNEYS' FEES, COSTS, AND EXPENSES**

9.1   Class Counsel may file a motion for an award of reasonable attorneys' fees, costs, and expenses to be paid from the Settlement Fund. The motion must be filed at least 35 days before the deadline for filing objections to the Settlement. Any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel shall be paid in the amount approved by the Court within, five (5) Business Days after the Effective Date.

9.2   Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves.

9.3   The Settlement is not conditioned upon the Court's approval of an award of Class Counsel's attorneys' fees, costs, or expenses.

**10.   EFFECTIVE DATE, MODIFICATION, AND TERMINATION**

10.1   The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

(a)   Accellion and Class Counsel execute this Agreement;

(b)    The Court enters the Preliminary Approval Order, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit D**;

(c)    Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d)    The Court enters the Final Approval Order and Judgment, without material change to the Parties' agreed-upon proposed Final Approval Order and Judgment attached hereto as **Exhibit B**; and

(e)    The Final Approval Order and Judgment has become final because: (i) the time for appeal, petition, rehearing or other review has expired; or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

10.2    In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order and Judgment, or the Final Approval Order and Judgment does not become final, Accellion may at its sole discretion terminate this Agreement on five (5) Business Days written notice from counsel for Accellion to Class Counsel. For avoidance of doubt, Accellion may not terminate this Agreement while an appeal from an order granting final approval is pending.

10.3    In the event the terms or conditions of this Settlement Agreement are materially modified by any court, any Party in its sole discretion to be exercised within 14 days after such modification may declare this Settlement Agreement null and void. In the event of a material modification by any court, and in the event the Parties do not exercise their unilateral options to withdraw from this Settlement Agreement pursuant to this Paragraph, the Parties shall meet and confer within seven (7) days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification.

10.4    Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Settlement Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated, any orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses.

10.5    In the event this Agreement is terminated pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of

Sections 3.12, 3.13, 10.5, and 10.6 herein) and shall have no legal effect and may never be mentioned at trial or in dispositive or class motions or motion papers (except as necessary to explain the timing of the procedural history of the Action), and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

10.6   Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

## 11.   NO ADMISSION OF WRONGDOING OR LIABILITY

11.1   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a)   shall not be offered or received against Accellion as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Accellion with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Accellion;

(b)   shall not be offered or received against Accellion as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Accellion;

(c)   shall not be offered or received against Accellion as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against Accellion, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)   shall not be construed against Accellion as an admission or concession that the consideration to be given hereunder represents the relief that could be or would have been awarded after trial; and

-24-

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by Accellion have any merit.

## 12.    REPRESENTATIONS

12.1    Each Party represents that: (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party; (iii) this Agreement constitutes a valid, binding, and enforceable agreement; and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

## 13.    NOTICE

13.1    All notices to Class Counsel provided for in this Agreement shall be sent by email and First Class mail to the following:

Tina Wolfson
twolfson@ahdootwolfson.com
Robert Ahdoot
rahdoot@ahdootwolfson.com
Andrew Ferich
aferich@ahdootwolfson.com
AHDOOT & WOLFSON, PC
2600 West Olive Avenue, Suite 500
Burbank, California 91505

Ben Barnow
b.barnow@barnowlaw.com
Anthony Parkhill
aparkhill@barnowlaw.com
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Suite 1630
Chicago, IL 60606

13.2    All notices to Accellion or counsel to Accellion provided for in this Agreement shall be sent by email and First Class mail to the following:

Michael H. Rubin
Michael.rubin@lw.com
Melanie M. Blunschi
Melanie.blunschi@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000

-25-

San Francisco, CA 94111

Serrin Turner
Serrin.turner@lw.com
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022

13.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by email and First Class mail to the following address:

FTA Data Breach Settlement
PO Box 5956
Beaverton, OR 97228-5956

13.4    The notice recipients and addresses designated in this Section may be changed by written notice.

## 14.    MISCELLANEOUS PROVISIONS

14.1    Representation by Counsel. The Class Representatives and Accellion represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

14.2    Best Efforts. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

14.3    Contractual Agreement. The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he, she, or it is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they or it represents.

14.4    Integration. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

14.5    No Additional Persons with Financial Interest. Accellion shall not be liable for any additional attorneys' fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member, other than what is expressly provided for in this Agreement.

14.6    Drafting. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of

*contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties. The Parties expressly waive the presumption of California Civil Code section 1654 that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

14.7   <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the persons who executed this Agreement or their successors-in-interest.

14.8   <u>Waiver</u>. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.9   <u>Severability</u>. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

14.10   <u>Successors</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

14.11   <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

14.12   <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of California, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

14.13   <u>Interpretation</u>.

    (a)   Definitions apply to the singular and plural forms of each term defined.

    (b)   Definitions apply to the masculine, feminine, and neuter genders of each term defined.

    (c)   Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.14   <u>No Precedential Value</u>. The Parties agree and acknowledge that this Agreement carries no precedential value.

14.15   <u>Fair and Reasonable</u>. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of arm's-length negotiations.

14.16   <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

14.17   <u>Headings</u>. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

14.18   <u>Exhibits</u>. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

14.19   <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

14.20   <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

14.21   <u>No Assignment</u>. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

14.22   <u>Deadlines</u>. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

14.23   <u>Dollar Amounts</u>. All dollar amounts are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

AHDOOT & WOLFSON, PC

Dated: January 3, 2022

Tina Wolfson
Robert Ahdoot
Andrew W. Ferich

BARNOW AND ASSOCIATES, P.C.

Dated: January 3, 2022

Ben Barnow
Anthony Parkhill

LATHAM & WATKINS LLP

Dated: January 3, 2022

Michael H. Rubin
Melanie M. Blunschi
Serrin Turner

-29-

EXHIBIT A

## <u>CLAIM FORM FOR FTA DATA BREACH BENEFITS</u>

**USE THIS FORM TO MAKE A CLAIM FOR CREDIT MONITORING AND INSURANCE SERVICES, A CASH FUND PAYMENT, OR A DOCUMENTED LOSS PAYMENT**

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.FTADataBreach.com.*

**The DEADLINE to submit this Claim Form is postmarked: [XXXX XX, 2022]**

### I.   GENERAL INSTRUCTIONS

If you are an individual whose Personal Information was compromised as a result of a data breach that occurred when file transfer software developed by Accellion, Inc., called File Transfer Appliance ("FTA") was hacked in a sophisticated criminal cyberattack on certain Accellion FTA Customers' FTA systems (the "FTA Data Breach"), you are a Class Member.

Affected FTA Customers include, without limitation: Flagstar; Kroger; HealthNet; The Regents of the University of California; The Office of the Washington State Auditor; the University of Colorado; American Bureau of Shipping; Congressional Federal Credit Union; CSX Corporation; Danaher Corporation; El Paso Electric Company; Finnegan, Henderson, Farablow, & Garret; Foley & Lardner, LLP; Fortior Solutions, LLC; Goodwin Procter LLP; Guidehouse (FKA Navigant, Inc.); Harvard Business School; Jones Day; Memorial Sloan Kettering Cancer Center; Postlehwaite & Netterville; Qualys, Inc.; Racetrac Corporation; SIU School of Medicine; Stanford School of Medicine; STERIS Corporation; Trinity Health; the University of Maryland, Baltimore; the University of Miami; Wright Medical Technology; and Yeshiva University.

As a Class Member, you are eligible to make a claim for **<u>one of the following options</u>**: (1) two years of Credit Monitoring and Identity Theft Insurance Services; or (2) up to a $10,000 cash payment for reimbursement of Documented Losses that are more likely than not a result of the FTA Data Breach ("Documented Loss Payment") and not otherwise recoverable through insurance or another FTA Data  Breach settlement; or (3) a Cash Fund Payment, the amount of which will depend on the number of Class Members who participate in the Settlement and who utilized Credit Monitoring or Documented Losses.

The Credit Monitoring and Insurance Services will include, among other things: (i) up to $1,000,000 of identity theft insurance coverage; and (ii) two years of three-bureau credit monitoring providing, among other things, notice of changes to the Class Member's credit profile. If you already subscribed to credit monitoring services through another provider, you will have the option to postpone the commencement of the Credit Monitoring and Insurance Services by up to 12 months. The Credit Monitoring and Insurance Services available under this Settlement are similar to the credit monitoring and insurance services available under the other FTA Data Breach settlements.

Cash payments amounts may be reduced pro rata (equal share) or increased pro rata depending on how many Class Members submit claims. Complete information about the Settlement and its benefits are available at www.FTADataBreach.com.

This Claim Form may be submitted online at www.FTADataBreach.com or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

FTA Data Breach Settlement Administrator

PO Box 5956
Beaverton, OR 97228-5956

## II. CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments and Credit Monitoring and Insurance Services, you must notify the Settlement Administrator in writing at the address above.

