Adam E. Polk (State Bar No. 273000)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 281045)
Trevor T. Tan (State Bar No. 281045)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com

*Attorneys for Plaintiff Heather Rodriguez*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD<br><br>**NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 8, 2022<br>Courtroom: 4 – 5th Floor<br>Judge: Hon. Edward J. Davila |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION.................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES...................................................... 1

I.     INTRODUCTION ...................................................................................................... 1

II.    LEGAL STANDARD ................................................................................................. 2

III.    ARGUMENT ............................................................................................................... 3

    A.    Girard Sharp Has Developed the Claims Against Accellion and Maintains Productive Working Relationships with Other Co-Lead Counsel Candidates............. 3

        1.    Girard Sharp Has Advanced the Litigation and Avoided Duplication of Efforts............................................................................................................ 3

        2.    The Firm Is Well Positioned to Lead This Case in Cooordination with All Stakeholders. ............................................................................................. 4

    B.    Girard Sharp Has Significant Relevant Expertise and Knowledge of the Applicable Law.......................................................................................................... 7

    C.    Girard Sharp Will Apply the Resources Necessary to Represent the Class. .............. 13

IV.    CONCLUSION .......................................................................................................... 14

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 4

*Billitteri v. Securities Am., Inc.*,
  2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ................................... 5, 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ................................................................ 7

*Cobarruviaz v. Maplebear, Inc*,
  2016 WL 5725076 (N.D. Cal. Sept. 30, 2016) ...................................... 4

*Four In One Co. v. SK Foods, L.P.*,
  2009 WL 747160 (E.D. Cal. Mar. 20, 2009) ......................................... 2

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................ 4

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
  380 F. Supp. 3d 1243 (M.D. Fla. 2019) .............................................. 6, 9

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*,
  274 F.R.D. 286 (N.D. Cal. 2011) ...................................................... 8, 12

*In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*,
  2022 WL 1494378 (E.D. Va. May 10, 2022) .......................................... 6

*In re Interest Rate Swaps Antitrust Litig.*,
  2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ......................................... 13

*In re JUUL Labs, Inc., Mktg., Sales Practices & Prods. Liab. Litig.*,
  2022 WL 2343268 (N.D. Cal. June 28, 2022) ........................................ 8

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
  733 F. Supp. 2d 997 (E.D. Wis. 2010) ................................................... 4

*In re Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ...................................... 11

*In re Lenovo Adware Litig.*,
  2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ...................................... 11

*In re Lidoderm Antitrust Litig.*,
  2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ........................................ 12

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ........................................................ 8

*In re Lucent Techs. Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ......................................................................... 7

*In re MacBook Keyboard Litig.*,
   2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) .......................................................... 12

*In re Nexus 6P Prods. Liab. Litig.*,
   2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ......................................................... 9

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
   318 F.R.D. 435 (D. Colo. 2015) ............................................................................. 12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ............................................................................... 12

*In re SLM Corp. Sec. Litig.*,
   2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ........................................................... 12

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   66 F. Supp. 3d 1154 (D. Minn. 2014) .................................................................... 12

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   892 F.3d 968 (8th Cir. 2018) ................................................................................. 12

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................................................ 11

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
   2017 WL 9605208 (N.D. Ga. Aug. 1, 2017) .......................................................... 11

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) ............................................................................. 9, 10

*In re Yahoo Mail Litig.*,
   2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ....................................................... 13

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................... 11

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................................. 5

*Mehl v. Canadian Pac. Railway Ltd.*,
   227 F.R.D. 505 (D.N.D. 2005) ................................................................................. 5

*Moore v. PetSmart, Inc.*,
   728 F. App'x 671 (9th Cir. 2018) ............................................................................. 5

iii

*Paeste v. Government of Guam*,
   2012 WL 2915390 (D. Guam Apr. 30, 2012) ............................................................ 12

*Reynolds v. Beneficial Nat. Bank*,
   288 F.3d 277 (7th Cir. 2002) ...................................................................................... 4

*Salmonson v. Bed Bath & Beyond, Inc.*,
   2012 WL 12919187 (C.D. Cal. Apr. 27, 2012) .......................................................... 4

