MICHAEL F. RAM (SBN 104805)
MARIE N. APPEL (SBN 187483)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile:  (415) 358-6923
mram@forthepeople.com
mappel@forthepeople.com

*Counsel for Plaintiffs Zebelman, Bolton,*
*Whittaker, Sharp, Pollard and Desjardins*

[Additional Counsel Appear on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD<br><br>**NOTICE OF MOTION AND MOTION TO APPOINT INTERIM CO-LEAD CLASS COUNSEL PURSUANT TO RULE 23(G)**<br><br>DATE:      December 8, 2022<br>TIME:      9:00 a.m.<br>CTROOM:  4, 5th Floor<br>JUDGE:    Hon. Edward J. Davila |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 8, 2022 at 9:00 a.m. or as soon thereafter as the matter may be heard, Plaintiffs Susan Zebelman in *Zebelman v. Accellion, Inc.*, No. 5:21-cv-01203-EJD, Eugene Bolton in *Bolton v. Accellion, Inc.*, No. 5:21-cv-01645-EJD, Valerie Whittaker in *Whittaker v. Accellion, Inc.*, No. 5:21-cv-01708-EJD, Aaron Sharp in *Sharp v. Accellion, Inc.*, No. 5:21-cv-02525-EJD, Janet Pollard in *Pollard v. Accellion, Inc. and Flagstar Bancorp, Inc.*, No. 5:21-cv-02572-EJD, and Amiresse Desjardins in *Desjardins v. Accellion, Inc.*, No. 5:21-cv-04743-EJD (collectively, "Movants"), will move the Court, under Federal Rule of Civil Procedure 23(g), to appoint John A. Yanchunis and Joseph P. Guglielmo as interim co-lead class counsel and appoint Gary F. Lynch, Kate M. Baxter-Kauf, Jonathan M. Rotter, and Subita J. Soneji as members of a Plaintiffs' Steering Committee.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the exhibits submitted herewith, all records on file with this Court, and such further oral and written arguments as may be presented at, or prior to, the hearing on this matter.

# TABLE OF CONTENTS

I.   STATEMENT OF THE ISSUE TO BE DECIDED ............................................................1

II.  BACKGROUND ...........................................................................................................1

III. PROPOSED INTERIM CO-LEAD CLASS COUNSEL'S EFFORTS TO
     PROTECT THE CLASS MEMBERS' INTERESTS AND ENSURE
     COMPLIANCE WITH THE ORDERS OF THIS COURT AND THE EASTERN
     DISTRICT OF MICHIGAN ............................................................................................2

     A.   Mr. Yanchunis, Mr. Guglielmo, Mr. Lynch, Ms. Baxter-Kauf, Mr.
          Rotter, and Ms. Soneji File Suit Against Accellion in This District,
          Where It Is Headquartered ...........................................................................3

     B.   Mr. Yanchunis Files Suit Against Flagstar in the Eastern District of
          Michigan, Where It Is Headquartered ..........................................................4

     C.   The Wolfson Group Unsuccessfully Seeks Transfer of the Flagstar
          Cases ...........................................................................................................4

     D.   Mr. Yanchunis Refuses to Approve a Settlement that Is Not Fair,
          Reasonable, nor Adequate ...........................................................................4

     E.   The Wolfson Group Unsuccessfully Attempts to Prevent Mr.
          Yanchunis' Appointment as Interim Lead Counsel and Fails to
          Secure Its Own Appointment as Interim Lead Counsel ................................5

     F.   Judge Tarnow Directs Interim Lead Counsel and Flagstar's
          Counsel to Work Together on Identifying Injunctive Relief They
          Could and Could Not Agree Upon ................................................................7

     G.   The Wolfson Group Advises Judge Tarnow It Would Work with
          Mr. Yanchunis but Instead Conducts a Secret Second Mediation
          Six Business Days Later ...............................................................................7

     H.   After the Secret Second Mediation, Mr. Yanchunis Learns of It for
          the First Time from Flagstar's Counsel .......................................................8

     I.   The Wolfson Group Dismisses the Claims of Charles Tyer and
          Christopher Hauser that It Filed in Michigan and Refiles Those
          Claims in This Case .....................................................................................9

     J.   In September 2021, Via a Motion for Settlement Approval, the
          Proposed Flagstar Settlement Terms Are Finally Revealed to Mr.
          Yanchunis ....................................................................................................9

     K.   Mr. Yanchunis Moves to Intervene on Behalf of the Flagstar Cases
          Concentrated in the Eastern District of Michigan .........................................9

     L.   This Court Consolidates the Accellion-Related Cases Filed in This
          District, Vacates the Hearings on the Wolfson Group's Motions for

i

Preliminary Approval, States Its Intent to Consider Motions to Appoint Interim Co-Lead Class Counsel, and Denies the Wolfson Group's Motion for Reconsideration ..........................................................10

M.    After the Wolfson Group, Without Authorization, Re-files its Motion for Preliminary Approval as to Accellion, Mr. Yanchunis Responds in Opposition and Moves the Court to Set a Briefing Schedule for Motions to Appoint Interim Co-Lead Class Counsel ..........10

IV.    QUALIFICATIONS AND EXPERIENCE OF PROPOSED INTERIM CO-LEAD CLASS COUNSEL AND PROPOSED MEMBERS OF THE PSC ...................11

A.    John A. Yanchunis – Morgan & Morgan Complex Litigation Group .................................................................................................12

B.    Joseph P. Guglielmo – Scott+Scott Attorneys at Law LLP......................15

C.    Gary F. Lynch – Lynch Carpenter LLP .....................................................18

D.    Kate M. Baxter-Kauf – Lockridge Grindal Nauen, P.L.L.P. ....................20

E.    Jonathan M. Rotter – Glancy Prongay & Murray LLP..............................21

F.    Subita J. Soneji – Tycko & Zavareei LLP .................................................22

V.    CONCLUSION.........................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc., Customer Data Security Breach Litig.*,
    543 F. Supp. 3d 1372 (J.P.M.L. 2021)......................................................................................4

*In re Doubleclick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................................................................13

*In re Stubhub Refund Litig.*,
    No. 20-md-02951-HSG, 2020 WL 8669823 (N.D. Cal. Nov. 18, 2020) .................................3

**Statutes, Rules & Regulations**

Federal Rules of Civil Procedure
    Rule 23(g) ............................................................................................................................10
    Rule 23(g)(1)(A) ...............................................................................................................3, 11
    Rule 23(g)(3)......................................................................................................................1, 2

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION, §10.224 .................................................................................3

MANUAL FOR COMPLEX LITIGATION, §22.11 (4th ed. 2004) .........................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      STATEMENT OF THE ISSUE TO BE DECIDED

Whether the Court, pursuant to Federal Rule of Civil Procedure 23(g)(3), should appoint John A. Yanchunis and Joseph P. Guglielmo as interim co-lead class counsel (collectively, "Proposed Interim Co-Lead Class Counsel"), and appoint Gary F. Lynch, Kate M. Baxter-Kauf, Jonathan M. Rotter, and Subita J. Soneji as members of a Plaintiffs' Steering Committee ("PSC").

### II.     BACKGROUND

This action arises from a data breach (the "Data Breach") that resulted from a vulnerability in Defendant Accellion, Inc.'s ("Accellion") file transfer service, Accellion FTA, which was marketed as a secure way to transfer large volumes of data.  Accellion announced the Data Breach in January 2021.  Defendants Flagstar Bank, FSB and Flagstar Bancorp, Inc. (collectively, "Flagstar") reported that approximately 1.5 million of their customers were impacted by the Data Breach.  Defendants Health Net of California, Inc., Health Net, LLC, California Health & Wellness Plan, Health Net Life Insurance Company, Health Net Community Solutions, and Centene Corporation (collectively, "Health Net") reported that more than 1 million of their members were impacted.  The total number of individuals impacted by the Data Breach remains unknown but may exceed 10 million.

