TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile:  310.474.8585

ANDREW W. FERICH (*pro hac vice*)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: 310.474.9111
Facsimile:  310.474.8585

*Proposed Interim Class Counsel*

[Additional counsel appear on the signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO APPOINT TINA WOLFSON AS INTERIM CLASS COUNSEL AND BEN BARNOW, TIMOTHY BLOOD AND MATTHEW GEORGE TO THE PLAINTIFFS' STEERING COMMITTEE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:         December 8, 2022<br>Time:         9:00 a.m.<br>Judge:        Hon. Edward J. Davila<br>Courtroom:  4, 5th Floor |

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3  **PLEASE TAKE NOTICE** that on December 8, 2022 at 9:00 a.m. in Courtroom 4 of the

4  United States District Court for the Northern District of California, Robert F. Peckham Federal Building

5  & United States Courthouse, 280 South 1st Street, San Jose, CA 95113, the Honorable Edward J. Davila

6  presiding, Plaintiffs Grace Beyer, Christopher Hauser, Charles Tyer, Stefanie Burton, John Harbour,

7  Tami Wisnesky, Joweli Vunisa, J. Doe, Douglas Fehlen, Tony Blake, David Artuso, Teresa Bazan,

8  Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain will and hereby do move for an

9  Order pursuant to Federal Rule of Civil Procedure 23(g) appointing Tina Wolfson of Ahdoot &

10  Wolfson, PC as Interim Class Counsel to oversee the settlements reached in this consolidated litigation,

11  and appointing Ben Barnow of Barnow and Associates, P.C., Timothy G. Blood of Blood Hurst &

12  O'Reardon, LLP, and Matthew B. George of Kaplan Fox & Kilsheimer LLP to a Plaintiffs' Steering

13  Committee.

14  This motion is based upon this Notice of Motion and Motion, the supporting Memorandum set

15  forth below, the attached Declarations of Tina Wolfson, Ben Barnow, Timothy Blood, and Matthew

16  George, the pleadings and records on file in this action, and other such matters and argument as the

17  Court may consider at the hearing of this motion.

18  DATED: September 29, 2022

19
*/s/ Tina Wolfson*
TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*

20
ROBERT AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**

21
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521

22
Telephone:  310.474.9111
Facsimile:  310.474.8585

23

24
ANDREW W. FERICH (*pro hac vice*)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**

25
201 King of Prussia Road, Suite 650
Radnor, PA 19087

26
Telephone:  310.474.9111
Facsimile:  310.474.8585

27
*Proposed Interim Class Counsel*

28

- 1 -

BEN BARNOW (*pro hac vice*)
b.barnow@barnowlaw.com
ANTHONY L. PARKHILL (*pro hac vice*)
aparkhill@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: 312-621-2000
Facsimile: 312-641-5504

TIMOTHY G. BLOOD (SBN 149343)
tblood@bholaw.com
PAULA R. BROWN (SBN 254142)
pbrown@bholaw.com
JENNIFER L. MACPHERSON (SBN 202021)
jmacpherson@bholaw.com
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA 92101
Telephone:  619.338.1100
Facsimile:  619.338.1101

LAURENCE D. KING (SBN 206423)
lking@kaplanfox.com
MATTHEW B. GEORGE (SBN 239322)
mgeorge@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415.772.4700
Facsimile:  415.772.4707

JOEL B. STRAUSS (*pro hac vice*)
jstrauss@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212.687.1980
Facsimile:  212.687.7714

*Proposed Plaintiffs' Steering Committee*

1

**TABLE OF CONTENTS**

2
**Page**

3
I.      INTRODUCTION ............................................................................................................1

4
II.     STATEMENT OF THE ISSUES TO BE DECIDED ....................................................3

5
III.    BACKGROUND .............................................................................................................3

6
        A.    Overview of the FTA Data Breach ......................................................................3

7
        B.    Ahdoot Wolfson and the Proposed PSC firms, and Others, File FTA Data Breach
8
              Actions in this Court ............................................................................................4

9
        C.    Ahdoot Wolfson Attempts to Organize the Numerous FTA Data Breach Actions ....5

10
        D.    Ahdoot Wolfson and its Co-Counsel's Efforts on Behalf of Class Members During
              the Pendency of the Motion to Consolidate Resulted in Four Settlements that
11
              Would Resolve this Entire Litigation ..................................................................5

12
IV.     ARGUMENT ..................................................................................................................9

13
        A.    Ahdoot Wolfson and the Proposed PSC Meet all the Rule 23(g) Criteria for
              Appointment as Interim Class Counsel ...............................................................9
14

15
              1.    Proposed Interim Class Counsel and the Proposed PSC Firms Performed
                    The Most Work Investigating This Action and the Potential Claims and
16
                    Defenses and Leading All the Cases to Settlement ...........................................9

17
              2.    Proposed Interim Class Counsel and the Proposed PSC Have  Unmatched
                    Relevant Experience .......................................................................................13
18

19            3.    Proposed Class Counsel Have Outstanding Knowledge of the Applicable
                    Law ..................................................................................................................18
20
              4.    Proposed Interim Class Counsel and the Proposed PSC Firms Have
21                  Demonstrated That They Possess and Will Devote the Necessary Resources
                    to this Litigation .............................................................................................22

22
        B.    Alternatively, Settling Plaintiffs' Counsel is Best Suited to Be Appointed to
              Separately Represent Plaintiffs' Claims Against Each Defendant ...........................22
23
V.      CONCLUSION ..............................................................................................................23
24

25

26

27

28

PLAINTIFFS' MOTION TO APPOINT TINA WOLFSON AS INTERIM CLASS COUNSEL AND BEN BARNOW,
TIMOTHY BLOOD AND MATTHEW GEORGE TO THE PLAINTIFFS' STEERING COMMITTEE
No. 5:21-CV-01155-EJD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adlouni v. UCLA Health Systems Auxiliary*,
  BC589243 (Cal. Super Ct. L.A. Cnty.) ........................................................................ 19

*Beckett v. Aetna, Inc.*,
  No. 2:17-cv-03864-JS (E.D. Pa.) .................................................................................. 18

*Bernal v. Netflix, Inc.*,
  No. 5:11-CV-00379 EJD, 2011 WL 13157369  (N.D. Cal. Aug. 12, 2011) .................... 9

*Clapper v. Amnesty International USA*,
  568 U.S. 398 (2013) ...................................................................................................... 14

*Comcast v. Behrend*,
  569 U.S. 27 (2013) ........................................................................................................ 18

*Culbertson, et al., v. Deloitte Consulting LLP*,
  No. 1:20-cv-03962-LJL (S.D.N.Y.) .............................................................................. 17

*Doe One v. CVS Health Corporation*,
  No. 2:18-cv-00238-EAS-CMV (S.D. Ohio) .................................................................. 18

*Doe v. Health Net of California, Inc., et al.*,
  No. 5:21-cv-2975 ............................................................................................................ 4

*Fero v. Excellus Health Plan, Inc.*,
  No. 15-cv-06569 (W.D.N.Y.) ........................................................................................ 19

*In re Air Cargo Shipping Servs., Antitrust Litig.*,
  No. 06-md-1775 (JG) (VVP) (E.D.N.Y.) ...................................................................... 17

*In re Anthem, Inc. Data Breach Litig.*,
  No. 5:15-md-02617-LHK (N.D. Cal.) ........................................................................... 21

*In re Apple & AT & TM Antitrust Litig.*,
  No. 07-cv-05152 JW, 2008 WL 1766761  (N.D. Cal. Apr. 15, 2008) ........................... 10

*In re Bank of America Corp. Sec. Deriv., and ERISA Litig.*,
  No. 1:09-md-020508-PKC (S.D.N.Y.) ......................................................................... 17

*In re Experian Data Breach Litig.*,
  No. SACV 15-1592 AG (DFMx), 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) .......... 19

*In re Home Depot Customer Data Security Breach Litigation,*
No. 1:14-md-02583 (N.D. Ga.), ........................................................ 18, 21

*In re Mun. Derivatives Antitrust Litig.,*
252 F.R.D. 184 (S.D.N.Y. 2008) ........................................................ 12

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019) .................................. 13, 19, 22

*In re Reebok Easytone Litig.,*
No. 4:10-cv-11977 (D. Mass.) ........................................................ 16

