Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

ANDREW W. FERICH (*pro hac vice*)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: 310.474.9111
Facsimile:  310.474.8585

*Proposed Interim Class Counsel*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD<br><br>**DECLARATION OF TINA WOLFSON IN SUPPORT OF PLAINTIFFS' NOTICE OF MOTION AND MOTION TO APPOINT TINA WOLFSON AS INTERIM CLASS COUNSEL AND BEN BARNOW, TIMOTHY BLOOD AND MATTHEW GEORGE TO THE PLAINTIFFS' STEERING COMMITTEE**<br><br>Date:      December 8, 2022<br>Time:      9:00 a.m.<br>Judge:    Hon. Edward J. Davila<br>Courtroom: 4, 5th Floor |

I, Tina Wolfson, declare as follows:

1. I am a founding partner at the law firm of Ahdoot & Wolfson, PC ("AW"), counsel for Plaintiffs in this action. I am admitted to practice law in California and before this court and am a member in good standing with the State Bar of California. I make this Declaration in support of Plaintiffs' Notice of Motion and Motion to Appoint Interim Class Counsel and Plaintiffs' Steering Committee.

2. I make this declaration based on my personal knowledge of the matters set forth herein and based on my active participation in all material aspects of this litigation. If called upon to do so, I could and would testify competently thereto.

3. Accellion began to notify its FTA customers who were potentially impacted by the breach and they, in turn, reported that they were impacted by the FTA Data Breach. On or about March 6, 2021, Flagstar Bank publicly acknowledged that it was one of the Accellion clients impacted by the FTA Data Breach. Flagstar has confirmed that the Personal Information of 1,477,411 Flagstar customers (including persons whose mortgages are serviced by Flagstar) and employees may have been compromised, including names, home and email addresses, dates of birth, phone numbers, Social Security numbers, passport information, and account information for certain subsets of the entire class.

4. On or about March 24, 2021, Health Net publicly confirmed that the Personal Information of approximately 1,506,868 individuals was potentially compromised, including some, or all, of the following: addresses, dates of birth, insurance identification numbers, Social Security numbers, and health information.

5. In the aftermath of the breach, I understand that nine additional FTA data breach class actions were filed in this Court. Additional cases were filed in other federal district courts, including in Michigan and Ohio, as well as in state courts, including in Washington. My firm led initiatives to try to organize the litigation, first through outreach and meet and confers with other plaintiffs' counsel.

6. When informal coordination efforts failed, my firm drafted and filed a Section 1407 (28 U.S.C. § 1407) motion for transfer and consolidation with the Joint Panel on Multidistrict Litigation ("JPML Motion").

7.     The JPML Motion sought to transfer all FTA Data Breach actions to this Court. *See In Re: Accellion, Inc, Data Breach Litigation*, MDL No. 3002.

8.     When the JPML Motion proved unsuccessful, Ahdoot Wolfson persisted with efforts to organize this litigation before this Court. First, Ahdoot Wolfson attempted to achieve consolidation of the actions by way of a stipulation to consolidate and set a lead counsel briefing schedule. Some counsel rejected this organization effort. As a result, my firm drafted and filed the Motion to Consolidate all the FTA Data Breach lawsuits pending before this Court. *See* ECF No. 37 (filed Apr. 7, 2021).

9.     Between the filing of the Motion to Consolidate on April 7, 2021, and the Order granting it on March 14, 2022 (ECF No. 83), I initiated separate dialogues with counsel for Kroger, Accellion, Flagstar Bank, and Centene/Health Net, to determine how to best advance these litigations. Ahdoot Wolfson and its respective co-counsel also engaged in extensive meet and confer communications about case management issues with the Defendants.

10.    These separate conversations ultimately led to discussions of whether early resolution could be reached with each Defendant, with any settlement having as its objective 1) securing monetary benefits for impacted persons and 2) implementation of data security prophylactic measures by each Defendant so that the sensitive Personal Information of class members and other members of the public would be protected going forward.

