# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**PHILLIP ANGUS, ET AL.,**

               Plaintiffs,           **HONORABLE ARTHUR J. TARNOW**

   v.

                          **No. 21-10657**

**FLAGSTAR BANK, FSB,**

               Defendant.
_____/


**MOTION HEARING**


**Friday, July 16, 2021**


Appearances:

FOR THE PLAINTIFF:         JOHN YANCHUNIS, ESQ.
                       ANDREW MCGUINESS, ESQ.
FOR THE DEFENDANT:        ANDREW FERICH, ESQ.
                       NICHOLAS COULSON, ESQ.
                       WILLIAM RIDGEWAY, ESQ.
                       SIMON GRILLE, ESQ.
                       SEAN P. MCNALLY, ESQ.

- - -

*To obtain a certified transcript, contact:*
*Lawrence R. Przybysz, MA, CSR, RPR, RMR, CRR*
*Official Federal Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 124*
*Detroit, Michigan 48226*
*(313)414-4460. Lawrence_Przybysz@mied.uscourts.gov*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

Case 2:21-cv-11165-DPH-EAS ECF No. 48, PageID.787 Filed 10/06/22 Page 3 of 25

*Motion Hearing*
*Friday, July 16, 2021*

**I N D E X**

-   -   -

Motion Hearing......................................p. 3

*21-10657, 21-11165, 21-111652; Phillip Angus, et al. v.*
*Flagstar Bank, FSB*

*Motion Hearing*
*Friday, July 16, 2021*

Page 3

```
 1                              Detroit, Michigan

 2                              Friday, July 16, 2021

 3                              12:45 p.m.

 4                       -    -    -

 5         THE COURT CLERK:  Calling case number 21-10657, Angus

 6    versus Flag Star Bank.  Will counsel please place their

 7    appearances on the record?

 8         MR. YANCHUNIS:  John Yanchunis for the Angus case.

 9         MR. COULSON:  Good afternoon, your Honor.  This is

10    Nick Coulson for the recently filed Tyler case. And along with

11    me is my co-counsel Mr. Ferich who will be moving for admission

12    but our understanding is that you permitted him to participate.

13         MR. FERICH:  Good afternoon, your Honor.

14         THE COURT:  Good afternoon. Who is else is here?

15         MR. RIDGEWAY:  Good afternoon, your Honor.  You also

16    have Bill Ridgeway on behalf of Defendant Flagstar Bank.

17         MR. MCNALLY:  Good afternoon, your Honor.  Sean

18    McNally, co-counsel on behalf of Defendant Flag Star Bank.

19         MR. GRILLE:  Simon Grille on behalf of the Hawkins

20    plaintiffs as well.

21         THE COURT CLERK:  Technically we're going to put this

22    record on the record so I'm going to call the cases.  Case

23    number 21-10657, Angus versus Flagstar; case number 21-11165,

24    Hawkins versus Flagstar; and 21-11652 Tyler versus Flagstar.

25         THE COURT:  Okay.  Had to rearrange the courtroom
```

                                                      Page 4

1   here.  Okay.  So how many cases do we have represented here?

2   Five or four?

3           **MR. MCGUINESS:**  Three, I think.  You had previously

4   consolidated, I think, four cases.

5           **MR. YANCHUNIS:**  John Yanchunis, your Honor.  The

6   Angus case is a consolidation of those cases which were filed

7   before the most recent two for which we filed a consolidated

8   class action Complaint.  Information filed on June 14th.

9           **THE COURT:**  Okay.  How many -- let me ask in a

10  different way, how many case file numbers are represented?

11          **MR. YANCHUNIS:**  Just three, your Honor.

12          **THE COURT:**  The consolidated one only has one case

13  file number or two or three?

14          **MR. YANCHUNIS:**  John Yanchunis, again, Your Honor.

15  The consolidated --

16          **THE COURT:**  Pardon?

17          **MR. YANCHUNIS:**  The consolidated class action

18  Complaint has only one number now as a result of the

19  consolidation.

20          **THE COURT:**  Okay.  And how many were before we

21  consolidated?  Two or three?

