1  Adam E. Polk (State Bar No. 273000)
2  Jordan Elias (State Bar No. 228731)
   Simon S. Grille (State Bar No. 294914)
3  Trevor T. Tan (State Bar No. 281045)
   **GIRARD SHARP LLP**
4  601 California Street, Suite 1400
5  San Francisco, CA 94108
   Tel: (415) 981-4800
6  Fax: (415) 981-4846
   apolk@girardsharp.com
7  jelias@girardsharp.com
8  sgrille@girardsharp.com
   ttan@girardsharp.com
9

10 *Attorneys for Plaintiff Heather Rodriguez*

11

12                 **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14                        **SAN JOSE DIVISION**

15

16 | IN RE ACCELLION, INC. DATA BREACH | Case No. 5:21-cv-01155-EJD
17 | LITIGATION

18                                                **REPLY IN SUPPORT OF MOTION**
                                                  **FOR APPOINTMENT OF GIRARD**
19                                                **SHARP LLP AS INTERIM CO-LEAD**
                                                  **CLASS COUNSEL**
20
                                                  Date: December 8, 2022
21                                                Courtroom: 4 – 5th Floor
                                                  Judge: Hon. Edward J. Davila
22

23

24

25

26

27

28

---

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

I.      **INTRODUCTION**

In this reply, we identify each pending Accellion case, both in this Court and in other jurisdictions, and detail our proposal for how this litigation should proceed after this Court selects lead counsel. While the cases all arise out of the breach of Accellion's File Transfer Application ("FTA") software, they involve differing factual scenarios, claims and potential recoveries. As class members across the cases are not identically situated, any settlement must take their distinct interests into account. These differences are best addressed by acknowledging them and allowing the attorneys representing the distinct client groups to determine whether and on what terms to propose a settlement for court approval. We believe this litigation can be efficiently managed by appointing counsel to pursue the claims against Accellion and coordinate further proceedings in the Accellion "client" cases, while entrusting the ultimate decisions on settlement to appointed plaintiffs' counsel in those cases.

We respectfully submit that Girard Sharp is best qualified to act as lead against Accellion and coordinate proceedings in the Accellion "client" cases. We bring over 25 years of class action practice experience in this district to bear, in nearly every conceivable subject matter area, from data privacy to civil rights. We have served or currently serve in leadership capacities with nearly every competing law firm. We are not party to any settlement agreements in this matter, or any disputes with other counsel over pending approval motions. We have timely, relevant data breach experience. We submitted a detailed protocol for timekeeping, recognizing the interests of all concerned in transparency in attorney's fee matters. *See* Timekeeping Protocol, Dkt. No. 111-2.

Most importantly, we are willing to put our interests in serving as lead settlement counsel aside in favor of allowing counsel in the Accellion "client" cases to decide what is best for their clients. We believe that once the Court clarifies lines of authority, these matters will follow an orderly course toward resolution, given the skill and experience of counsel in these cases. While we do not suggest our approach is the only workable means of organizing the cases, we believe our proposals are consistent with the evolving Rule 23 jurisprudence applicable to early stage, precertification settlements, and will yield sound results that will maximize recoveries to class members and minimize the prospects of collateral proceedings and settlement challenges. We

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1    respectfully request the opportunity to serve as lead or co-lead counsel consistent with our

2    proposed approach below, or as otherwise directed by this Court.

3    **II.    ARGUMENT**

4        **A.    Overlapping Accellion Class Actions Are Pending in Various Jurisdictions.**

5        Fourteen Accellion data breach cases are pending before this Court.  Nine are against

6    Accellion only (the "Accellion Only Cases").[1]  The other five are against Accellion and at least

7    one other defendant (the "Accellion Client Cases").  Of those five, three name Health Net and its

8    affiliates (the "Health Net Cases"),[2] and two name Flagstar (the "Flagstar Cases").[3]  Plaintiffs in

9    three of the fourteen cases—*Fehlen*, *Beyer*, and *Harbour*—submitted class settlements for

10   approval, before the Court vacated their motions.  The *Fehlen* settlement would release claims

11   against Accellion, the *Beyer* settlement would release claims against Flagstar, and the *Harbour*

12   settlement would release claims against Health Net.  The claims against Kroger in another related

