UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MADALYN BROWN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACCELLION, INC., et al.,<br><br>Defendants. | Case No. 5:21-cv-01155-EJD<br><br>**ORDER APPOINTING INTERIM LEAD CLASS COUNSEL**<br><br>Re: Dkt. Nos. 111, 113, 114, 121 |

On September 8, 2022, the Court invited counsels for the various plaintiffs in this consolidated action to file motions to appoint interim class counsel pursuant to Federal Rule of Civil Procedure 23(g). ECF No. 109. On September 29, 2022, the Court received four separate motions and, on October 6, 2022, also received responses supporting the respective applications. ECF Nos. 111–14; 122–25. Defendants did not file any opposition to these motions.

Having considered all applications and responses, as well as the applicants' oral arguments on January 12, 2022, the Court hereby APPOINTS the Girard Sharp and the Susman Godfrey firms to serve as interim co-lead counsel.

**I.   BACKGROUND**

**A.   Accellion and the Data Breach**

Defendant Accellion, Inc. is a cloud-based software company that offered products and services for secure file transfers between third parties. One such product was the File Transfer Appliance ("FTA"). In December 2020, several threat actors exploited vulnerabilities in the FTA product, allowing them to access and steal sensitive data from FTA clients.

### B.  Lawsuits Filed

Beginning in February 2021, several plaintiffs filed suit—in this District and others—against Accellion and the client institutions from where the plaintiffs' information were stolen. The claims asserted in these actions varied depending on what data was lost; *e.g.*, some involved personal health information, others involved banking and government information, such as Social Security Numbers.

On March 31, 2021, one of the plaintiffs' firms, Ahdoot Wolfson, moved to consolidate and transfer these cases to the Northern District of California. Decl. Tina Wolfson ("Wolfson Decl.") ¶¶ 6–8, ECF No. 113-1. However, the Joint Panel on Multidistrict Litigation ("JPML") denied the motion, noting that there were many factual issues unique to each of Accellion's clients. *In re Accellion, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 1372 (U.S. Jud. Pan. Mult. Lit. 2021).

Presently before the Court are fourteen (14) consolidated Accellion data breach cases. Nine (9) of these cases name Accellion as the only defendant; the other five (5) cases name Accellion and at least one other defendant ("Client Defendants"). The Client Defendants include Health Net (and their affiliates) and Flagstar Bank. Although there are other Accellion breach cases in other federal and state jurisdictions, several have been stayed pending the settlement proceedings currently before the Court. *See* Reply Girard Sharp 2–3 (compiling pending actions), ECF No. 123.

### C.  Settlement Discussions

In June 2021, Ahdoot Wolfson initiated settlement discussions with Accellion, as well as the other Client Defendants. Wolfson Decl. ¶¶ 9–11, 33–34.

On July 19, 2021, Ahdoot Wolfson and Accellion participated in a mediation before Judge Gandhi (ret.), formerly of the Central District of California. On September 7, 2021, Ahdoot Wolfson and Accellion participated in a second mediation. Neither mediation resulted in an agreement. Several other plaintiffs' attorneys were invited to participate in these sessions, but many declined to attend. Wolfson Decl. ¶¶ 18–20.

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
2

1    On January 3, 2022, after Accellion had produced financial records which were reviewed
2  by an independent financial expert, Accellion and Ahdoot Wolfson reached an $8.1 million class
3  settlement.  This settlement provided class members with their choice of (1) credit monitoring and
4  insurance services, (2) a documented loss payout up to $10 thousand, or (3) a *pro rata* cash fund
5  payment between $50 and $15, depending on members' claims.  Additionally, the settlement
6  required Accellion to fully retire the FTA software and maintain FedRAMP certification for its
7  current file-transfer product.  *See* Decl. Tina Wolfson Supp. Mot. Prelim. Approval ("Wolfson
8  Settlement Decl.") ¶ 4, ECF No. 99-1.  Accellion has already deposited $4.6 million into escrow to
9  reserve the funds for the class.  Wolfson Decl. ¶ 18.  On January 12, 2022, a motion for
10 preliminary approval of this settlement was filed on the docket for *Stobbe v. Accellion*, Case No.
11 5:21-cv-01353-EJD.

