| | |
|---|---|
| Adam E. Polk (State Bar No. 273000) | Krysta K. Pachman (State Bar No. 280951) |
| Jordan Elias (State Bar No. 228731) | Michael Gervais (State Bar No. 330731) |
| Simon S. Grille (State Bar No. 294914) | Steven G. Sklaver (State Bar No. 237612) |
| **GIRARD SHARP LLP** | Kevin R. Downs (State Bar No. 331993) |
| 601 California Street, Suite 1400 | **SUSMAN GODFREY L.L.P.** |
| San Francisco, CA 94108 | 1900 Avenue of the Stars, Suite 1400 |
| Tel: (415) 981-4800 | Los Angeles, California 90067-6029 |
| Fax: (415) 981-4846 | Tel: (310) 789-3100 |
| apolk@girardsharp.com | Fax: (310) 789-3150 |
| jelias@girardsharp.com | kpachman@susmangodfrey.com |
| sgrille@girardsharp.com | mgervais@susmangodfrey.com |
| | ssklaver@susmangodfrey.com |
| | kdowns@susmangodfrey.com |

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Hon. Edward J. Davila<br>Courtroom: 4 – 5th Floor<br>June 1, 2023<br>10:00 a.m. |

Following the April 3, 2023 Joint Status Conference Statement, ECF No. 153, and consistent with the Court's February 10, 2023 Order Appointing Interim Co-Lead Counsel (ECF No. 143), the parties provide this Joint Status Conference Statement in advance of the Status Conference scheduled for June 1, 2023.

### 1. Background and Summary

On September 8, 2022, the Court terminated motions brought by counsel for Plaintiffs Grace Beyer, Christopher Hauser, Charles Tyer, Stefanie Burton, John Harbour, Tami Wisnesky, Joweli Vunisa, J. Doe, Douglas Fehlen, Tony Blake, David Artuso, Teresa Bazan, Lorriel Chhay, Samantha Griffith, Allen Chao, and Augusta McCain ("Moving Plaintiffs") for approval of class settlements reached prior to appointment of Interim Counsel. ECF No. 109 at 3. Those settlements were proposed in *Fehlen v. Accellion, Inc.*, No. 5:21-cv-01353-EJD, *Beyer v. Flagstar Bank et al.*, No. 5:21-cv-02239-EJD, and *Harbour v. California Health & Wellness Plan et al.*, No. 5:21-cv-03322-EJD, with Defendants Accellion (the "Accellion Motion"), Flagstar[1] (the "Flagstar Motion"), and Health Net[2] (the "Health Net Motion") (as to each settlement, the moving plaintiffs and defending party are collectively referred to as the "Moving Parties"). The Court terminated all three preliminary approval motions submitted by Moving Plaintiffs to allow for appointment of interim counsel. ECF No. 143 at 3.

On February 10, 2023, after oral argument, the Court entered an Order appointing Girard Sharp and Susman Godfrey as Interim Co-Lead Counsel. ECF No. 143 at 5.

The Order instructs Interim Counsel to:

- "Evaluate whether certain claims or parties in the consolidate[ed] action may be appropriately severed and transferred";
- "Propose a strategy for severance should any be warranted"; and

---

[1] Flagstar Bancorp, Inc. and Flagstar Bank, FSB.

[2] Health Net LLC, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., and California Health & Wellness.

- "Evaluate the proposed settlements reached with the various Defendants, with special attention to the heightened fairness standard that accompanies pre-certification settlements."

*Id.* At 7. The Order further instructs Interim Counsel to include in this status conference statement "a proposed case schedule and an update on the tasks the Court outlined in [its] Order." *Id*. at 8.

The proposed settlements, amounts at issue, and class size are as follows:

| Defendant | Fund | Class Size |
|---|---|---|
| Accellion | $8.1 million | Estimated 9,200,000[3] |

---

[3] <u>Interim Counsel's Position</u>: According to Moving Plaintiffs' estimate, there are at least 9.2 million people in the Accellion class. Interim Counsel have been unable to verify this estimate based on information provided and are seeking Accellion's cooperation to determine the correct number. To date, Accellion has declined to provide Interim Counsel with the complete results of the "extensive informal outreach to customers" it references below. Moreover, the process set out in the proposed settlement for identifying class members would phase ascertaining class size *after* submission of the settlement for preliminary approval—which deprives Plaintiffs of the ability to determine an appropriate settlement amount in the first instance. *See* ECF No. 99 at p. 17 of 67 (under section 6.5 of the previously reached settlement, "Promptly *following* the filing of the Preliminary Approval Motion . . . Accellion will request from each and every FTA Customer that has (i) provided information to Accellion indicating that it had files downloaded in the Attacks or (ii) publicly announced that it was affected by the Attacks, all available contact information for any and all Class Members") (emphasis added).