First Name                                    M.I.   Last Name

Alternative Name(s)

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                              State:      Zip Code:

Telephone Numbers (Cell)              Telephone Numbers (Home)

Email Address

Date of Birth (mm/dd/yyyy)           Unique ID Number Provided on mailed Notice (if known)

### You may only select one of the following options:

### III.   CLASS MEMBERSHIP

☐ Please check this box if you received a notice related to this Class Action and provide your Unique ID Number in Section II above.

☐ Please check this box if you have not received a letter notice but believe that you should be included in the Class.  You must provide Reasonable Documentation evidencing your relationship to one of the affected FTA Customers.  Acceptable forms of documentation include, but are not limited to: statements, receipts, invoices, or other documents showing your relationship to one of the affected FTA Customers, or demonstrating that you were otherwise impacted by the FTA Data Breach.

Please provide the name of the affected company that you interacted with below:

**You may only select one of the following options:**

## IV. CREDIT MONITORING AND INSURANCE SERVICES

[ ] If you wish to receive Credit Monitoring and Insurance Services, you must check off the box for this section, provide your email address in the space provided in Section II, above, and return this Claim Form. Submitting this Claim Form will not automatically enroll you into Credit Monitoring and Insurance Services. To enroll, you must follow the instructions sent to your email address after the Settlement is approved and becomes final (the "Effective Date").

## V. REIMBURSEMENT FOR DOCUMENTED LOSSES

[ ] Please check off this box for this section if you are electing to seek reimbursement for up to $10,000 of Documented Losses you incurred that are more likely than not traceable to the FTA Data Breach and are not otherwise reimbursable from insurance on another FTA Data Breach settlement. Documented Losses include unreimbursed losses and consequential expenses that are more likely than not related to the FTA Data Breach and incurred on or after December 16, 2020.

In order to make a claim for a Documented Loss Payment, **you must** (i) fill out the information below and/or on a separate sheet submitted with this Claim Form; (ii) sign the attestation at the end of this Claim Form (section VIII); and (iii) include Reasonable Documentation supporting each claimed cost along with this Claim Form. Documented Losses need to be deemed more likely than not due to the FTA Data Breach by the Settlement Administrator based on the documentation you provide and the facts of the FTA Data Breach. **Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Unreimbursed fraud losses or charges | [ ] [ ] / [ ] [ ] / [ ] [ ] (mm/dd/yy) | $ [ ] [ ] [ ] [ ] . [ ] [ ] | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* |
| ○ Professional fees incurred in connection with identity theft or falsified tax returns | [ ] [ ] / [ ] [ ] / [ ] [ ] (mm/dd/yy) | $ [ ] [ ] [ ] [ ] . [ ] [ ] | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return* |
| ○ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing | [ ] [ ] / [ ] [ ] / [ ] [ ] (mm/dd/yy) | $ [ ] [ ] [ ] [ ] . [ ] [ ] | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive your tax refund and the amount* |

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Credit freeze | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Examples: Notices or account statements reflecting payment for a credit freeze:* |
| ○ Credit monitoring that was ordered after December 16, 2020 through the date on which the Credit Monitoring and Insurance Services become available through this Settlement | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services* |
| ○ Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the FTA Data Breach* |
| ○ Other (provide detailed description) | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Please provide detailed description below or in a separate document submitted with this Claim Form:* |

If you do not submit Reasonable Documentation supporting a Documented Loss Payment claim, or your claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, your claim will be considered for a Cash Fund Payment.

## VI. CASH FUND PAYMENT

☐   If you wish to receive a Cash Fund Payment, you must check off the box for this section, and then simply return this Claim Form. A check will be mailed to the address you provided in Section II, above, as long as the Net Settlement Fund is not depleted by the claims for Credit Monitoring and Insurance Services and Documented Loss Payments.

You will receive an email at the email address provided below after Final Approval prompting you to select how you'd like to be paid.  You can receive your payment via a variety of digital options such as digital debit card or PayPal, or you can elect to receive a check.

Email Address [Mandatory]:

| | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

## VII. CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me.  I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.


_____         Date:_____
Signature

_____
Print Name

## VIII. ATTESTATION
## (REQUIRED FOR DOCUMENTED LOSS PAYMENT CLAIMS)

I, _____, declare that I suffered the Documented Losses claimed above.
        [Name]

I also attest that the Documented Losses claimed above are accurate and were not otherwise reimbursable by insurance or another FTA Data Breach settlement.

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct. Executed on _____, in _____, \_\_\_\_\_.
                                    [Date]                    [City]              [State]


_____
                    [Signature]

EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOUGLAS FEHLEN, TONY BLAKE, DAVID ARTUSO, TERESA BAZAN, LORRIEL CHHAY, SAMANTHA GRIFFITH, ALLEN CHAO, and AUGUSTA MCCAIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ACCELLION, INC.,

Defendant.

Case No. 5:21-cv-01353-EJD

Hon. Edward J. Davila

**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AND ENTERING JUDGMENT**

The Court having held a Final Approval Hearing on _____ __, 20___, at _____ _.m., in the Courtroom of The Honorable Edward J. Davila, United States District Court for the District of the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, Courtroom 4 – 5th Floor, San Jose, California 95113, and having considered all matters submitted to it at the Final Approval Hearing and otherwise, and finding no just reason for delay in entry of this Final Approval Order (this "Order") and good cause appearing therefore, and having considered the papers filed and proceedings held in connection with the Settlement, having considered all of the other files, records, and proceedings in the Action, and being otherwise fully advised,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      This Court has jurisdiction over the subject matter of the Action and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Class Members. Venue is proper in this Court.

2.      This Order incorporates and makes a part hereof: (a) the Class Action Settlement Agreement dated January 3, 2022 including the definitions in the Settlement Agreement and (b) the Notices attached as Exhibits thereto, respectively, all of which were filed with the Court on _____ __, 2022. All terms used in this Order have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

3.      <u>Certification of the Settlement Class for Purposes of Settlement</u>. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court certifies, solely for purposes of effectuating the Settlement, this Action as a class action on behalf of a Settlement Class defined as: all natural persons who are residents of the United States whose Personal Information was stored on the FTA systems of FTA Customers and was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by an FTA Customer that their Personal Information may have been compromised in the Attacks. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Accellion, its subsidiaries, parent companies, successors, predecessors, and any

entity in which Accellion or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person  (the "Settlement Class").

4. <u>Class Representatives</u>. Plaintiffs Douglas Fehlen, Tony Blake, David Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain ("Class Representatives") are hereby appointed, for settlement purposes only, as representatives for the Settlement Class for purposes of Rule 23 of the Federal Rules of Civil Procedure.

5. <u>Class Counsel</u>. Tina Wolfson, Robert Ahdoot, and Andrew W. Ferich of Ahdoot & Wolfson, PC, and Ben Barnow and Anthony Parkhill of Barnow and Associates, P.C. are hereby appointed, for settlement purposes only, as counsel for the Settlement Class pursuant to Rules 23(c)(1)(B) and (g) of the Federal Rules of Civil Procedure.

6. <u>Class Notice</u>. The Court finds that the dissemination of Notice to Settlement Class Members: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the releases to be provided thereunder); (v) Class Counsel's motion for a Fee Award and Costs and for Service Awards to the Class Representatives; (vi) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for Service Awards to the Class Representatives and for a Fee Award and Costs; and (vii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all natural persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.

7. <u>Class Action Fairness Act Notice</u>. The notice to government officials, as given,

1   complied with 28 U.S.C. § 1715.

2       8.   <u>Objections</u>. [If Necessary] The Court has considered each of the objections to the

3   Settlement submitted pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure. The

4   Court finds and concludes that each of the objections is without merit, and they are hereby

5   overruled.

6       9.   <u>Final Settlement Approval and Dismissal of Claims</u>. Pursuant to, and in

7   accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and

8   finally approves the Settlement set forth in the Settlement Agreement in all respects (including,

9   without limitation: the consideration provided for in the Settlement; the releases provided for

10  therein; and the dismissal with prejudice of the claims asserted against Accellion in the Action),

11  and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement

12  Class. The Court finds that, pursuant to Rule 23(e)(2), (A) the Class Representatives and Class

13  Counsel have adequately represented the Settlement Class; (B) the Settlement was negotiated at

14  arm's length; (C) the relief provided for the Settlement Class is fair, reasonable, and adequate

15  taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the

16  proposed method of distributing relief to the Settlement Class, including the method of

17  processing Class Member claims; (iii) the terms of the proposed award of attorneys' fees and

18  reimbursement of costs and other expenses, as well as the Service Awards to the Class

19  Representatives; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D)

20  the Settlement treats Class Members equitably relative to each other. The Parties are directed to

21  implement, perform, and consummate the Settlement in accordance with the terms and

22  provisions contained in the Settlement Agreement.