*Spegele v. USAA Life Ins. Co.*,
   336 F.R.D. 537 (W.D. Tex. 2020) ............................................................................ 12

*Sundquist v. Nebraska*,
   2015 WL 6118515 (D. Neb. Oct. 16, 2015) ............................................................... 5

**Other Authorities**

Manual for Complex Litigation, Fourth, § 21.11 ............................................................ 2

Manual for Complex Litigation, Fourth, § 22.6 .............................................................. 4

Newberg on Class Actions § 3:75 ................................................................................... 5

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... 5

Fed. R. Civ. P. 23(g) ...................................................................................................... 2

Fed. R. Civ. P. 23(g)(2) .................................................................................................. 2

Fed. R. Civ. P. 23(g)(3) .................................................................................................. 2

MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 8, 2022, in Courtroom 4, 5th Floor of the above-entitled Court located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Heather Rodriguez will and hereby does move this Court, pursuant to its Order of September 8, 2022 (Dkt. No. 109), to appoint her attorneys at the law firm Girard Sharp LLP to serve as interim co-lead class counsel.

This Motion is based on this Notice of Motion and Motion; the firm resume attached hereto; any response papers filed in further support of the Motion; all documents on file in the above-captioned action and in related actions; the arguments presented by counsel at the hearing on this Motion; and any other matter the Court may wish to consider.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION</u>**

Girard Sharp represents Heather Rodriguez, one of the many victims of the breach of Accellion's electronic file transfer application ("FTA") in December 2020 and January 2021. Fraudulent charges appeared on Ms. Rodriguez's bank account statement after the breach, and on February 22, 2021, she sued Accellion for negligence and other violations. (Case No. 5:21-cv-01272-EJD.) On March 14, 2022, this Court consolidated Ms. Rodriguez's case with the other related cases filed against Accellion in this District. (Dkt. No. 83.)

Ms. Rodriguez's attorneys at Girard Sharp are ideally qualified to represent the class of Accellion data breach victims as interim co-lead counsel. Girard Sharp filed one of the first cases arising from the Accellion data breach, and has led the prosecution of claims on behalf of victims of the breach ever since. The class stands to benefit from the firm's knowledge of the Accellion data breach gained through our leadership of the parallel UC Regents case, where motions to dismiss are fully briefed and settlement negotiations continue, and from our demonstrated ability to achieve consensus among various stakeholders in complex litigation. We have a track record of success in major privacy litigation and have navigated many of the hurdles that class counsel can expect to confront here, including coordinating with participants in parallel class actions,

prosecuting claims arising out of a data breach with a widespread impact, successfully moving for class certification of claims of intangible harm, and maximizing recoveries from defendants with limited financial resources.  As described below, Girard Sharp has served in the leadership for class plaintiffs affected by some of the most serious data breaches of U.S. entities (Target, Home Depot, Sony, Experian, 21st Century Oncology, Anthem, Adobe, OPM).  The firm has prevailed at class certification in similar cases involving harm to millions of consumers, and has recently tried federal cases to verdict.  Girard Sharp is based in San Francisco and the firm's professionals are familiar with this District's local rules and standards of practice.  We have the skills, experience, relationships, and resources to lead this case.

We believe this matter can be effectively pursued with two co-lead firms vested with discretion to delegate work as needed, without a formally appointed committee of additional law firms.  The attorneys at Girard Sharp have worked productively with most of the competing applicants and are prepared to serve alongside any of them to advance and protect the interests of class members.  In the interest of transparency and efficiency, Ms. Rodriguez submits with this motion a proposed protocol that provides for the public filing of time and expense summaries on the record, which Courts in this District, including this Court, have approved in similar class cases.