Individuals whose personal information was impacted filed numerous lawsuits throughout the United States against Accellion and certain of its customers who used Accellion FTA to store and/or transfer these individuals' personal information.  As pertains to the Defendants in this case, (i) the cases against Accellion were concentrated in this District, where Accellion is headquartered; (ii) the cases against Flagstar were concentrated in the Eastern District of Michigan, where Flagstar is headquartered; and (iii) the cases against Health Net were concentrated in this District, where several of the Health Net entities are headquartered.

As discussed further below, a group of attorneys led by Tina Wolfson (the "Wolfson Group") has repeatedly attempted to prematurely settle with Accellion, Flagstar, and Health Net without the benefit of discovery or significant motion practice.  The Wolfson Group's efforts include moving this Court to approve its settlement with Flagstar after losing appointment as

interim lead counsel to Mr. Yanchunis and unsuccessfully attempting to secure its own appointment in the Eastern District of Michigan, where the Flagstar cases are concentrated. The Wolfson Group's efforts also include moving the Court to approve its settlements with Accellion, Flagstar, and Health Net after the Court vacated hearings on identical motions and denied the Wolfson Group's motion for reconsideration. Rather than heeding the Court's stated intent to appoint interim co-lead class counsel before approving any proposed settlements, the Wolfson Group merely waited a few months after the Court denied its motion for reconsideration and then refiled the motions, without the Court's authorization.

Proposed Interim Co-Lead Class Counsel satisfy the requirements for appointment as set forth in Federal Rule of Civil Procedure 23(g)(3) and have taken the lead in: (i) investigating and developing the claims against Accellion and the defendants; (ii) attempting to prosecute the class members' claims in an orderly fashion and in compliance with the Orders of this Court and the Eastern District of Michigan; and (iii) attempting to prevent the approval of quickly-obtained settlements that are neither fair, reasonable, nor adequate. Proposed Interim Co-Lead Class Counsel's efforts to date, combined with their qualifications and experience discussed below, make them best suited to represent the interests of plaintiffs and class members and obtain the best possible result. Notably, the majority of the plaintiffs whose cases have been consolidated as part of this proceeding support Proposed Interim Co-Lead Class Counsel's application.

## III.   PROPOSED INTERIM CO-LEAD CLASS COUNSEL'S EFFORTS TO PROTECT THE CLASS MEMBERS' INTERESTS AND ENSURE COMPLIANCE WITH THE ORDERS OF THIS COURT AND THE EASTERN DISTRICT OF MICHIGAN

"The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Designation of interim class counsel serves the proposed class by clarifying who has "responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION, §22.11, at 246 (4th ed. 2004).

When appointing interim class counsel, "courts typically look to the factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)."  *In re Stubhub Refund Litig.*, No. 20-md-02951-HSG, 2020 WL 8669823, at *1 (N.D. Cal. Nov. 18, 2020).  The relevant factors are: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  *Id.* (citing Fed. R. Civ. P. 23(g)(1)(A)).  The court may also consider "'any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'"  *Stubhub*, 2020 WL 8669823, at *1 (citing Fed. R. Civ. P. 23(g)(1)(B)).[1]  Such considerations include whether proposed interim class counsel have worked cooperatively with opposing counsel and courts, and whether counsel commands the respect of colleagues.  MANUAL FOR COMPLEX LITIGATION, §10.224.  Each of the above-identified factors weighs firmly in favor of appointing Proposed Interim Co-Lead Class Counsel.

## A. Mr. Yanchunis, Mr. Guglielmo, Mr. Lynch, Ms. Baxter-Kauf, Mr. Rotter, and Ms. Soneji File Suit Against Accellion in This District, Where It Is Headquartered

On February 18, 2021, one day after the first suit in the country against Accellion arising from the Data Breach was filed in this District, Mr. Yanchunis filed the second suit against Accellion in the country.  The six cases filed in this District by Proposed Interim Co-Lead Class Counsel and the proposed members of the PSC are listed below:

| Plaintiff | Case No. | Date Filed | Counsel |
| --- | --- | --- | --- |
| *Zebelman* | No. 5:21-cv-01203 | February 18, 2021 | Mr. Yanchunis |
| *Bolton* | No. 5:21-cv-01645 | March 8, 2021 | Mr. Lynch |
| *Whittaker* | No. 5:21-cv-01708 | March 11, 2021 | Mr. Guglielmo |
| *Sharp* | No. 5:21-cv-02525 | April 7, 2021 | Ms. Baxter-Kauf |
| *Pollard* | No. 5:21-cv-02572 | April 8, 2021 | Mr. Rotter |

---

[1]     Emphasis is added and citations are omitted unless otherwise noted.

| Plaintiff | Case No. | Date Filed | Counsel |
|-----------|----------|------------|---------|
| *Desjardins* | No. 5:21-cv-04743 | June 22, 2021 | Ms. Soneji |

### B.   Mr. Yanchunis Files Suit Against Flagstar in the Eastern District of Michigan, Where It Is Headquartered

On March 25, 2021, Mr. Yanchunis filed the first suit in the country against Flagstar arising from the Data Breach. *Angus v. Flagstar Bank, FSB*, No. 2:21-cv-10657-MFL-DRG (E.D. Mich.) ("*Angus*").  Mr. Yanchunis filed the case in the Eastern District of Michigan, where Flagstar is headquartered.  Four additional cases were filed in Michigan, including a case filed by the Wolfson Group.  *See Garcia v. Flagstar Bank, F.S.B.*, No. 2:21-cv-10671-AJT-DRG (E.D. Mich. Mar. 26, 2021); *Burdick v. Flagstar Bank, F.S.B.*, No. 2:21-cv-10786 (E.D. Mich. April 7, 2021); *Hawkins v. Flagstar Bank*, No. 2:21-cv-11165-AJT-DRG (E.D. Mich. May 19, 2021); *Tyler v. Flagstar Bancorp, Inc.*, No. 2:21-cv-11652-AJT-DRG (E.D. Mich. July 15, 2021) ("*Tyler*").  Each of these cases was consolidated with *Angus*, the first-filed case.

### C.   The Wolfson Group Unsuccessfully Seeks Transfer of the Flagstar Cases

On March 31, 2021, the Wolfson Group moved the Judicial Panel on Multidistrict Litigation ("JPML") to transfer to this District, along with other Accellion-related cases, the cases against Flagstar pending in Michigan.  *In re Accellion, Inc., Customer Data Security Breach Litig.*, 543 F. Supp. 3d 1372 (J.P.M.L. 2021) (MDL No. 3002) ("*Accellion MDL*").  Notwithstanding that Flagstar now seeks settlement approval in this District, Flagstar agreed that the cases pending against it in Michigan should remain there.  *Accellion MDL*, ECF No. 46.  On June 7, 2021, the JPML denied the Wolfson Group's request to transfer the cases to this District, thereby allowing *Angus* and the cases consolidated with it to proceed in the Eastern District of Michigan.  *Accellion MDL*, ECF No. 88.

### D.   Mr. Yanchunis Refuses to Approve a Settlement that Is Not Fair, Reasonable, nor Adequate

On July 7, 2021, the Wolfson Group revealed to Mr. Yanchunis that it and Flagstar's counsel had scheduled a mediation for July 13, 2021.  *See Beyer v. Flagstar Bancorp, Inc.*, No.