*In re Skechers Toning Shoes Prods. Liab. Litig.,*
MDL No. 2308 (W.D. Ky.) ........................................................ 16

*In re Sony Gaming Networks and Customer Data Security Breach Litig.,*
MDL No. 2258 (S.D. Cal.) ........................................................ 16

*In re Terazosin Hydrochloride Antitrust Litig.,*
220 F.R.D. 672 (S.D. Fla. 2004) ........................................................ 13

*In Re TJX Companies Retail Security Breach Litig.,*
No. 07-10162 (D. Mass) ........................................................ 14

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.,*
928 F.3d 42 (D.C. Cir. 2019) ........................................................ 13, 14

*In re Zoom Video Communications, Inc. Privacy Litig.*
(N.D. Cal.) ........................................................ 13

*In re: 21st Century Oncology Customer Data Security Breach Litig.,*
No. 8:16-md-02737-MSS-AEP (M.D. Fla.) ........................................................ 17

*In re: Apple Inc. Device Performance Litig.,*
No. 18-md-02827-EJD (N.D. Cal.) ........................................................ 17

*In re: Robinhood Outage Litig.,*
No. 3:20-cv-01626-JD (N.D. Cal.) ........................................................ 17

*In re: Sony Gaming Networks and Customer Data Security Breach Litig.,*
No. 11-md-2258 (S.D. Cal.) ........................................................ 15

*In re: Target Corp. Customer Data Security Breach Litig.,*
MDL No. 14-2522 (PAM) (D. Minn.) ........................................................ 17

*In Re: The Home Depot, Inc., Customer Data Security Breach Litig.,*
No. 14-md-2583 (N.D. Ga.) ........................................................ 17

- iii -

*In re: Zappos.com Inc. Customer Data Security Breach Litig.*,
　No. 12-cv-00325 (D. Nev.)................................................................................................. 15

*Pappas v. Naked Juice Co of Glendora, Inc.*,
　No. LA CV11-08276-JAK (PLAx), 2014 WL 12382279 (C.D. Cal. Jan. 2, 2014)....................... 22

*Patton v. Experian Data Corp.*,
　No. SACV 15-1871 JVS (C.D. Cal.)..................................................................................... 16

*People for Experian Data Corp.*,
　No. 37-2019-01047183 (Cal. Super. Ct., Orange Cnty)........................................................... 16

*Remijas v. Neiman Marcus Group, LLC*,
　794 F.3d 688 (7th Cir. 2015) ................................................................................. 13, 14, 18

*Rivera et al. v. Google LLC*,
　(Cook County, Illinois)..................................................................................................... 13

*Rowe v. Unicare Life and Health Insurance Co.*,
　No. 1:09-cv-02286 (N.D. Ill.)............................................................................................. 15

*Snyder v. Regents of the Univ. of California*,
　JCCP No. 589243 (Cal. Super. Ct., Los Angeles Cnty.).......................................................... 16

*Stasi v. Inmediata Health Grp. Corp.*,
　501 F. Supp. 3d 898 (S.D. Cal. 2020)................................................................................... 19

*Sutter Health v. Superior Ct.*,
　227 Cal. App. 4th 1546 (2014)........................................................................................... 19

**Rules**
Fed. R. Civ. P. 23(g)............................................................................................................. 3
Fed. R. Civ. P. 23(g)(1)......................................................................................................... 9
Fed. R. Civ. P. 23(g)(1)(A)(i)........................................................................................... 1, 2, 9
Fed. R. Civ. P. 23(g)(1)(A)(ii)........................................................................................... 2, 13
Fed. R. Civ. P. 23(g)(1)(A)(iii).......................................................................................... 2, 18
Fed. R. Civ. P. 23(g)(1)(A)(iv).......................................................................................... 3, 22
Fed. R. Civ. P. 23(g)(1)(B).................................................................................................... 9

**Statutes**
28 U.S.C. § 1407.................................................................................................................. 5

**Other Authorities**
Moore's Federal Practice § 23.120(3)(a) (3d. ed. 2007) .............................................................. 9

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

Pursuant to Federal Rule of Civil Procedure 23(g) and this Court's Order dated September 8,

4

2022 (ECF No. 109), sixteen Plaintiffs from six cases who have entered into Settlement Agreements

5

with all of the respective Defendants in this litigation on behalf of the respective nationwide classes

6

("Settling Plaintiffs"[1]) move to appoint Tina Wolfson of Ahdoot & Wolfson, PC ("Ahdoot Wolfson")

7

as Interim Class Counsel and Ben Barnow of Barnow and Associates, P.C., Timothy G. Blood of

8

Blood Hurst & O'Reardon, LLP, and Matthew B. George of Kaplan Fox & Kilsheimer LLP to the

9

Plaintiffs' Steering Committee ("PSC").

10

Ms. Wolfson should be appointed Interim Class Counsel in this consolidated action because

11

she and her firm have done the most work and have achieved the most for the class members in the

12

File Transfer Appliance ("FTA") Data Breach litigation. Fed. R. Civ. P. 23(g)(1)(A)(i). Ahdoot

13

Wolfson promptly filed cases on behalf of persons affected by the breaches impacting each of the

14

Defendants before this Court, after a thorough investigation into the facts and legal issues. During the

15

litigation, Ahdoot Wolfson interviewed hundreds of victims of the FTA Data Breach. Ms. Wolfson

16

undertook significant efforts attempting to organize the numerous cases filed before this Court and in

17

other jurisdictions but was ultimately unable to convince all plaintiffs' counsel to transfer their cases

18

to this Court. Ahdoot Wolfson filed the Motion to Consolidate which the Court ultimately granted and

19

pursuant to which it issued the Order for leadership applications. ECF Nos. 37, 83. Ahdoot Wolfson's

20

other attempts to organize this litigation included filing a motion for transfer and consolidation with

21

the Joint Panel on Multidistrict Litigation ("JPML Motion"), but that motion ultimately was denied.

22

Simultaneous with these coordinating efforts, Ahdoot Wolfson reached out to every Defendant

23

and, among many other issues, discussed the possibility of exploring early resolution. All Defendants

24

25

[1] "Settling Plaintiffs" refers to the Plaintiffs included in the three pending settlements with

26

Accellion, Flagstar Bank, and Health Net which, if approved, would resolve and end this litigation. Those Plaintiffs include Plaintiffs Grace Beyer, Christopher Hauser, Charles Tyer, and Stefanie Burton (Plaintiffs to the Flagstar settlement); Plaintiffs John Harbour, Tami Wisnesky, Joweli Vunisa, and J. Doe (Plaintiffs to the Health Net settlement); and Plaintiffs Douglas Fehlen, Tony Blake, David

27

Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain (Plaintiffs

28

to the Accellion settlement).

ultimately agreed to explore early resolution. From May of 2021 and until at least January of 2022, Ahdoot Wolfson, along with its co-counsel, conducted thorough informal discovery with each Defendant, attended a total of seven mediation sessions, spent many hours in additional negotiations and meet and confers, and were able to reach excellent nationwide class action settlements with respect to all Defendants in this litigation. Ahdoot Wolfson, along with its respective co-counsel, spent many additional hours following the mediations conducting confirmatory discovery, formalizing the settlements, and advancing them toward approval. With respect to Defendant Kroger, the Court approved the settlement and appointed Ms. Wolfson's firm and Mr. Barnow's firm as class counsel after a lengthy process involving objections by firms that are likely to compete for leadership here, both at the preliminary and final approval stages. The funds and benefits of that Settlement have already been distributed to the class members, with Wolfson's and Barnow's thorough oversight of the claims and distribution process.

The three remaining settlements are fair, reasonable, and adequate. They provide for a total of $24 million in non-reversionary common funds ($10 million with respect to Health Net, $8.1 million with respect to Accellion, and $5.9 million with respect to Flagstar Bank) and significant injunctive relief requiring each Defendant to implement a series of improvements to its data privacy and security practices. Each of these settlements is similar in structure to the approved and completed $5 million non-reversionary common fund settlement with Kroger, but tailored to the facts of each breach.