11.    The meet and confer discussions bore fruit over the months: Ahdoot Wolfson ultimately obtained agreement from each Defendant—first Kroger, then Flagstar, then Centene/Health Net, and ultimately Accellion—to attend mediation and attempt to settle each litigation.

12.    The Kroger settlement, the first that Ahdoot Wolfson and co-counsel Barnow and Associates, P.C. negotiated successfully, provided a non-reversionary $5 million common fund against which settlement class members could make a claim for credit monitoring, payment of documented losses, or a *pro rata* cash payment. *See Cochran*, ECF No. 115 (granting final approval).

13. This settlement was extraordinary in view of the reality that Kroger paid the cyber criminals to secure the return of the stolen Personal Information, observed no foul play on the dark web, and agreed to continue to monitor the dark web as part of the Settlement relief.

14. In connection with obtaining final approval of this settlement, Ahdoot Wolfson and Barnow and Associates defeated a motion to intervene, an opposition by intervenor counsel to the motion for preliminary approval, and a subsequent objection to the settlement at final approval.

15. Class counsel diligently oversaw all aspects of the settlement administration and distribution process, and the benefits of the Settlement have already been distributed to the class.

16. The remaining signed settlements are similar in structure to the Kroger settlement, but are tailored to the specifics of each case. Each provides excellent recoveries for the respective classes, including a non-reversionary cash fund ($10 million with respect to Health Net, $8.1 million with respect to Accellion, and $5.9 million with respect to Flagstar Bank) against which class members can elect credit monitoring, a *pro rata* cash payment, or prove up extraordinary losses up to $10,000 with reasonable documentation and attestation.

17. Notably, individuals who were impacted by multiple breaches can make claims in each of the respective settlements, and each class member can make a claim in the Accellion settlement.

18. Pursuant to the Accellion settlement, Accellion has already deposited $4,600,000 into escrow to reserve those funds for the class. Each of these settlements was reached after two formal mediation sessions with Judge Gandhi of JAMS followed by weeks of continued negotiations and substantial confirmatory discovery.

19. Lawyers from Gibbs Law Group LLP and Tousley Brain Stephens PLLC, who filed an Accellion matter in Washington state court, rehashed unavailing attempts to intervene and oppose the Accellion settlement similar to those in the Kroger matter. ECF No. 94. Barnow and I opposed those efforts. ECF No. 97. These efforts to intervene were led by David Berger from the Gibbs firm and Jason Dennett from the Tousley Brain Stephens firm.

20. These lawyers were invited to and attended the first mediation with Accellion. Ahdoot Wolfson communicated with other counsel who filed FTA Data Breach cases about attending the first

mediation, too. Other firms rejected the invitation, and when the second mediation with Accellion was scheduled, Mr. Dennett and Mr. Berger declined to attend that session.

21. Ahdoot Wolfson led efforts to obtain the agreement of all counsel in the consolidated matter for a lead counsel application schedule, but these efforts failed when some of the intervenor counsel and other counsel would not agree. This resulted in submission of competing lead counsel briefing schedules on March 24, 2022. *See* ECF Nos. 92, 93.

22. As mentioned above, before the Court set the lead application briefing schedule, plaintiffs in *Stone v. Accellion*, a Washington state court case against Accellion and the Washington State Auditor's Office (not named in this matter) filed a motion to intervene in this consolidated litigation. ECF No. 94. That motion included an opposition and objection to the motion for preliminary approval of the Accellion settlement filed by Ahdoot Wolfson and Barnow and Associates. *Id.* After scheduling a hearing for the proposed intervenors' motion, in a June 8, 2022 e-mail conversation with defense counsel for Accellion, the Court's clerk scheduled the hearing on the motion for preliminary approval for the settlement with Accellion for December 8, 2022, and requested that Settling Plaintiffs re-file the motion for preliminary approval. Neither I nor anyone from Ahdoot Wolfson or its co-counsel initiated the request with the Court to schedule a hearing for the re-filed Accellion motion for preliminary approval. Ahdoot Wolfson re-filed the preliminary approval motion per the clerk's directions.