22          **MR. YANCHUNIS:**  There were three cases, your Honor.

23          **THE COURT:**  Okay.  We are up to five plaintiffs.

24  Right?

25          **MR. YANCHUNIS:**  There is actually three cases but

*Motion Hearing*
*Friday, July 16, 2021*

Page 5

1    actually there was nine plaintiffs in the three cases that we

2    consolidated in the consolidated class action Complaint.

3         **MR. MCGUINESS:**  There were three plaintiffs in

4    Hawkins, Judge.

5         **MR. FERICH:**  And, Judge, there are three plaintiffs

6    in the recently filed Potter case.

7         **THE COURT:**  You will excuse me laughter.  But I'm

8    reminded of who is on first with Abbott and Costello.  And some

9    of you may be old enough to remember that and some of you may

10   have seen it on Nickelodeon or some other -- maybe The History

11   Channel.  But there are a lot of plaintiffs.  I got that.

12       All right.  There is one case that we just picked up today

13   from Judge Murphy, is that right?  Ted, you can just nod.  Ted

14   is the master of the case in chambers.  And who is representing

15   the plaintiff in that case?  That was Judge Murphy's case?

16        **MR. COLSON:**  Your Honor, this is Nick Colson. That is

17   myself on my co-counsel, Mr. Ferich.

18        **THE COURT:**  Only two of you?

19        **MR. FERICH:**  Your Honor, it's me, Andrew Ferich along

20   with my partners, Tina Wilson and (unintelligible) who regret

21   that they could not be here today. They have conflicts.

22        **THE COURT:**  This is just -- not even scheduling

23   conference, but a sorting out conference.  I think you are

24   capable of doing by yourself.  And I will put on the record

25   that I have no idea who you are from past experience.  What

*21-10657, 21-11165, 21-111652; Phillip Angus, et al. v.*
*Flagstar Bank, FSB*

Page 6

1  firm are you with.

2       **MR. FERICH:**  With the Duke Wilson.  We are a Los

3  Angeles based law firm that does class action law suits.

4       **THE COURT:**  Delta Air Lines is probably upset that

5  you were going to fly Zoom.  Anyone from Detroit on this

6  conference?

7       **MR. MCGUINESS:**  I am, your Honor.  Andrew McGuiness.

8  I am a solo practitioner.  I am doing class action plaintiff

9  work primarily.

10       **THE COURT:**  I don't have to disclose I had breakfast

11  with Dykema last week.

12       **MR. MCGUINESS:**  You don't.  Nor that you used to live

13  on Muirland and still do and I grew up on Wildemere, Judge.

14  That is neither here nor there, Judge.

15       **THE COURT:**  I think that's a HIPPA violation.

16       **MR. COULSON:**  Nick Coulson also from a Detroit based

17  firm although appearing here on somewhat short notice from Las

18  Vegas today.  But my firm Allen Dubin is also based in downtown

19  Detroit.

20       **MR. YANCHUNIS:**  Your Honor -- not Detroit.  My

21  partner --

22       **THE COURT:**  Wait, wait.  Is that the Dubin -- are you

23  related to the Dubin who teaches at U of D?

24       **MR. COULSON:**  I wish I had a dollar for every time I

25  was asked that question, your Honor, but apparently there is no

Page 7

1   recent familial relationship there.

2           **THE COURT:**  Okay.  Anyway, in terms of Dykema, he was

3   impressed that you were coming to court even though you have

4   been separated from the firm.  But he was very slow to pay for

5   breakfast and he was very disheveled.  For you out of town

6   attorneys, Mr. Dykema has probably been dead for a hundred

7   years or 50 years.  I once said that to an attorney.  The

8   attorney didn't like something I did and filed a pleading where

9   he referred to the fact that I said that about Mr. Dykema.  And

10  I knew I was in trouble.  So I hope none of you think that I

11  actually had breakfast with a dead man.

12      Anyway, I cut off several of you.  Who has anything more

13  to say before I ask some more questions?