13   case against Accellion and Kroger were dismissed, following the Court's approval of a class action

14   settlement on March 24, 2022.[4]

---

[1] *Brown v. Accellion, Inc.*, No. 5:21-cv-01155-EJD, filed February 17, 2021; *Zebelman v. Accellion, Inc.*, No. 5:21-cv-01203-EJD, filed February 18, 2021; *Rodriguez v. Accellion, Inc.*, No. 5:21-cv-01272-EJD, filed February 22, 2021; *Fehlen v. Accellion, Inc.*, No. 5:21-cv-01353-EJD, filed February 24, 2021; *Price v. Accellion, Inc.*, No. 3:21-01430-EJD, filed February 26, 2021; *Bolton v. Accellion, Inc.*, No. 5:21-cv-01645-EJD, filed March 8, 2021; *Whittaker v. Accellion, Inc.*, No. 5:21-cv-01708-EJD, filed March 11, 2021; *Sharp v. Accellion, Inc.*, No. 5:21-cv-02525-EJD, filed April 7, 2021; *Desjardins v. Accellion, Inc.*, No. 5:21-cv-04743-EJD, filed June 22, 2021.

[2] *Vunisa v. Health Net, LLC et al.*, No. 5:21-cv-03425-EJD, filed April 6, 2021 (removed May 7, 2021); *Doe v. Health Net of California, Inc. et al.*, No. 5:21-cv-02975 EJD, filed April 23, 2021; *Harbour v. California Health & Wellness Plan et al.*, No. 5:21-cv-03322-EJD, filed May 4, 2021.

[3] *Beyer v. Flagstar Bank et al.*, No. 5:21-cv-02239-EJD, filed March 30, 2021; *Pollard v. Accellion, Inc. et al.*, No. 5:21-cv-02572-EJD, filed April 8, 2021.

[4] *Cochran v. The Kroger Co. et al.*, No. 5:21-cv-01887-EJD (N.D. Cal.), Dkt. Nos. 115-116.

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

Accellion data breach cases also are pending in other jurisdictions.  There is a consolidated case against Flagstar in the Eastern District of Michigan (the "Michigan Flagstar Case"),[5] a consolidated case against Accellion and the Washington State Auditor in the Superior Court for King County, Washington (the "Washington Case"),[6] and a consolidated case against Accellion and the Regents of the University of California in Alameda County Superior Court (the "Regents Case").[7]  There are two cases against Health Net and its affiliates in Santa Clara County Superior Court (the "Santa Clara Cases"),[8] and a case against Banco Popular de Puerto Rico in the District of Puerto Rico (the "Puerto Rico Case").[9]

The court in the Michigan Flagstar Case appointed lead counsel on July 30, before the filing of the *Beyer* Flagstar settlement in this Court, and later stayed the Michigan Flagstar Case pending the outcome of *Beyer* settlement proceedings.  The parties briefed motions to dismiss in the Washington State Case, and the court denied the Washington State Auditor's motion to dismiss before staying that case pending the outcome of *Fehlen* settlement proceedings.  Similarly, after briefing demurrers in the Regents Case, the parties agreed to stay claims against Accellion pending the outcome of *Fehlen* settlement proceedings and to stay claims against UC Regents pending mediation with UC Regents.  The Santa Clara Cases are likewise stayed pending the outcome of Health Net-related settlement proceedings in *Harbour*, while the parties in the Puerto Rico Case are in the midst of briefing a motion to dismiss.

---

[5] *Angus v. Flagstar Bank, FSB*, No. 21-cv-10657-MFL (E.D. Mich.).  *Angus* is a consolidated action with six constituent cases.

[6] *Stahl v. Accellion USA LLC*, No. 21-2-01439-5 SEA (Wash. Super. Ct. King Cnty.).  *Stahl* is a consolidated action with two constituent cases.

[7] *Ochoa et al. v. The Regents of the University of California et al.*, No. RG21097796 (Cal. Super. Ct. Alameda Cnty.).  *Ochoa* is a consolidated action with three constituent cases.

[8] *Cunanan v. Health Net, LLC et al.*, No. 21cv381776 (Cal. Super. Ct. Santa Clara Cnty.); *Olson v. Health Net LLC et al.*, No. 21cv386581 (Cal. Super. Ct. Santa Clara Cnty).