12   On March 14, 2022, before the Court could rule on the preliminary approval motion, the
13 Court consolidated the Accellion-only cases and all Accellion Client Defendant cases, except for
14 the *Cochran* case against Kroger.  ECF No. 83.  In doing so, the Court terminated several dockets,
15 including the *Stobbe* docket.  *Id.* at 7.

16   In August and September 2022, two motions for preliminary approval were also filed for
17 settlements reached with Health Net and Flagstar Bank.  ECF Nos. 105, 107.  On September 8,
18 2022, the Court terminated all preliminary approval motions and set a briefing schedule to appoint
19 interim class counsel.  ECF No. 109.

### D.  Applications for Interim Lead Counsel

The Court has received four applications in total to be lead counsel, each proposing different leadership structures and team compositions.  These motions propose, as follows:

1) Girard Sharp—plaintiff's counsel in the *Rodriguez* action—as one co-lead in a two-firm co-lead counsel team (ECF No. 111);

2) Tina Wolfson as interim lead counsel with a steering committee comprised of Ben Barnow, Timothy G. Blood, and Matthew B. George (ECF No. 113), who represent the plaintiffs in the *Fehlen*, *Cochran*, *Beyer*, *Harbour*, *Doe*, and *Vunisa* actions;

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
3

3) Susman Godfrey and HammondLaw—plaintiff's counsel in the present *Brown* action—as interim co-lead counsel (ECF No. 114); and

4) John A. Yanchunis and Joseph P. Guglielmo as interim co-lead class counsel with a steering committee comprised of Gary F. Lynch, Kate M. Baxter-Kauf, Jonathan M. Rotter, and Sabita J. Soneji (ECF No. 121), representing plaintiffs in the *Zebelman*, *Bolton*, *Whittaker*, *Sharp*, *Pollard*, and *Desjardins* actions.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(g)(3), the court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." "Instances in which interim class counsel is appointed are those in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members." *White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006) (citing Manual for Complex Litigation (Fourth) § 21.11 (2004)). Although Rule 23(g)(3) does not provide a standard for appointment of interim counsel, the Court may consider the factors contained in Federal Rule of Civil Procedure 23(g)(1).

The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). If more than one adequate applicant is seeking appointment, the Court must appoint the applicant "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

## III. ANALYSIS

The Court begins with the observation that designating interim class counsel before class certification is appropriate in this case because there are several "overlapping, duplicative, [and] competing class suits" pending before the Court. *White*, 239 F.R.D. at 683; *see also* Manual for Complex Litigation § 20.311. Defendants do not oppose any motion and express a willingness to work with any slate of opposing plaintiffs' counsels. Hr'g Tr. 49:15–17, Jan. 12, 2023.

In determining whether an applicant for class counsel is adequate, the Court considers:

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
4

  (i) The work counsel has done in identifying or investigating potential claims in the action;

  (ii) Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

  (iii) Counsel's knowledge of the applicable law; and

  (iv) The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Where there is more than one adequate applicant seeking appointment, the court must appoint the applicant best able to represent the interests of the class. Fed. R. Civ. P. 23(g)(2).

  Based on the written submissions and oral arguments presented by each group of applicants, the Court is confident that all applying counsel would be adequate per the standards of Rule 23(g)(1) and (4). All four applications propose appointing counsel who have conducted extensive investigations into the circumstances of the Accellion data breach and who filed actions in February 2021 within weeks of each other. All candidates have also demonstrated the depth of their experience, not only in handling class actions and other complex litigations, but specifically in data breach and consumer privacy litigation. The Court also has no doubt that the applying counsels are well-versed in the applicable law and will commit the resources necessary to represent the class. Because the Court finds that there is more than one adequate applicant seeking appointment, it must proceed to the unenviable task of selecting the "applicant best able to represent the interests of the class" from a pool of eminently qualified candidates.

  Having considered the factors set forth in Rule 23(g) and the Manual on Complex Litigation, the Court finds that a two-firm interim lead counsel team consisting of Girard Sharp and Susman Godfrey would best represent the interests of the class.