<u>Accellion's Position</u>:  Accellion has explained to Interim Counsel that, because its customers had exclusive control over their use of the file transfer software that they licensed from Accellion, Accellion does not have any insight into or ability to access the content of information customers stored or transferred with the software that it licenses.  That means that Accellion does not know what kinds of documents or whose information its customers are transmitting or storing with its software, and has no insight as to whose personal information might have been compromised in the attacks.  This is why

2
JOINT STATUS CONFERENCE STATEMENT
CASE NO. 5:21-cv-01155-EJD

| Defendant | Fund | Class Size |
|---|---|---|
| Flagstar | $5.9 million | 1,480,000 |
| Health Net | $10 million | 1,506,868 |

To implement the Court's Order, Interim Counsel conferred with Moving Plaintiffs, Defendants' counsel, and Plaintiffs' counsel in related Accellion cases, including cases pending in other jurisdictions. ECF No. 153 at 1-2. Subject to Federal Rule of Evidence 408, Interim Counsel negotiated the production of documents and information relating to the proposed settlements. *Id.* After reviewing these initial productions, Interim Counsel continued to confer with Defendants regarding follow-up questions and requests for information. *Id.*

Based on Interim Counsel's evaluation, and for the reasons stated below, Interim Counsel recommend that the Court:

- Hear the motion for preliminarily approval of the Health Net settlement;
- Decline to hear the motions for preliminary approval of the Accellion and Flagstar settlements;
- Set a schedule for further proceedings on the merits in the Accellion and Flagstar cases; and
- Direct the parties to concurrently participate in mediation.

Accellion disagrees with Interim Counsel's recommendations as to the Accellion settlement and instead requests that the Court hear the motion for preliminary approval of that settlement.

---

Accellion and the Moving Plaintiffs included a process in the proposed settlement to contact customers and identify potential class members based on the customer's records, and Accellion conducted extensive informal outreach to customers to identify those class members with as much certainty as it could on a voluntary basis. *See* Accellion Statement § 2 at pp. 9-10.

### 2.     Evaluation of the Settlements and Potential Severance

**Interim Counsel's Statement:**

Consistent with the Court's Order, Interim Counsel have approached the proposed settlements with an eye towards determining whether seeking court approval of the settlements would be in the best interests of the class as a whole. While Accellion and Flagstar argue below that Interim Counsel's designated role is to "sanitize" the prior settlements and place them back into the queue for approval, the Court instructed Interim Counsel to "evaluate" those settlements and make an independent assessment of whether it is "to the class's benefit" for the settlements to be presented for preliminary approval under Rule 23(e). Order at 7. In this regard, Moving Plaintiffs incorrectly claim that the outcome of Interim Counsel's assessment was predetermined and that Interim Counsel exceeded the scope of their authority as conferred by the Court. Neither claim has any basis: Interim Counsel evaluated the settlements independently after consulting with various Plaintiffs' counsel (including Moving Plaintiffs) and counsel for Defendants, and reviewing additional information provided by Defendants or gathered from public sources. Interim Counsel have not received all the information they requested and continue to consult with defense counsel and gather information, and our opinions remain subject to modification based on further development of the record.

In reaching the conclusions summarized below, Interim Counsel followed the Court's directive to analyze the settlements in light of the Ninth Circuit's requirement for "heightened scrutiny" applicable to pre-certification settlement agreements, which requires analysis of both the factors stated in *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (the "*Churchill* factors") and the factors stated in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) (the "*Bluetooth* factors"). *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021) (noting that when a settlement is negotiated prior to class certification, the fairness assessment must include both the *Churchill* factors and the *Bluetooth* factors).

The *Churchill* factors include: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members to the proposed settlement. *Churchill*, 361 F.3d at 575.