23      10.  <u>Dismissal with Prejudice</u>. The Action is hereby dismissed with prejudice as to

24  Accellion. The Parties shall bear their own costs and expenses, except as otherwise expressly

25  provided in the Settlement Agreement.

26      11.  <u>Binding Effect</u>. The terms of the Settlement Agreement and of this Order shall

27  be forever binding on Accellion, Plaintiffs, and all Class Members (regardless of whether or not

28

1  any individual Class Member submits a Claim Form, seeks or obtains a Settlement benefit, or

2  objected to the Settlement), as well as their respective successors and assigns.

3      12.    Opt Outs. The persons listed on Exhibit 1, attached hereto and incorporated by

4  this reference, submitted timely and proper Requests for Exclusion, are excluded from the

5  Settlement Class, and are not bound by the terms of the Settlement Agreement or this Order.

6      13.    Releases. The releases set forth in Paragraph 4.1 of the Settlement Agreement are

7  expressly incorporated herein in all respects. The releases are effective as of the Effective Date.

8  Accordingly, this Court orders pursuant to this Order, without further action by anyone, upon

9  the Effective Date of the Settlement, and as provided in the Settlement Agreement, that Plaintiffs

10 and each and every member of the Settlement Class shall have released the Released Claims

11 against the Released Parties. Notwithstanding the foregoing, nothing in this Order shall bar any

12 action by any of the Parties to enforce or effectuate the terms of the Settlement Agreement or

13 this Order.

14     14.    Future Prosecutions Barred. Plaintiffs and all Class Members are hereby barred

15 and permanently enjoined from instituting, asserting, or prosecuting any or all of the Released

16 Claims against any of the Released Parties.

17     15.    No Admission of Liability. The Court hereby decrees that the Settlement, this

18 Order, and the fact of the Settlement do not constitute admissions or concessions by Accellion

19 of any fault, wrongdoing, or liability whatsoever, or an admission of the appropriateness of class

20 certification for trial or dispositive motion practice. This Order is not a finding of the validity or

21 invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the

22 Settlement shall be offered or received in evidence as an admission, concession, presumption or

23 inference against Accellion or any of the Released Parties in any proceeding, other than such

24 proceedings as may be necessary to consummate or enforce the Settlement Agreement or to

25 support a defense based on principles of res judicata, collateral estoppel, release, good faith

26 settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion

27 or similar defense.

28

16.     <u>Attorneys' Fees and Expenses</u>. Class Counsel are awarded attorneys' fees in the amount of $_____, and reimbursement of costs and expenses in the amount of $ _____, and such amounts shall be paid by the Settlement Administrator pursuant to and consistent with the terms of the Settlement.

17.     <u>Service Awards</u>. The Class Representatives are each awarded a Service Award in the amount of $_____, and such amounts shall be paid by the Settlement Administrator pursuant to and consistent with the terms of the Settlement Agreement.

18.     <u>Modification of the Agreement of Settlement</u>. Without further approval from the Court, Plaintiffs, by and through Class Counsel, and Accellion are hereby authorized to agree to and adopt such amendments or modifications of the Settlement Agreement or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Order; and (b) do not materially limit the rights of members of the Settlement Class in connection with the Settlement. Without further order of the Court, Plaintiffs, by and through Class Counsel, and Accellion may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

19.     <u>Retention of Jurisdiction</u>. Without affecting the finality of this Order in any way, the Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions pursuant to the Settlement; (b) the Action, until the Effective Date and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement Agreement and the Settlement.

20.     <u>Termination of Settlement</u>. If the Settlement is terminated as provided in the Settlement Agreement or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Settlement Agreement, and this Order shall be without prejudice to the rights of Plaintiffs, Settlement Class members, and Accellion, and the Parties shall be deemed to have

reverted *nunc pro tunc* to their respective litigation positions in the Action immediately prior to the execution of the Settlement Agreement.

21. <u>Judgment</u>. **JUDGMENT IS HEREBY ENTERED**, pursuant to Federal Rule of Civil Procedure 58, as to the Settlement Class (excluding the individuals who validly and timely requested exclusion from the Settlement Class, as identified in Exhibit 1 hereto), the Class Representatives, and Defendant Accellion, Inc. on the terms and conditions of the Settlement Agreement approved by this Final Approval Order.

**IT IS SO ORDERED, ADJUDGED, AND DECREED:**

Date: _____, 2022

_____
HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

EXHIBIT C

*Fehlen, et al. v. Accellion, Inc.*,
**Case No. 5:21-cv-01353 (U.S. District Court for the Northern District of California)**

# Notice of Accellion FTA Data Breach Class Action Settlement

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*
*Please read this Notice carefully and completely.*

**THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.**

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.FTADataBreach.com.*

- A Settlement has been proposed in a class action lawsuit against Accellion, Inc. ("Defendant" or "Accellion"), relating to a data breach that occurred in December 2020 and January 2021, when threat actors hacked file transfer software developed by Accellion and licensed to its customers ("FTA Customers"), called File Transfer Appliance ("FTA"), in a sophisticated criminal cyberattack that permitted criminals to illegally access information stored on certain customers' FTA systems (the "FTA Data Breach"). As a result, Personal Information of millions of individuals who are customers, employees, or otherwise affiliated with or conducted business with Accellion's FTA Customers may have been accessed by unauthorized persons. The Personal Information obtained may have included, without limitation, names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers (SSNs), drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information. If your Personal Information was compromised as a result of the FTA Data Breach, you are included in this Settlement as a member of the Settlement Class.

- In addition to the Accellion Settlement, several of Accellion's FTA Customers – including Flagstar Bank ("Flagstar"), The Kroger Co. ("Kroger"), and Health Net/California Health and Wellness ("HealthNet"), reached separate settlements relating to this data breach. Additional, similar settlements involving the FTA Data Breach may occur. You may have received a notice regarding one or more of these other settlements. You may be a Class Member in more than one of these settlements, in addition to this Accellion Settlement, and be entitled to benefits in more than one settlement.

- Affected FTA Customers include, without limitation: Flagstar; Kroger; HealthNet; The Regents of the University of California; The Office of the Washington State Auditor; the University of Colorado; American Bureau of Shipping; Congressional Federal Credit Union; CSX Corporation; Danaher Corporation; El Paso Electric Company; Finnegan, Henderson, Farablow, & Garret; Foley & Lardner, LLP; Fortior Solutions, LLC; Goodwin Procter LLP; Guidehouse (FKA Navigant, Inc.); Harvard Business School; Jones Day; Memorial Sloan Kettering Cancer Center; Postlehwaite & Netterville; Qualys, Inc.; Racetrac Corporation; SIU School of Medicine; Stanford School of Medicine; STERIS Corporation; Trinity Health; the University of Maryland, Baltimore; the University of Miami; Wright Medical Technology; and Yeshiva University.

- Under the Settlement, Accellion has agreed to establish an $8.1 million Settlement Fund to: (1) pay for two years of credit monitoring and insurance services ("Credit Monitoring and Insurance Services" or "CMIS"); or (2) provide cash payments of up to $10,000 per Class Member for reimbursement of certain Documented Losses ("Documented Loss Payment"); or (3) provide cash payments to Class Members ("Cash Fund Payment"). The Settlement Fund will also be used to pay for the costs of the settlement administration, court-approved Service Awards for named Plaintiffs and Attorneys' Fees and Costs. In addition, Accellion has agreed to undertake certain remedial measures and enhanced security measures that they will continue to implement.

- Your legal rights will be affected whether you act or do not act. You should read this entire Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM** <br> **EARLIEST DEADLINE: [xxxx xx, 2022]** | Submitting a Claim Form is the only way that you can receive any of the Settlement Benefits provided by this Settlement, including Credit Monitoring and Insurance Services, a Documented Loss Payment, or a Cash Fund Payment. <br> If you submit a Claim Form, you will give up the right to sue Accellion and certain related parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT** <br> **DEADLINE: [XXXX XX, 2022]** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Accellion, or certain related parties, for the claims this Settlement resolves. <br> If you exclude yourself, you will give up the right to receive any Settlement Benefits from this Settlement. |

**This Settlement affects your legal rights even if you do nothing.**
**Questions? Go to www.FTADataBreach.com or call 1-888-888-8888.**

| **OBJECT TO OR COMMENT ON THE SETTLEMENT**<br><br>**DEADLINE: [XXXX XX, 2022]** | You may object to the Settlement by writing to the Court and informing it why you do not think the Settlement should be approved. You can also write the Court to provide comments or reasons why you support the Settlement.<br><br>If you object, you may also file a Claim Form to receive Settlement Benefits, but you will give up the right to sue Accellion in a separate lawsuit about the legal claims this Settlement resolves. |
|---|---|
| **GO TO THE "FINAL APPROVAL" HEARING**<br><br>**DATE: XXXX XX, 2022** | You may attend the Final Approval Hearing where the Court may hear arguments concerning approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. You are not required to attend the Final Approval Hearing. |
| **DO NOTHING** | If you do nothing, you will not receive any of the monetary Settlement Benefits and you will give up your rights to sue Accellion and certain related parties for the claims this Settlement resolves. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement Benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

**1.      Why did I get this Notice?**

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Honorable Edward J. Davila of the United States District Court for the Northern District of California is overseeing this class action. The case is known as *Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353 (N.D. Cal.) (the "Action"). The people who filed this lawsuit are called the "Plaintiffs" and the company they sued, Accellion, Inc. is called the "Defendant." The Plaintiffs and the Defendant agreed to this Settlement.