## II.   <u>LEGAL STANDARD</u>

Rule 23(g)(3) empowers the Court to appoint interim class counsel "before the certification decision is made."  Fed. R. Civ. P. 23(g) advisory committee's note (2003).  Appointing interim counsel "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  Manual for Complex Litigation, Fourth, § 21.11 ("Manual").  When more than one attorney or law firm seeks appointment as class counsel, the Court "endeavor[s] to select counsel best able to represent the interests of the purported class." *Four In One Co. v. SK Foods, L.P.*, Nos. 2:08-cv-03017-MCE-EFB *et al.*, 2009 WL 747160, at *2 (E.D. Cal. Mar. 20, 2009) (citing Fed. R. Civ. P. 23(g)(2)).

III.   **ARGUMENT**

    A.   **Girard Sharp Has Developed the Claims Against Accellion and Maintains Productive Working Relationships with Other Co-Lead Counsel Candidates.**

        1.   **Girard Sharp Has Advanced the Litigation and Avoided Duplication of Efforts.**

Girard Sharp has worked on the Accellion data breach litigation from its inception, has thoroughly investigated and briefed the claims at issue in this case, and will capably represent the interests of the class.  On February 5, 2021, Girard Sharp filed *Winter v. Accellion, Inc.*, No. 21-2-01669-0, in Washington State Superior Court.  To avoid duplicating the efforts of earlier-filed counsel, we dismissed *Winter* and filed Ms. Rodriguez's case in this District on February 22, 2021.  We worked with computer science and data privacy experts who helped us analyze the Mandiant report and other available information on this cyberattack.  Using publicly available information, we investigated technical deficiencies in Accellion's cyber security protocols that enabled the breach, prepared discovery requests, case management documents, and legal briefing, and consulted with other attorneys in the related actions.  Our clients also filed class actions on behalf of victims of the Accellion breach who were customers of Kroger and of Flagstar Bank.  *Baer et al. v. The Kroger Co.*, No. 1:21-cv-00323-TSB (S.D. Ohio filed May 13, 2021); *Hawkins et al. v. Flagstar Bank, FSB*, No. 2:21-cv-11165-AJT-DRG (E.D. Mich. filed May 19, 2021).

On April 27, 2021, we filed the first Accellion-related case against the UC Regents, also naming Accellion.  *Erazo v. The Regents of the Univ. of Calif. et al.*, No. RG21097796 (Cal. Super. Ct. Alameda Cnty.).  We promptly served written discovery requests on both Accellion and UC Regents, and conferred with the defendants regarding their responses.  On September 23, 2021, the court (Hon. Evelio Grillo) consolidated the UC action under the caption *Ochoa et al. v. The Regents of the University of California et al.*, No. RG21097796 (Cal. Super. Ct. Alameda Cnty.) and appointed Girard Sharp as co-lead counsel and executive committee chair.  Accellion and UC Regents each demurred to the consolidated complaint in *Ochoa*; Girard Sharp then led a team effort in opposing the demurrers.  (Mr. Yanchunis serves on the executive committee in *Ochoa*, and the firms have worked cooperatively.)  To avoid unnecessarily depleting Accellion's resources, the parties in *Ochoa* agreed to stay their claims against Accellion and defer the ruling

3

on Defendants' demurrers while the parties explore settlement of the claims against UC Regents. After Regents provided data and documents, which have informed the settlement discussions, the *Ochoa* plaintiffs and Regents participated in mediation in July 2022, and negotiations are ongoing.

### 2.   The Firm Is Well Positioned to Lead This Case in Cooordination with All Stakeholders.

This Court terminated plaintiff Fehlen's preliminary approval motion on September 8, 2022. (Dkt. No. 109.)  By pushing the "restart" button and appointing interim co-lead counsel, this Court can ensure that any settlement negotiations are conducted under Court supervision.  *See In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1006 (E.D. Wis. 2010) (holding that appointment of class counsel "gives him or her exclusive authority to negotiate a settlement") (citation omitted); *Salmonson v. Bed Bath & Beyond, Inc.*, No. CV 11-2293 SVW (SSx), 2012 WL 12919187, at *5 (C.D. Cal. Apr. 27, 2012) (defendant could negotiate only with court-appointed interim counsel).  Appointing interim counsel will also eliminate the risk of appellate challenge to a settlement negotiated by unappointed counsel.  "Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)), and a settlement may be vulnerable if a related case is more procedurally advanced "relative to the . . . efforts of the settlement class counsel[.]"  *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 283-84 (7th Cir. 2002).  If appointed, Girard Sharp will coordinate with the attorneys representing parties in all Accellion-related cases to ensure orderly progress of the litigation without competition among counsel.  *See* Manual § 22.6 (stressing the need to "encourage continuing collaboration among counsel and the parties in the cases pending in different courts."); *Cobarruviaz v. Maplebear, Inc*, No. 15-cv-00697-EMC, 2016 WL 5725076, at *2 (N.D. Cal. Sept. 30, 2016) (noting that "coordination between overlapping class actions is important").