5:21-cv-02239-EJD ("*Beyer*"), Declaration of John A. Yanchunis in Support of Motion to Intervene and to Sever and Transfer Claims and in Opposition to Preliminary Approval of Settlement (N.D. Cal. Dec. 23, 2021) (ECF No. 62-1, referred to herein as "Ex. A"), ¶3.   An attorney from Mr. Yanchunis' firm attended the mediation and refused to agree to proposed terms that, although acceptable to the Wolfson Group and Flagstar's counsel, were not fair, reasonable, nor adequate.  *Id.*, ¶4.  Mr. Yanchunis chose, instead, to fight for the best interest of the class and not settle unless and until Flagstar agreed to terms that were fair, reasonable, and adequate.  *Id.*, ¶5.   As explained below, the Wolfson Group and Flagstar later conducted a secret second mediation, during which they circumvented Mr. Yanchunis, who had been appointed Interim Lead Counsel, and agreed to terms Mr. Yanchunis refused to agree to.

     **E.**    **The Wolfson Group Unsuccessfully Attempts to Prevent Mr. Yanchunis' Appointment as Interim Lead Counsel and Fails to Secure Its Own Appointment as Interim Lead Counsel**

On July 16, 2021, the late Judge Arthur J. Tarnow[2] held a hearing during which he resolved competing motions for appointment of interim lead counsel.  One day prior to the hearing, the Wolfson Group, having already filed a case against Flagstar in this District, filed a second Flagstar case in Michigan (*Tyler*[3]) on behalf of Charles Tyer and Christopher Hauser.  During the hearing, the Wolfson Group advised Judge Tarnow of its intent to seek appointment as interim lead counsel, as follows:

> **[THE WOLFSON GROUP:]** Your Honor, this is Andrew Ferich.  As you know, we recently filed a new case.  Currently there was two leadership applications pending, one from Mr. Yanchunis' camp, one from Mr. Grille, Simon Grille's camp.  ***We intend to file a third leadership application hopefully at some point today or early next week seeking appoint of one of our lawyers, Ms. Tina Wolfson, as lead counsel as well.***

> **THE COURT:** Well, you may or may not have had time in seeing that the first three cases, the attorneys got together and agreed to work together as joint lead counsel. . . .

[2]    Sadly, Judge Tarnow passed away on January 21, 2022.  The *Angus* case was reassigned to Judge Matthew F. Leitman.

[3]    The case was docketed as *Tyler* instead of *Tyer*.

*Beyer*,  Ex. B to the Notice of Motion and Motion to Intervene and to Sever and Transfer Claims and in Opposition to Preliminary Approval of Settlement (N.D. Cal. Dec. 23, 2021) (ECF No. 62-2, referred to herein as "Ex. B") (Transcript of *Angus* July 15, 2021 Hearing) at 10:11-23; *see* Ex. A, ¶6 (authenticating transcript).

Judge Tarnow then, over the Wolfson Group's objection, appointed Mr. Yanchunis as Interim Lead Counsel, as follows:

> **[THE WOLFSON GROUP:]** Your Honor, if I may, not only is there a dispute on that but my firm, using the way you are approaching this on the numbers, we filed the most recent fifth filed case.  We are actively involved in the litigation involving Flagstar as well as the third party contractor that was impacted by this large data breach.  And we have cases, four of them, actually, elsewhere involving this data breach.  One of those actions is in the Northern District of California.  It's called the Buyer (ph) case and it was filed very early on in March of this year.  And it names Flag Star Bank as a defendant as well.  So we have been at the forefront of these cases as well.
>
> **THE COURT:** Stop.  I am trying to keep it simple.  Mr. Yanchunis, when did you file the first case?
>
> **MR. YANCHUNIS:** March 25th.
>
> **THE COURT:** When is the one you are talking about, Mr. Ferich?
>
> **[THE WOLFSON GROUP:]** I believe it was March 30th, your Honor.
>
> *      *      *
>
> **THE COURT:** Okay.  So there is no reason to dispute that case number one, that I call case number one is the earliest case against Flag Star anywhere in the country.  Fair statement?
>
> **MR. YANCHUNIS:** It's fair to me.
>
> **THE COURT:** Well, all right.  ***I am inclined to grant the lead counsel through the attorneys – well, who filed the motion and commend them for working together***.  And if there is a problem, the other attorneys can bring to my attention and it would be added on or substituted for lead counsel.  If you will present an Order, I will sign it.

Ex. B at 13:3-14:17.  Notably, Judge Tarnow's written Order confirming the appointment provided that Mr. Yanchunis had "the authority to . . . [n]egotiate with defense counsel with respect to settlement and other matters." *Angus*, ECF No. 33, at 3-4.

**F.    Judge Tarnow Directs Interim Lead Counsel and Flagstar's Counsel to Work Together on Identifying Injunctive Relief They Could and Could Not Agree Upon**

After Judge Tarnow appointed Mr. Yanchunis as Interim Lead Counsel, he instructed Mr. Yanchunis and Flagstar's counsel to work together to identity injunctive relief they could and could not agree upon, as follows:

**THE COURT:** Okay.  And can you work with plaintiff and draft a Preliminary Injunction, TRO, whatever you want to call it setting forth what you already agreed to and what you are already doing.  And now for plaintiff, you can go into what – if you want training, you can ask if they are doing it.  You get the gist of what I am saying?

\*       \*       \*

**THE COURT:** Do we have an understanding as to a framework of basically you listing what you want, the defense listing what they are doing and where they match.  You have a Consent Order.  And where they don't match you can litigate it.  Okay?  Now, can we get off of the injunctive part and go to the damages?  What sort of damages are you looking for?  Maybe to pay higher interest?

\*       \*       \*

**THE COURT:** Okay.  Well, you've got to provide them with what you want and that's going back to make your list of demands and share it with the defense.  And, again, whether it's in the damages or the injunctive part of it, see what can you agree to. . . .

Ex. B at 17:24-18:4, 18:14-20, 19:24-20:3.  Judge Tarnow's instructions were ultimately for naught as the Wolfson Group and Flagstar then "contemplated" an undisclosed second mediation, during which they would agree to settlement terms that Mr. Yanchunis refused to agree to during the first mediation because they were not fair, reasonable, nor adequate.

**G.    The Wolfson Group Advises Judge Tarnow It Would Work with Mr. Yanchunis but Instead Conducts a Secret Second Mediation Six Business Days Later**

After Judge Tarnow, over the Wolfson Group's objection, appointed Mr. Yanchunis as Interim Lead Counsel, the Wolfson Group, acknowledging the Court's instruction, advised Judge Tarnow that it would work with Mr. Yanchunis, as follows:

**[The WOLFSON GROUP:]** *Your Honor, we are prepared to work with Mr. Yanchunis and his team*.  We had intended as I mentioned earlier to submit the application.  We believe that our firm is qualified to lead as well, *but with the instruction of the Court, we understand* –

7

**THE COURT:** Well, let me say this.  I believe your firm is qualified.  I believe the case number for the firm is qualified.  If you get too many leaders, you have no followers.  ***And I am convinced that both four and five, Mr. Ferich and Mr. Grille, [will] contribute mightily to the team that is going to be in leadership.***  And if there is a serious dispute you can bring it to my attention and I would reconsider the ruling today. . . .

*Id.* at 15:11-23.

Rather than "work with Mr. Yanchunis and his team" as represented, the Wolfson Group immediately proceeded to schedule and conduct a secret second mediation six business days later. Flagstar later confirmed that this "second mediation with [the Wolfson Group] [was] contemplated at the time of the [hearing]." *Angus*, ECF No. 36, at 6.  Why the Wolfson Group nonetheless represented to Judge Tarnow that it would work with Mr. Yanchunis remains unknown.  Similarly unknown is why the Wolfson Group represented to Judge Tarnow that it would be filing its own application for appointment as interim lead counsel when it contemplated mediating and settling the claims only six business days later.