Having done the most work on behalf of the class members, Ms. Wolfson and the proposed PSC firms are the natural choice for leadership. Fed. R. Civ. P. 23(g)(1)(A)(i). Ms. Wolfson and the proposed PSC are also the best choice for leadership when the other Rule 23(g)(1)(A) criteria are considered. These firms have decades of on-the-ground leadership experience in complex actions and expertise in consumer privacy cases affecting millions of consumers. Collectively, they have dedicated decades to extensively litigating every aspect of privacy cases, including the intersection of law and complex technology, taking depositions of information security officers, and working with technical and damages witnesses and experts. Fed. R. Civ. P. 23(g)(1)(A)(ii). Their knowledge of the applicable law is unmatched as they have litigated all seminal issues in privacy cases, from standing and pleading issues to class certification, in both trial and appellate courts. Fed. R. Civ. P. 23(g)(1)(A)(iii).

Finally, Ahdoot Wolfson and the proposed PSC firms have already committed significant time and resources litigating these cases, and there is no question that they will continue to commit sufficient human and financial resources to adequately represent the classes. Fed. R. Civ. P. 23(g)(1)(A)(iv). Their requested appointments should be granted.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

Whether the Court should appoint Tina Wolfson of Ahdoot & Wolfson, PC as Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g) to oversee the respective FTA Data Breach litigation, including pursuing Court approval of the settlements reached with Accellion, Inc., Flagstar Bank, and Centene Corporation/Health Net; and

Whether the Court should appoint Ben Barnow of Barnow and Associates, P.C., Timothy G. Blood of Blood Hurst & O'Reardon, LLP and Matthew B. George of Kaplan Fox & Kilsheimer LLP to the PSC.

## III.   BACKGROUND

### A.   Overview of the FTA Data Breach

Accellion is a Palo Alto-based software company that provides third-party file transfer services to its clients, including Kroger, Flagstar Bank, and Centene Corporation/Health Net. It developed and sold a file transfer product/service named the FTA. At the time of the breach, Accellion's FTA was a 20-year-old, obsolete, "legacy product" that was "nearing end-of-life", leaving it vulnerable to compromise and security incidents. The FTA is being retired.

Beginning in December 2020 and spanning into early 2021, threat actors—reportedly affiliated with the well-known Clop ransomware gang, the FIN11 threat group, and potentially other threat actors—breached Accellion client data via vulnerabilities in the FTA. These threat actors were then able to allegedly steal sensitive data from many Accellion clients, including corporations, law firms, banks, universities, and other entities. During the FTA Data Breach, cyber criminals accessed numerous FTA client files containing class members' sensitive Personal Information. Following the attacks, the criminals resorted to extortion, threatening Accellion's clients that the information will be publicized unless ransoms are paid.

Accellion began to notify its FTA customers who were potentially impacted by the breach and they, in turn, reported that they were impacted by the FTA Data Breach. On or about March 6, 2021, Flagstar Bank publicly acknowledged that it was one of the Accellion clients impacted by the FTA Data Breach. Flagstar has confirmed that the Personal Information of 1,477,411 Flagstar customers (including persons whose mortgages are serviced by Flagstar) and employees may have been compromised, including names, home and email addresses, dates of birth, phone numbers, Social Security numbers, passport information, and account information for certain subsets of the entire class. Declaration of Tina Wolfson ("Wolfson Decl."), ¶ 3. On or about March 24, 2021, Health Net publicly confirmed that the Personal Information of approximately 1,506,868 individuals was potentially compromised, including some, or all, of the following: addresses, dates of birth, insurance identification numbers, Social Security numbers, and health information. *Id*. ¶ 4.

B.      **Ahdoot Wolfson and the Proposed PSC firms, and Others, File FTA Data Breach Actions in this Court**

After conducting a thorough investigation, Ahdoot Wolfson and Barnow and Associates commenced the following four class action lawsuits: *Fehlen, et al. v. Accellion, Inc.*, No. 5:21-cv-01353-EJD (filed Feb. 24, 2021 by Ahdoot Wolfson and Barnow and Associates, P.C.) (previously captioned as "*Stobbe v. Accellion*"), which named only Accellion as a Defendant; *Cochran, et al. v. The Kroger. Co., et al.*, No. 5:21-cv-01887-EJD (filed Mar. 17, 2021 by Ahdoot Wolfson and Barnow and Associates, P.C.), which named Kroger and Accellion as co-defendants; *Beyer, et al. v. Flagstar Bancorp, Inc., et al.,* No. 5:21-cv-02239-EJD (filed Mar. 30, 2021 by Ahdoot Wolfson), which named the Flagstar Bank Defendants and Accellion as co-defendants; and *Harbour, et al. v. California Health & Wellness Plan, et al.*, No. 5:21-cv-3322-EJD (filed May 4, 2021 by Ahdoot Wolfson), which named the Health Net Defendants and Accellion as co-defendants. Kaplan Fox & Kilsheimer LLP filed *Doe v. Health Net of California, Inc., et al.*, No. 5:21-cv-2975 on April 23, 2021, and Blood Hurst & O'Reardon, LLP filed *Vunisa v. Health Net, LLC, et al.*, No. 5:21-cv-3425 on April 6, 2021, which was removed to federal court on May 7, 2021.

The Settling Plaintiffs alleged that Kroger, Flagstar Bank, Health Net, and Accellion, among other things: (a) failed to implement and maintain adequate data security practices to safeguard class

members' Personal Information; (b) failed to prevent the FTA Data Breach; (c) failed to detect security vulnerabilities leading to the FTA Data Breach; and (d) failed to disclose that their data security practices were inadequate to safeguard class members' Personal Information.

### C. Ahdoot Wolfson Attempts to Organize the Numerous FTA Data Breach Actions

In the aftermath of the breach, numerous additional FTA data breach class actions were filed in this Court. Additional cases were filed in other federal district courts, including in Michigan and Ohio, as well as in state courts, including in Washington. Ahdoot Wolfson led initiatives to organize the litigation, first through outreach and meet and confers with other plaintiffs' counsel. Wolfson Decl., ¶ 5. When informal coordination efforts failed, Ahdoot Wolfson drafted and filed a motion for transfer and consolidation with the Joint Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 ("JPML Motion"). Wolfson Decl., ¶ 6. The JPML Motion sought to transfer all FTA Data Breach actions to this Court. *See In Re: Accellion, Inc, Data Breach Litigation*, MDL No. 3002.

When the JPML Motion proved unsuccessful, Ahdoot Wolfson persisted with efforts to organize the litigation before this Court. Wolfson Decl., ¶ 8. First, Ahdoot Wolfson attempted to achieve consolidation of the actions by way of a stipulation to consolidate and set a lead counsel briefing schedule. *Id*. Some counsel rejected this organization effort. *Id*. As a result, Ahdoot Wolfson drafted and filed the Motion to Consolidate all the FTA Data Breach lawsuits pending before this Court. *Id*.; *see* ECF No. 37 (filed Apr. 7, 2021), which other counsel opposed (ECF Nos. 40, 41).

### D. Ahdoot Wolfson and its Co-Counsel's Efforts on Behalf of Class Members During the Pendency of the Motion to Consolidate Resulted in Four Settlements that Would Resolve this Entire Litigation

Between the filing of the Motion to Consolidate on April 7, 2021 and the Order granting it on March 14, 2022 (ECF No. 83), Ms. Wolfson initiated separate dialogues with counsel for Kroger, Accellion, Flagstar Bank, and Centene/Health Net, to determine how to best advance these cases. Wolfson Decl., ¶ 9. Ahdoot Wolfson and its respective co-counsel engaged in extensive meet and confer communications about case management issues with the Defendants. *Id.* ¶ 9; Declaration of Ben Barnow ("Barnow Decl."), ¶ 6; Declaration of Timothy G. Blood ("Blood Decl."), ¶ 13; Declaration of Matthew B. George ("George Decl."), ¶ 3. These separate conversations ultimately led

to discussions of whether early resolution could be reached with each Defendant, with any settlement having as its objectives 1) securing monetary benefits for impacted persons and 2) implementation of data security prophylactic measures by each Defendant so that the sensitive Personal Information of class members and other members of the public would be protected going forward. Wolfson Decl., ¶ 10; Barnow Decl., ¶ 7; Blood Decl., ¶¶ 14-15; George Decl., ¶ 3. This labor bore fruit over the months: Ahdoot Wolfson ultimately obtained agreement from each Defendant—first Kroger, then Flagstar, then Centene/Health Net, and ultimately Accellion—to attend mediation and attempt to settle each litigation. Wolfson Decl., ¶ 11.