23. Counsel for Flagstar and Health Net, not Ahdoot Wolfson or its co-counsel, requested and obtained hearing dates on motions for preliminary approval of their respective settlements.

24. Ahdoot Wolfson and co-counsel filed detailed class action complaints and amended complaints in six separate actions (*Fehlen*, *Beyer*, *Cochran*, *Harbour*, *Doe, Vunisa*). In preparing those pleadings, Ahdoot Wolfson and the proposed PSC firms conducted a detailed factual investigation and evaluation of the potential legal claims and defenses, including investigating the circumstances surrounding the Accellion breach; the public statements made by Accellion, Kroger, Flagstar Bank, Health Net, and other involved entities regarding the breach; and the vulnerabilities in (and reports

regarding) Accellion's unsecure FTA file transfer platform that is at the center of the breach and this litigation.

25. As part of this process, counsel interviewed and vetted hundreds of class members. Counsel continued to investigate all FTA Data Breach developments as they were occurring during late 2020 through early 2021. The pleadings reflect many hours of legal research as to the viability of the claims alleged, Article III standing issues, questions about damages, and potential class certification hurdles.

26. Ahdoot Wolfson has also consulted with experts in connection with this litigation. All of these efforts support the requested appointments.

27. After filing the actions, Ahdoot Wolfson led efforts to informally coordinate the litigation with numerous plaintiffs' counsel (including with multiple would-be intervenor and objector counsel) and counsel for Defendants to engage in early case organization and management.

28. When informal coordination and private ordering efforts failed, Ahdoot Wolfson drafted and filed the JPML Motion and presented oral argument before the Joint Panel on Multidistrict Litigation to advocate for transfer of all FTA Data Breach actions to this District.

29. When the JPML Motion was denied, Ahdoot Wolfson attempted to informally coordinate all the FTA Data Breach cases pending before this Court, including by drafting and circulating a stipulation to consolidate and set a lead counsel application briefing schedule.

30. Multiple plaintiffs' counsel rejected the stipulation, so Ahdoot Wolfson persisted with organization efforts by drafting and filing the Motion to Consolidate. *See* ECF No. 37.

31. During the pendency of the Motion to Consolidate, Ahdoot Wolfson pressed forward on behalf of its clients and class members. Ahdoot Wolfson continued to speak with numerous class members, fielding calls from individuals who received letters confirming they were impacted by one or more of the FTA customer data breaches.

32. I also led the charge in contacting each Defendant's counsel to determine what steps could be taken during the pendency of the Motion to Consolidate to advance the respective litigations and explore other methods of informal case coordination.

33. During these numerous meet and confer calls with Defendants, Ahdoot Wolfson raised the prospect of exploring early resolution in each case. Each Defendant eventually expressed interest in mediation, and Ahdoot Wolfson arranged mediation sessions with Kroger, Accellion, Flagstar Bank, and Health Net. In total, along with their respective co-counsel, Ahdoot Wolfson arranged, advanced costs for, and attended seven formal mediation sessions before a well-respected mediator, Judge Jay Gandhi (Ret.) of JAMS.

34. Ahdoot Wolfson also spearheaded efforts to invite numerous counsel who filed cases against Accellion to the Accellion mediations, but these efforts failed.

35. Substantial efforts went into preparing for the mediations. Prior to the initial mediations with each Defendant, counsel prepared and exchanged mediation briefs with Defendants, and negotiated and obtained informal discovery to inform the mediation and settlement negotiations. Counsel received and analyzed many pages of documents produced by each Defendant to prepare for the initial mediations.

36. Judge Gandhi of JAMS, a highly respected mediator who has mediated numerous high stakes privacy-related cases, including high profile data breaches, conducted all the formal mediation sessions and oversaw weeks of additional post-mediation negotiations in every case.

37. After one mediation session in Kroger, and two sessions with each of Accellion, Flagstar Bank, and Health Net, counsel was able to reach settlements in principle with each of the Defendants.