14          **MR. MCNALLY:**  Your Honor, also Sean McNally from

15  Troutman Pepper, formerly Pepper Hamilton.

16          **THE COURT:**  What is it called now?

17          **MR. MCNALLY:**  Troutman Pepper.

18          **THE COURT:**  Did Hamilton get traded?

19          **MR. MCNALLY:**  Hamilton was traded, that's correct.

20          **THE COURT:**  This was merger of two oversized firms?

21          **MR. MCNALLY:**  Right in the middle of a pandemic.

22          **THE COURT:**  You got to get around the firm and meet

23  your new partners and associates.

24          **MR. MCNALLY:**  We are going to have our first

25  in-person meeting in October but we have been doing a lot of

Page 8

1   deps which has been a very interesting experience.

2          **MR. YANCHUNIS:**  Your Honor, my partner --

3          **THE COURT:**  I think what you refer to as deps is an

4   integral part of the practice of law.  I have had so many

5   attorneys at these kind of conferences appreciating not having

6   to fly in from around the country.  And even for the local

7   firms not having that fifteen minute, half hour drive and

8   worrying about a park space, etc.  And the clients are happy

9   because it's less billable hours.  Okay.  I think

10  Mr. Yanchunis?

11         **MR. YANCHUNIS:**  Yanchunis.  Yes.  I was just going to

12  say that my partner, Mike Hanna who is at our Southfield office

13  was unable to come here today.

14         **THE COURT:**  Okay. Where are you?

15         **MR. YANCHUNIS:**  So I'm in Tampa, Florida.  I have

16  been a member of this district for some time.  I litigated

17  previously in the district.

18         **THE COURT:**  Okay.  Do you want to give your phone

19  number? Maybe these guys will hire you.  Anyone else? Okay.

20         The only motion that is pending as I understand -- and the

21  consolidated cases, and there are objections filed by the

22  defense.  And if the defendant can explain to me why it's any

23  of your business, I would be interested because normally in all

24  sorts of cases when, say, an attorney wants to withdraw or

25  appear or files a motion, it's between attorney and the client

Page 9

1   as opposed to the attorney and the defense attorney.  So who is

2   going speak for the defendant?

3           **MR. RIDGEWAY:**  Bill Ridgeway on behalf of Flag Star

4   Bank.  I am happy to speak to that. So Flagstar Bank, we have

5   don't oppose the motion to consolidate.  We think that makes

6   sense to consolidate the pending cases here.  And in terms of

7   the appointment of interim counsel, our position is that it's

8   premature and that there is an opportunity to see how these

9   cases, once they are consolidated and see which parties remain,

10  that is a point that would be most efficient to designate lead

11  counsel.  But we don't take a position with respect to lead

12  counsel.

13          **THE COURT:**  Which city are you from?

14          **MR. RIDGEWAY:**  From Chicago.

15          **THE COURT:**  You are clearly not from the Ninth

16  Circuit because Former Judge Kasuscki (ph), I think he is a

17  former Judge now, I saw him on TV at the Ninth Circuit.  And he

18  asked a question and he got an answers.  And the Judge's

19  response was, now that you answered the question you wanted me

20  to ask, let's try the question that I am asking.  And let me

21  put it in more street terms.  Why is it your business as to who

22  is representing the plaintiff?  I under your reasoning.  But

23  you haven't addressed the standing issue.

24          **MR. RIDGEWAY:**  Your Honor, our position -- so our

25  position is not that we were taking a position with respect to

*Motion Hearing*
*Friday, July 16, 2021*

Page 10

1    who should be lead counsel, just to be clear.  We -- our only

2    request was that the motion was premature given the other

3    plaintiffs that have appeared here and that -- so that was our

4    basis.

5          **THE COURT:**  Do you want to move to the other side of

6    the screen and represent the other plaintiffs who have not

7    spoken?

8          **MR. RIDGEWAY:**  I do not, your Honor.

9          **THE COURT:**  Okay.  And what about the other

10   plaintiffs?  Do you have any position?