[9] *Rivera-Marrero v. Banco Popular de Puerto Rico*, No. 3:22-cv-01217-ADC (D.P.R.).

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1   Allegations in the Accellion Client Cases indicate the hackers took disparate information.

2   In the Health Net Cases, the breach compromised subscribers' addresses, dates of birth, insurance

3   identification numbers, Social Security numbers, and health information, such as medical

4   condition(s) and treatment information.  The Flagstar Cases involve the loss of customers' names,

5   home and email addresses, dates of birth, phone numbers, Social Security numbers, passport

6   information, and account information.  In the Regents Case, the exposed information includes

7   names, addresses, dates of birth, Social Security numbers, telephone numbers, driver's license and

8   passport information, financial information including bank routing and account numbers, health

9   and related benefit information, and disability information, as well as other personal information

10   provided to UC.  The information at issue in the Washington Case includes unemployment

11   compensation claim information, such as the person's name, Social Security number and/or

12   driver's license or state identification number, date of birth, bank account and routing number, and

13   place of employment.  Plaintiffs in the Accellion Only Cases allege that all individuals whose data

14   was maintained by an Accellion client using Accellion's outdated FTA had their confidential

15   information compromised in the hack.

16   As the cases allege loss of different data, the resulting claims differ.  The Regents Case and

17   the Health Net Cases seek recovery under the California Confidentiality of Medical Information

18   Act (the "CMIA"), Civ. Code § 56 *et seq.*, while the Flagstar Cases do not concern health

19   information, seeking recovery for the loss of financial account information.  All of the cases

20   involve the unauthorized exposure of Social Security numbers—among the "worst kind of private

21   data" that can be lost because of the heightened risk of identity theft.  *In re Pawn Am. Consumer*

22   *Data Breach Litig.*, 2022 WL 3159874, at *4 (D. Minn. Aug. 8, 2022).  The differing claims give

23   rise to disparate remedies and stand to yield different damage awards at trial.  For example, the

24   CMIA claim—brought against UC Regents and Health Net—provides for $1,000 in statutory

25   damages per violation.  In contrast, the California Consumer Privacy Act (the "CCPA")—brought

26   against Accellion and Flagstar—provides for statutory damages ranging from $100 to $750 per

27   violation.  Non-California residents would not be eligible for either form of statutory damage, and

28

1   instead would likely seek recoveries based on the black-market value of their exposed information

2   or the cost of future credit monitoring.

3       While the cases are all at an early stage and are attributable to a sole source—the Accellion

4   data breach—five of the fourteen cases consolidated before this Court seek compensation and

5   equitable relief from additional defendants, and other cases implicate the concurrent jurisdiction of

6   different courts or appointment orders entered by the courts presiding in the Michigan Case and

7   the Regents Case.  It follows from this procedural posture that the Court's appointment order

8   should implement a pragmatic, workable approach that will minimize potential conflicts and avoid

9   duplication, reduce or eliminate potential rivalries among counsel, and prioritize the interests of

10   the class members in each of the cases.

11       **B.       Girard Sharp Suggests a Path Forward.**

12       With most cases pending outside this Court stayed for the time being, the Court has the

13   opportunity to place the litigation on a footing that promotes an early consensual global resolution,

14   and, should a comprehensive resolution not emerge, set the cases on an orderly path toward trial or

15   eventual settlement.  The Court also makes its appointment decision against the backdrop of

16   increasing scrutiny of early-stage, precertification class action settlements, and other important

17   considerations, including the comity interests favoring coordination with the other courts hearing

18   Accellion cases, and the legitimate expectations of counsel charged with pursuing overlapping

19   claims in those cases.  Counsel appointed by the Court must be sensitive to the potential conflicts

20   among the different cases and plaintiff groups.  One size will not fit all.

21       Girard Sharp seeks to be appointed lead counsel for the claims against Accellion and tasked

22   with coordinating further proceedings related to the Flagstar, Health Net, Washington State and

23   Regents cases.  The approach we propose is geared to address the potential conflicts among class

24   members and minimize rivalries and conflicts among counsel.  We discuss each of these cases

25   individually, followed by a proposal for potential consensual resolution.