  Because the parties have indicated that early settlement and class-wide resolution are real possibilities, the Court finds that the class would be best served by a lean and efficient lead counsel arrangement, as opposed to a towering leadership structure with committees. *See, e.g.*, *Aberin v. Am. Honda Motor Co., Inc.*, 2017 WL 3641793, at *2–3 (N.D. Cal. Aug. 24, 2017) (collecting cases in which courts "within this circuit routinely deny requests for appointment of

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
5

executive committees where a plaintiff fails to demonstrate that such an appointment is necessary"). For the same reason, if settlement is on the horizon, the class would not stand to gain as much from the considerable resources and manpower available to the Wolfson and Yanchunis coalitions. Of course, should negotiations and settlement prospects change course, the Court may entertain renewed motions to appoint counsel or a committee at that later time. However, as these actions stand today, the Court agrees with the strategy advanced by Susman Godfrey, that a lean and nimble counsel team would best serve the class.

In appointing these firms as co-lead counsel, the Court also aims to anticipate—and hopefully avoid—any future risks that the current pre-certification settlements may face under the "heightened fairness inquiry" required of such settlements. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022) (citing *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019)). Here, Ms. Wolfson's firm reached class-wide settlements against multiple defendants prior to the appointment of interim class counsel. "Although there is no prohibition on engaging in settlement negotiations before the appointment of interim class counsel, justifiable suspicions arise about the motivations underlying the settlements." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006). And "justifiable suspicions" could conceivably provide a basis for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043 (internal quotation marks omitted). For those reasons, the Court finds that the class would benefit from the appointment of an independent class counsel to conduct a preemptive evaluation and sanitize the settlements instead of potentially having to undertake similar procedures at the final settlement approval stage.

To that end, neither Girard Sharp nor Susman Godfrey were involved in the negotiations that resulted in these pre-certification and pre-appointment settlements. Indeed, recognizing the concerns that such pre-certification and pre-appointment settlements may present, Girard Sharp proposed a plan to objectively evaluate the fairness of the currently proposed settlements. Reply Girard Sharp 6–7. Susman Godfrey, likewise, acknowledged the same procedural fairness

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
6

concerns and, at the hearing, proposed a different approach from Girard Sharp's, Hr'g Tr. 38:24–40:1, which suggests to the Court that these two firms will engage in a healthy dialogue and arrive at a polished strategy to the class's benefit.  The Court recognizes that Ms. Wolfson's firm and attorney coalition have completed valuable work and undertaken exploratory discovery with the Defendants, and the Court expects that the class will continue to enjoy the fruits of that labor after plaintiffs' counsels have rallied under centralized leadership.

Finally, the Court is satisfied and impressed with the appointed co-lead firms' commitment to diversity and the development of young attorneys within their firms.  Both Girard Sharp and Susman Godfrey have presented slates of attorneys that reflect this commitment, and they provided further evidence and anecdotes of their continued efforts towards these goals at the hearing.

## IV.     EXPECTATIONS OF INTERIM CO-LEAD COUNSEL

Having appointed Girard Sharp and Susman Godfrey as the interim co-lead counsels, the Court will expect the highest standards of courtesy and professionalism from these firms. Additionally, the interim co-lead counsels shall:

- Evaluate whether certain claims or parties in the consolidation action may be appropriately severed and transferred;
- Propose a strategy for severance should any be warranted; and
- Evaluate the proposed settlements reached with the various Defendants, with special attention to the heightened fairness standard that accompanies pre-certification settlements.

The Court strongly encourages co-lead counsels to ensure that all plaintiffs' and class interests are represented in decisions, particularly with respect to severance and settlement.

With respect to timekeeping and billing, the Court expects co-lead counsel to maintain accurate and contemporaneous timekeeping records, billed in tenth-of-an-hour increments with descriptions of the activity billed, and consistent with the policies and practices submitted in their motions.  Co-lead counsels shall exchange and review all billing records with each other on a

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
7

monthly basis.  Finally, co-lead counsel shall compile and provide timekeeping and billing records to the Court *in camera* on a quarterly basis or promptly upon request from the Court.

## V. CONCLUSION

The Court hereby APPOINTS Girard Sharp LLP and Susman Godfrey LLP as Interim Co-Lead Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3).

The Court further SETS a status conference for April 13, 2023 at 10:00 a.m.  The parties shall submit a joint status conference statement no less than 10 days before the conference, which shall include a proposed case schedule and an update on the tasks the Court outlined in this Order.

**IT IS SO ORDERED.**

Dated: February 10, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-01155-EJD
ORDER APPOINTING INTERIM CO-LEAD COUNSEL
8