The *Bluetooth* factors include (1) "when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis*, 16 F.4th at 607–08 (citations omitted). District courts must apply the *Bluetooth* factors in examining pre-certification settlements "to smoke out potential collusion." *Id.*

Having completed this evaluation process, Interim Counsel report as follows:

**The Health Net Motion.**[4] Interim Counsel have concluded that the proposed settlement falls within the range of possible approval as fair, adequate, and reasonable under the factors enumerated in *Churchill* and does not bear any of the "red flags" described in *Bluetooth*. Accordingly, Interim Counsel recommend that the Court should entertain a renewed motion for preliminary approval by the Settling Parties. Based on the information provided, Interim Counsel did not identify any deficiencies in the settlement process or the terms of the settlement.[5] Given Interim Counsel's positive assessment, the parties have agreed, subject to Court approval, to sever the claims of the Health Net Plaintiffs against Health Net only for purposes of seeking settlement approval. *See* ECF No. 157.

**The Accellion Motion.**[6] Interim Counsel are unable to recommend the proposed Accellion settlement for preliminary approval under Rule 23(e). Based on the information Interim Counsel have reviewed thus far, the proponents of this settlement have not met their burden of demonstrating that it is within the range of what is fair, reasonable, and adequate under *Churchill* and related case law.

Based on the information currently available to Interim Counsel, there are three areas of concern:

- the sufficiency of the settlement amount;

---

[4] ECF No. 105.

[5] The Health Net settlement is procedurally distinct in that no objections or intervention motions were filed in response to the preliminary approval motion.

[6] ECF No. 99.

1        •    the class size estimate, which lacks adequate foundation; and

2        •    the treatment of class members with statutory damages claims.

3        Accellion's statements below that Interim Counsel seek to "block" the settlement, and have "demanded more money," are inaccurate.[7] As directed, Interim Counsel carefully scrutinized the proposed Accellion settlement given the procedural irregularities that the Court and various parties previously noted. *See* ECF No. 109 at 3 (terminating preliminary approval motion); ECF No. 143 at 6 (noting concern with the "class-wide settlements against multiple defendants prior to appointment of interim counsel.") (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58 (E.D.N.Y. 2006) ("Although there is no prohibition on engaging in settlement negotiations before the appointment of interim class counsel, justifiable suspicions arise about the motivations underlying the settlements."); *see also Fehlen* Motion to Intervene, ECF No. 94 at 16-17.[8] To the extent Accellion's Statement implies that the preliminary approval inquiry focuses only on the procedural aspects of negotiations, rather than also considering the substance of the relief obtained, Accellion is mistaken. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at *16-17 (N.D. Cal. Aug. 8, 2014) (denying preliminary approval based on finding that settlement consideration was below the range of reasonableness); *see also* 4 Newberg and Rubenstein on Class Actions § 13:15 (6th ed.) ("The substantive factors look at the adequacy of the class's relief and the equity of its distribution across the class.").

**The Flagstar Motion.** Interim Counsel are similarly unable to recommend the proposed Flagstar[9] settlement for preliminary approval under Rule 23(e).  As with the Accellion settlement,

---

[7] Accellion's Statement also improperly references communications exchanged under the privilege of Federal Rule of Evidence 408.

[8] Accellion's merits arguments advanced below are not appropriately raised in this status conference statement, and have been rejected on similar facts. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 3568394, at *4-6 (D.S.C. Aug. 12, 2021) (upholding cause of action under California Consumer Privacy Act ("CCPA") against breached cloud software company even though it never dealt directly with the plaintiffs).

[9] ECF No. 99.

based on the available evidence, Interim Counsel cannot conclude that the settlement satisfies the *Churchill* factors. Interim Counsel's concern is limited primarily to the sufficiency of the settlement consideration offered by Flagstar, especially in light of the strength of plaintiffs' CCPA claims. *See* Cal. Civ. Code § 1798.150 (providing for the greater of between $100 and $750, or actual damages, to each consumer whose rights under the law was invaded). In addition, contrary to Flagstar's suggestion below, "the mere presence of a neutral mediator" is not dispositive under Rule 23(e). *In re Bluetooth*, 654 F.3d at 948. The Court and intervenors previously identified procedural concerns regarding the Flagstar Motion, which remain. *See* ECF Nos. 109, 143; *Beyer* Motion to Intervene, No. 5:21-cv-02239, ECF No. 62 at 18-21.