**2.      What is this lawsuit about?**

On January 12 and February 1, 2021, Accellion announced that in December 2020 and January 2021, threat actors hacked file transfer software developed by Accellion and licensed to FTA Customers, called File Transfer Appliance ("FTA"), in a sophisticated criminal cyberattack that permitted criminals to illegally access information stored on certain of Accellion FTA Customers' FTA systems. As a result, Personal Information of millions of individuals who are customers, employees, or otherwise affiliated with or conducted business with Accellion's FTA Customers may have been obtained by the criminals. The Personal Information obtained may have included, without limitation, names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers (SSNs), drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information.

The Plaintiffs claim that Accellion failed to adequately protect their Personal Information and that they were injured as a result. Accellion denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that the law has been violated. Accellion denies these and all other claims made in the Action. By entering into the Settlement, Accellion is not admitting that it did anything wrong.

**3.      Why is this a class action?**

In a class action, one or more people called the Class Representatives sue on behalf of all people who have similar claims. Together all of these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those Class Members who exclude themselves from the Class.

The Class Representatives in this case are Douglas Fehlen, Tony Blake, David Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain.

**4.      Why is there a Settlement?**

The Class Representatives and Accellion do not agree about the claims made in this Action. The Action has not gone to trial and the Court has not decided in favor of the Class Representatives or Accellion. Instead, the Class Representatives and Accellion have agreed to settle the Action. The Class Representatives and the attorneys for the Class ("Class Counsel") believe the Settlement is best for all Class Members because of the risks and uncertainty associated with continued litigation and the nature of the defenses raised by Accellion.

## WHO IS INCLUDED IN THE SETTLEMENT

**5.     How do I know if I am part of the Settlement?**

The Court has decided that everyone who fits the following description is a Class Member.

> All natural persons who are residents of the United States whose Personal Information was stored on the FTA systems of FTA Customers and was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by an FTA Customer that their Personal Information may have been compromised in the Attacks.

Affected FTA Customers include, without limitation: Flagstar; Kroger; HealthNet; The Regents of the University of California; The Office of the Washington State Auditor; the University of Colorado; American Bureau of Shipping; Congressional Federal Credit Union; CSX Corporation; Danaher Corporation; El Paso Electric Company; Finnegan, Henderson, Farablow, & Garret; Foley & Lardner, LLP; Fortior Solutions, LLC; Goodwin Procter LLP; Guidehouse (FKA Navigant, Inc.); Harvard Business School; Jones Day; Memorial Sloan Kettering Cancer Center; Postlehwaite & Netterville; Qualys, Inc.; Racetrac Corporation; SIU School of Medicine; Stanford School of Medicine; STERIS Corporation; Trinity Health; the University of Maryland, Baltimore; the University of Miami; Wright Medical Technology; and Yeshiva University.

If you received Notice of this Settlement, you have been identified by the Settlement Administrator as a Class Member. More specifically, you are a Class Member, and you are affected by this Settlement.

You may contact the Settlement Administrator if you have any questions as to whether you are a Class Member.

**6.     Are there exceptions to individuals who are included as Class Members in the Settlement?**

Yes, the Settlement does not include: (1) the Judges presiding over the Action and members of their families; (2) Accellion, its subsidiaries, parent companies, successors, predecessors, and any entity in which Accellion or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

**7.     What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Class Member, you may go to the Settlement Website at www.FTADataBreach.com, or call the Settlement Administrator's toll-free number at 1-888-888-8888.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.     What does the Settlement provide?**

The Settlement will provide Class Members with the opportunity to select and make a claim for one of following Settlement Benefits:

- Two years of Credit Monitoring and Insurance Services; or
- Cash Payments of up to $10,000 per Class Member for reimbursement of certain Documented Losses ("Documented Loss Payment"); or
- Cash Fund Payments in amounts to be determined in accordance with the terms of the Settlement.

In addition, Accellion has agreed to take certain remedial measures and enhanced security measures as a result of this Action.

Please review Number 12 carefully for additional information regarding the order in which Settlement Benefits are paid from the Settlement Fund. This additional information may impact your decision as to which of the three Settlement Benefit options is the best option for you.

**9.     Credit Monitoring and Insurance Services.**

You may file a Claim Form to receive Credit Monitoring and Insurance Services. Credit Monitoring and Insurance Services provide a way to protect yourself from unauthorized use of your personal information. If you already have credit monitoring services, you may still sign up for this additional protection. The Credit Monitoring and Insurance Services provided by this Settlement are separate from, and in addition to, the credit monitoring and identity resolution services that may have been offered to you by FTA Customers in response to the FTA Data Breach. You are eligible to make a claim for the Credit Monitoring and Insurance Services being offered through this Settlement even if you did not sign up for the previous services. If you file a claim for Credit Monitoring and Insurance Services and you already have credit monitoring services, you can choose to postpone the Credit Monitoring and Insurance Services from this Settlement for a period of 12 months.

Credit Monitoring and Insurance Services include: (i) up to $1 million dollars of identity theft insurance coverage; and (ii) three bureau credit monitoring providing notice of changes to the Class Member's credit profile. The estimated retail value of the two years of Credit

Monitoring and Insurance Services product is $360. The Credit Monitoring and Insurance Services available under this Settlement are similar to the credit monitoring and insurance services available under the other FTA Data Breach settlements.

To receive Credit Monitoring and Insurance Services, you must submit a completed Claim Form selecting to receive Credit Monitoring and Insurance Services.

**10.     Documented Loss Payment.**

In the alternative to a Cash Fund Payment or Credit Monitoring and Insurance Services, you may elect to submit a Claim Form for reimbursement of Documented Losses. If you spent money remedying or addressing identity theft and fraud that was more likely than not related to the FTA Data Breach or you spent money to protect yourself from future harm because of the FTA Data Breach, and this amount was not otherwise recoverable through insurance or any other FTA Data Breach settlement, you may make a claim for a Documented Loss Payment for reimbursement of up to $10,000 in Documented Losses.

Documented Losses consist of unreimbursed losses incurred on or after December 16, 2020, that were related to identity theft and fraud and are more likely than not a result of the FTA Data Breach, as well as any expenses related to the FTA Data Breach. For example, credit card or debit card cancellation or replacement fees, late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, credit-related costs associated with purchasing credit reports, credit monitoring or identity theft protection, costs to place a freeze or alert on credit reports, costs to replace a driver's license, state identification card, Social Security number, professional services, and out-of-pocket expenses for notary, fax, postage, delivery, copying, mileage, and long-distance telephone charges. Other losses or costs related to the FTA Data Breach that are not insurance reimbursable may also be eligible for reimbursement. To protect the Settlement Fund and valid claims, all Claim Forms submitted that seek payment related to credit or debit card fraudulent transactions will be carefully reviewed by the Settlement Administrator.

Claims for Documented Loss Payments must be supported by Reasonable Documentation. Reasonable Documentation means written documents supporting your claim, such as credit card statements, bank statements, invoices, telephone records, and receipts.

Individual cash payments may be reduced or increased pro rata (equal share) depending on the number of Class Members that participate in the Settlement.

To receive a Documented Loss Payment, you must submit a completed Claim Form electing to receive a Documented Loss Payment. If you file a Claim Form for a Documented Loss Payment and it is rejected by the Settlement Administrator and you do not correct it, your Claim Form will be considered a claim for a Cash Fund Payment.

**11.     Cash Fund Payment.**

In the alternative to Credit Monitoring and Insurance Services or Documented Loss Payment, you may elect to receive a cash payment. This is the "Cash Fund Payment." The amount of the Cash Fund Payment will vary depending on the number of valid claims that are submitted. An estimated range for the Cash Fund Payment is $15-$50. To receive a Cash Fund Payment, you must submit a completed Claim Form electing to receive a Cash Fund Payment.

You are not required to provide Reasonable Documentation with your Claim Form to receive a Cash Fund Payment. Individual Cash Fund Payments may be reduced or increased pro rata (equal share) depending on the number of Class Members that participate in the Settlement and the amount of money that remains in the Cash Fund after payments of other Settlement Benefits and charges with priority for payment under the Settlement. *See* Number 12 below.