A global resolution stands to benefit all concerned, provided all interested stakeholders have a voice and their interests are adequately represented.  While they are entitled to this "structural assurance" of fair representation, *Amchem*, 521 U.S. at 627, all Accellion data breach victims share

an interest in maximizing the total recovery.  Allocation issues can be addressed by giving representatives of each affected group a seat at the negotiating table.  *See* Newberg on Class Actions § 3:75 (explaining that concurrent representation of multiple classes can benefit all class members, including by facilitating global resolution); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  We believe the participation in settlement discussions of Mr. Berger (representing Washington State employee victims), Mr. Yanchunis (representing Flagstar victims), and Mr. Blood (representing HealthNet victims) will likely obviate the need for subclassing.  *See Sundquist v. Nebraska*, No. 8:14CV220, 2015 WL 6118515, at *2 (D. Neb. Oct. 16, 2015) (holding that "[s]eparate representation is not required" except if a "potential conflict matures into an actual material conflict.") (citation omitted); *Moore v. PetSmart, Inc.*, 728 F. App'x 671, 674 (9th Cir. 2018).  Distinct claims also may be excluded from a class settlement if necessary.  Ultimately, the Court will ensure that any revised settlement presented for approval is fair and adequate.  *See, e.g.*, *Mehl v. Canadian Pac. Railway Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) (finding no Rule 23 adequacy concern from representation of multiple classes and noting that any settlement would be subject to judicial scrutiny).

Girard Sharp is experienced in coordinating negotiations involving multiple stakeholders that produce improved settlement agreements for class members.  In *Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.), Girard Sharp, acting as lead counsel for a class of investors, coordinated settlement talks among defendants and hundreds of private arbitration claimants—even after the court denied an earlier proposed settlement—resulting in a $150 million recovery.  The court wrote that Girard Sharp attorneys have "great competence and experience, and the result reached in this case perfectly exemplifies their abilities.  The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation."  2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011).  The firm has played similar roles in other complex cases, including serving as one of the lead counsel in the *Lehman Securities Litigation*, No. 08-Civ-5523 (S.D.N.Y.); leading (with our colleagues at Gibbs Law Group) ongoing global settlement negotiations in the *Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.); and coordinating multi-party settlement negotiations in the *Hyundai and*

MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

*Kia Horsepower Litigation*, No. 02CC00287 (Cal. Super. Ct. Orange Cnty.) and many others over the firm's 27-year history.

Girard Sharp attorneys have worked productively alongside most of the other plaintiffs' attorneys involved in this litigation, including Mr. Yanchunis, Mr. Berger, and Ms. Wolfson, and we are well equipped to do so again here. *See, e.g.*, *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, No. 1:21-cv-269 (MSN/JFA), 2022 WL 1494378, at *5 (E.D. Va. May 10, 2022) (directing inclusive approach to case work when appointing interim counsel). Mr. Yanchunis and Ms. Wolfson serve on the Plaintiffs' steering committee in *In re U.S. Office of Personnel Management Data Security Litigation*, MDL No. 2664 (D.D.C.), where Girard Sharp is lead counsel. The firm also worked with Mr. Yanchunis in *Prather v. Wells Fargo Bank, N.A.*, No. 17-cv-00481 (N.D. Ill.), pursuing claims under the Telephone Consumer Protection Act ($17.85 million settlement). Girard Sharp collaborated with Mr. Berger in *In re Anthem Data Breach Litigation*, No. 15-md-02617-LHK (N.D. Cal.) and *In re Intuit Free File Litigation*, No. 3:19-cv-02546-CRB (N.D. Cal.), the latter involving an alleged TurboTax bait-and-switch scheme to charge fees to American taxpayers entitled to file a return for free. Last year, Girard Sharp and Gibbs Law Group jointly tried the first cases in the *Pacific Fertility Center Litigation*, securing a $14.75 million jury verdict for families whose frozen eggs and embryos were compromised in a cryopreservation tank failure. Girard Sharp currently serves as interim co-lead counsel with Ms. Wolfson representing advertisers in *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC (S.D.N.Y.). We prioritize courtesy and professionalism in our relationships with our colleagues, including opposing counsel, and are committed to consensus-based outcomes when consistent with our clients' interests.