### H.   After the Secret Second Mediation, Mr. Yanchunis Learns of It for the First Time from Flagstar's Counsel

On July 21, 2021, six days after the hearing and following up on Judge Tarnow's instruction to work with Flagstar's counsel on identifying injunctive relief that could and could not be agreed upon, Mr. Yanchunis sent an email to Flagstar's counsel attaching a framework for a settlement demand and requesting to discuss the steps Flagstar had taken to address injunctive relief.  Ex. A, ¶8.  Five days later, on July 26, 2021, Flagstar's counsel responded, asking if Mr. Yanchunis had availability on July 29 or 30, 2021, without disclosing that Flagstar was mediating with the Wolfson Group that same day.  *Id.*, ¶9.  Mr. Yanchunis responded that same day that he was available.  *Id.*, ¶10.  On July 28, 2021, Mr. Yanchunis asked to confirm a time for the discussion.  *Id.*, ¶11.

Later that day, Flagstar filed a motion to stay the *Angus* case pending disposition of nationwide class settlement proceedings.  *Angus*, ECF No. 30.  In the motion, Flagstar revealed that it had secretly mediated with the Wolfson Group a second time on July 26, 2021.  *Id.* at 3.

### I. The Wolfson Group Dismisses the Claims of Charles Tyer and Christopher Hauser that It Filed in Michigan and Refiles Those Claims in This Case

On July 29, 2021, the Wolfson Group voluntarily dismissed the claims of Charles Tyer and Christopher Hauser, which it had filed in Michigan a mere 14 days earlier. *Tyler*, ECF No. 6. The record reveals no apparent reason for the refiling of this case other than to attempt to prevent the appointment of interim lead counsel or for the Wolfson Group to seek its own appointment as interim lead counsel. On September 1, 2021, the Wolfson Group filed an amended complaint in this Court adding Charles Tyer and Christopher Hauser as named plaintiffs. *Beyer*, ECF No. 50.

### J. In September 2021, Via a Motion for Settlement Approval, the Proposed Flagstar Settlement Terms Are Finally Revealed to Mr. Yanchunis

In September 2021, via a motion for preliminary settlement approval, the proposed settlement terms were finally revealed to Mr. Yanchunis. ECF No. 54 (the "Proposed Settlement"); *see* Ex. A, ¶13. The Proposed Settlement included a Settlement Fund of $5.9 million for 1,477,411 individuals, a paltry $3.99 per individual.

Making matters worse, the Proposed Settlement did not require Flagstar to encrypt sensitive data, such as Social Security numbers, which would inhibit the misuse of this information should Flagstar again fail to safeguard it. It did not even require that Flagstar take the basic, common-sense measure of deleting data it no longer has a reasonable business need to maintain, including data for individuals with whom Flagstar has not had a business relationship for a decade or more. *See, e.g.*, *Angus*, ECF No. 38, ¶86 (Amended Complaint) (alleging relationship with Flagstar ended in 2001, almost 20 years before the Data Breach).

### K. Mr. Yanchunis Moves to Intervene on Behalf of the Flagstar Cases Concentrated in the Eastern District of Michigan

On December 23, 2021, Mr. Yanchunis, on behalf of and as Interim Lead Counsel for the plaintiffs in the *Angus* case in the Eastern District of Michigan, moved to intervene and to have the claims against Flagstar severed and transferred to the Eastern District of Michigan, explaining, among other things, the events that had occurred in the Eastern District of Michigan leading up to the Wolfson Group's settlement with Flagstar. *Beyer*, ECF No. 62. The Court entered an Order:

1    (i) setting the motion to intervene for hearing on April 14, 2022, and (ii) continuing the hearing on

2    the Wolfson Group's motion for preliminary approval to May 19, 2022.  *Beyer*, ECF No. 65.

3        **L.**    **This Court Consolidates the Accellion-Related Cases Filed in This District,**
     **Vacates the Hearings on the Wolfson Group's Motions for Preliminary**

4    **Approval, States Its Intent to Consider Motions to Appoint Interim Co-Lead**
     **Class Counsel, and Denies the Wolfson Group's Motion for Reconsideration**

5           On March 14, 2022, this Court consolidated the Accellion-related cases filed in this

6    District.  ECF No. 83 (the "Consolidation Order").  The Court further ordered "that all parties shall

7    meet and confer to discuss and submit a proposed briefing schedule for the motion for appointment

8    of interim co-lead class counsel pursuant to Rule 23(g) within ten (10) days of this Order."  *Id.* at

9    9 (emphasis removed).  Pursuant to the Consolidation Order (*id.* at 7), the Clerk vacated all pending

10   hearings in the consolidated cases, including the hearings for Wolfson Group's motions for

11   preliminary approval of its proposed settlements with Accellion, Flagstar, and Health Net, and Mr.

12   Yanchunis' motion to intervene.  ECF No. 91.

13          On March 16, 2022, the Wolfson Group filed a motion for reconsideration of the

14   Consolidation Order, contending that the Court should not appoint interim co-lead class counsel

15   because the Wolfson Group was seeking settlement approval as to Accellion, Flagstar, and Health

16   Net.  ECF No. 86.  Mr. Yanchunis filed the first of two oppositions to the motion.  ECF Nos. 87-

17   88.  The Court denied the motion.  ECF No. 90.

18       **M.**    **After the Wolfson Group, Without Authorization, Re-files its Motion for**
     **Preliminary Approval as to Accellion, Mr. Yanchunis Responds in**

19   **Opposition and Moves the Court to Set a Briefing Schedule for Motions to**
     **Appoint Interim Co-Lead Class Counsel**

20

21          On June 13, 2022, notwithstanding that the Court had denied the Wolfson Group's motion

22   for relief from the Consolidation Order and the Clerk had vacated hearings on pending motions,

23   the Wolfson Group filed a renewed motion for preliminary settlement approval as to Accellion

24   and set it for hearing on December 8, 2022.  ECF No. 99 (renewing motion previous filed in *Stobbe*

25   *v. Accellion, Inc.*, No. 5:21-cv-01353-EJD, ECF No. 44, which had been set for hearing, which the

26   Clerk vacated).  Mr. Yanchunis filed the only response, pointing out that the motion was

27   unauthorized as the Court had previously vacated the hearing on a virtually identical motion and

28   denied the Wolfson Group's motion for reconsideration.  ECF No. 101.

On August 10, 2022, Mr. Yanchunis filed an administrative motion to set a deadline for motions to appoint co-lead interim class counsel. ECF No. 103. The Wolfson Group filed a response in opposition, ECF No. 104, and, rather than awaiting the Court's ruling on the administrative motion, proceeded to file unauthorized motions for preliminary approval of settlement as to Flagstar and Health Net. ECF Nos. 105, 107. On September 8, 2022, the Court terminated the Wolfson Group's renewed motions for preliminary approval of settlement and set a September 29, 2022, deadline for motions to appoint interim co-lead class counsel. ECF No. 109. From June 13, 2022, when the Wolfson Group filed the unauthorized motion for preliminary approval of settlement as to Accellion, through September 8, 2022, when the Court terminated all three unauthorized motions, Mr. Yanchunis was the sole filer attempting to ensure that, consistent with the Consolidation Order, interim co-lead class counsel would be appointed before any settlements were approved.

In sum, Mr. Yanchunis and Proposed Interim Co-Lead Class Counsel have overwhelmingly satisfied the first and fourth factors under Rule 23(g)(1)(A) by taking the lead in: (i) attempting to prosecute the class members' claims in an orderly fashion and in compliance with the Orders of this Court and the Eastern District of Michigan, and (ii) attempting to prevent the approval of quickly-obtained settlements for which the Wolfson Group desires to recover millions of dollars in attorney's fees, notwithstanding that the proposed benefits to the class members are neither fair, reasonable, nor adequate.