The Kroger settlement, the first that Ahdoot Wolfson and co-counsel Barnow and Associates negotiated successfully, provided a non-reversionary $5 million common fund against which settlement class members could make a claim for credit monitoring, payment of documented losses, or a *pro rata* cash payment. *See Cochran*, ECF No. 115 (granting final approval). This result was excellent in view of the reality that Kroger paid the cyber criminals to secure the return of the stolen Personal Information, observed no foul play on the dark web, and agreed to continue to monitor the dark web as part of the Settlement relief. *Id.* ¶ 13; Barnow Decl., ¶ 17. In connection with obtaining final approval of this settlement, Wolfson and Barnow defeated a motion to intervene, an opposition by intervenor counsel to the motion for preliminary approval, and a subsequent objection to the settlement at final approval. Wolfson Decl., ¶ 14; Barnow Decl., ¶ 18. Class counsel diligently oversaw all aspects of the settlement administration and distribution process, and the benefits of the Settlement have already been distributed to the class. Wolfson Decl., ¶ 15; Barnow Decl., ¶ 19.

The remaining signed settlements are similar in structure to the Kroger settlement but are tailored to the specifics of each case. Wolfson Decl., ¶ 16; Barnow Decl., ¶ 20; Blood Decl., ¶¶ 17-19; George Decl., ¶ 7. Each provides excellent recoveries for the respective classes, including a non-reversionary cash fund ($10 million with respect to Health Net, $8.1 million with respect to Accellion, and $5.9 million with respect to Flagstar Bank) against which class members can elect credit monitoring, a *pro rata* cash payment, or prove up extraordinary losses up to $10,000 with reasonable documentation and attestation. Wolfson Decl., ¶ 16; Barnow Decl., ¶ 21; Blood Decl., ¶ 18; George Decl., ¶ 7. Notably, individuals who were impacted by multiple breaches can make claims in each of

the respective settlements, and each class member can make a claim in the Accellion settlement. Wolfson Decl., ¶ 17. Pursuant to the Accellion settlement, Accellion has already deposited $4,600,000 into escrow to reserve those funds for the class. Each of these settlements was reached after two formal mediation sessions with Judge Gandhi of JAMS (https://www.jamsadr.com/gandhi/)—an extraordinarily accomplished jurist and mediator who has successfully mediated some of the largest high profile privacy class action settlements in the country—and were followed by weeks of continued negotiations and substantial confirmatory discovery. Wolfson Decl., ¶ 18.

Prior to consolidation and while the Motions for Preliminary Approval of the settlements were pending (*Harbour*, ECF Nos. 48-49; *Fehlen*, ECF No. 44; *Beyer*, ECF No. 54-55), Ahdoot Wolfson and Barnow and Associates opposed intervention and objection attempts similar to those heard and denied by the Court in the Kroger proceedings. In the Flagstar settlement, Ahdoot Wolfson opposed an attempt by John Yanchunis of Morgan & Morgan to intervene and oppose preliminary approval of the settlement. ECF Nos. 62, 72. Morgan & Morgan represents plaintiffs in *Angus, et al. v. Flagstar Bank, FSB*, No. 2:21-cv-10657-AJT-DRG (E.D. Mich.), which has been stayed pending final approval of the Flagstar settlement in this matter. *Angus* ECF No. 46.

And in the Accellion matter, lawyers from Gibbs Law Group LLP and Tousley Brain Stephens PLLC, who filed a case against Accellion in Washington state court and attended the first mediation session with Judge Gandhi but refused to attend the second session at the eleventh hour, rehashed unavailing attempts to intervene and oppose the Accellion settlement similar to those in the Kroger matter. ECF No. 94. Wolfson and Barnow opposed those efforts. ECF No. 97.

As for the Health Net matter, no other law firms or plaintiffs have voiced any objection or intent to intervene in the proposed $10 million settlement, despite that the settlement was originally filed on December 3, 2021. Counsel for the only three cases in federal court asserting claims against the Health Net Defendants have worked cooperatively to secure and obtain approval of that settlement and they all seek leadership appointments via this motion. No other firms or plaintiffs seeking to represent claimants against the Health Net Defendants have materialized in the 18 months since the breach notification letters were disseminated, and any applicant seeking to manage the Health Net piece of the consolidated litigation at this belated juncture necessarily lacks standing to do so.

**E.      The Consolidation Order; Subsequent Re-filing of Preliminary Approval Papers**

On March 14, 2022, the Court entered an Order granting the April 7, 2021 Motion to Consolidate and consolidated the related Accellion FTA Data Breach actions (with the exception of *Cochran*). ECF No. 83. The Order vacated all the motions for preliminary settlement approval and the reserved hearing dates for those motions. *Id.* The Order also required plaintiffs' counsel to submit a stipulated lead counsel briefing schedule within ten days. *Id.*

Ahdoot Wolfson led efforts to obtain the agreement of all counsel in the consolidated matter for a lead counsel application schedule, but these efforts failed when some of the intervenor counsel and other counsel would not agree. Wolfson Decl., ¶ 21. This resulted in submission of competing lead counsel briefing schedules on March 24, 2022. *Id.*; *see* ECF Nos. 92, 93.

Before the Court set the lead application briefing schedule, Gibbs and Tousley Brain, counsel in *Stone v. Accellion*, a Washington state court case against Accellion and the Washington State Auditor's Office (not named in this matter), who attended the initial mediation session with Judge Gandhi and committed to attend the second one but reversed course at the eleventh hour, filed a motion to intervene in this consolidated litigation. *Id.* ¶ 22; ECF No. 94. That motion included an opposition and objection to the motion for preliminary approval of the Accellion settlement filed by Ahdoot Wolfson and Barnow and Associates. *Id.* After scheduling a hearing for the proposed intervenors' motion, in a June 8, 2022 e-mail conversation with defense counsel for Accellion, the Court's clerk scheduled the hearing on the motion for preliminary approval for the settlement with Accellion for December 8, 2022, and requested that Settling Plaintiffs re-file the motion for preliminary approval. Wolfson Decl., ¶ 22. Neither Ms. Wolfson nor anyone from Ahdoot Wolfson or its co-counsel initiated the request with the Court to schedule a hearing for the re-filed Accellion motion for preliminary approval. *Id.* Ahdoot Wolfson re-filed the Accellion preliminary approval motion per the clerk's directions. *Id.*

Counsel for Flagstar and Health Net, not Ahdoot Wolfson or its co-counsel, subsequently requested and obtained hearing dates on motions for preliminary approval of their respective settlements. *Id.* ¶ 23.

1  On September 8, 2022 the Court entered the Order setting the briefing schedule for lead counsel

2  applications. ECF No. 109.

3  **IV.     ARGUMENT**

4      **A.     Ahdoot Wolfson and the Proposed PSC Meet all the Rule 23(g) Criteria for

5          Appointment as Interim Class Counsel**

6      In appointing Interim Class Counsel, the Court should consider the factors set out in Rule

7  23(g)(1). *Bernal v. Netflix, Inc.,* No. 5:11-CV-00379 EJD, 2011 WL 13157369, at *2 (N.D. Cal. Aug.

8  12, 2011). They are:

      (i)    the work counsel has done in identifying or investigating
9               potential claims in the action;
10       (ii)   counsel's experience in handling class actions, other complex
             litigation, and the types of claims asserted in the action;
11       (iii)  counsel's knowledge of the applicable law; and
12       (iv)  the resources that counsel will commit to representing the class.

13 Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's

14 ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

15     The factors under Rule 23(g)(1)(A) and Rule 23(g)(1)(B) support appointing Tina Wolfson as

16 Interim Class Counsel and Ben Barnow, Timothy Blood, and Matthew George to the PSC.

17

18         **1.     Proposed Interim Class Counsel and the Proposed PSC Firms Performed
           the Most Work Investigating This Action and the Potential Claims and
19            Defenses and Leading All the Cases to Settlement**

20     While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be

21 determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel

22 and the considerations under Fed. R. Civ. P. 23(g)(1)(A)(i) can be a deciding factor in deciding the

23 issue of lead counsel appointment. MOORE'S FEDERAL PRACTICE § 23.120(3)(a) (3d. ed. 2007). Ahdoot

24 Wolfson's and the proposed PSC firms' investigative and litigation efforts in this matter are unmatched

25 by any potential lead counsel applicant.