38. Counsel then spent numerous hours conducting substantial confirmatory discovery to not only verify the relevant facts, but to confirm that each settlement is fair, reasonable, and adequate. Counsel also negotiated the numerous details of each settlement.

39. They also obtained competing bids from class action administrators and negotiated the details of each contract to make sure that the class was getting the best notice and administration service at the best price.

40. Ahdoot Wolfson and the proposed PSC firms prepared draft settlement agreements, claim forms and class notice documents, proposed approval orders, and motions for preliminary

- 6 -

approval for each of the settlements. Counsel also negotiated the terms and wording of each of these documents with the respective Defendants and consulted with the notice expert in finalizing the notice documents.

41. As part of the Accellion settlement, Ahdoot Wolfson and its co-counsel expended significant time and resources working with Accellion to obtain FTA customer lists of affected class members in order to effectuate the most comprehensive notice program with the widest reach.

42. After the settlements and preliminary approval papers were filed, objector counsel attempted to derail the Kroger, Flagstar, and Accellion settlements. Ahdoot Wolfson and their respective co-counsel have opposed these efforts.

43. In the Kroger matter, Plaintiffs defeated a motion to intervene and opposition to preliminary approval, and an objection at final approval. The Kroger Settlement Class has already received the settlement benefits.

44. In the Flagstar and Accellion settlements, counsel faced motions to intervene and oppose preliminary approval. Plaintiffs opposed these similar efforts by objector counsel, but the Court did not rule on these motions.

45. Ahdoot Wolfson and the proposed PSC firms bring together decades of experience in leading complex consumer class actions in general, and privacy class actions, including massive data breaches in particular.

46. Ahdoot Wolfson has led numerous high-profile privacy cases affecting millions of consumers (e.g., *In re Zoom Video Communications, Inc. Privacy Litig.*, *Experian Data Breach Litigation*, *Premera Blue Cross Customer Data Security Breach Litigation, In re Google Location Tracking Litigation, Cochran v. The Kroger Co.*, *In re U.S. Office of Personnel Management Data Security Breach Litig.*), and myriad other types of high stakes consumer litigation, all to great success. *See* Exhibit 1.

47. Ahdoot Wolfson and proposed PSC firms' "knowledge of the applicable law" will provide the class with the most effective and efficient representation. Fed. R. Civ. P. 23(g)(1)(A)(iii).

48. I possess a rare combination of distinguished academic background, over two decades of class action experience (including on the front lines of cutting-edge privacy and large data breach cases), and a deep knowledge of the issues surrounding data breaches. *See* Exhibit 1. This experience will serve the class and the Court here in several respects.

49. I am intimately familiar with the legal issues that are at the forefront of this litigation. This knowledge is derived from Ahdoot Wolfson's extensive legal work in this field, which includes achieving groundbreaking opinions at the trial and appellate court level that have helped develop the law in this emerging area.

50. By way of example, after helping to secure the first favorable motions to dismiss opinions at the trial court level in *In re Home Depot Customer Data Security Breach Litigation*, No. 1:14-md-02583 (N.D. Ga.), Ahdoot Wolfson single-handedly secured the first appellate federal decision after *Comcast v. Behrend*, 569 U.S. 27 (2013) establishing that data breach victims have standing to seek relief in federal court even before a monetary harm manifests. *See Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015). And in *Experian*, as co-lead counsel, Ahdoot Wolfson obtained a motion to dismiss order establishing a duty of care despite a lack of privity and rejecting the economic loss rule defense. *See In re Experian Data Breach Litig.*, No. SACV151592AGDFMX, 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016).

51. Ahdoot Wolfson has been litigating data breach cases, including those involving CMIA claims, since the mid-2000's. *See, e.g., Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546 (2014); *Adlouni v. UCLA Health Systems Auxiliary*, BC589243 (Cal. Super Ct. L.A. Cnty.) (final approval granted in medical data breach settlement creating $2 million settlement fund); *Fero v. Excellus Health Plan, Inc.*, No. 15-cv-06569 (W.D.N.Y.); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *11 (D. Or. July 29, 2019) (noting, in connection with granting preliminary approval, that "[t]he Court specifically selected [Tina Wolfson and co-counsel] for their extensive experience in prosecuting complex class actions;" that class counsel "vigorously prosecuted the case;" and that class counsel "demonstrated their willingness to continue prosecuting this case, including taking this matter to trial if necessary.").