11         **MR. FERICH:**  Your Honor, this is Andrew Ferich. As

12   you know, we recently filed a new case.  Currently there was

13   two leadership applications pending, one from Mr. Yanchunis'

14   camp, one from Mr. Grille, Simon Grille's camp.  We intend to

15   file a third leadership application hopefully at some point

16   today or early next week seeking appointment of one of our

17   lawyers, Ms. Tina Wilson, as lead counsel as well.

18         **THE COURT:**  Well, you may or may not have had time in

19   seeing that the first three cases, the attorneys got together

20   and agreed to work together as joint lead counsel.  Now, as I

21   understand the theory of the case, we could have thousands of

22   plaintiffs.  Is that accurate?  It's a breach of

23   confidentiality.

24         **MR. MCGUINESS:**  Yes, sir.

25         **MR. FERICH:**  Yes, your Honor.

*21-10657, 21-11165, 21-111652; Phillip Angus, et al. v.*
*Flagstar Bank, FSB*

*Motion Hearing*
*Friday, July 16, 2021*

Page 11

1      **THE COURT:**  And every person who files a case wants

2   to be lead counsel. I wonder why.  Certainly not a reflection

3   on the ability of the first attorney.  It's more a reflection

4   on control of the case and who gets the hours, and, therefore

5   successful, who gets to be compensated.  I'm not sure why this

6   is not a multi-district case.  I know they rejected it.  I have

7   been informed of what the Order said and I look at it from the

8   other side.  And I don't want to end up with a thousand cases.

9   I technically retired.  I am a Senior Judge.  And I didn't stay

10  active to administer a thousand cases or whatever the number

11  is.  But there is only one motion in front of me.  Do you, the

12  motion makers, seekers of being lead counsel, have any

13  suggestions?

14      **MR. YANCHUNIS:**  Your Honor, not only did the first

15  three cases filed with your Honor work together, we filed an

16  operative Complaint that advances claims on behalf of not only

17  the plaintiffs but also the punitive class which would

18  encompass each of the subsequent file cases.  And we would ask

19  the Court to tender an order appointing us as interim class

20  counsel and let's move the case forward.  An answer or motion

21  to dismiss is due on the 28th of July and we think the case

22  ought to move forward expeditiously.

23      **THE COURT:**  Okay.  We have already consolidated the

24  first three case you told me.

25      **MR. YANCHUNIS:**  Yes, sir.

*21-10657, 21-11165, 21-111652; Phillip Angus, et al. v.*
*Flagstar Bank, FSB*

Page 12

1      **THE COURT:** That means that my clerk --

2      **MR. MCGUINESS:** If I may, your Honor. Andrew

3 McGuinness. There are actually two motions in front of you,

4 your Honor. That is the only point I wanted to make. There is

5 a second motion for consolidation and lead counsel.

6      **THE COURT:** When you speak, you are speaking about

7 the fourth case?

8      **MR. MCGUINESS:** The Hawkins case.

9      **THE COURT:** No, no. Don't do that to me. I am good

10 with numbers. One, two, three, four.

11      **MR. MCGUINESS:** It would be the fourth case.

12      **THE COURT:** I am not going to memorize 1,000 names.

13      **MR. MCGUINESS:** I got you. It would be the fourth

14 filed case in this district even though the counsel application

15 involves cases that have been filed sooner than that in other

16 districts.

17      **THE COURT:** Sooner than one, two and three?

18      **MR. MCGUINESS:** I believe is yes, your Honor.

19 Mr. Grille and Mr. Yanchunis can correct me if I'm wrong.

20      **THE COURT:** Pardon?

21      **MR. YANCHUNIS:** I filed the first filed case, your

22 Honor.

23      **THE COURT:** In any district?

24      **MR. YANCHUNIS:** In any district against Flagstar

25 Bank.

Page 13

1    **THE COURT:**  Are you correcting it now or is there a

2  dispute on that?

3    **MR. FERICH:**  Your Honor, if I may, not only is there

4  a dispute on that but my firm, using the way you are

5  approaching this on the numbers, we filed the most recent fifth

6  filed case.  We are actively involved in the litigation

7  involving Flagstar as well as the third party contractor that

8  was impacted by this large data breach.  And we have cases,

9  four of them, actually, elsewhere involving this data breach.