26       First, Girard Sharp serves as lead counsel in the Regents Case, which should proceed in

27   Alameda Superior Court.  Second, the Washington State Case should proceed in King County

28   Superior Court.  Third, the Health Net Cases should proceed in this Court under the direction of

5

1    counsel in those cases and in coordination with lead counsel appointed in this consolidated action.

2    All plaintiffs' counsel in the Health Net Cases support the proposed settlement reached in

3    *Harbour*.  *See* Dkt. No. 105.  Those parties should be given leave to propose that the claims on

4    behalf of Health Net victims be severed for the limited purpose of asking the Court to approve

5    their proposed settlement.  Fourth, counsel appointed in the Michigan Flagstar Case should

6    determine how to proceed as to the Flagstar claims, including whether to proceed with the

7    tentative settlement in *Beyer*.  The Michigan Case appointment order predates the Flagstar

8    settlement first tendered to this Court on September 3, 2021.  The Court should discourage the

9    practice of unappointed counsel negotiating an early settlement after entry of a Rule 23(g) order in

10   another case.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d

11   768, 788 (3d Cir. 1995) (noting that settlements negotiated by "attorneys jockeying for position"

12   before a class has been certified and class counsel appointed may have been negotiated "from a

13   position of weakness") (citation omitted); *see also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800,

14   1814-15 (2018) (Sotomayor, J., concurring in the judgment) (criticizing "gamesmanship . . . not in

15   class members' interest"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58

16   (E.D.N.Y. 2006) (raising concerns about settlements negotiated with defendants prior to

17   appointment of lead counsel); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir.

18   1998) ("Class counsel confined to settlement negotiations could not use the threat of litigation to

19   press for a better offer") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997)).

20        Girard Sharp respectfully submits that the Court should appoint it to lead or co-lead the case

21   against Accellion.  Appointment of independent counsel will address the concerns with the

22   procedural fairness of the *Fehlen* settlement.  Similar events unfolded in *Linney v. Cellular Alaska*

23   *Partnership*, 151 F.3d 1234 (9th Cir. 1998), where class plaintiffs retained Girard Sharp (then

24   Girard & Green) as co-lead counsel after the district court rejected a proposed settlement that

25   would have changed how AT&T charged fees to certain minority interest holders in

26   telecommunications markets in which AT&T held a majority interest.  *Id*. at 1237-38.  After

27   "conduct[ing] their own discovery," Girard Sharp and its co-counsel negotiated a new, $6 million

28   settlement with AT&T that was fair and adequate for all stakeholders.  *Id*. at 1238 (noting the

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1    revised settlement "did not release the claims of minority owners who had sold their interests.").

2    Agreeing with the district court, which credited the role of "able and experienced class action

3    attorneys" in crafting the revised agreement, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997),

4    the Ninth Circuit recognized that "the addition of new and impartial counsel can cure a conflict of

5    interest even where previous counsel continues to be involved in the case."  151 F.3d at 1239.

6          In this case, we would begin by evaluating the proposed *Fehlen* settlement in consultation

7    with plaintiffs' counsel who negotiated that agreement.  Obtaining information adequate to

8    evaluate the claims' strengths, weaknesses, and value is a must.  *See Cordova v. BAE Sys. Tech.*

9    *Sols. & Servs., Inc.*, 2022 WL 298365, at *8 (S.D. Cal. Feb. 1, 2022) (whether plaintiffs' counsel

10   obtained sufficient information to fully evaluate the strengths and weakness of the claims and

11   defenses is a factor in evaluating fairness of settlement).  We would verify the following targeted

12   information: the precise type of information compromised, the steps taken to remedy the risks

13   created by the breach, any remedial measures undertaken, any specific actions by Accellion to

14   curtail use of its legacy file transfer systems, any investigative reports or analyses regarding the

15   breach, and the capacity of Accellion to pay, including any available insurance assets.  We are

16   prepared to objectively assess the fairness of the *Fehlen* settlement, as we have done in other

17   cases, and determine whether to support the settlement or seek to improve it.  *Compare Pieterson*