### **Accellion's Statement**

Interim Counsel's effort to block the settlement that Accellion and eight plaintiffs (the "Moving Plaintiffs") agreed to nearly 18 months ago is an improper end-run around the process contemplated by Rule 23(e) for evaluating class settlements.  The settlement was the result of multiple mediations with retired Magistrate Judge Jay Gandhi, robust informal discovery, and several months of arm's-length negotiations with the Moving Plaintiffs.  It represented a compromise of vigorously disputed claims— and it would deliver meaningful injunctive and monetary relief to a settlement class, despite the weaknesses of the claims against Accellion, a company that licensed secure file transfer software to many different customers but never had control over how that software was used or knowledge of what materials customers used it to transfer.  Despite vague references to unspecified "procedural irregularities," it is clear that Interim Counsel's "concerns" about the settlement boil down to a demand for more money, not a challenge to the process that led to the compromise.  Accellion strongly disagrees with Interim Counsel's objections, but those objections should be considered by the Court as part of the Rule 23(e) approval process—not used to shut down that process before it can begin.

In its February 10 Order, the Court appointed Interim Counsel to, *inter alia*, "[e]valuate the proposed settlements reached with the various Defendants, *with special attention to the heightened fairness standard that accompanies pre-certification settlements*." (Order at 7) (emphasis added). That standard focuses on procedural fairness, requiring courts to "look for and scrutinize any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *In re Apple*

*Device Performance Litig.*, No. 18-md-02827, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) (Davila, J.) (citing *Roes, 1-2 v. SFBSC Management, LLC,* 944 F.3d 1035, 1043 (9th Cir. 2019)).[10] In its Order, the Court recognized that Interim Counsel had raised certain "procedural fairness concerns" (Order at 6-7)—stemming from the fact that one law firm had negotiated settlements with multiple different defendants in the year the matter had been pending prior to the appointment of interim lead counsel, one of which (Kroger) has already been fully and finally approved by this Court. The Court then appointed counsel that was not involved in the settlement negotiations to examine whether the procedural "concerns" regarding the remaining settlements had any merit. In the Court's words, Interim Counsel were to "sanitize" the process "instead of having to undertake similar procedures at the final settlement approval stage." Order at 6.

Accellion appreciates the aim of the Court's Order, including the value of identifying any evidence of collusion or procedural impropriety "preemptively" and before the "final settlement approval stage." (Order at 6). Unfortunately, the evaluation process was not consistent with the Court's mandate—Interim Counsel did not meaningfully explore any potential procedural deficiencies or vet the arm's length nature of the negotiations, and focused instead on attempting to re-negotiate the settlement's monetary terms. While Accellion cooperated with Interim Counsel's information requests, and provided comprehensive information about the settlement process and the confirmatory discovery that supported it, Interim Counsel focused many of their requests on materials unrelated to the settlement, such as communications between Accellion and customers, lists of customers that were *not* impacted by the attacks, and "updated" financials that post-dated the settlement—ultimately demanding that Accellion contribute more money to the settlement. Accellion respectfully disagrees that Interim Counsel should be permitted to leverage the evaluation process, and their consequent demand, to block the settlement from being considered by the Court.

---

[10] It is not Accellion's position, as Interim Counsel suggest, that the Court's preliminary approval inquiry focuses strictly "on the procedural aspects of negotiations." Rather, the Court instructed *Interim Counsel* to focus on these issues, based on unspecified "procedural fairness" concerns that were raised during the interim appointment process before commencing any preliminary approval process.

In any event, the settlement readily satisfies the heightened standards for procedural fairness, and the *Bluetooth* and *Churchill* factors all favor granting it preliminary approval. As to procedural fairness, Interim Counsel have not identified any evidence to substantiate any concerns regarding purported collusion or procedural impropriety. While they repeat their vague reference to "procedural irregularities" relating to the settlement, they do not specify what those issues are, much less claim to have found any evidence to suggest that their concerns have any merit. Nor do Interim Counsel claim that the settlement bears any of the "red flags" described in *Bluetooth*. To the contrary, none of the *Bluetooth* signs are present here: (1) the settling plaintiffs agreed not to seek fees and expenses in excess of the 25% benchmark set in *Bluetooth* (*Fehlen* ECF No. 44 at 31); (2) there is no "clear sailing" provision or other agreement whereby Accellion agreed not to challenge a request for an agreed-upon attorneys' fee; and (3) there is no "kicker" or "reverter" clause that returns unawarded fees to Accellion—rather, the settlement makes every effort to distribute any residual funds to the class. The only "procedural" fact that Interim Counsel now identify is that the settlement was signed before the interim approval process. But Interim Counsel cannot credibly object to the settlement on this basis, given that Interim Counsel support the proposed settlement with Health Net, and this Court has already approved the settlement with Kroger—both of which were negotiated with the same law firm, using the same mediator, under the same procedural circumstances (*i.e.*, prior to class certification or the appointment of interim counsel). Indeed, it is not clear what distinguishes the Kroger settlement (which the Court approved) and the proposed Health Net settlement (which Interim Counsel supports) from the proposed Accellion and Flagstar settlements (which Interim Counsel opposes) at a procedural level.