**12.     How will Settlement Benefits be paid?**

Before determining which Settlement Benefit option from the Settlement is best for you (selecting a Cash Fund Payment, or Credit Monitoring and Insurance Services, or Documented Loss Payment), it is important for you to understand how Settlement payments will be made. Court awarded attorneys' fees up to a maximum of 25% of the $8.1 million Settlement Fund (i.e., $2,025,000), reasonable costs and expenses incurred by attorneys for the Class, Administrative Expenses for costs of the settlement administration, and Service Awards of up to $1,500 to each of the Class Representatives will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts. The remainder of the Settlement Fund will be distributed in the following order:

1.  Credit Monitoring and Insurance Services claims will be paid first.
2.  If money remains in the Settlement Fund after paying for the Credit Monitoring and Insurance Services, Documented Loss Payment claims will be paid second. If your claim for a Documented Loss Payment is rejected by the Settlement Administrator and you do not correct it, your claim for a Documented Loss Payment will instead be considered a claim for a Cash Fund Payment.
3.  If money remains in the Settlement Fund after paying Credit Monitoring and Insurance Services claims and Documented Loss Payment claims, the amount of the Settlement Fund remaining will be used to create a "Post DC Net Settlement Fund," which will be used to pay all Cash Fund Payment claims. As stated in Number 11 above, those are an estimated range of $15-$50. This is just an estimate, not a guarantee, based on Class Counsel's experience and belief.

**13.     Tell me more about Accellion's remedial measures and enhanced security measures.**

Accellion has completed an investigation into the cause and scope of the FTA Data Breach and has ceased licensing FTA to customers and migrated to a new secure file transfer solution. Specifically, Accellion implemented end-of-life of FTA effective April 30, 2021, and represents and warrants that it has not extended any existing FTA licenses since that date except as necessary for a temporary period to ensure transition to its new file sharing product. No such FTA license extension shall extend beyond January 31, 2022, for Accellion's United States customers. Accellion will use its best efforts to migrate any remaining FTA Customers to an alternative file transfer solution, before the expiration of those customers' existing FTA license terms. Furthermore, as a result of the Action, for a period of four years, Accellion has agreed to institute policies, procedures, and additional security-related remedial measures.

**14.     What is the total value of the Settlement?**

The Settlement provides an $8.1 million Settlement Fund and remedial actions to be taken by Accellion for the benefit of the Class. Any court-approved attorneys' fees, costs, and expenses, Service Awards to the Class Representatives, taxes due on any interest earned by the Settlement Fund, if necessary, and any notice and settlement administration expenses will be paid out of the Settlement Fund, and the balance ("Net Settlement Fund") will be used to pay for the above Settlement Benefits. Any costs associated with Accellion's remedial and enhanced security measures will be paid by Accellion in addition to the Settlement Fund.

**15.     What am I giving up to get a Settlement Benefit or stay in the Class?**

Unless you exclude yourself, you are choosing to remain in the Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Accellion and related parties about the legal issues in this Action, resolved by this Settlement and released by the Class Action Settlement Agreement and Release. The specific rights you are giving up are called Released Claims (*see* next question).

**16.     What are the Released Claims?**

In exchange for the Settlement, Class Members agree to release Accellion and their respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing and specifically excludes all FTA Customers ("Released Parties") from any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or unknown (as the term "Unknown Claims" is defined in the Settlement Agreement), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the compromise of any Class Member's Personal Information arising out of the Attacks ("Released Claims"). "Released Claims" do not include any claims against any entity other than Released Parties.

The Class Representatives and all Settlement Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Attacks or otherwise arises out of the same facts and circumstances set forth in the Second Amended Class Action Complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party, including, without limitation, any of Accellion's FTA Customers who are not parties to this Action (including, for example, but not limited to, The Kroger Co., Flagstar Bank, Health Net/California Health and Wellness, the University of California, the Office of the Washington State Auditor, and the University of Colorado).

More information is provided in the Class Action Settlement Agreement and Release which is available at www.FTADataBreach.com.

### HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

**17.     How do I make a claim for Settlement Benefits?**

You must complete and submit a Claim Form by ==xxxx xx==, **2022**. Claims must be filed or postmarked by this deadline. Claim Forms may be submitted online at www.FTADataBreach.com, or printed from the website and mailed to the Settlement Administrator at the address on the form. Claim Forms are also available by calling 1-==888-888==-8888 or by writing to FTA Data Breach Settlement Administrator, P.O. Box 5956, Beaverton, OR 97228-5956. The quickest way to file a claim is online.

If you received a Notice by email, use your Claim Number to file your Claim Form. If you lost or do not know your Claim Number, please call 1-==888-888-8888== to obtain it.

You may submit a claim for a Cash Fund Payment, or Credit Monitoring and Insurance Services, or a Documented Loss Payment by submitting a Claim Form on the Settlement Website, or by downloading, printing, and completing a Claim Form, and mailing it to the Settlement Administrator.

**Questions? Go to www.FTADataBreach.com or call 1-==888-888-8888==.**
**This Settlement affects your legal rights even if you do nothing.**

5

You may file a claim for only one of the Settlement Benefits provided under the Settlement: 1) a Cash Fund Payment, or 2) Credit Monitoring and Insurance Services, or 3) a Documented Loss Payment.

**18.     How do I make a claim for a Cash Fund Payment?**

To file a claim for a Cash Fund Payment, you must submit a valid Claim Form electing to receive the Cash Fund Payment. To submit a claim for a Cash Fund Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2022.**

If you wish to receive your payment via PayPal, Venmo, or digital card instead of a check, simply provide your email address (optional). Anyone who submits a valid claim for Cash Fund Payment and does not elect to receive payment via PayPal, Venmo, or digital payment card, will receive their payment via regular check sent through U.S. Mail.

Instructions for filling out a claim for a Cash Fund Payment are included on the Claim Form. You may access the Claim Form at www.FTADataBreach.com.

The deadline to file a claim for a Cash Fund Payment is **xxxx xx, 2022**. Claims must be filed or postmarked if mailed by this deadline.

**19.     How do I make a claim for Credit Monitoring and Insurance Services?**

To file a claim for Credit Monitoring and Insurance Services, you must submit a valid Claim Form electing to receive Credit Monitoring and Insurance Services. To submit a claim for Credit Monitoring and Insurance Services, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2022.**

Instructions for filling out a claim for Credit Monitoring and Insurance Services are included on the Claim Form. You may access the Claim Form at www.FTADataBreach.com.

The deadline to file a claim for Credit Monitoring and Insurance Services is **xxxx xx, 2022.** Claims must be filed or postmarked if mailed by this deadline.

**20.     How do I make a claim for a Documented Loss Payment for reimbursement?**

To file a claim for a Documented Loss Payment of up to $10,000 for reimbursement of Documented Losses, you must submit a valid Claim Form electing to receive a Documented Loss Payment. To submit a claim for a Documented Loss Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2022.**

The Claim Form requires that you sign the attestation regarding the information you provided <u>and</u> that you include Reasonable Documentation, such as credit card statements, bank statements, invoices, telephone records, and receipts.

If your claim for a Documented Loss Payment is rejected by the Settlement Administrator and you do not correct it, your claim for a Documented Loss Payment will instead be considered a claim for a Cash Fund Payment.

Instructions for filling out a claim for a Documented Loss Payment are included on the Claim Form. You may access the Claim Form at www.FTADataBreach.com.

The deadline to file a claim for a Documented Loss Payment is **xxxx xx, 2022.** Claims must be filed or postmarked if mailed by this deadline.

**21.     What happens if my contact information changes after I submit a claim?**

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-**888-888-8888** or by writing to:

FTA Data Breach Settlement Administrator
P.O. Box 5956
Beaverton, OR 97228-5956

**22.     When and how will I receive the Settlement Benefits I claim from the Settlement?**

If you make a valid claim for Credit Monitoring and Insurance Services, the Settlement Administrator will send you information on how to activate your credit monitoring after the Settlement becomes final. If you receive a notice in the mail, keep it in a safe place as you will need the unique Claim Number provided on the Notice to activate your Credit Monitoring and Insurance Services.

Payment for valid claims for a Cash Fund Payment or a Documented Loss Payment will be provided by the Settlement Administrator after the Settlement is approved and becomes final. You may elect to receive payment for valid claims for a Cash Fund Payment or a Documented Loss Payment via PayPal, Venmo, or digital payment card instead of a check, by submitting your e-mail address with your

**Questions? Go to www.FTADataBreach.com or call 1-888-888-8888.**
**This Settlement affects your legal rights even if you do nothing.**

Claim Form. Anyone who does not elect to receive payment via PayPal, Venmo, or digital payment card, will receive their payment via regular check sent through U.S. Mail.

The approval process may take time. Please be patient and check www.FTADataBreach.com for updates.