Girard Sharp also is experienced in "zone of insolvency" litigation, both in the data breach context and more generally. The firm helped steer *In re 21st Century Oncology Customer Data Security Breach Litigation*, 380 F. Supp. 3d 1243 (M.D. Fla. 2019) to a favorable settlement despite the defendant's bankruptcy, with the 2.2 million victims offered a two-year subscription to comprehensive identity theft protection services, cash payments of $40 to $260, and reimbursement of up to $10,000 for documented losses. Girard Sharp also served as lead counsel

for investors in the *Woodbridge Investments*, No. 2:18-cv-00103 (C.D. Cal.) ($54.2 million settlement), *Peregrine Financial Group*, No. 1:12-cv-5546 (N.D. Ill.) ($75 million), and *Provident Royalties*, No. 3:09-cv-01568-F (N.D. Tex.) ($150 million) cases, and as supporting counsel in the *Jay Peak EB-5* litigation, No. 1:16-cb-21575-FAM (S.D. Fla.) ($200 million)—all of which involved parallel bankruptcy proceedings.

While a defendant's financial condition can be a factor influencing a settlement's adequacy, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992), discovering the underlying facts of the defendant's financial condition is key to informed negotiation.  Class Counsel may require accountants or other subject matter experts to evaluate the defendant's assets, liabilities, books and records, analyze available insurance, make recommendations, and reach conclusions about the defendant's ability to pay.  As counsel for a group of institutional plaintiffs, we used these approaches in *In re Lucent Technologies Inc. Securities Litigation*, No. 00-CV-621 (D.N.J.), which settled for $610 million even though "Lucent teetered on the brink of bankruptcy throughout th[e] litigation and during settlement negotiations."  327 F. Supp. 2d 426, 437-38 (D.N.J. 2004).

If appointed interim co-lead counsel in this case, Girard Sharp will draw on its experience in similar complex multi-party cases to achieve the maximum recovery for class members and minimize turf battles among plaintiffs' counsel.

### B. Girard Sharp Has Significant Relevant Expertise and Knowledge of the Applicable Law.

Data breach cases present their own set of challenges—prosecuting them typically entails targeted discovery, retention of technical experts, and specialized knowledge of cybersecurity and related technology.  Through our experience over more than a decade of data breach and privacy litigation, including ongoing work as lead counsel in *Ochoa*, *Planned Parenthood Los Angeles Data Incident*, No. 21STCV44106 (Cal. Super. Ct. L.A. Cnty.), *Lakeview Loan Servicing*, No. 1:22-cv-20955-DPG (S.D. Fla.), *MCG Health*, No. 2:22-cv-00849 (W.D. Wash.), and *OPM Data Breach Litigation*, MDL No. 2664 (D.D.C.), we are well-versed in recurring issues in this practice area of class certification, damages, and injunctive relief.  Girard Sharp is based in this District and