## IV.   QUALIFICATIONS AND EXPERIENCE OF PROPOSED INTERIM CO-LEAD CLASS COUNSEL AND PROPOSED MEMBERS OF THE PSC

The second and third factors under Rule 23(g)(1)(A) similarly weigh strongly in favor of appointing Proposed Interim Co-Lead Class Counsel and the proposed PSC. Proposed Interim Co-Lead Class Counsel and the proposed PSC have led some of the largest class actions in the country and have a demonstrated track record of securing substantial and meaningful relief on behalf of the classes they represent. Equally important, Proposed Interim Co-Lead Class Counsel and the proposed PSC have a track record of successfully working together and know how to

efficiently manage this consolidated action to achieve the necessary outcome efficiently and on a short timeframe.

**A.      John A. Yanchunis – Morgan & Morgan Complex Litigation Group**

Mr. Yanchunis leads the class action department of the law firm of Morgan and Morgan, a law firm of over 800 lawyers located throughout the United States dedicated to representing consumers on a contingency basis.  Mr. Yanchunis maintains his office in Tampa, Florida.  In addition to his core team of 12 lawyers focused on litigation of class actions, he has a support team of 75 lawyers who conduct document review, deposition preparation and the summarizing of depositions, and a separate group of mostly former federal law clerks at the District Court and Circuit levels who provide research and writing support.  This team levels the playing field in any class litigation his team undertakes.

His practice—which began after completing a two-year clerkship with United States District Judge Carl O. Bue, Jr. (S. D. Tex.)—has concentrated on complex litigation and spans over 38 years, including consumer class actions for more than two-thirds of that time.  With regards to his experience in the area of privacy, he has served as lead, co-lead, and class counsel in numerous national class actions, including multi-district litigation, involving a wide range of subjects affecting consumers, including antitrust, defective products, life insurance, annuities, and deceptive and unfair acts and practices.

As a result of his experience in insurance and complex litigation, beginning in 2005, he was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers.  He served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group.  The litigation that was filed and the related investigations netted millions of dollars in

1  restitution for Florida consumers and resulted in significant changes in the way commercial

2  insurance is sold in Florida and across the country.

3      During his career, he has tried numerous cases in state and federal courts, including one of

4  the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the

5  Celotex Corporation and its subsidiary, Carey Canada, Inc.  During the seventeen years the case

6  pended, he served as lead counsel for several insurance companies, regarding coverage for asbestos

7  and environmental claims.  The case was tried in three phases over several years beginning in

8  1992.  He was also lead counsel for these parties in the subsequent appeals that followed a

9  judgment in favor of his clients.

10      He began his work in privacy litigation in 1999 with the filing of *In re Doubleclick Inc.*

11  *Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), alleging privacy violations based on the

12  placement of cookies on hard drives of internet users.  Beginning in 2003, he served as co-Lead

13  Counsel in the successful prosecution and settlement of privacy class action cases involving the

14  protection of privacy rights of more than 200 million consumers under the Driver's Protection

15  Privacy Act (DPPA) against the world's largest data and information brokers, including Experian,

16  R.L. Polk, Acxiom, and Reed Elsevier (which owns Lexis/Nexis). *See Fresco v. Automotive*

17  *Directions, Inc*., No. 03-61063-JEM (S.D. Fla.), and *Fresco v. R.L. Polk*, No. 07-cv-60695-JEM

18  (S.D. Fla.). Subsequently, he served as co-Lead Counsel in the DPPA class cases, *Davis v. Bank*

19  *of America*, No. 05-cv-80806 (S.D. Fla.) ($10 million class settlement), and *Kehoe v. Fidelity Fed.*

20  *Bank and Trust*, No. 03-cv-80593 (S.D. Fla.) ($50 million class settlement).

21      He has been appointed and served in leadership positions for a number of multidistrict

22  litigation in the area of privacy and data breaches:  *In re: Capital One Consumer Data Security*

23  *Breach Litig.*, No. 1:19-MD-2915-AJT (E.D. Va.) (Co- Lead) ($190 million settlement

24  approved); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 5:16-MD-02752-LHK

25  (N.D. Cal.) (Lead Counsel) (Court approved $117,500,000.00 common fund settlement for

26  approximately 194 million US residents and 270,000 Israeli citizens ); *In re The Home Depot, Inc.*

27  *Consumer Data Sec. Data Breach Litig*., No. 1:14-md-02583-TWT (N.D. Ga.) (Co-Lead Counsel)

28  (final judgment entered approving a settlement on behalf of a class of 40 million consumers with

total value of $29,025,000); *In Re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee) (final judgment entered approving $380.5 million fund for 145 million consumers); *In re: U.S. Office of Personnel Management Data Security Breach Litig.*, No. 1:15-mc-01394-ABJ (D.D.C.) (member of the Executive Committee) ($60 million settlement preliminarily approved); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (Executive Committee member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers).

His court-appointed leadership experience in non-MDL, data breach class actions is likewise significant, and to just name several: *Schmidt, et al., v. Facebook, Inc.*, No. 3:18-cv-05982 (N.D. Cal.) (Co-Lead Counsel) (consolidated complaint filed in February 2019; motion for class certification fully briefed and argued on November 6, 2019); *Walters v. Kimpton Hotel & Rest.*, No. 3:16-cv-05387 (N.D. Cal.) (Lead Counsel) (class action settlement final approval order entered July 11, 2019); *In re: Arby's Rest. Grp., Inc. Data Security Litig.*, Nos. 1:17-cv-514 & 1:17-cv-1035 (N.D. Ga.) (co-Liaison Counsel) (final approval of a class settlement entered June 6, 2019); *Jackson, et al., v. Wendy's Int'l, LLC*, No. 6:16-cv-210-PGB (M.D. Fla.) (final approval of a class settlement entered February 26, 2019); *Henderson v. Kalispell Regional Healthcare*, No. CDV-19-0761 (Mont. 8th Jud. Ct., Cascade Cnty.) (final approval of class settlement entered January 5, 2021); *In re: Citrix Data Breach Litig.*, No. 19-cv-61350 (S.D. Fla.) (preliminary approval of class action settlement entered on January 26, 2021); *Kuss v. American HomePatient, Inc., et al.*, No. 18-cv-2348 (M.D. Fla.) (final approval of class action settlement entered on August 13, 2020); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-274 (E.D. Pa.) (final approval of class action settlement entered September 23, 2019); *Nelson v. Roadrunner Transp. Sys., Inc.*, No. 18-cv-7400 (N.D. Ill.) (final approval of class action settlement entered September 15, 2020).

His experience in privacy litigation matters extends far beyond simply briefing threshold issues and negotiating settlements. Rather, he has personally deposed dozens of corporate representatives, software engineers, cyber professionals and CISOs, and even executives in C-Suites of major corporations, in major privacy cases such as Capital One,

14

Yahoo, Google,  and Facebook.  In addition, he has defended experts used in privacy cases and also deposed numerous defense liability and damage experts.  As a result of his experience in the area of class litigation and ethics, he has served as an expert for The Florida Bar on ethical issues arising in class action litigation.  He is a frequent lecturer on privacy and class litigation nationally and internationally, having presented at the University of Haifa's 2019 Class Action Conference, in Haifa, Israel, attended by lawyers, judges and law professors from around the world.  In 2020, he lectured on data privacy in Mexico, and in November 2021, he lectured again on privacy issues at a symposium in London sponsored by the London Law Society.  In July 2022, he spoke on data privacy at a symposium sponsored by The University of Amsterdam, in collaboration with the University of Haifa and The University of Tilburg.  He is scheduled to speak again at international symposiums in October 2022 (London); November 2022 (Amsterdam) and March 2023 (London).