26     Ahdoot Wolfson and co-counsel filed detailed class action complaints and amended complaints

27 in six separate actions (*Fehlen*, *Beyer*, *Cochran*, *Harbour, Doe, Vunisa*). Wolfson Decl., ¶ 24; Barnow

28 Decl., ¶ 2; Blood Decl., ¶ 2; George Decl., ¶ 2. In preparing those pleadings, Ahdoot Wolfson and the

proposed PSC firms conducted a detailed factual investigation and evaluation of the potential legal claims and defenses, including investigating the circumstances surrounding the Accellion breach; the public statements made by Accellion, Kroger, Flagstar Bank, Health Net, and other involved entities regarding the breach; and the vulnerabilities in (and reports regarding) Accellion's unsecure FTA file transfer platform that is at the center of the breach and this litigation. Wolfson Decl., ¶¶ 24-25; Barnow Decl., ¶ 3; Blood Decl., ¶¶ 3-9; George Decl., ¶¶ 2-3. Counsel interviewed and vetted hundreds of class members. Wolfson Decl., ¶ 25; Barnow Decl., ¶ 3; Blood Decl., ¶ 9; George Decl., ¶ 2. Counsel continued to investigate all FTA Data Breach developments as they were occurring during late 2020 through early 2021. Wolfson Decl., ¶ 25; Barnow Decl., ¶ 4; Blood Decl., ¶ 9; George Decl., ¶ 2. The pleadings reflect many hours of legal research as to the viability of the claims alleged, Article III standing issues, questions about damages, and potential class certification hurdles. Wolfson Decl., ¶ 25; Barnow Decl., ¶ 5; Blood Decl., ¶ 2; George Decl., ¶ 2. Ahdoot Wolfson also consulted with experts in connection with this litigation. Wolfson Decl., ¶ 26. All these efforts standing alone support the requested appointments. *See In re Apple & AT & TM Antitrust Litig.*, No. 07-cv-05152 JW, 2008 WL 1766761, at *2 (N.D. Cal. Apr. 15, 2008) (appointing firm that had "engaged an [expert] and invested significant time researching and investigating the potential claims . . . .").

After filing the four actions, Ahdoot Wolfson led efforts to informally coordinate the litigation with numerous plaintiffs' counsel (including with multiple would-be intervenor and objector counsel) and counsel for Defendants to engage in early case organization and management. Wolfson Decl., ¶ 27. When informal coordination and private ordering efforts failed, Ahdoot Wolfson drafted and filed the JPML Motion and presented oral argument before the Joint Panel on Multidistrict Litigation to advocate for transfer of all FTA Data Breach actions to this District. *Id.* ¶ 28. When the JPML Motion was denied, Ahdoot Wolfson attempted to informally coordinate all the FTA Data Breach cases pending before this Court, including by drafting and circulating a stipulation to consolidate and set a lead counsel application briefing schedule. *Id.* ¶ 29. Multiple plaintiffs' counsel rejected the stipulation, so Ahdoot Wolfson persisted with organization efforts by drafting and filing the Motion to Consolidate. *Id.* ¶ 30; *see* ECF No. 37. Other plaintiff counsel opposed. ECF Nos. 40, 41.

During the pendency of the Motion to Consolidate, Ahdoot Wolfson pressed forward on behalf of its clients and class members. Wolfson Decl., ¶ 31. Ahdoot Wolfson continued to speak with numerous class members, fielding calls from individuals who received letters confirming they were impacted by one or more of the FTA customer data breaches and expressed great concern about the consequences. *Id.* Ms. Wolfson also led the charge in contacting each Defendant's counsel to determine what steps could be taken during the pendency of the Motion to Consolidate to advance the respective litigations and explore other methods of informal case coordination. *Id.* ¶ 32.

During the numerous meet and confer calls with Defendants, Ahdoot Wolfson raised the prospect of exploring early resolution in each case. *Id.* ¶ 33. Each Defendant eventually expressed interest in mediation, and Ahdoot Wolfson arranged mediation sessions with Kroger, Accellion, Flagstar Bank, and Health Net. *Id.* In total, along with their respective co-counsel, Ahdoot Wolfson arranged, advanced costs for, and attended seven formal mediation sessions before a well-respected mediator, Judge Jay Gandhi (Ret.) of JAMS. *Id.*

Substantial efforts went into preparing for the mediations. *Id.* ¶ 35; Barnow Decl., ¶¶ 8-10; Blood Decl., ¶¶ 14-15; George Decl., ¶¶ 4-5. Prior to the initial mediations with each Defendant, counsel prepared and exchanged mediation briefs with Defendants, and negotiated and obtained informal discovery to inform the mediation and settlement negotiations. Wolfson Decl., ¶ 35; Barnow Decl., ¶ 8-10; Blood Decl., ¶ 9; George Decl., ¶¶ 4-5. Counsel received and analyzed many pages of documents produced by each Defendant to prepare for the initial mediations. Wolfson Decl., ¶ 35; Barnow Decl., ¶ 10; Blood Decl., ¶ 15; George Decl., ¶ 5.

Judge Gandhi conducted all the formal mediation sessions and oversaw weeks of additional post-mediation negotiations in every case. Wolfson Decl., ¶ 36; Barnow Decl., ¶ 11; Blood Decl., ¶¶ 16-18; George Decl., ¶¶ 6-7. After one mediation session in Kroger, and two sessions with each of Accellion, Flagstar Bank, and Health Net, counsel was able to reach settlements in principle with each of the Defendants. Wolfson Decl., ¶ 37. Counsel then spent numerous hours conducting substantial confirmatory discovery to not only verify the relevant facts, but to confirm that each settlement is fair, reasonable, and adequate. Wolfson Decl. ¶ 38; Barnow Decl., ¶ 9; Blood Decl., ¶ 12. Counsel also negotiated the numerous details of each settlement. Wolfson Decl., ¶38; Barnow Decl., ¶¶ 12-13; Blood

Decl., ¶¶ 12-19; George Decl., ¶¶ 8-9. They also obtained competing bids from class action administrators and negotiated the details of each contract to make sure that the class was getting the best notice and administration service at the best price. Wolfson Decl., ¶ 39; Barnow Decl., ¶ 12. Ahdoot Wolfson and the proposed PSC firms prepared draft settlement agreements, claim forms and class notice documents, proposed approval orders, and motions for preliminary approval for each of the settlements. Counsel also negotiated the terms and wording of each of these documents with the respective Defendants and consulted with the notice expert in finalizing the notice documents. Wolfson Decl., ¶ 40; Barnow Decl., ¶ 13; Blood Decl., ¶ 19; George Decl., ¶ 8. As part of the Accellion settlement, Ahdoot Wolfson and its co-counsel expended significant time and resources working with Accellion to obtain FTA customer lists of affected class members to effectuate the most comprehensive notice program with the widest reach. Wolfson Decl., ¶ 41; Barnow Decl., ¶ 14.

After the settlements and preliminary approval papers were filed, objector counsel attempted to derail the Kroger, Flagstar, and Accellion settlements. Wolfson Decl., ¶ 42. Ahdoot Wolfson and their respective co-counsel have opposed these efforts. *Id.* In the Kroger matter, Plaintiffs defeated a motion to intervene and opposition to preliminary approval, and an objection at final approval. *Id.* ¶ 43; Barnow Decl., ¶ 15. The Kroger settlement class has already received the settlement benefits. Wolfson Decl., ¶ 43. In the Flagstar and Accellion settlements, counsel faced motions to intervene and oppose preliminary approval. Wolfson Decl., ¶ 44; Barnow Decl., ¶ 16. Plaintiffs opposed these similar efforts by objector counsel, but the Court did not rule on these motions. *Id.*

Ahdoot Wolfson's and the proposed PSC firms' efforts in initiating settlement negotiations, attending numerous mediations, and achieving the settlements compel their appointment to lead this litigation. *See, e.g., In re Mun. Derivatives Antitrust Litig.,* 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (counsel team that engaged in pre-appointment settlement negotiations and mediation that culminated in a class-wide settlement was appointed as interim class counsel). These efforts on behalf of the class are substantial, represent a tremendous commitment of time and resources, and cannot be matched by any other applicants for Interim Class Counsel.

### 2. Proposed Interim Class Counsel and the Proposed PSC Have Unmatched Relevant Experience

Ahdoot Wolfson and the proposed PSC firms each have unparalleled "experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

The team's members bring together decades of experience in leading complex consumer class actions in general, and privacy class actions, including massive data breach cases, in particular.