52. In *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 908 (S.D. Cal. 2020), I successfully argued against a motion to dismiss, resulting in a seminal CMIA standing decision in data breach litigation relating to protected health information. There, I obtained denial of a motion to dismiss a CMIA claim on standing grounds after the court endorsed an inference that criminals "actually viewed" CMIA-protected information, holding that "it is reasonable to infer the [stolen] information could have been viewed or copied once available on the internet." *Id*.

53. Additionally, Ahdoot Wolfson's knowledge base has been enhanced by working with many leading experts in this field, including developing new experts and damages theories that have expanded potential avenues of recovery for data breach victims. This base of knowledge will be critical in determining which experts are best suited to represent the interests of this class after additional discovery is conducted into the cause, source, and scope of the breach.

54. The knowledge that myself and the other lawyers at my firm possess relating to data privacy litigation and legal issues, coupled with our vast experience, allows us to *efficiently* manage major litigation, including high-profile data breach class action litigation. Respectfully, this differentiates Ahdoot Wolfson from the other applicants. My experience in litigating (and resolving) the largest data breach cases on record has already had and will continue to have direct benefits here.

55. For example, through designing, negotiating, and administering other large-scale data breach settlements, and interviewing thousands of data breach victims across the United States, Ahdoot Wolfson has developed an intimate understanding of: (1) litigation goals of data breach victims, including recovery of cash relief for time and effort spent responding to a breach; (2) the most impactful products available to help reduce the risk of future harm, such as credit monitoring and identity restoration services, and the costs of procuring such services from different vendors; (3) obtaining *meaningful* injunctive relief that is narrowly tailored to the facts of each case to prevent reoccurrence of a breach; and (4) access to important data such as settlement claims rates for different forms of relief that provides meaningful insight on how to approach negotiations as well as how to achieve settlement processes that will get the most money into the class members' hands.

56. The *Premera* data breach litigation is a relevant case study in the benefits and efficiencies my firm brings to bear in large class action litigation. As a member of the leadership team in this heavily litigated Multi-District Litigation affecting nearly 11 million class members, Ahdoot Wolfson vetted all the plaintiffs for inclusion in the consolidated complaint, and successfully briefed and argued the CMIA issues on the Motion to Dismiss.

57. Ahdoot Wolfson's efforts were integral to the heavy discovery efforts and the numerous meet and confers, and motions to compel, including highly technical factual issues as well as privilege issues surrounding the forensics report. Ahdoot Wolfson helped prepare, conducted, and defended about a third of the more than 50 depositions, including information security officers and technical and damages experts. I also worked with experts to develop the class damages approaches that accounted for the loss of privacy in the highly sensitive medical information, the market value of medical information and the risk of medical identity fraud.

58. While the case was hotly contested, and defense counsel swore to never settle unless it was on a purely claims-made basis (no non-reversionary fund), I continued the dialogue and was instrumental in getting Premera to the negotiation table along with its several tiers of carriers. I then spear-headed the almost year-long negotiation process, which included five in-person sessions and additional endless hours of shuttle negotiations with two mediators simultaneously, one of whom was an insurance coverage expert.

59. An agreement in principle was reached after the parties had briefed and argued the class certification motion, and the Court's ruling was imminent. I had briefed and argued the CMIA class certification issues. The settlement, which was valued at $74 million and included a $32 million non-reversionary fund, was to date the largest MDL data breach settlement *per capita* and offered all claimants state of the art Credit Monitoring and Insurance Services, a set cash amount (with California residents entitled to a larger amount as a result of the CMIA claims), or, alternatively, extraordinary documented damages. Premera was also obligated to overhaul its cybersecurity practices with meaningful injunctive relief.