10  One of those actions is in the Northern District of California.

11  It's called the Buyer (ph) case and it was filed very early on

12  in March of this year.  And it names Flag Star Bank as a

13  defendant as well.  So we have been at the forefront of these

14  cases as well.

15    **THE COURT:**  Stop.  I am trying to keep it simple.

16  Mr. Yanchunis, when did you file the first case?

17    **MR. YANCHUNIS:**  March 25th.

18    **THE COURT:**  When is the one you are talking about,

19  Mr. Ferich?

20    **MR. FERICH:**  I believe it was March 30th, your Honor.

21    **THE COURT:**  Which comes first?  The 25th or the 30th?

22    **MR. FERICH:**  The 25th, your Honor.

23    **THE COURT:**  That one was a lawyer-like question

24  because I know the answer.  Okay.  So does anyone have a filing

25  before March 25th?

Page 14

1   **MR. FERICH:**  Your Honor, we have cases involving the
2   larger data breach that don't involve Flagstar Bank that were
3   filed prior to the 25th bullet not as to Flag Star Bank, no.

4   **THE COURT:**  Okay.  And I don't have any of those
5   cases against the third party contractor?

6   **MR. FERICH:**  That's correct, to my knowledge.

7   **THE COURT:**  Okay.  So there is no reason to dispute
8   that case number one, that I call case number one is the
9   earliest case against Flag Star anywhere in the country.  Fair
10  statement?

11  **MR. YANCHUNIS:**  It's fair to me.

12  **THE COURT:**  Well, all right.  I am inclined to grant
13  the lead counsel through the attorneys -- well, who filed the
14  motion and commend them for working together.  And if there is
15  a problem, the other attorneys can bring to to my attention and
16  it would be added on or substituted for lead counsel.  If you
17  will present an Order, I will sign it.

18  **MR. YANCHUNIS:**  I will send that to chambers
19  promptly.  Thank you, Judge.

20  **THE COURT:**  Okay.  What else should we discuss?

21  **MR. YANCHUNIS:**  I have nothing to add, your Honor.

22  **THE COURT:**  Okay.  Hang on.  How about cases four and
23  five?  Can do you a consolidated complaint with cases one and
24  three, or is it necessary?  What are your thoughts?  Four and
25  five?

Page 15

1       **MR. GRILLE:**  Speaking for case number four, your
2   Honor, I do think the consolidated case would be appropriate.
3   I mean, the consolidated Complaint.  And we can work with
4   Mr. Yanchunis and his team to get that done expeditiously.  We
5   put in a competing leadership application as my co-counsel, Mr.
6   McGuiness, explained because we believe we could provide a
7   leadership structure that is more efficient.  But understanding
8   the comments by the Court, we are prepared to work with
9   Mr. Yanchunis and his team.

10       **THE COURT:**  What about five?

11       **MR. FERICH:**  Your Honor, we are prepared to work with
12   Mr. Yanchunis and his team.  We had intended as I mentioned
13   earlier to submit the application.  We believe that our firm is
14   qualified to lead as well, but with the instruction of the
15   Court, we understand --

16       **THE COURT:**  Well, let me say this.  I believe your
17   firm is qualified.  I believe the case number for the firm is
18   qualified.  If you get too many leaders, you have no followers.
19   And I am convinced that both four and five, Mr. Ferich and
20   Mr. Grille, whether contribute mightily to the team that is
21   going to be in leadership.  And if there is a serious dispute
22   you can bring it to my attention and I would reconsider the
23   ruling today.  But I just want to get the case -- I think the
24   word you used was expeditiously -- and I think I know what that
25   means and I agree with you.  Is there anything else we have to

*Motion Hearing*
*Friday, July 16, 2021*

Page 16

1   talk about?  You will get that consolidation together.  What do

2   I do about the new cases that are bound to be filed?  At least

3   the ones filed in Detroit?  Do I just get -- can the leadership

4   team take care of consolidating those if I accept jurisdiction

5   under the local court rule?