18   *v. Wells Fargo Bank, N.A.*, No. 3:17-cv-02306-EDL (N.D. Cal.) & *Prather v. Wells Fargo Bank,*

19   *N.A.*, No. 17-cv-00481 (N.D. Ill.) (Girard Sharp and its co-lead counsel agreed to support a class

20   settlement in a competing case in the Northern District of Illinois, which the court approved as

21   reasonable), *with In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL

22   12991307 (N.D. Cal. Mar. 3, 2015) & 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) (after a class

23   representative represented by Girard Sharp successfully objected to a proposed $325 million

24   settlement, all parties renegotiated a $415 million settlement that the court approved).  In the

25   present situation, as in the past, we will ensure that a release of liability in any revised agreement

26   is appropriately tailored in light of the overlapping claims.

27         With other Accellion cases stayed, the Court should encourage a comprehensive global

28   resolution.  *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (noting that a global

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1    settlement can maximize payment because the defendant receives total peace); *Sullivan v. DB*

2    *Invs., Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) (explaining that "achieving global peace is a valid,

3    and valuable, incentive to class action settlements."). With the respective "lanes" of the various

4    counsel clarified, the conditions would be in place for the parties to explore a settlement

5    substantially ending the litigation. To that end, an order of the Court could appoint a mediator or

6    settlement master and permit the voluntary participation of counsel in the Accellion Only and the

7    Accellion Client Cases. *See* Manual for Complex Litigation, Fourth, § 22.6 (case management

8    orders in complex cases should "encourage continuing collaboration . . . in the cases pending in

9    different courts."). In addition to potentially maximizing recoveries, coordination of settlement

10    negotiations among all stakeholders would create the opportunity to streamline notices to class

11    members, avoiding duplication and confusion, and to structure payments similarly so as to

12    eliminate duplication and avoid requiring class members to file more than one claim. If, however,

13    after preparing for and conducting the mediation, no global resolution has been reached, Plaintiffs

14    would file their consolidated complaint and prosecute the case against Accellion. To the extent

15    any settlements of Accellion Client Cases are reached or resubmitted to the Court, the approval

16    process would follow in an orderly manner.

17         We discuss below our firm's qualifications for the work we propose to undertake.

18    **C.      Girard Sharp Is Experienced in Data Breach Class Actions.**

19         We have timely, hands-on experience leading data breach litigation. Our opening brief and

20    firm resume provide detail concerning our success in prior data breach cases. *See* Dkt. No. 111 at

21    pp. 10-12; Dkt. No. 111-1. We have led complex, landmark data breach cases, including the case

22    involving the breach of the federal government's personnel database, *In re U.S. Office of Pers.*

23    *Mgt. Data Sec. Breach Litig.*, MDL No. 2664 (D.D.C.), and an action arising out of the

24    cyberattack on Sony Pictures Entertainment attributed to North Korean intelligence operatives, in

25    retaliation for the comedy film *The Interview*. *Corona v. Sony Pictures Entertainment, Inc.*, No.

26    2:14-cv-09600-RGK (C.D. Cal.). We are currently co-lead counsel in *In re Planned Parenthood*

27    *Los Angeles Data Incident Litigation*, No. 21STCV44106 (Cal. Super. Ct. L.A. Cnty.), where

28    approximately 400,000 Planned Parenthood patients fell victim to a ransomware attack that

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1    compromised some of the most private information imaginable.  We co-lead the plaintiffs' efforts

2    in *In re MCG Health Data Security Issue Litigation*, No. 2:22-cv-00849-RSM-DWC (W.D.

3    Wash.), involving a breach that affected over a million people, exposing Social Security numbers,

4    medical information, and other confidential facts.  We also serve as a member of the executive

5    committee, along with Mr. Yanchunis, in *In re Lakeview Loan Servicing Data Breach Litigation*,

6    No. 1:22-cv-20955-DPG (S.D. Fla.), where a data breach exposed over 3.9 million consumers'

7    personal information, including Social Security numbers.  Girard Sharp is fully engaged in data

8    breach litigation, and we have proven our ability to successfully resolve challenging and complex

9    cases.