While none of their "procedural concerns" were borne out, Interim Counsel nonetheless oppose the settlement based on three "areas of concern" about the settlement itself. The lone "concern" raised that is not solely focused on money pertains to purported "uncertainty" in the class size. That "uncertainty" in fact highlights weaknesses in plaintiffs' claims and reasons why it would be very difficult for plaintiffs to prevail at the class certification stage: Accellion simply licenses software that its customers are responsible for using, maintaining, and updating. But no data flows through Accellion's systems, and Accellion does not have the ability to access the content of information

customers store or transfer with the software that it licenses. That is part of the value proposition for Accellion's customers: not even Accellion views the data that they are securely storing or transferring. As a result, however, Accellion does not know what kinds of documents or whose information its customers are transmitting or storing with its software—or whose personal information might have been compromised in the attacks.  This is why Accellion and the Moving Plaintiffs included a process in the proposed settlement to contact customers and identify potential class members based on the customer's records, and Accellion conducted extensive informal outreach to customers to identify those class members with as much certainty as it could on a voluntary basis.  This is not a "deficiency" in the proposed settlement, nor will Interim Counsel's efforts yield more information from Accellion (because Accellion does not have any more information). Interim Counsel criticize this process, but do not specify why they believe the class size is meaningfully larger, what "public sources" they consulted that the Moving Parties did not, or any alternative process that is better suited to estimate the class, bearing in mind that Accellion itself does not have any evidence in its own possession to do so.

Interim Counsel's remaining "concerns" are simply that they want more money, without regard to how differently situated Accellion is from, for example, Health Net. But the potential for this sort of self-interested disruption of a settlement process is one reason why the "appointment of interim class counsel is not the proper vehicle by which to oppose . . . [a] settlement." *White v. TransUnion LLC*, 239 F.R.D. 681, 684 (C.D. Cal. 2006) (denying appointment of interim class counsel after plaintiff argued that appointment was necessary due to the deficiency of a settlement in a parallel class action); *see also Santos v. Carrington Mortgage Servs.*, No. 2-15-cv-864, 2017 WL 215969, at *3 (D.N.J. Jan. 18, 2017) (denying appointment of interim class counsel and stating: "the timing of Plaintiff's motion, the circumstances surrounding the motion, and the justification offered may suggest that Plaintiff seeks appointment of interim class counsel to disrupt settlement discussions taking place in overlapping cases and gain leverage in settlement negotiations").

Instead, the proper course is for the Court to evaluate the settlement through the Rule 23(e) process, where Interim Counsel and any other interested parties can lodge objections and be heard. This is precisely the process that the Court followed in approving the related class action settlement with Kroger, which involved the same settling plaintiff's counsel, was also mediated through Judge

1  Gandhi, and was the subject of procedural and substantive objections from other plaintiffs and putative
2  class members. *See Cochran v. The Kroger Co*. No. 21-cv-01887, ECF No. 115 (Mar. 24, 2022)
3  (granting final approval of $5 million class settlement); *see also id.*, ECF No. 99 (Nov. 5, 2021) at 4
4  (denying motion to intervene to oppose preliminary approval of settlement on grounds that proposed
5  intervenors could "protect their interests by opting out of the settlement class or participating in the
6  fairness hearing process").

7  Interim Counsel appear to suggest that the Court can forego that process because Interim
8  Counsel has already unilaterally assessed the relevant preliminary approval factors and declared that the
9  settlement is not "within the range of what is fair, reasonable, and adequate under *Churchill* and related
10 case law."  Setting aside Accellion's view that Interim Counsel was not positioned to "objectively"
11 evaluate whether the settlement meets the standard for preliminary approval—and thus should not
12 usurp the Court's role in doing so—it is clear that Interim Counsel's conclusion is not grounded in a
13 full and fair assessment of the Rule 23(e) preliminary approval standard.