**23.     What happens if money remains after all of the Settlement Claims are paid?**

None of the money in the $8.1 million Settlement Fund will be paid back to Accellion. Any money left in the Settlement Fund after 150 days after the distribution of payments to Class Members will be distributed pro rata (equal share) among all Class Members with approved claims, who cashed or deposited their initial check or received the Settlement proceeds through digital means, as long as the average payment amount is $3 or more. If there is not enough money to provide qualifying Class Members with an additional $3 payment, the remaining funds will be distributed to non-profit organizations, or "Non-Profit Residual Recipients." The proposed Non-Profit Residual Recipient is the Electronic Frontier Foundation, a 26 U.S.C. § 501(c)(3) non-profit organization. Approval of this Non-Profit Residual Recipient is subject to final court approval.

# THE LAWYERS REPRESENTING YOU

**24.     Do I have a lawyer in this case?**

Yes, the Court has appointed Tina Wolfson, Robert Ahdoot, and Andrew W. Ferich of Ahdoot & Wolfson, PC, and Ben Barnow and Anthony Parkhill of Barnow and Associates, P.C. as Class Counsel to represent you and the Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Action.

**25.     How will Class Counsel be paid?**

Class Counsel will file a motion asking the Court to award them attorneys' fees of up to a maximum of 25% of the $8.1 million Settlement Fund (i.e., $2,025,000), plus reasonable costs and expenses. They will also ask the Court to approve up to $1,500 Service Awards to each of the Class Representatives for participating in this Action and for their efforts in achieving the Settlement. If awarded, these amounts will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees and expenses, and Service Awards will be made available on the Settlement Website at www.FTADataBreach.com before the deadline for you to comment or object to the Settlement. You can request a copy of the application by contacting the Settlement Administrator, at 1-888-888-8888.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Class Member and want to keep any right you may have to sue or continue to sue Accellion on your own based on the claims raised in this Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement.

**26.     How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must complete and sign a Request for Exclusion. The Request for Exclusion must be in writing and identify the case name *Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353 (N.D. Cal.); state the name, address and telephone number of the Class Members seeking exclusion; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353 (N.D. Cal)." The Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator at the address below postmarked no later than **xxxx xx, 2022**:

FTA Data Breach Settlement Administrator
P.O. Box 5956
Beaverton, OR 97228-5956

You cannot exclude yourself by telephone or by e-mail.

**27.     If I exclude myself, can I still get Credit Monitoring and Insurance Services, or a Settlement Payment?**

No. If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You can only get Credit Monitoring and Insurance Services, or a cash payment if you stay in the Settlement and submit a valid Claim Form.

**Questions? Go to www.FTADataBreach.com or call 1-888-888-8888.**
**This Settlement affects your legal rights even if you do nothing.**

**28.     If I do not exclude myself, can I sue Accellion for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Accellion and Released Parties for the claims that this Settlement resolves. You must exclude yourself from this Action or continue with your own lawsuit or be part of any other lawsuit against Accellion or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

### OBJECT TO OR COMMENT ON THE SETTLEMENT

**29.     How do I tell the Court that I do not like the Settlement?**

You can ask the Court to deny approval of the Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353 (N.D. Cal.)); (b) state your full name, current mailing address, and telephone number; (c) contain a signed statement that you believe you are a member of the Settlement Class; (d) identify the specific grounds for the objection; (e) include all documents or writings that you desire the Court to consider; (f) contain a statement regarding whether you (or counsel of your choosing) intend to appear at the Final Approval Hearing; (g) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, or by filing the objection in person at any location of the United States District Court for the Northern District of California; and (h) be filed with the Court or postmarked on or before **xxxx xx,** 2022.

**30.     What is the difference between objecting and requesting exclusion?**

Objecting is telling the Court you do not like something about the Settlement. You can object only if you stay in the Class (that is, do not exclude yourself). Requesting exclusion is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement because it no longer affects you.

### THE FINAL APPROVAL HEARING

**31.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **xxxx xx, 2022** at **__:_0_.m.** before the Honorable Edward J. Davila, United States District Court for the District of the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, Courtroom 4, 5th Floor, San Jose, California 95113.

The date and time of the Final Approval Hearing is subject to change without further notice to the Settlement Class. Class Members should monitor the Settlement Website or the Court's PACER site (see Question 35) to confirm whether the date for the Final Approval Hearing is changed.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will decide whether to approve: the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; and the Service Awards to the Class Representatives. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**32.     Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time the Court will consider it.

**33.     May I speak at the Final Approval Hearing?**

Yes. If you wish to attend and speak at the Final Approval Hearing, you must indicate this in your written objection (see Question 29). Your objection must state that it is your intention to appear at the Final Approval Hearing and must identify any witnesses you may call to testify or exhibits you intend to introduce into evidence at the Final Approval Hearing. If you plan to have your attorney speak for you at the Fairness Hearing, your objection must also include your attorney's name, address, and phone number.

**Questions? Go to www.FTADataBreach.com or call 1-888-888-8888.**
**This Settlement affects your legal rights even if you do nothing.**
8

## IF YOU DO NOTHING

**34.     What happens if I do nothing at all?**

If you are a Class Member and you do nothing, you will not receive any Settlement Benefits. You will also give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Accellion or any of the Released Parties about the legal issues in this Action and released by the Settlement Agreement.

## GETTING MORE INFORMATION

**35.     How do I get more information?**

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.FTADataBreach.com, or by contacting Class Counsel (see below), by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, San Jose, California 95113, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

If you have questions about the proposed Settlement or anything in this Notice, you may contact Class Counsel at:



| Ahdoot & Wolfson, PC<br>c/o FTA Data Breach Settlement<br><br>*info@FTADataBreach.com* | Barnow and Associates, P.C.<br>c/o FTA Data Breach Settlement<br><br>*info@FTADataBreach.com* |
|---|---|

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

EXHIBIT D

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11 DOUGLAS FEHLEN, TONY BLAKE,
DAVID ARTUSO, TERESA BAZAN,

12 LORRIEL CHHAY, SAMANTHA
GRIFFITH, ALLEN CHAO, and AUGUSTA

13 MCCAIN, individually and on behalf of all
others similarly situated,

14

Plaintiffs,

15 v.

16 ACCELLION, INC.,

17

Defendant.

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:21-cv-01353-EJD

Hon. Edward J. Davila

**[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

1

2

**[PROPOSED] ORDER GRANTING PRELIMINARY**

**APPROVAL OF CLASS ACTION SETTLEMENT**

3    **WHEREAS**, Plaintiffs and Accellion, Inc. (together, the "Parties") in the above-

4  described class action ("Action") have applied for an order, pursuant to Rule 23(e) of the Federal

5  Rules of Civil Procedure, regarding certain matters in connection with a proposed settlement of

6  the Action, in accordance with a Class Action Settlement Agreement and Release (the

7  "Settlement" or "Settlement Agreement") entered into by the Parties as of January 3, 2022

8  (which, together with its exhibits, is incorporated herein by reference) and dismissing the Action

9  as to Accellion upon the terms and conditions set forth in the Settlement Agreement;

10    **WHEREAS,** all defined terms used in this Order have the same meanings as set forth in

11  the Settlement;

12    **WHEREAS**, Class Counsel have conducted an extensive investigation into the facts and

13  law relating to the matters alleged in the Action;

14    **WHEREAS**, on July 19, 2021, after considerable meet and confer, the Parties engaged

15  in an all-day mediation session before the Honorable Jay C. Gandhi (Ret.) of JAMS. Although

16  that mediation session did not result in a settlement, the Parties attended a second mediation

17  session with Judge Gandhi on September 7, 2021. This mediation session also did not result in

18  a settlement.

19    **WHEREAS,** the Parties continued to attempt to resolve their dispute and, following

20  months of additional arm's length negotiations after the second mediation session, the Parties

21  were able to finalize all of the terms of this Settlement; and

22    **WHEREAS**, the Court has carefully reviewed the Settlement Agreement, including the

23  exhibits attached thereto and all files, records, and prior proceedings to date in this matter, and

24  good cause appearing based on the record.

25    **NOW THERFORE, IT IS HEREBY ORDERED** that:

26    The Settlement, including the exhibits attached thereto, are preliminarily approved as

27  fair, reasonable, and adequate, in accordance with Rule 23(e) of the Federal Rules of Civil

28  Procedure, pending a Final Approval Hearing on the Settlement as provided herein.

1         1.    <u>Stay of the Action</u>. Pending the Final Approval Hearing, all proceedings in the

2   Action, other than proceedings necessary to carry out or enforce the terms and conditions of the

3   Settlement and this Order, are hereby stayed.

4         2.    <u>Certification for Settlement Purposes Only</u>. Solely for purposes of effectuating

5   the proposed Settlement, the Court finds, pursuant to Rule 23(e)(1), that the prerequisites for

6   class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are

7   likely to be found to be satisfied as: (a) the members of the Settlement Class are so numerous

8   that joinder of all Settlement Class Members in this Action is impracticable, (b) there are

9   questions of law and fact that are common to the Settlement Class; (c) Plaintiffs' claims are

10   typical of the claims of the Settlement Class; (d) the interests of all Settlement Class members

11   are adequately represented by Plaintiffs and Class Counsel; (e) the questions of law and fact

12   common to Settlement Class members predominate over any individualized questions of law

13   and fact; and (f) a class action is superior to other available methods for the fair and efficient

14   adjudication of the controversy. These findings shall be vacated if the Settlement is terminated

15   or if for any reason the Effective Date does not occur.