the firm's attorneys are familiar with the Northern District's local rules, procedural guidance for class action settlements, and other standards of practice.  Girard Sharp has repeatedly been vested with responsibility for significant class actions in this District, ranging from current matters like *In re JUUL Labs, Inc., Marketing, Sales Practices & Products Liability Litigation*, No. 19-MD-02913-WHO, 2022 WL 2343268 (N.D. Cal. June 28, 2022) (co-lead counsel; nationwide class certification) and *In re Xyrem (Sodium Oxybate) Antitrust Litigation*, No. 3:20-md-02966-RS (co-lead counsel), to past cases like *In re Lidoderm Antitrust Litigation*, No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) (co-lead counsel; $104.75 million settlement resulting from "diligent and skilled representation" that "produced substantial benefits"), *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) (liaison counsel for direct purchasers; $400 million in settlements approved by Judge Illston), and *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, 274 F.R.D. 286 (N.D. Cal. 2011) (co-lead counsel; nationwide certification followed by $100 million settlement).  Girard Sharp's firm resume, attached as Exhibit A, describes many of the firm's successes.  If appointed, the following attorneys will work on this case:

**Adam Polk** serves as co-lead counsel in *In re Planned Parenthood Los Angeles Data Incident Litigation*, a case pending in Los Angeles Superior Court on behalf of Planned Parenthood patients whose personal health information was hacked, and in *In re Lakeview Loan Servicing Data Breach Litigation*, a consolidated proceeding arising out of a breach of nearly 4 million mortgage records; and is leading the litigation in *In re MCG Health Data Security Issue Litigation*, concerning a massive breach of protected health and other personal information housed by a healthcare consulting company.  In June 2021, Mr. Polk, together with Girard Sharp partner Dena Sharp and attorneys at Gibbs Law Group, obtained a $14.75 million bellwether verdict for five patients who lost eggs and embryos as a result of a cryopreservation tank failure.  *See In re Pac. Fertility Ctr. Litig.*, No. 3:18-cv-01586-JSC (N.D. Cal.).  Mr. Polk also served on the lead counsel teams in several recent class actions , such as *Bentley v. LG Electronics U.S.A., Inc.* (alleging LG refrigerators are defective), and *Daccache v. Raymond James Financial, Inc.* ($150 million partial settlement).  Similarly, in *In re Nexus 6P Products Liability Litigation*, No. 5:17-cv-

MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

02185-BLF, Mr. Polk served as co-lead counsel for Google smartphone purchasers who claimed the phones were defective and prone to fail.  In approving a settlement that provided for cash payments of up to $400, Judge Freeman stated that "[t]he quality of [class counsel's] work is reflected in the results achieved for the class." 2019 WL 6622842, at *12 (N.D. Cal. Nov. 12, 2019).  Mr. Polk has been named to the National Trial Lawyers' "Top 40 Under 40" for three consecutive years, is past chair of the ABA's Class Action and Derivative Suits committee, and currently co-chairs the ABA's National Institute on Class Actions.

**Jordan Elias** represents federal government employees and job applicants whose confidential personnel files were taken in a massive 2015 hack attributed to the Chinese government.  He led the appeal in that case, *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019), where the court reversed the dismissal of claims.  He and Daniel Girard, acting as lead counsel, subsequently negotiated a $63 million settlement with the Department of Justice, preliminarily approved on June 7, 2022, that will compensate victims who suffered a financial loss as a result of that hack.  In addition to his extensive work in privacy, antitrust, and other consumer protection cases since 2008, Mr. Elias represented the League of Women Voters in an amicus brief urging the Ninth Circuit to preserve an extension of Arizona's 2020 general election voter registration deadline in light of Covid-19 and the remote location of Native American voters.  Mr. Elias authored the Supreme Court chapter in the ABA's *Survey of Federal Class Action Law*, as well as *Course Correction—Data Breach as Invasion of Privacy*, 69 Baylor L. Rev. 574 (2018), among other law review articles.  He is an elected member of the American Law Institute and recognized in *Best Lawyers in America*.