He has been recognized for his work in the area of class action litigation, and, in 2020, he was honored as Lawyer of the Year in the state of Florida by the Daily Business Review, an ALM publication.  In the area of privacy and cyber security, he was recognized in 2020 as one of four lawyers nationally as an MVP in Privacy and Cyber Security, and in 2019 as one of three lawyers nationally as an MVP in Privacy and Cyber Security.  In 2016 and in 2020, he was recognized by the National Law Journal as a Trailblazer in the areas of Cyber Security & Privacy.  In 2022, he was honored as Best Mentor by the Daily Business Review. [4]

### B.      Joseph P. Guglielmo – Scott+Scott Attorneys at Law LLP

Scott+Scott is a nationally recognized class action law firm headquartered in Connecticut with offices in New York, Arizona, California, Ohio, Virginia, Amsterdam, Berlin, and London. The firm was founded in 1975 and now has over one hundred attorneys dedicated to complex and class action litigation, representing individuals, businesses, and public and private pension funds that have suffered from corporate fraud and wrongdoing.  *Id.*  As detailed in the attached résumé,

---

[4]      Additional information about Mr. Yanchunis can be found in his firm resume attached hereto as **Exhibit C**.

1    Scott+Scott, which is ranked by U.S. News & World Report for 2021 as a "Best Law Firm," was

2    recently recognized by Law360 as a Ceiling Smasher for their representation of women in their

3    equity partnership.  The firm has a proven record of successfully handling complex consumer,

4    antitrust, securities, ERISA, and civil rights litigation in both federal and state courts.

5         Scott+Scott's Consumer Practice Group consists of some of the premier advocates in the

6    area of consumer protection.  Scott+Scott's Consumer Practice Group has been at the forefront in

7    litigating and securing some of the most significant consumer protection settlements on behalf of

8    its clients, resulting in hundreds of millions of dollars to class members.  Joseph P. Guglielmo is

9    the Chair of the Consumer Practice Group.  Over the past 25 years, Mr. Guglielmo has served in

10   numerous leadership positions in complex consumer class actions, including multiple data breach

11   class actions, throughout the United States and achieved significant recoveries for his clients,

12   including:

- ***In re Equifax, Inc. Customer Data Security Breach Litig.***, No. 1:17-md-02800 (N.D. Ga.) (co-lead counsel on behalf of class of financial institutions, settlement in excess of $32.5 million);
- ***In re The Home Depot, Inc., Customer Data Security Breach Litig.***, No. 1:14-md-02583 (N.D. Ga.) (co-lead counsel on behalf of financial institutions, $27.25 million settlement on behalf of financial institutions nationwide where Mr. Guglielmo was co-lead counsel);
- ***First Choice Federal Credit Union v. The Wendy's Co.***, No. 2:16-cv-00506 (W.D. Pa.) ($50 million settlement on behalf of financial institutions involving the breach of personal and financial information of millions of credit and debit cards);
- ***In re Target Corp. Customer Data Security Breach Litig.***, No. 0:14-md-02522 (D. Minn.) ($59 million settlement);
- ***In re Pre-Filled Propane Tank Mktg. & Sales Pracs. Litig.***, MDL No. 2086 (W.D. Mo.) ($37 million settlement);
- ***Winsouth Credit Union v. Mapco Express Inc.***, No. 3:14-cv-01573 (M.D. Tenn.) (largest dollar-per-payment-card recovery in a data breach action brought on behalf of a class of financial institutions);
- ***Veridian Credit Union v. Eddie Bauer LLC***, No. 2:17-cv-00356 (W.D. Wash.) (co-lead counsel, $9.8 million settlement);
- ***Arkansas Federal Credit Union v. Hudson's Bay Co.***, No. 1:19-cv-4492 (S.D.N.Y.) (co-lead counsel, $5.1 settlement);
- ***In re: Sonic Corp. Customer Data Breach Litig.***, No. 1:17-md-02807-JSG (N.D. Ohio) (plaintiffs' steering committee on behalf of class of financial institutions arising out of a data breach);
- ***McPherson v. Am. Bank Sys., Inc.***, No. 20 Civ. 01307 (W.D. Okla.) (co-lead counsel on behalf of class of consumers arising out of data breach);
- ***Clarke et al. v. Lemonade, Inc.***, No. 2022LA000308 (Ill. Cir. Ct. DuPage Cnty.) (co-lead counsel, settlement of $6.5 million in cash and injunctive relief arising out of collection of biometric information); and
- ***Aquilina v. Certain Underwriters, et al.***, No. 1:18-cv-00496 (D. Haw.) (lead counsel, settlement resulting in excess of 100% of single damages to class

16

members).

Mr. Guglielmo, along with other attorneys at Scott+Scott, was recognized for his efforts representing New York University in obtaining a monumental temporary restraining order of over $200 million from a Bernard Madoff feeder fund.  Specifically, New York State Supreme Court Justice Richard B. Lowe III stated, "Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case.  The extremely professional and thorough means by which NYU's counsel has litigated this matter has not been overlooked by this Court." *N.Y. Univ. v. Ariel Fund Ltd.*, No. 603803/2008, Order at 9-10 (N.Y. Sup. Ct. Feb. 22, 2010) (Dkt No. 139).

Additional cases where Mr. Guglielmo played a leading role and achieved significant recoveries for his clients and the classes he represented include: *In re Managed Care Litig.*, MDL No. 1334 (S.D. Fla.), which included settlements with Aetna, CIGNA, Prudential, Health Net, Humana, and WellPoint, providing monetary and injunctive benefits exceeding $1 billion; *Love v. Blue Cross and Blue Shield Ass'n*, No. 1:03-cv-21296 (S.D. Fla.), with settlements of approximately $130 million and injunctive benefits valued in excess of $2 billion; and *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663 (D.N.J.), with settlements in excess of $300 million.

Mr. Guglielmo most recently served as co-lead counsel and trial counsel in *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-02626 (M.D. Fla.), an MDL proceeding where the district court certified several horizontal and vertical nationwide antitrust classes, and where settlements totaling $118 million were obtained on the eve of trial.

Mr. Guglielmo lectures on electronic discovery.  Since 2003, Mr. Guglielmo has been a Member of the Sedona Conference®, an organization devoted to providing guidance and information concerning discovery and production issues, as well as antitrust law, complex litigation, and intellectual property.  From 2014-2018, he served as a member of the Steering Committee of Working Group 1 of the Sedona Conference.  Additionally, Mr. Guglielmo was a member of the editorial team for *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf.

J. 1 (2018).  Mr. Guglielmo is currently a Board Member for the Advanced eDiscovery Institute at Georgetown University Law Center.

Mr. Guglielmo was also recognized for his achievements in litigation by his selection to The National Law Journal's "Plaintiffs' Hot List."  Mr. Guglielmo was recognized again this year by Super Lawyers as a top Antitrust lawyer in the New York metro area, was named a Leading Practitioner in E-Discovery (2022) by Who's Who Legal Litigation and was named one of the 500 Leading Plaintiff Financial Lawyers by Lawdragon. [5]

## C. Gary F. Lynch – Lynch Carpenter LLP

Gary F. Lynch is the founding partner of the nationwide plaintiff-side class action firm Lynch Carpenter, LLP ("Lynch Carpenter"). With Mr. Lynch at the helm, Lynch Carpenter has been at the forefront in data breach and privacy litigation, obtaining leadership appointments in many of the largest and most well-known cases and generating seminal legal authority in both trial and appellate courts. For example, Lynch Carpenter (then known as Carlson Lynch) pioneered the development of Pennsylvania's data breach law with the seminal Supreme Court of Pennsylvania decision in *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018).  The court issued a landmark opinion—reversing the two lower courts—acknowledging that general principles of negligence support holding those who collect and store personally identifying information to a common law duty to reasonably safeguard such information from cyber-attacks.  *See id.* at 1047.