<u>**Tina Wolfson, Ahdoot & Wolfson, PC –**</u>
<u>**Proposed Interim Class Counsel**</u>

As one of the very few female founders of a national class action firm, Ms. Wolfson has gained extensive experience leading major class actions during her 27-year career and has been selected in myriad cases by federal and state court judges across the country, including many in the Northern District of California. She has led numerous high-profile privacy cases affecting millions of consumers to successful results, including, most recently: *Rivera et al. v. Google LLC* (Cook County, Illinois, Hon. Ann Loftus) ($100 million non-reversionary fund settlement with comprehensive injunctive relief); *In re Zoom Video Communications, Inc. Privacy Litig.* (N.D. Cal., Hon. Lucy Koh and Hon. Laurel Beeler) ($85 million non-reversionary fund settlement with comprehensive injunctive relief); *In re Premera Blue Cross Customer Data Security Breach Litigation* (D. Or., Hon. Michael H. Simon) ($75 million settlement); *In re U.S. Office of Personnel Management Data Security Breach Litig. (D.C. Cir., Hon. Amy Berman-Jackson*) ($63 million settlement). *See* Wolfson Decl., ¶¶ 46-60 & Exhibit 1.

Ms. Wolfson has been prosecuting technology-related privacy cases since the late 1990s, when she successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without consumers' consent, practices that were exposed by her work and later became the subject of Gramm-Leach-Bliley Act regulation.

Ms. Wolfson has been at the forefront of privacy-related litigation since then. Her efforts have shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, Ms. Wolfson

successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in virtually every standing-related brief, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) and concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, Ms. Wolfson briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 (D.C. Cir. 2019).

As set forth in more detail in her CV (Wolfson Decl., Ex. 1), Ms. Wolfson has led and continues to lead many privacy cases, including those involving unauthorized data collection (e.g., *Google BIPA*, *Google Location History Litigation, Zoom*, *Ring, Shutterfly, Vimeo*), data breaches (e.g., *Premera, OPM, Experian*), and TCPA violations (e.g., *Hollister*, *American Eagle*), as well as many other types of consumer class actions (e.g., *Eck* - $295 million class settlement against City of Los Angeles for unlawful utility taxes).

This Court is familiar with Ms. Wolfson's qualifications as it has appointed Ms. Wolfson as co-lead counsel in *Kirby v. McAfee, Inc.* ($80 million settlement), *In re Google Location History Litig.* (settlement in principle), and to the PSC in *In re Apple Inc. Device Performance Litig.* ($500 million settlement).

**Ben Barnow, Barnow and Associates, P.C.**
**Proposed Plaintiffs' Steering Committee Member**

Ben Barnow has vast experience in consumer class actions and in data breach cases in particular. As a court-appointed lead counsel or equivalent designation, he has successfully led over forty major class actions where class-wide recoveries were achieved, resulting in benefits valued in excess of five billion dollars being made available to class members.

Mr. Barnow has decades of experience leading data breach class actions to exemplary outcomes. *See In Re TJX Companies Retail Security Breach Litig.*, No. 07-10162 (D. Mass) (Mr. Barnow served

as co-lead counsel in one of the first data breach class action lawsuits; the Honorable Judge Young described the settlement as "excellent," and as containing "innovative" and "groundbreaking" elements); *In re: Sony Gaming Networks and Customer Data Security Breach Litig.*, No. 11-md-2258 (S.D. Cal.) (serving on the PSC in this MDL involving over 60 cases and approximately 50 million consumers, Mr. Barnow negotiated a settlement and at the final fairness hearing the Honorable Judge Anthony J. Battaglia remarked, "Just in the final analysis, the order, much like all the work by both sides throughout the case, has been impeccable, highly professional, and skilled); *Rowe v. Unicare Life and Health Insurance Co.,* No. 1:09-cv-02286 (N.D. Ill.) (Mr. Barnow was appointed Lead Counsel and negotiated a settlement that was granted final approval, making benefits available to Settlement Class Members whose medical information was publicly posted on the Internet; Judge Hibbler described the efforts of the parties as "exemplary").

Mr. Barnow has heavily litigated essentially every aspect of privacy class cases. He has litigated and prevailed on issues of standing, statutory claims, class certification, and damage models, devised injunctive relief programs in numerous data breach, data disclosure, and privacy cases, and established groundbreaking precedent. For example, Mr. Barnow successfully appealed a dismissal of a data breach lawsuit against Zappos on standing grounds before the Ninth Circuit and successfully defended against Zappos' writ of certiorari to the Supreme Court. *In re: Zappos.com Inc. Customer Data Security Breach Litig.*, No. 12-cv-00325 (D. Nev.) (establishing Article III standing in the Ninth Circuit for consumers whose information is disclosed in a data breach).

### Timothy G. Blood, Blood Hurst & O'Reardon, LLP
### Proposed Plaintiff Steering Committee Member

Timothy Blood and his law firm, Blood, Hurst & O'Reardon ("BHO"), have decades of experience prosecuting complex class actions on behalf of consumers in state and federal trial and appellate courts throughout the country. A significant portion of BHO's practice is devoted to representing consumers whose PII and PHI was subject to a data breach.

Under Mr. Blood's leadership, BHO has been involved in prosecuting high-profile data breach class actions and has filed and settled many. Mr. Blood was appointed co-liaison counsel and a member of Plaintiff's Steering Committee in *In re Sony Gaming Networks and Customer Data Security Breach*

*Litig.*, MDL No. 2258 (S.D. Cal.), one of the largest data breach cases at the time. Mr. Blood currently represents the City of San Diego in *People for Experian Data Corp.*, No. 37-2019-01047183 (Cal. Super. Ct., Orange Cnty.) in a data breach notification action on behalf of the People of the State of California against a leading consumer credit reporting and data aggregation company and represented plaintiffs in *Patton v. Experian Data Corp.*, No. SACV 15-1871 JVS (C.D. Cal.), a multi-state data breach notification action arising out of the same conduct. He was also appointed to the Plaintiff's Executive Committee in *Snyder v. Regents of the Univ. of California*, JCCP No. 589243 (Cal. Super. Ct., Los Angeles Cnty.), among others.

Mr. Blood's experience in data breach litigation extends beyond the courtroom. He helped draft the private right of action provision of the landmark California Consumer Privacy Act of 2018 and the statewide ballot initiative, the California Privacy Rights Act of 2020 and related legislation. He has testified as a subject matter expert before various committees of the California Assembly and Senate on these laws and issues of data breaches and digital privacy. BHO's litigation of data breach class actions is enhanced by Mr. Blood's experience litigating consumer class actions in many other areas of the law including through successful appeals and trial. In May of this year, BHO obtained what is believed to be one of the largest jury verdicts obtained in a false advertising case involving a dietary supplement.

Mr. Blood has partnered with the Federal Trade Commission in false advertising cases: *In re Skechers Toning Shoes Prods. Liab. Litig.*, MDL No. 2308 (W.D. Ky., Hon. Thomas B. Russell) and *In re Reebok Easytone Litig.*, No. 4:10-cv-11977 (D. Mass., Hon. F. Dennis Saylor). As lead counsel in both these cases, he worked with the FTC in a unique public-private partnership to obtain record setting recoveries for consumers. The class action settlement in *In re Skechers* was the largest false advertising recovery in the history of the FTC.

**Matthew B. George, Kaplan Fox & Kilsheimer LLP**
**Proposed Plaintiff Steering Committee Member**

Kaplan Fox has an excellent track record of prosecuting complex class action litigation throughout the United States and can provide a vital combination of experience and subject matter expertise. A few notable Kaplan Fox recoveries include: (1) *In re Bank of America Corp. Sec. Deriv.*,

*and ERISA Litig.*, No. 1:09-md-020508-PKC (S.D.N.Y.). As one of three co-lead counsel, Kaplan Fox recovered $2.4 billion for investors just weeks before trial. The result is one of the largest recoveries in the history of securities class actions. (2) *In re Air Cargo Shipping Servs., Antitrust Litig.*, No. 06-md-1775 (JG) (VVP) (E.D.N.Y.). As one of four co-lead counsel representing direct purchasers alleging violations of antitrust laws, Kaplan Fox has recovered more than $1.25 billion in settlements to date. (3) *In re: Apple Inc. Device Performance Litig.*, No. 18-md-02827-EJD (N.D. Cal.). As co-lead counsel before this Court, Kaplan Fox recovered $310 million for purchasers of iPhones who claimed their devices' performance was unlawfully degraded (settlement pending final approval on remand).