60. I was integrally involved in every detail of structuring and memorializing the *Premera* settlement, including notice and administration, to ensure a high participation rate from the class members. Ultimately, the claims rate exceeded 9%—an unprecedented rate in data breach cases, which rarely exceed 1% claim rates. *See, e.g., In re The Home Depot Inc. Customer Data Security Breach Litigation,* No. 1:14-md-02583 (N.D. Ga.), ECF No. 181-1 at 25; ECF No. 245-1 at ¶ 3 (~0.3% claims rate); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK (N.D. Cal.), ECF No. 1007 at 4; ECF No. 1007-6 at ¶ 2 (~1.7% claims rate). I spent numerous hours of uncompensated time monitoring the notice claims process for months after it was launched to ensure high participation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of September, at Los Angeles, California.

*/s/ Tina Wolfson*

Tina Wolfson

# EXHIBIT 1





### Tina Wolfson, Founding Partner

Ms. Wolfson was born in the former Soviet Union and her family escaped when she was eleven years old. Seven years after arriving to the United States as an indigent political refugee, without speaking any English, she attended Columbia College and then Harvard Law School (class of 1994), graduating both *cum laude*.

Ms. Wolfson began her civil litigation career at Morrison & Foerster, LLP, where she defended major corporations in complex actions and represented indigent individuals in immigration trials as part of the firm's *pro bono* practice. She then gained further invaluable litigation and trial experience at a boutique firm, focusing on representing plaintiffs on a contingency basis in civil rights and employee rights cases.

In March 1998, Ms. Wolfson and Robert Ahdoot founded Ahdoot & Wolfson, PC ("AW"), now a nationally recognized law firm that specializes in complex and class action litigation, with a focus on privacy rights, consumer fraud, anti-competitive business practices, employee rights, defective products, civil rights, and taxpayer rights. The attorneys at AW are experienced litigators who have often been appointed by state and federal courts as lead class counsel, including in multidistrict litigation. In over two decades of its successful existence, AW has successfully vindicated the rights of millions of class members in protracted, complex litigation, conferring hundreds of millions of dollars to the victims, and affecting real change in corporate behavior.

#### Privacy Class Actions

Ms. Wolfson has been prosecuting cutting edge privacy cases since the late 1990s, when she successfully advocated for the privacy rights of millions of consumers against major financial institutions based on the unlawful compilation and sale of detailed personal financial data to third-party telemarketers without consumers' consent. While such practices later became the subject of Gramm-Leach-Bliley Act regulation, they were novel and hidden from public scrutiny at the time Ms. Wolfson was prosecuting them. Her work shed light on how corporations and institutions collect, store, and monetize mass data, leading to governmental regulation. Ms. Wolfson has been at the forefront of privacy-related litigation since then.

As co-lead counsel in the *Zoom Video Communications, Inc. Privacy Litigation*, No. 5:20-cv-02155-LHK (N.D. Cal.) (Hon. Lucy H. Koh), Ms. Wolfson achieved an $85 million settlement, that was preliminarily approved by Judge Koh on October 21, 2021. The Settlement provides monetary relief to Zoom users who submit a claim for payment and comprehensive injunctive relief which addresses the privacy issues on which Plaintiffs' claims were based.

As co-lead counsel in *Rivera v. Google LLC* (Cook County, Illinois, Hon. Ann Loftus), Ms. Wolfson's firm achieved a settlement in this biometric privacy class action that provides for a $100 million non-reversionary fund settlement with comprehensive injunctive relief. The settlement recently received final approval.

As co-lead counsel in the *Experian Data Breach Litigation*, No. 8:15-cv-01592-AG-DFM (C.D. Cal.) (Hon. Andrew J. Guilford), which affected nearly 15 million class members, Ms. Wolfson achieved a settlement conservatively valued at over $150 million. Each class member is entitled to two years of additional premium credit monitoring and ID theft insurance (to begin whenever their current credit monitoring product, if any, expires) plus monetary relief (in the form of either documented losses or a default payment for non-documented claims). Experian is also providing robust injunctive relief. Judge Guilford praised counsel's efforts and efficiency in achieving the settlement, commenting "You folks have truly done a great job, both sides. I commend you."