6           **MR. YANCHUNIS:**  I think that would be appropriate,

7   your Honor.  At some point we are going to see a duplication of

8   what is already in the first Complaint.  Working together with

9   both Mr. Grille's firm and Mr. Ferich's firm we will come up

10  with a Complaint if not already done so to include their class

11  representatives to ensure we covered the landscape and I think

12  any subsequent case certainly I think would be included.

13          **THE COURT:**  What sort of relief are you looking for

14  if you are successful ultimately whether I certify it as a

15  class or not, what would each individual under your theory be

16  entitled to?

17          **MR. YANCHUNIS:**  So I just spent two days in the

18  Eastern District of Virginia arguing the very same thing in

19  motions for class certification.  One significant form of

20  relief is injunctive relief, the implementation of measures to

21  ensure that going forward, this will never happen again since

22  as the Court knows --

23          **THE COURT:**  Stop.  By injunctive relief you're

24  talking about upgrading the software.  The protection of the

25  data?

*Motion Hearing*
*Friday, July 16, 2021*

                                                          Page 17

1          **MR. YANCHUNIS:**  It would be in addition, training to

2     ensure that there is an appreciation for legacy equipment and

3     then the implementation --

4          **THE COURT:**  Stop, stop.

5          **MR. YANCHUNIS:**  Sorry.

6          **THE COURT:**  I again try to keep it simple and maybe

7     one step at a time.  Let me ask -- I asked Mr. Ridgeway, you

8     are talking for the defense, is that something that your client

9     is doing or in the process of doing?

10         **MR. RIDGEWAY:**  Yes, your Honor.  Flag Star Bank is no

11    longer using the FTA platform that was involved in the

12    incident.

13         **THE COURT:**  I don't need the details.  I wouldn't

14    understand them anyway at this point, and maybe at any point.

15    But in injunctive cases, and TROs, we used to get a lot of

16    them.  Don't get so many.  When I sat down in the initial

17    conference and the plaintiff said this is what I want and the

18    defendant said, oh, we're already doing this.  So you could

19    stipulate to that sort of injunctive relief thus eliminating a

20    lot of discovery and a lot of lawyer time.  And it would be the

21    most expeditious way of proceeding.  Does that make sense Mr.

22    Ridgeway?

23         **MR. RIDGEWAY:**  It does, your Honor.

24         **THE COURT:**  Okay.  And can you work with plaintiff

25    and draft a Preliminary Injunction, TRO, whatever you want to

*21-10657, 21-11165, 21-111652; Phillip Angus, et al. v.*
*Flagstar Bank, FSB*

Page 18

1    call it setting forth what you already agreed to and what you

2    are already doing.  And now for plaintiff, you can go into

3    what -- if you want training, you can ask if they are doing it.

4    You get the gist of what I am saying?

5              **MR. YANCHUNIS:**  Yes, your Honor.

6              **THE COURT:**  Does that help you?

7              **MR. YANCHUNIS:**  That would get us part of the way.

8    Obviously we are looking for a damage component.

9              **THE COURT:**  Okay.  Okay.  Wait. Remember, keep it

10   simple.

11             **MR. YANCHUNIS:**  Yes, sir.

12             **THE COURT:**  I'm talking about the injunctive part.

13             **MR. YANCHUNIS:**  Yes, sir.

14             **THE COURT:**  Do we have an understanding as to a

15   framework of basically you listing what you want, the defense

16   listing what they are doing and where they match.  You have a

17   Consent Order.  And where they don't match you can litigate it.

18   Okay?  Now, can we get off of the injunctive part and go to the

19   damages?  What sort of damages are you looking for?  Maybe to

20   pay higher interest?

21             **MR. YANCHUNIS:**  No.  Not that.  So everyone -- so the

22   information taken here was acquired by an unknown actor for

23   purposes of engaging in identity theft.  Information has value.

24   and the type of damages are both from the standpoint of the

25   value of the information taken.  Since there is now a present

Page 19

1    and increased risk of identity theft there will be a component

2    addressed to ensure that people are protected.  What we

3    understand was taken here was actually the keys by which an

4    identity thief can unlock all types of Pandora boxes of

5    financial injury to consumers.