10          **D.        Girard Sharp Has Good Working Relationships with Participating Counsel.**

11          One of the most important considerations in selecting interim class counsel is the

12   willingness and ability to work cooperatively with other plaintiffs' counsel.  *See In re Motor Fuel*

13   *Temperature Sales Pracs. Litig.*, 2007 WL 9684282, at *2 (D. Kan. Sept. 7, 2007) ("The ability to

14   work cooperatively with others is an essential qualification for the positions of lead counsel").

15   Girard Sharp has worked successfully with the firms that submitted applications to serve as interim

16   co-lead counsel and with other attorneys involved in the Accellion litigation.  In the *In re OPM*

17   *Data Breach Litigation*, which we have had the privilege of leading, we benefited from the

18   guidance and support of our colleagues Tina Wolfson and John Yanchunis, members of the court-

19   appointed Steering Committee.  *See In re U.S. Office of Pers. Mgt. Data Sec. Breach Litig.*, 928

20   F.3d 42 (D.C. Cir. 2019).  We served as co-lead counsel in *Prather v. Wells Fargo Bank, N.A.*, No.

21   17-cv-00481 (N.D. Ill.), again with Mr. Yanchunis as co-counsel, and also joined Mr. Yanchunis

22   in the leadership of major data breach cases.  *See In re Target Corp. Customer Data Security*

23   *Breach Litigation*, MDL No. 2522 (D. Minn.); *In re The Home Depot, Inc. Customer Data*

24   *Security Breach Litigation*, MDL No. 2583 (N.D. Ga.).  We also serve as co-lead counsel with Ms.

25   Wolfson in the pending *Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC

26   (S.D.N.Y.).  We recognize Mr. Yanchunis and Ms. Wolfson as among the most experienced and

27   accomplished privacy advocates in the field.  We worked closely with David Berger of Gibbs Law

28   Group, another skilled advocate, in *In re Anthem Data Breach Litigation*, No. 15-md-02617-LHK

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

(N.D. Cal.) and served as co-counsel with Tousley Brain Stephens PLLC in a sharply litigated consumer case in King County Superior Court.  (A related case is reported at *Odom v. Microsoft Corp.*, 2004 WL 5407314 (W.D. Wash. Mar. 16, 2004), *rev'd,* 486 F.3d 541 (9th Cir. 2007)).

Our firm has over a quarter century's worth of experience coordinating and managing complex litigation, including when state and federal actions overlap—a posture we currently navigate in matters like *In re California Gasoline Spot Market Antitrust Litigation*, No. 3:20-cv-03131-JSC (N.D. Cal.) (co-lead counsel) and *In re Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 2:19-md-2921-BRM-ESK (D.N.J.) (executive committee member).  Girard Sharp's experience and mature relationships with co-counsel make the firm ideally suited to move this litigation forward by pursuing a course of action that will maximize recoveries for all class members, regardless of where their claims were filed.

**E.    Girard Sharp Is Local.**

Further supporting our application to serve this class, we are based in San Francisco.  Mr. Polk, the firm's lead attorney in this matter, recently tried a case to verdict in this District, obtaining a $14.975 million jury verdict for plaintiffs in *In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.).  *See In re Vanguard Chester Funds Litig.*, 2022 WL 3971053, at *3 (E.D. Pa. Sept. 1, 2022) ("Counsel's experience in the district in which the complaint is filed is also relevant to the . . . inquiry."); *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (N.D. Cal. July 27, 2015) (noting, as factor weighing in favor of appointment of Girard Sharp and other firms, that "each are headquartered in this district").

**III.   CONCLUSION**

For these reasons and the reasons set forth in her motion, Plaintiff Rodriguez respectfully requests that the Court appoint Girard Sharp LLP as interim co-lead class counsel.

Dated: October 6, 2022                        Respectfully submitted,

                                              By:  ___/s/ *Adam E. Polk*___
                                              Adam E. Polk (State Bar No. 273000)
                                              Jordan Elias (State Bar No. 228731)
                                              Simon S. Grille (State Bar No. 294914)
                                              Trevor T. Tan (State Bar No. 281045)

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com

*Attorneys for Plaintiff Heather Rodriguez*

11

REPLY ISO MOTION TO APPOINT GIRARD SHARP LLP AS INTERIM CO-LEAD CLASS COUNSEL
CASE NO. 5:21-cv-01155-EJD