14 The only factor that Interim Counsel address is the amount of the settlement—going so far as
15 label Accellion's "merits arguments" as "not appropriately raised." Interim Counsel have not
16 substantiated their claim that the settlement amount is insufficient—they have failed to address, for
17 example, that the settlement compares favorably to other data breach settlements (particularly in light
18 of Accellion's comparative size and resources), or that millions of class members also stand to recover
19 in settlements with FTA customers (such as Kroger or Health Net). And in any event, the "amount
20 offered in settlement" is only one of many factors to be considered under *Churchill*.  It must be
21 considered in light of the weaknesses of plaintiffs' claims against Accellion (including particular
22 weaknesses in claims for statutory damages, and the lack of any other plausible damages theory), and
23 the risks of pursuing the case further—including through class certification, where the class will not be
24 certifiable based in part on the very issues that Interim Counsel now raises about the uncertainty of the
25 class.  Accellion's "merits arguments" are core to this assessment, and Interim Counsel made no effort
26 to consider or address them before coming out against the settlement.  The settlement also had the
27 support of counsel for the Moving Plaintiffs—counsel with substantial experience in complex data
28 breach and privacy class actions, including the Kroger settlement that the Court has finally approved—

1  and was supported by confirmatory discovery to establish (among other things) the core facts of the
2  attacks, Accellion's response, and the state of Accellion's financials. Contrary to Interim Counsel's
3  conclusion, the *Churchill* factors readily favor granting preliminary approval of the settlement.
4      The Court should not further delay its consideration of the Accellion settlement based on
5  Interim Counsel's objections. Counsel have failed to identify any procedural deficiencies, and their
6  remaining evaluation was not focused on the factors relevant to the Rule 23(e) preliminary approval
7  standard. Rather, their objections focus on the *substance* of the settlement, and particularly the
8  settlement amount, which are appropriately raised and resolved at the final fairness hearing. *See, e.g.,*
9  *Villegas v. J.P. Morgan Chase & Co.,* No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D.
10 Cal. Nov. 21, 2012) (noting that "issues concerning the amount of the settlement are better resolved at
11 the final approval hearing").
12     Accellion respectfully requests that the Court set a preliminary approval hearing for the
13 settlement.
14 **Flagstar's Statement**
15     Flagstar shares Accellion's concerns about Interim Counsel's approach to evaluating the
16 Flagstar settlement, which was also the result of multiple mediations with retired Magistrate Judge Jay
17 Gandhi, robust informal discovery, and several months of arm's-length negotiations with the Settling
18 Plaintiffs. Interim Counsel were appointed to "[e]valuate the proposed settlements reached with the
19 various Defendants, with special attention to the heightened fairness standard that accompanies pre-
20 certification settlements." (Order at 7). Given that the pre-certification settlements were reached before
21 interim class counsel were appointed and would require heightened scrutiny, the Court asked for
22 Interim Counsel's assistance in evaluating the "motivations underlying the settlements" and "subtle
23 signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations."
24 Order at 6 (citing *Roes, 1-2 v. SFBSC Mgmt., LLC,* 944 F.3d 1035, 1049 (9th Cir. 2019)). These "subtle
25 signs" of collusion that the Court referenced in its Order include the *Bluetooth* factors, *see id.* at 1049.,
26 which Interim Counsel has not identified as a basis for concern with the Flagstar settlement. Indeed,
27 three months after their appointment, Interim Counsel have not identified any procedural deficiencies
28 with Flagstar's proposed settlement, including no indication of collusion or a conflict of interest

between Flagstar and Plaintiff Beyer. The sole "concern" articulated by Interim Counsel lies with "the sufficiency of the settlement consideration." In other words, Interim Counsel seeks to use the Court's well-meaning effort to foster procedural fairness as a tool to extract more money from Flagstar. This demand for more money prejudices Flagstar and Plaintiff Beyer, who negotiated the settlement, and the settlement class, which must now wait even longer for recovery.