16         3.    <u>Class Definition</u>. The Settlement Agreement defines the Settlement Class as: all

17   natural persons who are residents of the United States whose Personal Information was stored

18   on the FTA systems of FTA Customers and was compromised in the Attacks, including all natural

19   persons who are residents of the United States who were sent notice by an FTA Customer that

20   their Personal Information may have been compromised in the Attacks. Excluded from the

21   Settlement Class are: (1) the Judges presiding over the Action and members of their families;

22   (2) Accellion, its subsidiaries, parent companies, successors, predecessors, and any entity in

23   which Accellion or its parents, have a controlling interest, and its current or former officers and

24   directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to

25   the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded

26   natural person.

27         4.    <u>Class Representatives</u>. For purposes of the Settlement only, the Court finds and

28   determines, pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, that Plaintiffs

Douglas Fehlen, Tony Blake, David Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain will fairly and adequately represent the interests of the Class in enforcing their rights in the Action and appoints them as Class Representatives. The Court preliminarily finds that they are similarly situated to absent Class Members and therefore typical of the Class, and that they will be adequate Class Representatives.

5.      Class Counsel. For purposes of the Settlement, the Court appoints Tina Wolfson, Robert Ahdoot, and Andrew W. Ferich of Ahdoot & Wolfson, PC, and Ben Barnow and Anthony Parkhill of Barnow and Associates, P.C. as Class Counsel to act on behalf of the Settlement Class and the Class Representatives with respect to the Settlement. The Court authorizes Class Counsel to enter into the Settlement on behalf of the Class Representatives and the Settlement Class, and to bind them all to the duties and obligations contained therein, subject to final approval by the Court of the Settlement.

6.      Administration. The firm of Epiq Class Action and Claims Solutions, Inc. is appointed as Settlement Administrator to administer the notice procedure and the processing of claims, under the supervision of Class Counsel.

7.      Class Notice. The Court (a) approves, as to form and content, the proposed Claim Form, Long Form Notice, and the summary notices of the proposed Settlement ("Summary Notice") submitted by the Parties as Exhibits A, D, and E, respectively, to the Settlement Agreement, and (b) finds and determines that emailing (where available) and mailing the Summary Notice, reminder emails to Class Members (if available), and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, along with the internet advertisement publication notice, (i) constitutes the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to submit a claim (if applicable), their right to exclude themselves from the Settlement Class, the effect of the proposed Settlement (including the releases to be provided thereunder), Class Counsel's motion for Service Awards and a Fee Award and Costs, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (iii) constitutes due, adequate, and

sufficient notice to all natural persons entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.

The Court further finds that all of the notices are written in simple terminology, and are readily understandable by Class Members. The date and time of the Final Approval Hearing shall be included in all notices before they are disseminated. The Parties, by agreement, may revise the notices in ways that are appropriate to update those notices for purposes of accuracy and clarity, and may adjust the layout of those notices for efficient electronic presentation and mailing. No Class Member shall be relieved from the terms of the proposed Settlement, including the releases provided for thereunder, based solely upon the contention that such Class Member failed to receive adequate or actual notice.

8.    Notice Date. The Court directs that the Settlement Administrator cause a copy of the Summary Notice be mailed to all members of the Class who have been identified by Accellion through its records, if any, or provided to the Settlement Adminstrator by FTA Customers. The mailing is to be made via e-mail or by first class United States mail, postage prepaid, no later than the Notice Date, i.e., within 30 days of entry of this Order. Direct notice shall be substantially completed within 21 days of the Notice Date. Contemporaneously with the mailing, the Settlement Administrator shall cause copies of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form, in forms available for download, to be posted on a website developed for the Settlement ("Settlement Website").

9.    Deadline to Submit Claim Forms. Class Members will have 90 days from the Notice Date to submit their Claim Forms ("Claims Deadline"), which is due, adequate, and sufficient time. By submitting a claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his or her claim and the subject matter of the Settlement.

10.    Exclusion from Class. Any person falling within the definition of the Settlement Class may, upon request, be excluded or "opt out" from the Settlement Class. Any such person

who desires to request exclusion from the Settlement Class must submit a fully-completed Request For Exclusion. To be valid, the Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. In the event the Settlement Class members submit a Request for Exclusion to the Settlement Administrator via US Mail, such Request for Exclusion must be in writing and must identify the case name *Fehlen, et al. v. Accellion, Inc.,* U.S.D.C. Case No. 5:21-cv-01353 (N.D. Cal.); state the name, address and telephone number of the Settlement Class members seeking exclusion; be physically signed by the natural person(s) seeking exclusion; and must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *Fehlen, et al. v. Accellion, Inc.,* U.S.D.C. Case No. 5:21-cv-01353 (N.D. Cal.)." Any Person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. No person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

11. <u>Final Approval Hearing</u>. A hearing will be held by this Court in the Courtroom of The Honorable Edward J. Davila, United States District Court for the District of the Northern District of California (San Jose Division), Robert F. Peckham Federal Building, 280 South 1st Street, Courtroom 4 – 5th Floor, San Jose, California 95113 at _____ __.m. on _____, 2022 ("Final Approval Hearing"), to determine: (a) whether the Settlement should be approved as fair, reasonable, and adequate to the Settlement Class; (b) whether the Final Approval Order and Judgment should be entered in substance materially the same form as Exhibit B to the Settlement Agreement; (c) whether the Class Representatives' proposed Settlement Benefits as described in Sections 2 and 3 of the Settlement Agreement should be approved as fair, reasonable, and adequate to the Settlement Class; (d) whether to approve the application for Service Awards for the Class Representatives or an award of attorneys' fees and litigation expenses; and (e) any other matters that may properly be brought before the Court in connection with the Settlement. The Final Approval Hearing is subject to continuation or

1    adjournment by the Court without further notice to the Settlement Class. The Court may approve

2    the Settlement with such modifications as the Parties may agree to, if appropriate, without

3    further notice to the Settlement Class.

4         12.    <u>Objections and Appearances</u>. Any Settlement Class Member may comment in

5    support of or in opposition to the Settlement and may do so in writing, in person, or through

6    counsel, at his or her own expense, at the Final Approval Hearing. Except as the Court may order

7    otherwise, no objection to the Settlement shall be heard, and no papers, briefs, pleadings, or

8    other documents submitted by any objector shall be received and considered by the Court unless

9    such objector mails to the Court (c/o the Class Action Clerk, U.S. District Court for the Northern

10   District of California) or files in person at any location of the United States District Court for

11   the Northern District of California a written objection with the caption *Fehlen, et al. v. Accellion,*

12   *Inc.,* U.S.D.C. Case No. 5:21-cv-01353 (N.D. Cal.), that includes: (i) the Settlement Class

13   member's full name, current mailing address, and telephone number; (ii) a signed statement that

14   he or she believes himself or herself to be a member of the Settlement Class; (iii) whether the

15   objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement

16   Class, (iv) the specific grounds for the objection; (v) all documents or writings that the

17   Settlement Class member desires the Court to consider; and (vi) a statement regarding whether

18   they (or counsel of their choosing) intend to appear at the Final Approval Hearing. All written

19   objections must be postmarked no later than the Objection Deadline. Any objector who fails to

20   object in the manner prescribed herein shall be deemed to have waived his or her objections and

21   forever be barred from making any such objections in the Action or in any other action or

22   proceeding

23        13.    <u>Claimants</u>. Class Members who submit within 90 days of the Notice Date a valid

24   Claim Form approved by the Settlement Administrator may qualify to receive Credit Monitoring

25   and Insurance Services, a Documented Loss Payment, or a Cash Fund Payment. Any Class

26   Member who does not submit a timely Claim Form in accordance with this Order shall not be

27   entitled to receive Credit Monitoring and Insurance Services, a Documented Loss Payment, or

28   a Cash Fund Payment, but shall nevertheless be bound by any final judgment entered by the

1    Court. The Settlement Administrator shall have the discretion, but not the obligation, to accept

2    late-submitted claims for processing by the Settlement Administrator, so long as distribution of

3    the Net Settlement Fund to authorized Claimants for Approved Claims is not materially delayed

4    thereby. No person shall have any claim against Class Counsel or the Settlement Administrator

5    by reason of the decision to exercise discretion whether to accept late-submitted claims.