**Simon Grille** serves as co-lead counsel and executive committee chair in *Ochoa et al. v. The Regents of the University of California et al.*, No. RG21097796 (Cal. Super. Ct. Alameda Cnty.), representing Accellion breach victims affiliated with UC.  Previously Mr. Grille served on the plaintiffs' executive committees in *In re Experian Data Breach Litigation*, No. 8:15-cv-01592-AG (C.D. Cal.) and *In re 21st Century Oncology Customer Data Security Breach Litigation*, 380 F. Supp. 3d 1243 (M.D. Fla. 2019), which yielded settlements valued in excess of $39 million and $12.5 million, respectively.  Mr. Grille also serves as co-lead counsel in *In re MacBook Keyboard*

9

1   *Litigation*, No. 5:18-CV-02813-EJD, where he led the firm's efforts on class certification,

2   withstanding sophisticated challenges to Plaintiffs' experts, and defending the Court's certification

3   order on appeal.  He has been recognized as a "Rising Star" by *Super Lawyers* since 2017.

4       **Trevor Tan** took the lead in opposing Accellion's motion to dismiss in the UC Regents case

5   in Alameda Superior Court.  Mr. Tan has been honored as a *Super Lawyers* "Rising Star" since

6   2019, and in 2022 was named to *Best Lawyers*' "Ones to Watch" list.  He is a former judicial law

7   clerk to the Hon. Fernando M. Olguin of the Central District of California.

8       Girard Sharp has led a numerous cases with features in common with this one.  For

9   example:

10      • Girard Sharp is lead counsel for current, former, and prospective federal employees

11        whose highly sensitive personal information was hacked and taken from OPM's

12        databases.  After the district court dismissed the claims on standing and immunity

13        grounds, Girard Sharp coordinated a team effort among plaintiffs' counsel that resulted

14        in a complete reversal.  *In re U.S. Office of Pers. Mgt. Data Sec. Breach Litig.*, 928 F.3d

15        42 (D.C. Cir. 2019).  On remand, despite the immunity that limits recovery from the

16        federal government to economic loss, the firm negotiated a settlement that will return

17        minimum payments of $700 to eligible claimants.

18      • Girard Sharp served as co-lead counsel for current and former Sony Pictures

19        Entertainment employees whose sensitive personal and financial information was

20        compromised and publicly disclosed as a result of a hack attributed to North Korean

21        intelligence operatives.  *See Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-

22        09600-RGK (C.D. Cal.).  Girard Sharp filled a leadership role in negotiating a class

23        settlement that served as a model for future data breach settlements, providing: (1) a

24        non-reversionary settlement fund; (2) the defendant's implementation of more robust

25        data security defenses; and (3) extended identity theft protection services for the victims.

26      • In *In re Yahoo Mail Litigation*, No. 5:13-cv-4980-LHK (N.D. Cal.), Girard Sharp served

27        as co-lead counsel for a class of non-Yahoo Mail subscribers who alleged that Yahoo

28        illegally intercepted their e-mails to Yahoo Mail subscribers, extracting and using the

MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

content in violation of state and federal data privacy laws.  Judge Koh granted class certification, 308 F.R.D. 577 (N.D. Cal. 2015), and following cross-motions for summary judgment the matter was successfully resolved.

- In *In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.), Girard Sharp is co-lead counsel for a class of computer purchasers whose online activities were surreptitiously monitored by pre-installed software that degraded the computers' performance, operating continuously in the background as it analyzed browsing activity and injected ads into visited webpages.  Judge Whyte certified a nationwide indirect purchaser class for trial on privacy claims.  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016).  Girard Sharp designed a claims process to allocate settlement funds among class members, with each permitted to choose between (1) completing a short online claim form to receive a cash award for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of the spyware being on the computer.  Judge Gilliam granted final approval, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019), and Girard Sharp continues to supervise distribution of the fund.

- In *In re The Home Depot, Inc. Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.), Girard Sharp served on the Plaintiffs' executive committee responsible for prosecuting consumer claims arising out of a large breach of Home Depot customers' credit and debit card information.  The parties reached a settlement under which class members with documented claims could receive up to $10,000, and Home Depot also agreed to provide 18 months of identity monitoring services for class members.  2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016).  The court described this as "an outstanding result for the Class in a case with a high level of risk," *id*. at *5, and further noted that "Class Counsel obtained an exceptional result."  2017 WL 9605208, at *1 (N.D. Ga. Aug. 1, 2017).