Mr. Lynch has been engaged in the practice of law for over thirty years, with the majority of his career focusing on the litigation of complex class actions on behalf of plaintiffs, with a focus in recent years on data breach and privacy litigation.  Mr. Lynch has been appointed as co-lead counsel in some of the largest data breach cases to date.  *See In re: Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.); *In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL No. 2800 (N.D. Ga.); *First Choice Federal Credit Union v. The Wendy's Co., et al*, No. 2:16-cv-0506 (W.D. Pa.); *In re: The Home Depot, Inc. Customer Data Security Breach Litig.*,

---

[5]    Additional information about Mr. Guglielmo can be found in his firm resume attached hereto as **Exhibit D**.

MDL No. 2583 (N.D. Ga.); *Veridian v. Eddie Bauer, LLC*, No. 2:17-cv-356 (W.D. Wash.).  Mr. Lynch has also been appointed to serve on various leadership committees in other high profile data breach cases throughout the country.  *See In re Marriott Int'l Customer Data Security Breach Litig.*, MDL No. 2879 (D. Md.); *In re Target Corp. Customer Data Breach Litig.*, MDL No. 2522 (D. Minn.); *In re Cmty. Health Sys., Inc., Customer Data Security Breach Litig.*, MDL No. 2595 (N.D. Ala.); *Greater Chautauqua Federal Credit Union et al v. Kmart Corp., et al*, No. 15-cv-02228 (N.D. Ill.); *In re Ashley Madison Customer Data Security Breach Litig.,* MDL No. 2669 (E.D. Mo.).

As co-lead counsel, Mr. Lynch has helped to obtain millions of dollars in class-wide relief for those he has represented.  For instance, in *First Choice Federal Credit Union v. The Wendy's Co., et al*, No. 2:16-cv-0506 (W.D. Pa.), after overcoming a motion to dismiss and engaging in extensive discovery, Mr. Lynch helped to obtain a $50 million settlement on behalf of financial institutions who were affected by a data breach that exposed approximately 18 million payment cards. Likewise, in *In re: The Home Depot, Inc. Customer Data Security Breach Litig.*, MDL No. 2583 (N.D. Ga.), Mr. Lynch helped to recover $25 million to resolve claims brought by financial institutions after a data breach compromised 56 million payment cards.

Finally, Mr. Lynch's efforts have directly developed the law in favor of data breach and privacy invasion victims. In addition to the *Dittman* case and succeeding on dispositive motions in most of the other aforementioned cases, Mr. Lynch also argued for the plaintiff and won a recent appeal before the United States Court of Appeals for the Third Circuit in *Popa v. Harriet Carter Gifts, Inc.*, No. 21-2203 (3d Cir.), which involved novel and complex issues under Pennsylvania's two-party consent wiretapping statute. The Third Circuit's decision in *Popa* resulted in an opinion holding that Pennsylvania's wiretapping statute applied to a data collection company's collection of website visitors' website communications.  Given this breadth of data breach experience, Gary Lynch is well-qualified for leadership in this action. [6]

---

[6]     Additional information about Mr. Lynch can be found in his firm resume attached hereto as **Exhibit E**.

### D. Kate M. Baxter-Kauf – Lockridge Grindal Nauen P.L.L.P.

Kate M. Baxter-Kauf is a partner at Lockridge Grindal Nauen P.L.L.P.  Her practice is concentrated in the firm's data breach, antitrust law, business litigation, and securities litigation practice groups.  For the past several years, she has been on the forefront of cutting-edge cybersecurity and privacy litigation, representing individuals and financial institutions in data breach litigation.  Ms. Baxter-Kauf has been appointed Co-Lead Class Counsel in *Holmes v. Elephant Insurance Co*., No. 22-487 (E.D. Va.); Plaintiffs' Steering Committee in *Baker v. ParkMobile, LLC*, No. 21-2182 (N.D. Ga.); and Chair of Plaintiffs' Executive Committee in *In re Netgain Technology, LLC Consumer Data Breach Litig.*, No. 21-cv-01210 (D. Minn.).  Ms. Baxter-Kauf is also a pre-approved member of leadership team in conjunction with Co-Lead Counsel in *In re GEICO Customer Data Breach Litig.*, No. 21-02210 (E.D.N.Y.); Plaintiffs' Liaison Counsel in *In re EpiPen ERISA Litig*., No. 17-cv-1884 (D. Minn.); appointed settlement class counsel in *Beck v. Austin*, No. 19-cv-01453 (D. Minn.); and *Zimmerman v. Riverplace Counseling Center, Inc*., No. 19-6522 (Minn. Dist. Ct., Anoka Cnty.).  Ms. Baxter-Kauf has been substantially involved in a number of complex class action matters including data breach litigation and other class actions in state and federal courts including: *In re Anthem, Inc. Data Breach*, No. 15-md-02617 (N.D. Cal.); *In re Arby's Restaurant Grp., Inc. Data Security Litig.*, No. 17-00514 (N.D. Ga.); *In re Banner Health Data Breach Litig*., No. 16-02696 (D. Ariz.); *In re: Blackbaud, Inc. Customer Data Security Breach Litig.*, No. 20-mn-02972 (D.S.C.); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc*., No. 17-01102 (D. Co.); *In re Community Health Sys., Inc. Customer Security Data Breach Litig*., No. 15-00222, MDL 2595 (N.D. Ala.); *Dittman v. UPMC*, No. GD-14-003285 (Pa. Super. Ct., Allegheny Cnty.); *In re Equifax, Inc., Customer Data Security Litig.*, No. 17-02800 (N.D. Ga.); *Fero v. Excellus Health Plan, Inc*., No. 15-06569 (W.D.N.Y.); *In re Facebook, Inc., Customer Privacy Profile Litig.*, No. 18-02843 (N.D. Cal.); *First Choice Federal Credit Union v. The Wendy's Co.*, No. 2:16-00506 (W.D. Pa.); *Greater Chautauqua Federal Credit Union v. Kmart Corp.*, No. 15-02228 (N.D. Ill.); *In re Home Depot, Inc., Customer Data Security Breach Litig*., No. 14-02583 (N.D. Ga.); *In re iPhone Application Litig*., No. 11-

1  02250 (N.D. Cal.); *In re Premera Blue Cross Customer Data Security Breach Litig.*, No. 15-2633

2  (D. Or.).[7]

3      **E.     Jonathan M. Rotter – Glancy Prongay & Murray LLP**

4      Glancy Prongay & Murray ("GPM") is counsel for Plaintiff in *Pollard v. Accellion, Inc.,*

5  *and Flagstar Bancorp. Inc*., No. 5:21-cv-02572 (N.D. Cal.).  GPM is a national class action firm

6  with over 30 years of experience litigating on behalf of consumers.  As lead counsel, co-lead

7  Counsel, or as a member of plaintiffs' counsel executive committees, GPM's attorneys have

8  recovered billions of dollars on behalf of victims of misconduct.  The firm has extensive experience

9  in digital privacy and data breach matters.  Most recently, GPM helped initiate the first case in the

10  multidistrict litigation captioned *In re TikTok Consumer Priv. Litig.*, MDL No. 2948 (N.D Ill.), a

11  case that subsequently settled for $92 million.  The case alleged significant privacy violations by

12  TikTok, including the improper taking of users' biometrics, private videos and other content, and

13  other private identifying information.  The Honorable Lucy H. Koh appointed GPM partner Kara

14  Wolke to the Plaintiffs' Executive Committee in *In re TikTok, Inc. Priv. Litig.*, No. 19-cv-07792

15  (N.D. Cal.).  After the case was transferred by an MDL panel, the firm continued to work on the

16  case.  Among many other significant contributions to the litigation, including researching and

17  drafting the first-filed complaint, GPM partner Jonathan M. Rotter served as counsel for the

18  nationwide class in negotiating fee allocation issues. Jonathan M. Rotter has significant experience

19  in digital privacy matters.  He has been practicing law or clerking for federal judges since his

20  graduation, with honors, from Harvard Law School in 2004, where he served as an editor of the

21  Harvard Journal of Law and Technology and was a Fellow in Law and Economics at the John M.

22  Olin Center for Law, Economics, and Business, and a Fellow in Justice, Welfare, and Economics

23  at the Harvard University Weatherhead Center for International Affairs.  His practice has been

24  concentrated in complex cases and technology, and he served as the first law clerk for the Patent

25  Pilot Program for the United States District Court for the Central District of California, and also

---

26  [7]      Additional information about Ms. Baxter-Kauf can be found in her firm resume attached

27  hereto as **Exhibit F**.