Kaplan Fox and Mr. George also have substantial experience managing and prosecuting cases involving information privacy and data security pertinent to this matter. They have successfully litigated some of the earliest large scale data breach cases. In *In re: Target Corp. Customer Data Security Breach Litig.*, MDL No. 14-2522 (PAM) (D. Minn.), Mr. George was co-chair of the third-party discovery committee that subpoenaed Target's cybersecurity vendors and in which he deposed key Target personnel. In *In Re: The Home Depot, Inc., Customer Data Security Breach Litig.*, No. 14-md-2583 (N.D. Ga.), Kaplan Fox was on the steering committee that secured a recovery of $25 million on behalf of financial institutions impacted by the breach. Kaplan Fox was also liaison counsel in consolidated litigation arising from a pandemic-related Deloitte data breach that obtained final approval of a $5 million settlement in *Culbertson, et al., v. Deloitte Consulting LLP*, No. 1:20-cv-03962-LJL (S.D.N.Y.), ECF No. 151. Mr. George was also appointed to serve on the steering committee in *In re: 21st Century Oncology Customer Data Security Breach Litig.*, No. 8:16-md-02737-MSS-AEP (M.D. Fla.), a multidistrict litigation over a nationwide cancer center's mishandling of medical data that resulted in a $12.5 million settlement.

Mr. George is currently appointed as co-lead interim class counsel in *In re: Robinhood Outage Litig.*, No. 3:20-cv-01626-JD (N.D. Cal.), representing investors on claims that their brokerage failed to prevent damaging outages across its online securities trading platform—which has obtained a $9.9 million settlement pending court approval. In its order appointing Mr. George, the Court noted that the leadership "significantly broadened in multiple ways the diversity of the attorneys designated for the

interim roles." *Id.*, ECF No. 65 at 1:15-17. Mr. George is also a member of the LGBTQI+ community and has advanced initiatives for underrepresented communities both in and out of court. He recently represented classes comprised mostly of low-income, gay men living with HIV and AIDS in cases against CVS/Caremark and Aetna that recovered over $20 million on claims the companies wrongfully exposed their HIV status. *Doe One v. CVS Health Corporation*, No. 2:18-cv-00238-EAS-CMV (S.D. Ohio); *Beckett v. Aetna, Inc.,* No. 2:17-cv-03864-JS (E.D. Pa.). Mr. George has also volunteered in BALIF's (the Bay Area's LGBTQI+ bar association) formal mentorship program and worked closely with diverse law students and young attorneys to polish their resumes and advance their careers.

### 3.    Proposed Class Counsel Have Outstanding Knowledge of the Applicable Law

Ahdoot Wolfson's and proposed PSC firms' "knowledge of the applicable law" will provide the class with the most effective and efficient representation. Fed. R. Civ. P. 23(g)(1)(A)(iii). Wolfson Decl., ¶¶ 45-60 & Exhibit 1; Barnow Decl., ¶¶ 23-30 & Exhibit 1; Blood Decl., ¶ 22-31 & Exhibit 1; George Decl., ¶¶ 10-14 & Exhibit 1.

Ms. Wolfson possesses a rare combination of distinguished academic background, over two decades of class action experience (including on the front lines of cutting-edge privacy and large data breach cases), and a deep knowledge of the issues surrounding data breaches. Wolfson Decl., ¶ 48 & Exhibit 1. This experience will serve the class and the Court here in several respects. *Id.* ¶ 48.

Ms. Wolfson is intimately familiar with the legal issues that are at the forefront of this litigation. *Id*. ¶ 49. This knowledge is derived from Ahdoot Wolfson's extensive legal work in this field, which includes achieving groundbreaking opinions at the trial and appellate court level that have helped develop the law in this emerging area. *Id*. By way of example, after helping to secure the first favorable motions to dismiss opinions at the trial court level in *In re Home Depot Customer Data Security Breach Litigation*, No. 1:14-md-02583 (N.D. Ga.), Ahdoot Wolfson single-handedly secured the first appellate federal decision after *Comcast v. Behrend*, 569 U.S. 27 (2013) establishing that data breach victims have standing to seek relief in federal court even before a monetary harm manifests. Wolfson Decl., ¶ 50; *see Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). And in *Experian*, as co-lead counsel, Ahdoot Wolfson obtained a motion to dismiss order establishing a duty of care despite a

1   lack of privity and rejecting the economic loss rule defense. Wolfson Decl., ¶ 50; *see In re Experian Data*

2   *Breach Litig.*, No. SACV 15-1592 AG (DFMx), 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016).

3      Ahdoot Wolfson has been litigating data breach cases, including those involving CMIA claims,

4   since the mid-2000's. *See, e.g., Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546 (2014); *Adlouni*

5   *v. UCLA Health Systems Auxiliary*, BC589243 (Cal. Super Ct. L.A. Cnty.) (final approval granted in

6   medical data breach settlement creating $2 million settlement fund); *Fero v. Excellus Health Plan, Inc.*,

7   No. 15-cv-06569 (W.D.N.Y.); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-

8   MD-2633-SI, 2019 WL 3410382, at *11 (D. Or. July 29, 2019) (noting, in connection with granting

9   preliminary approval, that "[t]he Court specifically selected [Tina Wolfson and co-counsel] for their

10   extensive experience in prosecuting complex class actions;" that class counsel "vigorously prosecuted

11   the case;" and that class counsel "demonstrated their willingness to continue prosecuting this case,

12   including taking this matter to trial if necessary."); Wolfson Decl., ¶ 51.

13      In *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 908 (S.D. Cal. 2020), Ms. Wolfson

14   successfully argued against a motion to dismiss, resulting in a seminal CMIA standing decision in data

15   breach litigation relating to protected health information. There, Ms. Wolfson obtained denial of a

16   motion to dismiss a CMIA claim on standing grounds after the court endorsed an inference that

17   criminals "actually viewed" CMIA-protected information, holding that "it is reasonable to infer the

18   [stolen] information could have been viewed or copied once available on the internet." *Id.*; Wolfson

19   Decl., ¶ 52.

20      Additionally, Ahdoot Wolfson's knowledge base has been enhanced by working with many

21   leading experts in this field, including developing new experts and damages theories that have expanded

22   potential avenues of recovery for data breach victims. Wolfson Decl., ¶ 53. This base of knowledge

23   will be critical in determining which experts are best suited to represent the interests of this class after

24   additional discovery is conducted into the cause, source, and scope of the breach. *Id.*

25      The knowledge that Ms. Wolfson and the other lawyers at her firm possess relating to data

26   privacy litigation and legal issues, coupled with their vast experience, allows them to *efficiently* manage

27   major litigation, including high-profile data breach class action litigation. Respectfully, this

28   differentiates Ahdoot Wolfson from the other applicants. Ms. Wolfson's experience in litigating (and

resolving) the largest data breach cases on record has already had and will continue to have direct benefits here. *Id*. ¶ 54. For example, through designing, negotiating, and administering other large-scale data breach settlements, and interviewing thousands of data breach victims across the United States, Ahdoot Wolfson has developed an intimate understanding of: (1) litigation goals of data breach victims, including recovery of cash relief for time and effort spent responding to a breach; (2) the most impactful products available to help reduce the risk of future harm, such as credit monitoring and identity restoration services, and the costs of procuring such services from different vendors; (3) obtaining *meaningful* injunctive relief that is narrowly tailored to the facts of each case to prevent reoccurrence of a breach; and (4) access to important data such as settlement claims rates for different forms of relief that provides meaningful insight on how to approach negotiations as well as how to achieve settlement processes that will get the most money into the class members' hands. *Id*. ¶ 55.

The *Premera* data breach litigation is a relevant case study in the benefits and efficiencies Ms. Wolfson's firm brings to bear in large class action litigation. As a member of the leadership team in this heavily litigated Multi-District Litigation affecting nearly 11 million class members, Ahdoot Wolfson vetted all the plaintiffs for inclusion in the consolidated complaint, and successfully briefed and argued the CMIA issues on the Motion to Dismiss. *Id*. ¶ 56. Ahdoot Wolfson's efforts were integral to the heavy discovery efforts and the numerous meet and confers, and motions to compel, including highly technical factual issues as well as privilege issues surrounding the forensics report. *Id*. ¶ 57. Ahdoot Wolfson helped prepare, conducted, and defended about a third of the more than 50 depositions, including information security officers and technical and damages experts. Ms. Wolfson also worked with experts to develop the class damages approaches that accounted for the loss of privacy in the highly sensitive medical information, the market value of medical information and the risk of medical identity fraud. *Id*.