As an invaluable member of a 5 firm Plaintiffs' Steering Committee ("PSC") in the *Premera Blue Cross Customer Data Sec. Breach Litigation*, No. 3:15-cv-2633-SI (D. Or.) (Hon. Michael H. Simon), arising from a data breach disclosing the sensitive personal and medical information of 11 million Premera Blue Cross members, Ms. Wolfson was instrumental in litigating the case through class certification and achieving a nationwide class settlement valued at $74 million.

In *The Home Depot, Inc., Customer Data Sec. Breach Litigation*, No. 1:14-md-02583-TWT (N.D. Ga.) (Hon. Thomas W. Thrash Jr.), Ms. Wolfson served on the consumer PSC and was instrumental in achieving a $29 million settlement fund and robust injunctive relief for the consumer class. As co-lead counsel in *Gordon v. Chipotle Mexican Grill, Inc.*, No. 1:17-cv-01415-CMA-MLC (D. Colo.) (Hon. Christine M. Arguello), Ms. Wolfson secured a settlement for the nationwide class that provides for up to $250 in claimed damages or $10,000 in extraordinary damages.

She currently serves on the PSC in *Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litigation*, No. 2:19-md-2904-MCA-MAH (D.N.J.) (Hon. Madeline Cox Arleo), a class action arising out of a medical data breach that disclosed the personal and financial information of over 20 million patients, as well as many other data breach class actions.

Ms. Wolfson's efforts have shaped privacy law precedent. As lead counsel in *Remijas v. Neiman Marcus Group, LLC*, No. 14-cv-1735 (N.D. Ill.) (Hon. Sharon Johnson Coleman), Ms. Wolfson successfully appealed the trial court's order granting a motion to dismiss based on lack of Article III standing. The Seventh Circuit's groundbreaking opinion, now cited in every standing brief, was the first appellate decision to consider the issue of Article III standing in data breach cases in light of the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013) and concluded that data breach victims have standing to pursue claims based on the increased risk of identity theft and fraud, even before that theft or fraud materializes in out-of-pocket damages. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (reversed and remanded).

Similarly, in the *U.S. Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-1394-ABJ (D.D.C.) (Hon. Amy Berman Jackson), Ms. Wolfson briefed and argued, in part, the granted motions to dismiss based on standing, and briefed in part the successful appeal to the D.C. Circuit.

Ms. Wolfson also serves as co-lead interim class counsel in the *Google Location History Litigation*, No. 5:18-cv-5062-EJD (N.D. Cal.) (Hon. Edward J. Davila), which alleged Google's unlawful collection and use of mobile device location information on all Android and iPhone devices. Plaintiffs filed a motion for

reconsideration of the Court's dismissal order in light of the Ninth Circuit's opinion in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020).

Ms. Wolfson and AW are also serving as plaintiffs' counsel in consumer privacy rights cases involving the right to control the collection and use of biometric information, successfully opposing motions to dismiss based on lack of standing. *See, e.g.*, *Azzano v. Google LLC*, No. 2019-CH-11153 (Ill. Cir. Ct.) (Hon. Anna M. Loftus); *Miracle-Pond v. Shutterfly, Inc.*, No. 1:19-cv-4722 (N.D. Ill.) (Hon. Mary M. Rowland); *Acaley v. Vimeo, Inc.*, No. 1:19-cv-7164 (N.D. Ill.) (Hon. Matthew F. Kennelly).

In addition, Ms. Wolfson and AW have served and are serving as plaintiffs' counsel in class actions enforcing consumer rights under the Telephone Consumer Protection Act of 1991 ("TCPA"), such as *Chimeno-Buzzi v. Hollister Co.*, No. 1:14-cv-23120-MGC (S.D. Fla.) (Hon. Marcia G. Cooke) (class counsel in $10 million nationwide settlement) and *Melito v. American Eagle Outfitters, Inc.*, No. 1:14-cv-02440-VEC (S.D.N.Y.) (Hon. Valerie E. Caproni) ($14.5 million nationwide settlement).