6              **THE COURT:**  So what I have seen in other cases as a

7    component of a settlement or a final judgment, usually a

8    settlement, is that the defendants will provide credit review

9    regularly, annually, six months, whatever.  Is that your

10   experience also?

11             **MR. YANCHUNIS:**  That is in the settlement context.  In

12   a case similar in that it's a suit against the bank.  I was

13   arguing this week a motion for class certification involving

14   half the adult population who lost their information in the

15   Capitol One Bank case.  And in that case we seek a monetary

16   component equal to the value of providing a certain product for

17   a period of years depending upon what the jury would award.

18   But at a minimum, five years.

19             **THE COURT:**  Okay.  But if they were to agree to

20   provide that by way of settlement, your clients got what they

21   wanted or get what they are asking for.  Does that make sense?

22             **MR. YANCHUNIS:**  If they would provide us with what we

23   want, that would make sense.

24             **THE COURT:**  Okay.  Well, you've got to provide them

25   with what you want and that's going back to make your list of

Page 20

1  demands and share it with the defense.  And, again, whether
2  it's in the damages or the injunctive part of it, see what can
3  you agree to.  By the way, I do -- I haven't had one lately but
4  identity theft cases were popular, criminal, about ten years
5  ago.  And it was much less sophisticated in terms of getting
6  the information.  They would get a person who did the data
7  entry to provide them with relevant information and we paid a
8  couple hundred dollars for that and they were able to get
9  thousands of dollars by pretending who they were.  But what
10  else do you want in terms of money damages?
11        **MR. YANCHUNIS:**  I think --
12        **THE COURT:**  Do you want enough to cover the
13  protection for a number of years.  What else?
14        **MR. YANCHUNIS:**  Certainly.  The other type of relief
15  would be to address those financial injuries that people have
16  suffered as a result of the loss of their information to a data
17  breach, both present and for some period of time in the future
18  because identity thieves --
19        **THE COURT:**  No.  I understand that.  But let me ask
20  you this. Any of the named plaintiffs, and four and five listen
21  carefully, any of them already suffered actual damages?  Any of
22  the named plaintiffs?
23        **MR. GRILLE:**  We have, your Honor.  One of the
24  plaintiffs in the Hawkins case is out of pocket in terms of
25  purchasing credit monitoring.

Page 21

1      **THE COURT:**  I understand that.  That is an easy

2    problem.  My question is has anyone had their identity stolen

3    to their own detriment?  In other words, did somebody use their

4    credit cards for information to buy a car or computer or a big

5    appliance?  Hearing no response, certainly the credit

6    monitoring will be -- will mitigate against those kinds of law

7    suits.  But that's something you can work with the plaintiffs,

8    the other plaintiffs, and I am relatively certain that the

9    defendant will be happy to refund whatever they paid for the

10   monitoring.  But -- and defense doesn't have to respond.  I

11   might be naive because after all, I was a criminal defense

12   lawyer and I didn't deal with civil cases.

13      All right.  What else does the plaintiff want?

14      **MR. YANCHUNIS:**  So, your Honor, certainly as the

15   Court may know from its prior experience and certainly we would

16   present testimony from experts to illustrate that this

17   information doesn't change in large part.  So there is an

18   impact financially that may take some time to manifest itself

19   in terms of an injury.

20      **THE COURT:**  Okay.  I understand that.  I'm sure

21   defense counsel understands that.  And I understand that even

22   before I became a Judge. It's logical what you are saying.  But

23   that is not unusual and accompanying that should be the subject

24   of creativity in negotiations.  You don't need experts to tell

25   us the obvious.  And I don't want whatever the defendant has

Page 22

1    set aside in their mismanagement and a lot of that money be

2    spent on expensive experts and being spent on attorneys.  And

3    we are taught generally when we go to remedial Judges School

4    every couple years that in these kinds of cases early

5    intervention by the Judge to get the attorneys talking to each

6    other is the most efficient way of keeping costs down while

7    plaintiffs get most -- not all the relief they want and the

8    defendants are not out of pocket paying for stuff that is

9    unnecessary.