Interim Counsel were appointed to "sanitize" the settlement, not to renegotiate it. The appropriate next step is to evaluate the settlement through the Rule 23(e) process, pursuant to which Interim Counsel may object to the merits of Flagstar's settlement and be heard and the Court will undertake an analysis pursuant to both the *Churchill and Bluetooth* factors. Flagstar welcomes the opportunity to explain to the Court why settlement consideration was adequate in this case. This is the same process that the Court followed in approving the related class action settlement with Kroger, which was negotiated with the same settling plaintiff's counsel and mediated through Judge Gandhi. *See Cochran v. The Kroger Co*. No. 21-cv-01887, ECF No. 115 (Mar. 24, 2022). Interim Counsel's apparent plan to use the existing settlement agreement as a launching point to negotiate for more money is not the purpose for which they were appointed.

Flagstar respectfully requests that the Court set a preliminary approval hearing for the settlement.

### 3. Proposed Schedule

**Interim Counsel's Statement**

Consistent with the Order, Plaintiffs submit the following proposed case schedule:

| Event | Deadline |
|---|---|
| Consolidated Complaint | June 30, 2023 |
| Response to Consolidated Complaint | July 31, 2023 |
| If Defendants respond by way of motion: | |
| Opposition Deadline | September 14, 2023 |
| Reply Deadline | October 5, 2023 |
| Hearing | November 9, 2023 or as soon thereafter as is convenient for the Court |

Interim Counsel request that the Court set a further Case Management Conference for Thursday, August 24, or as soon thereafter as may be convenient for the Court pursuant to Civil Local Rule 16-2.

**Accellion's Statement**

Accellion requests that the Court set a schedule for a renewed motion for preliminary approval of the Accellion settlement, with a hearing date of set on the earliest convenient date for the Court.

**Flagstar's Statement**

Flagstar also requests that the Court set a schedule for a renewed motion for preliminary approval of the Flagstar settlement, and proposes a hearing date at the Court's earliest convenience.

**4.     ADR**

**Interim Counsel's Statement:**

Interim Counsel are prepared to continue settlement negotiations in an attempt to reach consensus settlements on the remaining portions of this litigation.  Interim Counsel do not believe a litigation stay pending mediation is desirable, given the length of time these actions have been pending. Instead, Interim Counsel propose that mediation proceed concurrently with litigation, and that the parties complete mediation on or before September 29, 2023.

**Accellion's Statement:**

Accellion will stand by the settlement agreement that it signed nearly 18 months ago. Having already participated in two mediations, Accellion does not agree to further mediation.  Accellion

believes that the claims are entirely without merit and the class is not certifiable. If the settlement is unraveled, Accellion will vigorously defend all claims through a motion to dismiss and, if any claims survive, at the class certification stage through final judgment.

**Flagstar's Statement**

Flagstar does not think that further mediation efforts are appropriate or necessary in light of the existing settlement agreement and the concerns with Interim Counsel's position set forth above. If the Court declines to set a schedule for a renewed motion for preliminary approval of the Flagstar settlement, Flagstar would consider participating in further mediation efforts. However, Flagstar believes that for the benefit of the putative class members, the litigation should be stayed pending any additional mediation.

**Moving Plaintiffs' Response**

Having now confirmed that there is no collusion under *Bluetooth* or otherwise, Interim Co-Lead Counsel attempt to usurp the Court's role in evaluating the *Churchill* factors by demanding that the Court refuse to even hear the motions for preliminary approval. The Court should not deprive the putative classes of a fulsome hearing under Fed. R. Civ. P. 23(e) simply because Interim Counsel have "areas of concern" for which they provide no legal or factual bases.

The Proposed Settlements would together provide fourteen million dollars of compensation for the putative classes, who have been left without relief for over three years, when the FTA data breach began. The negotiations that preceded the Proposed Settlements were informed by substantial discovery. They were reached by highly experienced data breach class counsel with the assistance of an experienced mediator. A decision about whether the Proposed Settlements are fair, reasonable, and adequate will have substantial and immediate consequences for the putative classes and should be decided by the Court on a full record.

There is no precedent supporting Interim Co-Lead Counsel's request that they rather than the Court rule on whether the proposed settlements meet Rule Fed. R. Civ. P. 23(e). They are not a neutral fiduciary because approving settlements they did not reach or work for is not in their financial interest. Certain communications from Interim Co-Lead Counsel indicate that they never intended to recommend the

settlements to the Court no matter the outcome of their "investigation," and the Court should consider all counsel's motivations on a full record.