6        14.    Release. Upon the entry of the Court's order for final judgment after the Final

7    Approval Hearing, and as provided in Section 4.1 of the Settlement Agreement, the Class

8    Representatives and all Class Members, whether or not they have filed a Claim Form within the

9    time provided, shall be permanently enjoined and barred from asserting any claims (except

10   through the Claim Form procedures) against Accellion and the Released Parties arising from the

11   Released Claims, and the Class Representatives and all Class Members conclusively shall be

12   deemed to have fully, finally, and forever released any and all such Released Claims.

13       15.    Funds Held by Settlement Administrator. All funds held by the Settlement

14   Administrator shall be deemed and considered to be *in custodia legis* of the Court and shall

15   remain subject to the jurisdiction of the Court until such time as the funds are distributed

16   pursuant to the Settlement or further order of the Court.

17       16.    Motion for Service Awards and Fee Award and Costs; Final Approval Motion;

18   Response to Objection(s). At least 35 days before the Objection Deadline, Class Counsel may

19   file a motion for an award of Service Awards to the Class Representatives and for reasonable

20   attorneys' fees, costs, and expenses. No later than 14 days after the Objection Deadline, Class

21   Counsel must file the motion, supporting brief, and supporting documents in support of a request

22   for final approval of the Settlement and the Settlement Benefits, and response(s) to any

23   Objection to the Settlement. Any reply papers must be filed and served no later than 7 days prior

24   to the Final Approval Hearing.

25       17.    Reasonable Procedures. Class Counsel and Accellion's Counsel are hereby

26   authorized to use all reasonable procedures in connection with approval and administration of

27   the Settlement that are not materially inconsistent with this Order or the Settlement Agreement,

28   including making, without further approval of the Court, minor changes to the form or content

of the Long Form Notice, Summary Notice, and other exhibits that they jointly agree are reasonable or necessary.

18.    Extension of Deadlines. Upon application of the Parties and good cause shown, the deadlines set forth in this Order may be extended by order of the Court, without further notice to the Class. Class Members must check the Settlement Website (www.FTADataBreach.com) regularly for updates and further details regarding extensions of these deadlines. The Court reserves the right to adjourn or continue the Final Approval Hearing, and/or to extend the deadlines set forth in this Order, without further notice of any kind to the Class.

19.    If Effective Date Does Not Occur. In the event that the Effective Date does not occur, certification shall be automatically vacated and this Preliminary Approval Order, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

**IT IS SO ORDERED:**

Date: _____, 2022

_____
HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

EXHIBIT E

### Court Approved Legal Notice
**Case No. 5:21-01353 (N.D. Cal.)**

## As a Result of the FTA DATA BREACH, You Can Get Cash or Credit Monitoring and Insurance Services to Protect Your Information.

*A federal court has authorized this Notice.*
*This is not a solicitation from a lawyer.*

## Complete and Return the Claim Form by Month XX, 2022.

www.FTADataBreach.com

1-888-888-8888

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.FTADataBreach.com.*

*Fehlen, et al. v. Accellion, Inc.*
P.O. Box _____
_____, __ _____

Forwarding Service Requested

Postal Service: Please do not mark barcode
Claim No.:

[CLAIMANT INFO]

---

A proposed Settlement for a data breach has been reached with Accellion, Inc. In December 2020 and January 2021, in a criminal cyberattack of file transfer software developed by Accellion and licensed to customers, called File Transfer Appliance ("FTA"), criminals illegally accessed information stored on certain of Accellion's customers' FTA systems. As a result, Personal Information of millions of individuals who are customers, employees, or otherwise affiliated with or conducted business with Accellion's FTA Customers may have been accessed. Impacted Personal Information may have included names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers (SSNs), drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information.

**Who is Included?** If you received this Notice by mail or email, records indicate you are included in this Settlement. The Court decided that a Class Member is all natural persons who are residents of the United States whose Personal Information was stored on the FTA systems of FTA Customers and was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by an FTA Customer that their Personal Information may have been compromised in the Attacks.

**What does the Settlement Provide?** The Settlement establishes an $8.1 million Settlement Fund to be used to pay for Credit Monitoring and Insurance Services, Documented Loss Payments for reimbursement of Documented Losses, or Cash Fund Payments to valid claimants; costs of Notice and administration; Service Awards to the Class Representatives; and a Fee Award and Costs. Also, Accellion has agreed to undertake certain remedial measures and enhanced data security measures. Claimants may select one of the following options, which will be made from the Fund in the following order:

**Credit Monitoring and Insurance Services** – two years of Credit Monitoring and Insurance Services.

**Documented Loss Payments** – reimbursement for certain Documented Losses, i.e., money spent or lost, as a result of the FTA Data Breach (up to $10,000), not otherwise reimbursable by insurance or another FTA Customer data breach settlement.

**Cash Fund Payments** – you may submit a Cash Fund Payment claim for a cash payment, in an amount to be determined consistent with the Settlement, if you do not make a claim for a Documented Loss Payment or Credit Monitoring. An estimated range for the Cash Fund Payment is $15-$50, but this is just an estimate, not a guarantee.

All payments may be increased or reduced pro rata (equal share) depending on the number of Class Members that participate in the Settlement.

**How To Get Benefits:** You must complete and file a Claim Form online or by mail postmarked by **Month XX, 2022**, including required documentation. You can file your claim online at **www.FTADataBreach.com**. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month XX, 2022**. If you do not exclude yourself, you will release any claims you may have against Accellion or related parties related to the FTA Data Breach, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **Month XX, 2022**.

**The Final Approval Hearing.** The Court has scheduled a hearing in this case (*Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353 (N.D. Cal.)) for **Month XX, 2022**, to consider: whether to approve the Settlement, Service Awards, a Fee Award and Costs, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**More Information.** Complete information about your rights and options, as well as the Claim Form, the Long Form Notice, and Settlement Agreement are available at **www.FTADataBreach.com**, or by calling toll free 1-888-888-8888.

Email Notice

# As a Result of the FTA DATA BREACH, You Can Get Cash or Credit Monitoring and Insurance Services to Protect Your Information.

*A federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.FTADataBreach.com.*

# Click <u>here</u> to file a claim by Month XX, 2022.

A proposed Settlement for a data breach has been reached with Accellion, Inc. In December 2020 and January 2021, in a criminal cyberattack of file transfer software developed by Accellion and licensed to customers, called File Transfer Appliance ("FTA"), criminals illegally accessed information stored on certain of Accellion's customers' FTA systems. As a result, Personal Information of millions of individuals who are customers, employees, or otherwise affiliated with or conducted business with Accellion's FTA Customers may have been accessed. Impacted Personal Information may have included names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers (SSNs), drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information.

**Who is Included?** If you received this Notice by mail or email, records indicate you are included in this Settlement. The Court decided that a Class Member is all natural persons who are residents of the United States whose Personal Information was stored on the FTA systems of FTA Customers and was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by an FTA Customer that their Personal Information may have been compromised in the Attacks.

**What does the Settlement Provide?** The Settlement establishes an $8.1 million Settlement Fund to be used to pay for Credit Monitoring and Insurance Services, Documented Loss Payments for reimbursement of Documented Losses, or Cash Fund Payments to valid claimants; costs of Notice and administration; Service Awards to the Class Representatives; and a Fee Award and Costs. Also, Accellion has agreed to undertake certain remedial measures and enhanced data security measures. Claimants may select one of the following options, which will be made from the Fund in the following order:

**Credit Monitoring and Insurance Services** – two years of Credit Monitoring and Insurance Services.

- **Documented Loss Payments** – reimbursement for certain Documented Losses, i.e., money spent or lost, as a result of the FTA Data Breach (up to $10,000), not otherwise reimbursable by insurance or another FTA Customer data breach settlement.

- **<u>Cash Fund Payments</u>** – you may submit a Cash Fund Payment claim for a cash payment, in an amount to be determined consistent with the Settlement, if you do not make a claim for a Documented Loss Payment or Credit Monitoring. An estimated range for the Cash Fund Payment is $15-$50, but this is just an estimate, not a guarantee. All payments may be increased or reduced pro rata (equal share) depending on the number of Class Members that participate in the Settlement.

- **<u>How To Get Benefits:</u>** You must complete and file a Claim Form online or by mail postmarked by **Month XX, 2022**, including required documentation. You can file your claim online at **www.FTADataBreach.com**. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**<u>Your Other Options.</u>** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month XX, 2022**. If you do not exclude yourself, you will release any claims you may have against Accellion or related parties related to the FTA Data Breach, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **Month XX, 2022**.

**<u>The Final Approval Hearing.</u>** The Court has scheduled a hearing in this case (*Fehlen, et al. v. Accellion, Inc.*, Case No. 5:21-cv-01353 (N.D. Cal.)) for **Month XX, 2022**, to consider: whether to approve the Settlement, Service Awards, Attorneys' Fees and Costs, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**<u>More Information.</u>** Complete information about your rights and options, as well as the Claim Form, the Long Form Notice, and Settlement Agreement are available at **www.FTADataBreach.com**, or by calling toll free 1-888-888-8888.