- In *In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.), Girard Sharp likewise served on the Plaintiffs' steering committee representing consumers whose financial information was compromised in a breach of Target's point-

11

of-sale systems.  After plaintiffs defeated Target's motion to dismiss, 66 F. Supp. 3d 1154 (D. Minn. 2014), the parties agreed to a class settlement that was approved by the MDL court and upheld on appeal, 892 F.3d 968 (8th Cir. 2018).  The settlement mandated changes to Target's information security practices and delivered cash recoveries to class members under a simplified claim procedure.

- In *In re Experian Data Breach Litigation*, No. 15-01592 (C.D. Cal.), Girard Sharp served on the Plaintiffs' steering committee supporting Ms. Wolfson and her co-lead counsel on claims stemming from a breach of Experian's systems than exposed names, addresses, and Social Security numbers of T-Mobile subscribers.  The court granted final approval of a settlement that established a $22 million fund and provided identity theft protection services to class members, commenting in part: "You folks have truly done a great job, both sides.  I commend you."  (Dkt. No. 264 at 5.)

Girard Sharp's experience in class action litigation also extends to many other complex areas; the firm has obtained orders certifying contested classes for trial in a range of challenging cases.  *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 40 (E.D.N.Y. 2020) (antitrust; finding Girard Sharp and its co-lead counsel "extremely qualified and able to represent the certified class."); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) (antitrust); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435 (D. Colo. 2015) (securities fraud); *In re SLM Corp. Sec. Litig.*, No. 08 CIV. 1029 WHP, 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) (securities fraud); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) (products liability); *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) (nationwide certification under Texas law on claims of excess life insurance charges); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286 (N.D. Cal. 2011) (nationwide certification as to consumer claims of deceptive marketing and loan practices); *Paeste v. Government of Guam*, No. CV 11-00008 CBM, 2012 WL 2915390 (D. Guam Apr. 30, 2012) (reform of Guam's tax refund system).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Girard Sharp Will Apply the Resources Necessary to Represent the Class.

The best predictor of the time and resources an attorney or law firm will devote to a case is what they have dedicated in the past.  Girard Sharp has always matched the resource commitment and focus of the opposition, no matter how intense and long-lasting the litigation.  For example, in approving a settlement for consumers that Girard Sharp negotiated during trial, the court wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail. . . . Simply put, Class Counsel earned their fees."  *Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cty.); *see also Billitteri*, 2011 WL 3585983, at *7 ("Class counsel has incurred significant expenses and provided thousands of hours of diligent legal work on this case with the very real possibility of no recovery"); *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *10 (N.D. Cal. Aug. 25, 2016) ("Class Counsel achieved these benefits" after prosecuting the case "in an effective and cost-efficient manner.").

Girard Sharp understands the investment of time and resources necessary to bring this matter to a successful outcome, and has made and will continue to make the needed investment. The firm has the resources to see this litigation through without any outside litigation financing. Further, to ensure transparent and accurate billing by Plaintiffs' counsel, Girard Sharp has prepared a detailed protocol for time and expense management, attached as Exhibit B.  The firm has repeatedly implemented this protocol, which requires that compensable time be authorized in advance by Interim Co-Lead Counsel.  *E.g.*, *In re MacBook Keyboard Litig.*, No. 18-cv-02813-EJD (N.D. Cal.), ECF No. 30-1.  Submitting time and expense reports on a regular basis promotes efficiency in litigation, avoids duplicative work, and prevents surprises at the end of the case.

Girard Sharp is prepared to assume responsibility for this case in collaboration with co-lead counsel, delegating work where appropriate to other plaintiffs' counsel.  *See, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, No. 16-MC-2704, 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016). Girard Sharp does not believe a supporting committee is needed.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Plaintiff Rodriguez respectfully requests that the Court appoint Girard Sharp LLP as interim co-lead class counsel in this case.

Dated: September 29, 2022                    Respectfully submitted,

By*:*    /s/ *Adam E. Polk*
Adam E. Polk (State Bar No. 273000)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 281045)
Trevor T. Tan (State Bar No. 281045)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com

*Attorneys for Plaintiff Heather Rodriguez*