28

1    clerked on the United States Court of Appeals for the Ninth Circuit.  Since joining GPM, he has

2    played a key role in cases recovering over $100 million.[8]

3    **F.      Subita J. Soneji – Tycko & Zavareei LLP**

4        Ms. Soneji graduated *magna cum laude* from Georgetown University Law Center and

5    *summa cum laude* from the University of Houston.  Early in her legal career, she clerked for three

6    years for the Honorable Gladys Kessler of the United States District Court for the District of

7    Columbia.  Before joining Tycko & Zavareei LLP in 2018, she spent seven years with the United

8    States Department of Justice as Senior Counsel to the Assistant Attorney General, served as

9    Deputy County Counsel for Santa Clara County, and worked as an Assistant United States

10   Attorney in the Northern District of California.  She is a partner in the California office of Tycko

11   & Zavareei LLP, where she serves as the head of the firm's Privacy and Data Breach Group.  She

12   is a seasoned litigator with over 20 years of experience.

13       Ms. Soneji has tremendous experience leading complex class actions and multidistrict

14   litigation, including on behalf of consumer privacy and security.  She recently served on the

15   Executive Committee in *In re T-Mobile Customer Data Security Breach Litig.*, No. 4:21-MD-

16   03019-BCW (W.D. Mo.), which involved claims resulting from a data breach that compromised

17   the personal data of tens of millions of consumers, and in which Ms. Soneji helped secure a historic

18   settlement of $350 million that was preliminarily approved in August 2022.  Last month, she filed

19   for preliminary approval of a $37.5 million Common Fund against Meta Platforms, Inc. for

20   tracking users' location without their consent in *Lundy v. Meta Platforms, Inc.*, No. 3:18-cv-6793

21   (N.D. Cal.).  In addition, last year, she was appointed co-lead counsel in *Lewis v. Idaho Central

22   Credit Union*, No. CV01-20-03733 (Idaho 4th Dist. Ct., Ada Cnty.), a data breach class action in

23   which she secured a $1.55 million common fund that resulted in hundreds of dollars awarded to

24   each participating settlement class member.  Ms. Soneji has also been deeply involved in other

25   data privacy MDLs, including *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-

---

26   [8]       Additional information about Mr. Rotter can be found in his firm resume attached hereto

27   as **Exhibit G**.

28

md-2915 (E.D. Va.), in which she represented one of the lead plaintiffs and which resulted in a $190 million settlement that received final approval in September 2022.

Outside these areas, Ms. Soneji was appointed to the Plaintiffs' Steering Committee in *In re Juul Labs Inc., Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 19-md-02913-WHO (N.D. Cal.), multidistrict litigation in which she has taken the lead in developing and defending all RICO claims against a complicated web of corporate and individual defendants; works closely with co-counsel and opposing counsel on major briefing, depositions, and discovery matters that cut across the personal injury, class action, and government entity tracks of the case; and serves on the law and briefing and trial committees as bellwether trials begin.

As a first generation Indian-American, Ms. Soneji would bring diversity to the proposed PSC.  That commitment to diversity is shared by her firm.  Indeed, in recognition of Tycko & Zavareei LLP's leadership in diversity in the legal profession, the firm received the 2022 Diversity Initiative Award from *The National Law Journal*'s Elite Trial Lawyers recognition program.[9]

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs Zebelman, Bolton, Whittaker, Sharp, Pollard and Desjardins respectfully request that the Court appoint John A. Yanchunis and Joseph P. Guglielmo as Proposed Interim Co-Lead Class Counsel, and appoint Gary F. Lynch, Kate M. Baxter-Kauf, Jonathan M. Rotter, and Subita J. Soneji as members of a Plaintiffs' Steering Committee.

DATED: September 29, 2022           By:   /s/ Michael F. Ram
                                          MICHAEL F. RAM (SBN 104805)
                                          MARIE N. APPEL (SBN 187483)
                                          **MORGAN & MORGAN**
                                          **COMPLEX LITIGATION GROUP**
                                          711 Van Ness Avenue, Suite 500
                                          San Francisco, CA 94102
                                          Telephone: (415) 358-6913
                                          Facsimile:  (415) 358-6923
                                          mram@forthepeople.com
                                          mappel@forthepeople.com

---

[9]      Additional information about Ms. Soneji can be found in her firm resume attached hereto as **Exhibit H**.

1

2    John A. Yanchunis*
     Ryan D. Maxey*
3    **MORGAN & MORGAN COMPLEX**
     **LITIGATION GROUP**
4    201 N. Franklin Street, 7th Floor
     Tampa, Florida 33602
5    Telephone: (813) 223-5505
     jyanchunis@ForThePeople.com
6    rmaxey@ForThePeople.com

7
     Joseph P. Guglielmo (*pro hac vice*)
8    Carey Alexander (*pro hac vice*)
     **SCOTT+SCOTT ATTORNEYS**
9      **AT LAW LLP**
     The Helmsley Building
10   230 Park Avenue, 17th Floor
     New York, NY 10169-1820
11   Telephone: (212) 223-6444
     jguglielmo@scott-scott.com
12   calexander@scott-scott.com

13
     Gary F. Lynch
14   **LYNCH CARPENTER, LLP**
     1133 Penn Ave., 5th Floor
15   Pittsburgh, PA 15222
     Telephone: (412) 322-9243
16   gary@lcllp.com

17
     Kate M. Baxter-Kauf
18   **LOCKRIDGE GRINDAL NAUEN, PLLP**
     100 Washington Avenue S., Suite 2200
19   Minneapolis, MN 55401
     Telephone: (612) 339-6900
20   kmbaxter-kauf@locklaw.com

21
     Jonathan M. Rotter (CA 234137)
22   **GLANCY PRONGAY & MURRAY LLP**
     925 Century Park East, Suite 2100
23   Los Angeles, CA 90067
     Telephone: 310-201-9150
24   jrotter@glancylaw.com

25

26

27

28

---

24

Sabita J. Soneji
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510)-254-6808
ssoneji@tzlegal.com

*Counsel for Plaintiffs Zebelman, Bolton, Whittaker, Sharp, Pollard and Desjardi*

1

### CERTIFICATE OF SERVICE

2      I hereby certify that on September 29, 2022, I authorized the electronic filing of the

3 foregoing with the Clerk of the Court using the CM/ECF system. I certify under penalty of perjury

4 under the laws of the United States of American that the foregoing is true and correct.

5

6

7      */s/ Michael F. Ram*
        MICHAEL F. RAM (SBN 104805)

8      **MORGAN & MORGAN**
        **COMPLEX LITIGATION GROUP**

9      711 Van Ness Avenue, Suite 500
        San Francisco, CA 94102

10     Telephone: (415) 358-6913
        Facsimile:  (415) 358-6923

11     mram@forthepeople.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28