While the case was hotly contested, and defense counsel swore to never settle unless it was on a purely claims-made basis (no non-reversionary fund), Ms. Wolfson continued the dialogue and was instrumental in getting Premera to the negotiation table along with its several tiers of carriers. *Id*. ¶ 58. Ms. Wolfson then spear-headed the almost year-long negotiation process, which included five in-

person sessions and additional endless hours of shuttle negotiations with two mediators simultaneously, one of whom was an insurance coverage expert. *Id*.

An agreement in principle was reached after the parties had briefed and argued the class certification motion, and the Court's ruling was imminent. *Id*. ¶ 59. Ms. Wolfson had briefed and argued the CMIA class certification issues. *Id*. The settlement, which was valued at $74 million and included a $32 million non-reversionary fund, was to date the largest MDL data breach settlement *per capita* and offered all claimants state of the art Credit Monitoring and Insurance Services, a set cash amount (with California residents entitled to a larger amount as a result of the CMIA claims), or, alternatively, extraordinary documented damages. Premera was also obligated to overhaul its cybersecurity practices with meaningful injunctive relief. *Id*.

Ms. Wolfson was integrally involved in every detail of structuring and memorializing the *Premera* settlement, including notice and administration, to ensure a high participation rate from the class members. *Id*. ¶ 60. Ultimately, the claims rate exceeded 9%—an unprecedented rate in data breach cases, which rarely exceed 1% claim rates. *Id*.; *see, e.g., In re The Home Depot Inc. Customer Data Security Breach Litigation,* No. 1:14-md-02583 (N.D. Ga.), ECF No. 181-1 at 25; ECF No. 245-1 at ¶ 3 (~0.3% claims rate); *In re Anthem, Inc. Data Breach Litig*., No. 5:15-md-02617-LHK (N.D. Cal.), ECF No. 1007 at 4; ECF No. 1007-6 at ¶ 2 (~1.7% claims rate). Ms. Wolfson spent numerous hours of uncompensated time monitoring the notice claims process for months after it was launched to ensure high participation. Wolfson Decl. ¶ 60.

Ms. Wolfson and the lawyers at her firm possess a deep knowledge base when it comes to data privacy and data breach litigation, which is a product of their abundant experience litigating class actions involving large data breaches and privacy matters, as described herein. Ahdoot Wolfson, for its part, has been a trailblazer in this area of law and resolved some of the largest data breach and data privacy cases ever.

The proposed PSC firms also bring extensive knowledge of the relevant law, as described in Section IV(A)(2) above and in their attached declarations and CVs. The knowledge gained from these experiences will allow Ms. Wolfson and the proposed PSC to continue working efficiently in the best interests of Plaintiffs and the putative class.

**4.      Proposed Interim Class Counsel and the Proposed PSC Firms Have Demonstrated That They Possess and Will Devote the Necessary Resources to this Litigation**

Ahdoot Wolfson and the proposed PSC firms have already devoted significant human and financial resources to litigating these cases and bringing them to a fair, reasonable, and adequate resolution on behalf of the respective classes. These firms' track record in this litigation, as well as numerous other contingency cases that took years of investment to resolve, supports appointment of Ahdoot Wolfson as Interim Class Counsel and the requested PSC appointments. Fed. R. Civ. P. 23(g)(1)(A)(iv); *see*, *e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *11 (D. Or. July 29, 2019) (noting, in connection with granting preliminary approval, that "[t]he Court specifically selected [Tina Wolfson and co-counsel] for their extensive experience in prosecuting complex class actions"; that class counsel "vigorously prosecuted the case"; and that class counsel "demonstrated their willingness to continue prosecuting this case, including taking this matter to trial if necessary."); *Pappas v. Naked Juice Co of Glendora, Inc.*, No. LA CV11-08276-JAK (PLAx), 2014 WL 12382279, at *13 (C.D. Cal. Jan. 2, 2014) (recognizing AW as "experienced attorneys . . . specializ[ing] in consumer class action matters and have had extensive experience litigating class action issues"; that "[t]hey have demonstrated their competence in the litigation of this case"; and that they "took on the substantial risk of non-payment" while advancing significant costs, in granting motions for final approval of settlement and for attorney's fees and expenses).

**B.      Alternatively, Settling Plaintiffs' Counsel is Best Suited to Be Appointed to Separately Represent Plaintiffs' Claims Against Each Defendant**

In the alternative to the leadership proposal above, if the Court is inclined to separately appoint counsel with respect to each Defendant, the interests of the putative class will be best served by the appointment of Tina Wolfson of Ahdoot & Wolfson, PC, and Ben Barnow of Barnow and Associates, P.C., with respect to Defendant Accellion; Tina Wolfson of Ahdoot & Wolfson, PC, with respect to Defendant Flagstar Bank; and Tina Wolfson of Ahdoot & Wolfson, PC, Matthew B. George of Kaplan Fox & Kilsheimer LLP, and Timothy G. Blood of Blood Hurst & O'Reardon, LLP with respect to Defendant Centene Corporation/Health Net.

1

## V.    CONCLUSION

2      For all of the foregoing reasons, Plaintiffs Grace Beyer, Christopher Hauser, Charles Tyer,

3   Stefanie Burton, John Harbour, Tami Wisnesky, Joweli Vunisa, J. Doe, Douglas Fehlen, Tony Blake,

4   David Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain

5   respectfully request that the Court 1) grant this Motion, 2) enter the Proposed Order submitted herewith,

6   3) appoint Tina Wolfson of Ahdoot Wolfson as Interim Class Counsel, and 4), appoint Ben Barnow of

7   Barnow and Associates, P.C., Timothy G. Blood of Blood Hurst & O'Reardon, LLP and Matthew B.

8   George of Kaplan Fox & Kilsheimer LLP to a Plaintiffs' Steering Committee.

9

10   Dated: September 29, 2022                     Respectfully submitted,

11

12                                                */s/ Tina Wolfson*
                                                  TINA WOLFSON (SBN 174806)
                                                  *twolfson@ahdootwolfson.com*
13                                                ROBERT AHDOOT (SBN 172098)
                                                  *rahdoot@ahdootwolfson.com*
14                                                **AHDOOT & WOLFSON, PC**
                                                  2600 W. Olive Avenue, Suite 500
15                                                Burbank, CA 91505-4521
                                                  Telephone: 310.474.9111
16                                                Facsimile:  310.474.8585

17                                                ANDREW W. FERICH (*pro hac vice*)
                                                  *aferich@ahdootwolfson.com*
18                                                **AHDOOT & WOLFSON, PC**
                                                  201 King of Prussia Road, Suite 650
19                                                Radnor, PA 19087
                                                  Telephone: 310.474.9111
20                                                Facsimile:  310.474.8585

21                                                *Proposed Interim Class Counsel*

22                                                BEN BARNOW (*pro hac vice*)
                                                  *b.barnow@barnowlaw.com*
23                                                ANTHONY L. PARKHILL (*pro hac vice*)
                                                  *aparkhill@barnowlaw.com*
24                                                **BARNOW AND ASSOCIATES, P.C.**
                                                  205 West Randolph Street, Suite 1630
25                                                Chicago, IL 60606
                                                  Telephone: 312-621-2000
26                                                Facsimile:  312-641-5504

27
                                                  TIMOTHY G. BLOOD (SBN 149343)
28                                                *tblood@bholaw.com*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAULA R. BROWN (SBN 254142)
*pbrown@bholaw.com*
JENNIFER L. MACPHERSON (SBN 202021)
*jmacpherson@bholaw.com*
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619.338.1100
Facsimile: 619.338.1101

LAURENCE D. KING (SBN 206423)
*lking@kaplanfox.com*
MATTHEW B. GEORGE (SBN 239322)
*mgeorge@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415.772.4700
Facsimile: 415.772.4707

JOEL B. STRAUSS (*pro hac vice*)
*jstrauss@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212.687.1980
Facsimile: 212.687.7714

*Proposed Plaintiffs' Steering Committee*