### Other Notable Class Actions

In *Eck v. City of Los Angeles*, No. BC577028 (LASC) (Hon. Ann I. Jones), AW achieved a $295 million class settlement in a case alleging that an 8% surcharge on Los Angeles electricity rates was an illegal tax. Final settlement approval was affirmed on appeal in October 2019.

In *Pantelyat v. Bank of America, N.A.*, No. 1:16-cv-08964-AJN (S.D.N.Y.) (Hon. Alison J. Nathan), a class action arising from allegedly improper overdraft fees, AW, serving as sole class counsel for plaintiffs, achieved a $22 million class settlement, representing approximately 80% of total revenues gleaned by the bank's alleged conduct.

In *Kirby v. McAfee, Inc.*, No. 5:14-cv-02475-EJD (N.D. Cal.) (Hon. Edward J. Davila), a case arising from McAfee's auto renewal and discount practices, AW and co-counsel achieved a settlement that made $80 million available to the class and required McAfee to notify customers regarding auto-renewals at an undiscounted subscription price and change its policy regarding the past pricing it lists as a reference to any current discount.

In *Lavinsky v. City of Los Angeles*, No. BC542245 (LASC) (Hon. Ann I. Jones), a class action alleging the city unlawfully overcharged residents for utility taxes, Ms. Wolfson and AW certified the plaintiff class in litigation and then achieved a $51 million class settlement.

As co-lead counsel in *Berman v. Gen. Motors, LLC*, No. 2:18-cv-14371-RLR (S.D. Fla.) (Hon. Robin L. Rosenberg) (vehicle oil consumption defect class action), AW achieved a $40 million settlement. In *McKnight v. Uber Technologies, Inc.*, No. 4:14-cv-05615-JST (N.D. Cal.) (Hon. Jon S. Tigar), AW achieved a $32.5 million settlement for the passenger plaintiff class alleging that Uber falsely advertised and illegally charged a "safe rides fee."

*In the Apple Inc. Device Performance Litigation*, No. 5:18-md-2827-EJD (N.D. Cal.) (Hon. Edward J. Davila), Ms. Wolfson is serving on the Plaintiffs' Executive Committee in a class action arising from Apple's alleged practice of deploying software updates to iPhones that deliberately degraded the devices' performance and battery life. Judge Davila preliminarily approved a class action settlement of $310 million minimum and $500 million maximum.

Ms. Wolfson also serves on the Plaintiffs' Executive Committees in *Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 2:19-md-2921-BRM-JAD (D.N.J.) (Hon. Brian R. Martinotti), a class action alleging textured breast implants caused a rare type of lymphoma and in *ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-2905-JAK-FFM (C.D. Cal.) (Hon. John A. Kronstadt), a class action alleging a dangerous defect in car airbag component units.

Ms. Wolfson's current work on civil rights class actions include achieving class certification in *Novoa v. The Geo Group, Inc.*, No. 5:17-cv-2514-JGB-SHK (C.D. Cal.) (Hon. Jesus G. Bernal) (challenging private prison's alleged practices of forced labor against immigration detainees) and ongoing litigation in *Williams v. City of New York*, No. 1:17-cv-2303-RJD-SM (E.D.N.Y.) (Hon. Raymond J. Dearie) (challenging allegedly unconstitutional prison conditions at Rikers Island and other facilities in New York State).

Ms. Wolfson frequently lectures on numerous class action topics across the country and currently serves as a Ninth Circuit Lawyer Representative for the Central District of California, as Vice President of the Federal Litigation Section of the Federal Bar Association, as a member of the American Business Trial Lawyer Association, as a participant at the Duke Law School Conferences and the Institute for the Advancement of the American Legal System, and on the Board of Public Justice. Ms. Wolfson is a member of the New York, California, and District of Columbia Bar.