10        And I know inherently the perception is that now the

11   attorneys want to build up their hours and perhaps that's part

12   of the reason everyone wants to be lead counsel.  And defense

13   wants to build up their hours because they are usually on an

14   hourly.  That's a possible perception.

15        But I believe that the reality is that all attorneys on

16   both sides are working in the best interests of their client

17   which includes early resolution to protect their clients or at

18   least mitigate their clients from being adversely affected, and

19   to compensate their client for at least the minimum what their

20   out-of-pocket, either through benign protection or, if, in

21   fact, the plaintiff comes along and can show that their

22   identity had been stolen because of this.  I don't think

23   defense counsel was born yesterday.  If you can document it

24   it's a subject of settlement.  Are there any questions?

25        **MR. YANCHUNIS:**  No, your Honor, but hearing your

Page 23

1    guidance, counsel, I can make certain those lawyers who filed

2    case four and five are together in connection with a proposal

3    to Mr. Ridgeway that he can consider at this point in the

4    litigation to see if we can't find compromise on some or all

5    issues.

6              **THE COURT:**  Mr. Ridgeway, any thoughts?

7              **MR. RIDGEWAY:**  Your Honor, we are open to reaching

8    settlement including an early one.

9              **THE COURT:**  All right.  I thank you and I wandered a

10   little bit in getting to this point but I think we are all on

11   the same page.  And usually -- not usually -- sometimes at this

12   point somebody will ask me to recommend a facilitator or

13   mediator or the like.  Again, at Remedial Judges' session we

14   were given a session on ethics.  And one of the questions is,

15   can a Judge recommend somebody for that position?  And we get

16   these little clickers so we go around a screen. You probably

17   have seen them.  And the vote is invariably 45 to 55 or closer.

18   Sometimes it goes, yes, sometimes it goes, no. The answer we

19   are provided is, no, you can't do that because of some rule

20   that says you can't endorse people.  And it even applies, if

21   somebody asked me for a letter of recommendation for a job, I

22   cannot attach it to their application but they can use my name

23   with respect to the employer who writes to me and asks for a

24   letter of recommendation.  Then I can do it.  The theory being,

25   I guess, that the person has gotten that far without my

Page 24

1  specific endorsement.

2      So long story to make the point that if you do get to the

3  point of wanting a facilitator or mediator or outside person to

4  help with the settlement, I cannot recommend anybody.  But if

5  you are close you certainly could ask for -- I'm pausing

6  because there are so many case, but the Magistrate Judge who is

7  assigned to the first case would be available.  And if you

8  really, really are close, I will do it, because I used to get

9  some satisfaction out of doing that.  But that's down the road.

10  You are on the way to getting something accomplished and you

11  don't have to hear from me anymore.  Thank you, very much.

12      **MR. YANCHUNIS:**  Thank you, Judge.

13      **THE COURT:**  If you need a transcript, the court

14  reporter is available and for a special price I will autograph

15  it.  And, please, don't report me to the ethics -- even though

16  I think as a senior judge I can't be impeached.  I would be

17  hurt by the lack of humor demonstrated by, lack of sense of

18  humor demonstrated by the complainer and the lack of humor

19  provided by me.  So we are done.  Thank you, all.

20                -   -   -

21

22

23

24

25

1          **C E R T I F I C A T I O N**

2          I, Lawrence R. Przybysz, official court reporter

3     for the United States District Court, Eastern District of

4     Michigan, Southern Division, appointed pursuant to the

5     provisions of Title 28, United States Code, Section 753,

6     do hereby certify that the foregoing is a correct

7     transcript of the proceedings in the above-entitled cause

8     on the date hereinbefore set forth.

9          I do further certify that the foregoing

10    transcript has been prepared by me or under my direction.

11

12    s/Lawrence R. Przybysz
13    Official Court Reporter

14    Date:  7 October 2021

15                      -   -   -

16

17

18

19

20

21

22

23

24

25