### Accellion

Moving Plaintiffs respectfully request that the Court re-instate the Motion for Preliminary Approval and allow any party, including Interim Co-Lead Counsel, who now have had the opportunity to obtain discovery materials, to oppose them.

### Flagstar

Moving Plaintiffs stand by their settlement with Flagstar as fair, reasonable, and adequate for all the reasons set forth in the Motion for Preliminary Approval. If Flagstar is willing to re-open discussions, Moving Plaintiffs of course welcome any opportunity to augment relief for the class.

If Flagstar does not commit to mediation, the Moving Plaintiffs request that the Court re-instate the Motion for Preliminary Approval and allow any party, including Interim Co-Lead Counsel, who now have had the opportunity to obtain discovery materials, to oppose them.

If Flagstar commits to mediation, Moving Plaintiffs respectfully request that the Court set a short ADR completion deadline and that Moving Plaintiffs be authorized to participate in mediation. Moving Plaintiffs note that some plaintiffs' counsel here, but not Ahdoot Wolfson, have also filed cases against Flagstar regarding a different data breach it announced in June 2022. Ahdoot Wolfson has not yet analyzed whether the classes overlap but will do prior to the Case Management hearing.

The Moving Plaintiffs request that all other deadlines in this matter be stayed pending resolution of these motions in order to preserve judicial economy and prevent duplication or waste that would result from the preparation of a consolidated complaint and litigation of motions filed in response to it.[11] In the event the Court rejects the settlements on a full record, Moving Plaintiffs request that the Court "entertain renewed motions to appoint counsel." ECF 143, 6:4-5.

---

[11] The *Flagstar* cases would potentially proceed in two venues: here and Michigan, where John Yanchunis of Morgan & Morgan was appointed lead counsel. Those cases are stayed pending this Court's ruling on the Motion for Preliminary Approval. Interim Co-Lead Counsel have represented that they have no agreements or understandings with Morgan & Morgan as to how the cases would proceed.

Dated: May 19, 2023

Respectfully submitted,

By:  /s/ *Adam E. Polk*
Adam E. Polk (State Bar No. 273000)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

Krysta K. Pachman (State Bar No. 280951)
Michael Gervais (State Bar No. 330731)
Steven G. Sklaver (State Bar No. 237612)
Kevin R. Downs (State Bar No. 331993)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
kpachman@susmangodfrey.com
mgervais@susmangodfrey.com
ssklaver@susmangodfrey.com
kdowns@susmangodfrey.com

*Interim Co-Lead Class Counsel*

By:  /s/ *Melanie M. Blunschi*
Michael H. Rubin
Melanie M. Blunschi
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-395-8129
michael.rubin@lw.com
melanie.blunschi@lw.com

Serrin A. Turner
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
212-906-1200
serrin.turner@lw.com

*Counsel for Accellion, Inc.*

By:    /s/ *Nathaniel J. Wood*
Nathanial John Wood
**CROWELL & MORING LLP**
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
213-622-4750
Email: nwood@crowell.com

Rebecca Suarez
**CROWELL & MORING LLP**
275 Battery Street, 23rd Floor
San Francisco, CA 94111
415-365-7278
rsuarez@crowell.com

*Counsel for California Health and Wellness Plan, Health Net of California, Inc., Health Net Life Insurance Company, Health Net Community Solutions, Inc., and Health Net, LLC*

By:    /s/ *William E. Ridgway*
Caroline W Van Ness
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
525 University Avenue, Suite 1400
Palo Alto, CA 94301
(650) 470-4500
caroline.vanness@skadden.com

William Elliott Ridgway
Branka Cimesa
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
155 N. Wacker Drive, Ste. 2700
Chicago, IL 60606
312-407-0917
william.ridgway@skadden.com
Branka.Cimesa@skadden.com

*Counsel for Bancorp, Inc. and Flagstar*

*Bank, FSB*

*/s/ Tina Wolfson*
TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.9111
Facsimile: 310.474.8585

ANDREW W. FERICH (*pro hac vice*)
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: 310.474.9111
Facsimile: 310.474.8585

BEN BARNOW (*pro hac vice*)
b.barnow@barnowlaw.com
ANTHONY L. PARKHILL (*pro hac vice*)
aparkhill@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: 312.621.2000

*Moving Plaintiffs' Counsel*

**FILER'S ATTESTATION**

I, Adam E. Polk, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all counsel have concurred in this filing.

By:   */s/ Adam E. Polk*