1   LATHAM & WATKINS LLP
    Michael H. Rubin (CA Bar No. 214636)
2    *michael.rubin@lw.com*
    Melanie M. Blunschi (CA Bar No. 234264)
3    *melanie.blunschi@lw.com*
    505 Montgomery Street, Suite 2000
4   San Francisco, California 94111-6538
    Telephone: +1.415.391.0600
5
    Serrin Turner (*pro hac vice*)
6    *serrin.turner@lw.com*
    1271 Avenue of the Americas
7   New York, NY 10020
    Telephone: +1.212.906.1200
8
9   *Attorneys for Defendant Accellion, Inc.*
10
11
                    **UNITED STATES DISTRICT COURT FOR THE**
12
                    **NORTHERN DISTRICT OF CALIFORNIA**
13
                           **SAN JOSE DIVISION**
14
15  IN RE ACCELLION, INC. DATA BREACH       CASE NO.  5:21-cv-01155-EJD
    LITIGATION.
16                                          **DEFENDANT ACCELLION, INC.'S**
                                            **MOTION TO DISMISS PLAINTIFFS'**
17                                          **CONSOLIDATED CLASS ACTION**
                                            **COMPLAINT**
18
                                            Date:    Sept. 21, 2023
19                                          Time:    9:00 a.m.
                                            Judge:  Hon. Edward J. Davila
20                                          Courtroom: 4 – 5th Floor
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

1  **NOTICE OF MOTION AND MOTION TO DISMISS**

2  **TO THE COURT, CLERK, PLAINTIFFS AND ATTORNEYS OF RECORD:**

3      PLEASE TAKE NOTICE that on September 21, 2023 in Courtroom 4 of the United States

4  District Court for the Northern District of California, located at  280 South 1st Street, San Jose,

5  CA 95113, Defendant Accellion, Inc. ("Accellion") will and hereby do move for an order

6  dismissing  Plaintiffs' Consolidated Class Action Complaint ("CAC") (Dkt. 170) with prejudice.

7      All claims in the CAC should be dismissed under Federal Rule of Civil Procedure 12(b)(6),

8  on grounds that each of the claims in Plaintiffs' CAC fail to state a claim as a matter of law. This

9  motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities,

10  the concurrently filed Request for Judicial Notice, the concurrently filed Declaration of Melanie

11  M. Blunschi, the pleadings and papers on file in this action, the arguments of counsel; and any

12  other matter that the Court may properly consider.

13  **STATEMENT OF RELIEF SOUGHT**

14      Accellion seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing

15  the  claims in Plaintiffs' CAC for failure to state any claim upon which relief can be granted.

16
17  Dated: July 31, 2023                    Respectfully submitted,

18                                          LATHAM & WATKINS LLP

19                                          /s/ *Michael H. Rubin*
                                            Michael H. Rubin (CA Bar No. 214636)
20                                          *michael.rubin@lw.com*
                                            Melanie M. Blunschi (CA Bar No. 234264)
21                                          *melanie.blunschi@lw.com*
                                            505 Montgomery Street, Suite 2000
22                                          San Francisco, California 94111-6538
                                            Telephone: +1.415.391.0600
23
                                            Serrin Turner (*pro hac vice*)
24                                          *serrin.turner@lw.com*
                                            1271 Avenue of the Americas
25                                          New York, NY 10020
                                            Telephone: +1.212.906.1200
26
27                                          Attorneys for Defendant *Accellion Inc.*

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
1                                    Case No. 5:21-cv-01155-EJD

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 3

      A.      Customers Used FTA Software .................................................................... 3

      B.      Customers' FTA Systems Were Attacked by Criminals ............................... 4

      C.      Plaintiffs Sue Accellion and FTA Customers ............................................... 4

III.    LEGAL STANDARD .................................................................................................. 4

IV.     ARGUMENT ............................................................................................................... 5

      A.      Plaintiffs' Entire Complaint Fails Under Rule 8 for Group Pleading ........... 5

      B.      Plaintiffs Do Not State a Claim for Negligence ........................................... 5

            1.      Plaintiffs Fail to Allege Facts Giving Rise to a Duty of
                  Care ................................................................................................... 5

            2.      Plaintiffs Do Not Allege That Accellion Did Not Use
                  Reasonable Care ............................................................................... 8

            3.      Plaintiffs' Alleged Damages Are Not Cognizable in
                  Negligence ........................................................................................ 9

      C.      There Is No Claim For "Negligence Per Se" ............................................... 11

      D.      Plaintiffs Do Not State a Claim Under the CCPA ...................................... 12

            1.      The CCPA's Data Breach Provision Does Not Apply to
                  Accellion ......................................................................................... 12

            2.      Plaintiffs Do Not Specify Any Failure to Implement
                  Reasonable Security Measures ....................................................... 14

      E.      Plaintiffs Do Not State a Claim Under the CMIA ...................................... 15

            1.      Accellion Is Not a Type of Entity Covered by the CMIA ...................... 15

            2.      Plaintiffs Fail to Plead the Release of Medical Information ................... 17

            3.      Plaintiffs Fail To Allege That Accellion Acted Negligently .................. 17

      F.      Plaintiffs Do Not State a Claim Under the CCRA ...................................... 17

      G.      Plaintiffs' Privacy Claims Should be Dismissed ........................................ 19

      H.      Plaintiffs Do Not State a Claim for Breach of Contract ............................. 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

i

I.  Plaintiffs Do Not State a Claim for Unjust Enrichment ...................................... 22

J.  Plaintiffs' Consumer Protection Act Claims are Fatally Deficient..................... 23

   1.  Plaintiffs Do Not State a Claim Under the MCPA ................................. 23

   2.  Plaintiffs Do Not State a Claim Under the WCPA ................................. 25

V.  CONCLUSION.......................................................................................................... 25

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

ii

# TABLE OF AUTHORITIES

## CASES

*Aas v. Super. Ct.*,
    24 Cal. 4th 627 (2000) ............................................................................................. 9

*Adkins v. Facebook*,
    424 F. Supp. 3d 686 (N.D. Cal. 2019) ..................................................................... 9

*Adkins v. Facebook, Inc.*,
    2021 WL 1817047 (N.D. Cal. May 6, 2021) ............................................................ 9

*Antman v. Uber Techs., Inc.*,
    2018 WL 2151231 (N.D. Cal. May 10, 2018) ........................................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 4

*Balsam v. Tucows Inc.*,
    2009 WL 3463923 (N.D. Cal. Oct. 23, 2009) ........................................................ 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 4

*Berkley v. Dowds*,
    152 Cal. App. 4th 518 (2007) ................................................................................... 8

*Bily v. Arthur Young & Co.*,
    3 Cal. 4th 370 (1992) ................................................................................................ 8

*Boyer v. Becerra*,
    2018 WL 2041995 (N.D. Cal. Apr. 30, 2018) ......................................................... 5

*Brand v. KSF Acquisition Corp.*,
    2023 WL 3225409 (S.D. Cal. Mar. 17, 2023) ....................................................... 22

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ...................................................... 10

*Cormier v. PF Fitness-Midland*,
    LLC, 2018 WL 3594443 (Mich. Ct. App. Jul. 26, 2018) ....................................... 23

*Corona v. Sony Pictures Entm't, Inc.*,
    2015 WL 3916744 (C.D. Cal. Jun. 15, 2015) ......................................................... 9

*Counts v. Gen. Motors, LLC*,
    606 F. Supp. 3d 678 (E.D. Mich. 2022) ................................................................. 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

i

*Cummings v. Energy Int'l Servs., LC*,
   271 F. Supp.3d 1182 (E.D. Cal. 2017)..................................................................................... 20

*Damner v. Facebook Inc.*,
   2020 WL 7862706 (N.D. Cal. Dec. 31, 2020)......................................................................... 19

*Das v. Bank of Am., N.A.*,
   186 Cal. App. 4th 727 (2010) ................................................................................................... 11

*Davis v. Progressive Universal Ins. Co.*,
   2020 WL 8813621 (D. Or. Oct. 13, 2020)............................................................................... 11

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) .................................................................................................... 23

*Doe v. Uber Techs., Inc.*,
   79 Cal. App. 5th 410 (2022) ................................................................................................... 6, 7

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ............................................................. 10, 19, 20

*Dusseau Farms LLC v. Wilbur-Ellis Co.*,
   2013 WL 3895829 (E.D. Mich. July 29, 2013) ....................................................................... 25

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...................................................................................................... 4

*Eisenhower Med. Ctr. v. Superior Court*,
   226 Cal. App. 4th 430 (2014) ................................................................................................... 17

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .................................................................................................. 22

*Fan v. Home Depot U.S.A., Inc.*,
   2022 WL 16964099 (E.D. Cal. Nov. 16, 2022)....................................................................... 22

*Fernandez v. Leidos, Inc.*,
   127 F. Supp. 3d 1078 (E.D. Cal. 2015).................................................................................... 16

*Gardiner v. Walmart Inc.*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)........................................................................... 10

*Goonewardene v. ADP, LLC*,
   6 Cal. 817 (2019) ...................................................................................................................... 20

*Griffey v. Magellan Health Inc.*,
   2022 WL 1811165 (D. Ariz. Jun. 2, 2022) .............................................................................. 23

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) ...................................................................................... 9, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

ii

Case No. 5:21-cv-01155-EJD

*Hammond v. The Bank of N.Y. Mellon Corp*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) .............................................. 6

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn.2d 778, 719 P.2d 531 (1986) ...................................................... 25

*Hernandez v. Lopez*,
  180 Cal. App. 4th 932 (2009) ............................................................... 22

*Holly v. Alta Newport Hosp., Inc.*,
  2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ............................................ 10

*In re Am. Med. Collection Agency, Inc. Customer Data Security Breach Litig.*,
  2021 WL 5937742 (D. N.J. Dec. 16, 2021) ............................................... 24

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) .................................................... 24

*In re Arthur J. Gallagher Data Breach Litig.*,
  2022 WL 4535092 (N.D. Ill. Sept. 28, 2022) ............................................ 16

*In re Blackbaud Customer Data Breach Litigation*,
  2021 WL 3568394 (S.D.C. Aug. 12, 2021) ........................................... 12, 13

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ............................................................... 19

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................... 5

*In re Greg F.*,
  55 Cal. 4th 393 (2012) ...................................................................... 14

*In re OnStar Contract Litig.*,
  278 F.R.D. 352 (E.D. Mich. 2011) ........................................................ 23

*In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Inst.)*,
  2020 WL 3577341 (N.D. Ohio July 1, 2020) ............................................. 11

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
  996 F.Supp.2d 942 (S.D. Cal. 2014) ..................................................... 24

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................................ 19

*Ji v. Naver Corp.*,
  2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ............................................ 5

*Jones v. Awad*,
  39 Cal. App. 5th 1200 (2019) .............................................................. 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

iii

Case No. 5:21-cv-01155-EJD

*Kalmanovitz v. Bitting*,
   43 Cal. App. 4th 311 (Cal. App. 1996) ...................................................................... 21

*Karlsson v. Mangan*,
   735 F. App'x 456 (9th Cir. 2018) ........................................................................... 25

*Karter v. Epiq Sys., Inc.*,
   2021 WL 4353274 (C.D. Cal. July 16, 2021) .......................................................... 12

*Maag v. U.S. Bank, N.A.*,
   2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ............................................................ 15

*Melton v. Boustred*,
   183 Cal. App. 4th 521 (2010) ................................................................................. 6

*Oddei v. Optum, Inc.*,
   2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*,
   2022 WL 17538747 (9th Cir. Dec. 8, 2022) ........................................................... 16

*Patton v. Experian Data Corp.*,
   2018 WL 6190349 (C.D. Cal. Jan. 23, 2018) .......................................................... 18

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) ...................................................................... 9, 10

*Ramirez v. Nelson*,
   44 Cal. 4th 908 ................................................................................................ 11

*Razuki v. Caliber Home Loans*,
   2018 WL 2761818 (S.D. Cal. June 8, 2018) ........................................................... 20

*Rivera v. Jeld-Wen, Inc.*,
   2022 WL 3702934 (S.D. Cal. Feb. 4, 2022) ............................................................ 22

*Ruiz v. Gap, Inc.*,
   380 F. App'x 689 (9th Cir. 2010) ...................................................................... 9, 20

*S. Cal. Gas Leak Cases*,
   7 Cal. 5th 391 (2019) ....................................................................................... 7, 8

*Sheldon v. Kettering Health Network*,
   40 N.E.3d 661 (Ohio Ct. App. 2015) ...................................................................... 11

*Smith v. Pac. Props. & Dev. Corp.*,
   358 F.3d 1097 (9th Cir. 2004) .............................................................................. 23

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................... 22

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

iv

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

*Syufy Enters. v. City of Oakland*,
　104 Cal. App. 4th 869 (2002) ........................................................................... 21

*Tarob M & C Invs., LLC v. Herbert*,
　2015 WL 5728426 (N.D. Cal. Sept. 30, 2015) ................................................ 11

*Veridian Credit Union v. Eddie Bauer*,
　LLC, 295 F. Supp. 3d 1140 (W.D. Wash. 2017) ............................................... 6

*Willingham v. Glob. Payments, Inc.*,
　2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ........................................................ 6

*Wilson v. RATER8, LLC*,
　2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .................................................. 17

*Yu v. Design Learned, Inc.*,
　2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) .................................................... 5

*Zine v. Chrysler Corp.*,
　600 N.W.2d 384 (Mich. Ct. App. 1999) .......................................................... 25

**STATUTES**

Cal. Civ. Code § 1798.100, *et seq.*........................................................................14

Cal. Civ. Code § 1798.140(c) ............................................................................12, 13

Cal. Civ. Code § 1798.140(v) ..................................................................................12

Cal. Civ. Code § 1798.150(a)(1)..........................................................................12, 14

Cal. Civ. Code § 1798.155(b) ..................................................................................12

Cal. Civ. Code § 1798.80(c) .....................................................................................18

Cal. Civ. Code § 1798.81.5 .......................................................................................12

Cal. Civ. Code § 1798.82..........................................................................................19

Cal. Civ. Code § 1798.84..........................................................................................18

Cal. Civ. Code § 56.05(m) ........................................................................................15

Cal. Civ. Code § 56.06.................................................................................15, 16, 17

Cal. Civ. Code § 56.101.......................................................................................15, 17

Cal. Civ. Code § 56.36(b) .........................................................................................17

15 U.S.C. § 45(a)(1)..................................................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

v

Mich. Comp. Laws § 455.911(2) .................................................................................25

Mich. Comp. Laws § 455.911(4) .................................................................................25

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................................4

Fed. R. Civ. P. 8 ...........................................................................................................5

Fed. R. Civ. P. 9(b) ..............................................................................................2, 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
vi                              Case No. 5:21-cv-01155-EJD

## I.    INTRODUCTION

Accellion is a small, privately owned company that licenses software to corporate customers, designed to enable them to securely transfer and store data of their choosing. Some Accellion customers, such as Flagstar Bank, Kroger, Health Net, and the Washington State Auditors' Office ("WSAO"), opted to use a legacy Accellion product to transfer and store data, called File Transfer Appliance ("FTA"). They did so notwithstanding that Accellion had advised them to migrate to its newer, more modern file-transfer product. In December 2020 and January 2021, criminal hackers breached the FTA systems of some Accellion customers and obtained data the customers had stored therein, which allegedly included Plaintiffs' personally identifiable information. Plaintiffs do not plausibly—and cannot truthfully—plead that Accellion had any role with respect to these systems beyond manufacturing the FTA software on them and licensing it to customers for *their own* use.

Yet Plaintiffs now seek to impose crushing liability on Accellion—based on sophisticated hacks by criminal third parties into systems that Accellion did not own or operate, affecting data that Accellion did not collect or control, concerning persons Accellion had no relationship with. Their claims against Accellion are fundamentally flawed and should be dismissed in their entirety. Throughout their complaint, Plaintiffs impermissibly group Accellion's actions with those of its customers, without specifying what Accellion itself allegedly did or did not do. And despite the laundry list of claims they assert against Accellion, none is supported by a valid legal theory or adequately pled facts.

Plaintiffs' negligence claim fails, first and foremost, because they cannot establish that Accellion owed them a duty of care—whether under the common law or by operation of any statute. Importantly, imposing a duty here on Accellion—which Plaintiffs do not (and could not) allege previously knew of the software vulnerabilities at issue—would essentially require software companies to guarantee security to anyone and everyone whose data happens to be stored by others using their products. The result would be to expose companies like Accellion—which does not control how its customers use its software—to a boundless risk of enterprise-threatening lawsuits from downstream third parties. California courts have never recognized a duty of care in these

circumstances, and policy considerations strongly weigh against doing so here. Moreover, none of Plaintiffs' claimed damages are recoverable in negligence, as they either consist of the risk of future harm or are barred by the economic loss rule.

As for Plaintiffs' statutory claims:

- The California statutory claims fail because Accellion is not a proper defendant for any of them. The California Consumer Privacy Act ("CCPA") claim fails because Accellion is not "the business" that collected and controlled the processing of Plaintiffs' information—that was strictly Accellion's customers—and because Plaintiffs do not identify any unreasonable security practice by Accellion that allegedly caused their information to be compromised. The California Confidentiality of Medical Information ("CMIA") claim fails because Accellion is not a "provider of health care"—the only type of entity the CMIA covers. And the California Customer Records Act ("CCRA") claim fails because Plaintiffs were not "customers" *of Accellion*, and Accellion had no obligation to give Plaintiffs notice of any breach under the statute.

- Plaintiffs' fraud-based claim under the Michigan Consumer Protection Act (MCPA) fails because they do not allege an actionable misrepresentation or omission, reliance, or materiality—much less with particularity, as required by Rule 9(b)—and because the MCPA does not even apply to purchases of "commercial" products like FTA.

- Plaintiffs' claim under the Washington Consumer Protection Act (WCPA) fails because Plaintiffs do not plead any unfair or deceptive practice by Accellion. Their generic allegations that Accellion failed to design or adopt "appropriate data security" processes and to "safeguard" Plaintiffs' data are insufficient as a matter of law.

Plaintiffs' remaining claims—for breach of contract, unjust enrichment, and invasion of privacy—are also insufficiently pled. Plaintiffs attempt to enforce unspecified terms of the governing FTA license agreement, but they are not parties to the agreement, and they ignore that it *specifically disclaims* any third-party beneficiaries and includes other terms—such as warranty disclaimers—that preclude any contract claim more broadly. Nor can Plaintiffs recover on a theory of unjust enrichment, given that Accellion did not receive or retain any benefit from Plaintiffs, let alone unjustly, as Accellion had no relationship with them whatsoever. Finally, Plaintiffs' invasion-of-privacy claims must be dismissed because they do not allege how Accellion—as opposed to a criminal hacker—breached their right to privacy.

## II.      BACKGROUND

### A.      Customers Used FTA Software

FTA was a software product developed by Accellion that facilitated "secure, encrypted file sharing." Consolidated Class Action Complaint ("CAC") ¶ 25 (Dkt. 170). Accellion customers, including Flagstar Bank ("Flagstar"), "used the FTA product for large file transfers, which included . . . customers' PII [personally identifiable information]." *Id.* ¶ 39.

The Complaint refers to "Defendants" collectively throughout, without detailing the different relationships between the parties or acknowledging Plaintiffs' *lack* of relationship with Accellion. However, Plaintiffs correctly allege that it was "Flagstar" (and other FTA customers) that "collect[ed], store[d], and maintain[ed] customers' PII" using the FTA software. *Id.* ¶ 35; *see also id.* ¶¶ 5-15 (alleging that the named Plaintiffs "provided [their] PII" to Flagstar, Kroger, Health Net entities, and the WSAO, but not alleging the same with respect to Accellion); *id.* ¶ 2 (alleging that Accellion should have known "that its customers would use its FTA service to store and transfer large quantities of highly sensitive PII"). Nowhere do Plaintiffs allege that Accellion had any role in controlling how its customers used FTA (nor could they, because software manufacturers such as Accellion do not control what customers do with the software). And while Plaintiffs vaguely (and inexplicably) assert that customers "hired Accellion . . . to collect and securely transfer" data through FTA (*id.* ¶ 2), they do not actually allege that Plaintiffs themselves provided any information to Accellion, or that Accellion collected their data or determined what was done with it (nor could they do so truthfully).

Accellion's end-user license agreement ("EULA"), which the Complaint refers to as the "contract[] related to the FTA platform," CAC ¶¶ 195-196, itself makes clear that the "Customer is solely responsible and liable for the use of and access to" the Accellion software they obtain "and for all files and data transmitted, shared, or stored using the [software]." *See* Ex. 1 to the Declaration of Melanie M. Blunschi (copy of EULA) § 4.3; Accellion's Request for Judicial Notice at 2-4.  The EULA likewise makes clear that "Accellion does not need or require access to any files or attachments stored or transmitted with the Accellion [software] or any personally identifiable information about any Customer." EULA § 7.2.

1

**B.     Customers' FTA Systems Were Attacked by Criminals**

In December 2020 and January 2021, criminals exploited previously unknown vulnerabilities in FTA to mount cyberattacks against some of the companies using the software (the "Attacks"). CAC ¶¶ 42-50. Plaintiffs acknowledge that Accellion did not know of the FTA vulnerabilities at issue prior to the Attacks. CAC ¶¶ 42, 47 (alleging that Accellion "learned of" the vulnerabilities shortly after the Attacks commenced). Plaintiffs further concede that, upon learning of the vulnerabilities, Accellion promptly issued patches within days to address them. *Id.* ¶¶ 43, 48. Plaintiffs make no allegation about the cause of the Attacks other than that they resulted from these previously unknown vulnerabilities. *Id.* ¶¶ 42-50. In particular, they do not identify any specific, allegedly deficient security practices by Accellion that supposedly caused the Attacks.

**C.     Plaintiffs Sue Accellion and FTA Customers**

Beginning in February 2021, numerous lawsuits relating to the Attacks were filed in this Court and several state courts, against Accellion and certain FTA customers. The 15 actions pending in this Court were consolidated on March 23, 2023, and the Court later appointed Interim Co-Lead Counsel. Plaintiffs filed their Consolidated Amended Complaint on June 30, 2023.

Plaintiffs assert claims against Accellion and Flagstar on behalf of a putative nationwide class "whose PII and/or PHI [personal health information] was compromised as a result of" the Attacks, as well as several state subclasses and a subclass limited to Flagstar customers. CAC ¶ 104. They bring: claims for negligence and "negligence per-se"; statutory claims under the CCPA, the CMIA, the CCRA, and Washington and Michigan consumer protection laws; and claims for breach of contract, unjust enrichment, and invasion of privacy.

**III.     LEGAL STANDARD**

Under Rule 12(b)(6), a claim must be dismissed unless it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see* Fed. R. Civ. P. 12(b)(6). At a minimum, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "include sufficient factual enhancement to cross the line between possibility and plausibility," *Eclectic Props. E., LLC v.*

1    *Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). The Court need not "accept as true

2    allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

3    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

4    **IV.   ARGUMENT**

5      **A.   Plaintiffs' Entire Complaint Fails Under Rule 8 for Group Pleading**

6        The Complaint fails the cardinal pleading requirement of offering a "plain statement" to

7    put each Defendant on notice of the allegations against them. *See* Fed. R. Civ. P. 8(a)(2). Plaintiffs

8    plead causes of action against both Accellion and Flagstar, failing in each case to specify which

9    allegations pertain to which defendant, or why Accellion's actions in particular constitute a legal

10    violation. Instead, as detailed further in the claim-specific arguments below, Plaintiffs rely on

11    group pleading to allege core elements of their claims, including those relating to the collection,

12    management, and control of Plaintiffs' information, the duties allegedly owed to Plaintiffs, and the

13    notifications delivered to Plaintiffs—despite Accellion and Flagstar standing in fundamentally

14    different positions with respect to these issues. Such group pleading is insufficient to meet Rule 8

15    requirements. *See, e.g., Ji v. Naver Corp.*, 2022 WL 4624898, at \*6 (N.D. Cal. Sept. 30, 2022)

16    (dismissing claims where plaintiffs' "group pleading [was] not sufficient to put Defendants on

17    notice of the claims against them"); *Boyer v. Becerra*, 2018 WL 2041995, at \*7 (N.D. Cal. Apr.

18    30, 2018) (dismissing complaint due to improper group pleading where plaintiff "repeatedly

19    lump[ed] 'defendants' together in her allegations"); *Yu v. Design Learned, Inc.*, 2016 WL

20    1621704, at \* 4 (N.D. Cal. Apr. 22, 2016) ("Under Rule 8(a), grouping multiple defendants

21    together in a broad allegation is insufficient to provide the defendants with fair notice of the claims

22    against them").

23      **B.   Plaintiffs Do Not State a Claim for Negligence**

24        Plaintiffs' negligence claim fails because they do not allege facts giving rise to a legal duty

25    of care, specify any breach of such a duty by Accellion, or plead any cognizable damages.

26        **1.   Plaintiffs Fail to Allege Facts Giving Rise to a Duty of Care**

27        Plaintiffs claim that "Defendants" had a duty "to safeguard and adequately secure the PII

28    of Plaintiffs and the Class" in a way "that would prevent cybercriminals from accessing and

exfiltrating this information." CAC ¶ 116; *see also id.* ¶ 63. California law, however, imposes no generalized duty on companies to protect against criminal acts by third parties. *See Melton v. Boustred*, 183 Cal. App. 4th 521, 536 (2010) (finding that "defendant had no legal duty to protect plaintiffs from the third party criminal conduct that harmed them"). Only where a defendant engages in "active conduct" that creates the risk of harm from a third party does a duty to protect against that harm arise; allegations of mere "nonfeasance" are insufficient. *Id.* at 534–36. Here, Plaintiffs allege, at most, nonfeasance by Accellion—vaguely alleging a failure to provide adequate security—not any "active conduct" on its part. *See Veridian Credit Union v. Eddie Bauer*, LLC, 295 F. Supp. 3d 1140, 1158 (W.D. Wash. 2017) (finding no common-law duty to secure credit card data from hackers where plaintiffs alleged "omissions or nonfeasance" but did not "describe misfeasance or any affirmative act 'that created a situation of peril' for [plaintiffs]").

Where only nonfeasance is at issue, courts recognize a duty of care only where there is a "special relationship" between the parties. *Melton*, 183 Cal. App. 4th at 535. Plaintiffs cannot invoke the special relationship exception, however, because they had no relationship with Accellion at all. Nowhere do Plaintiffs allege that they ever had any contact or formed any agreement with Accellion, or that Accellion played any role in whether or how their information was provided to or used by Flagstar, Kroger, the WSAO, or any Health Net entity. *See Willingham v. Glob. Payments, Inc.*, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (finding no duty of care in data breach case where there was "no direct relationship between the plaintiff and the defendant"); *Hammond v. The Bank of N.Y. Mellon Corp*, 2010 WL 2643307, at *9–10 (S.D.N.Y. June 25, 2010) (finding bank owed no duty to plaintiffs in data breach case because "none of the named Plaintiffs had any direct dealings with Defendant").

*Doe v. Uber Techs., Inc.* is an instructive case on this point. *See* 79 Cal. App. 5th 410 (2022). The *Doe* plaintiffs alleged they were assaulted by assailants posing as Uber drivers. *Id.* at 414. They brought a negligence action against Uber, alleging that Uber owed them a duty because "the Uber business model created the risk that criminals would employ this scheme," and because Uber "failed to warn [them] about the fake Uber scheme, [and] failed to implement additional safety precautions . . . while they continued to advertise Uber as a safe means of transportation for

women." *Id.* At 414-15. A California appellate court affirmed dismissal because—as a matter of law—"the Uber entities were not in a special relationship with the [plaintiffs] that would give rise to a duty to protect [them] against third party assaults, or to warn them about the same." *Id.* at 415. Similar to Plaintiffs' allegations here, the plaintiffs pointed to a general statement by Uber that it offered customers "[s]afe pickups"; but the court found this statement did not create a duty because it was "not sufficiently definite or explicit to constitute a 'specific promise' that the Uber entities would undertake a legal duty to protect from third party misconduct." *Id.* at 423.  The same holds true for the statements on Accellion's website cited by Plaintiffs. *Cf.* CAC ¶¶ 26-28 (citing general statements that Accellion "provides a platform for securely transferring sensitive information" and "takes appropriate steps to ensure data privacy and security").

Nor could Plaintiffs possibly plead malfeasance, which requires that the third-party conduct be "a necessary component of the [defendant's] conduct at issue," rather than merely "a foreseeable result of a defendant's actions." *Doe*, 79 Cal. App. 5th at 427. Again, *Doe* is instructive: the court held there that, even assuming Uber somehow made it easier for third-party actors to victimize the plaintiffs, that would not constitute misfeasance because the injury suffered was "not 'a necessary component' of the Uber business model." *Id.* So too here. Plaintiffs cannot allege that a criminal hack was a "necessary component" of Accellion's business model simply because it allegedly failed to protect against the risk. *Id.* ("Nor does such harm become a necessary component of the Uber business model because the Uber entities marketed the Uber app as safe to use, refused to cooperate with sexual assault investigations, or concealed sexual assaults related to the use of the app."). *Id.* To the contrary, as Plaintiffs concede, that is precisely the conduct that Accellion *seeks to prevent—i.e.*, "[t]he purpose of FTA was to facilitate secure, encrypted file sharing[.]" CAC ¶ 25; *Doe*, 79 Cal. App. 5th at 427 ("To the contrary, . . . the Uber entities made efforts to prevent the type of conduct that harmed the plaintiffs.").

Even if Plaintiffs could plead misfeasance, there *still* would be no legal duty absent a sufficient policy reason to impose one. *Id.* at 420; *see also S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 397-399 (2019) (whether a legal duty exists "hinges . . . on a comprehensive look at 'the sum total' of the policy considerations at play"). Here, policy considerations counsel strongly *against* such a

duty.  Imposing a duty of care on business-to-business software manufacturers that runs to every single person whose information may be stored by businesses using the software would expose the manufacturers to unmanageable litigation risk. Software manufacturers negotiate contracts with their corporate clients (like the EULA) that generally limit their liability in order to efficiently allocate risks, which is crucial—especially for smaller, private companies like Accellion—to enable the manufacturers to enter the market. In Plaintiffs' world, companies like Accellion would have no ability to contractually manage their risk, as they could face tort liability from a limitless number of individuals whom the companies would never know or contract with. California law does not endorse such a heedless approach. *See Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 400 (1992) (refusing to impose duty of care on auditors beyond their direct clients because of "the spectre of vast numbers of suits and limitless financial exposure"); *see also S. Cal. Gas Leak Cases*, 7 Cal. 5th at 410 (declining to impose duty of care on gas company extending to businesses that lost customers due to evacuation of area affected by gas leak, given that there was "no workable way to limit" the bounds of such a duty, and consequently "the dangers of indeterminate liability, over-deterrence, and endless litigation" were "at their apex").

### 2. Plaintiffs Do Not Allege That Accellion Did Not Use Reasonable Care

Regardless of whether Accellion owed a duty to Plaintiffs, the Complaint does not specify any conduct that could constitute a breach of that duty. *See Berkley v. Dowds*, 152 Cal. App. 4th 518, 527 (2007) ("[T]he plaintiff must indicate the acts or omissions which are said to have been negligently performed.").

Plaintiffs allege that Accellion "did not retire" FTA even though it was "nearing the end of its life."  CAC ¶ 32.  Yet they acknowledge that "Accellion encouraged customers to switch to its new product, called Kiteworks," and that every customer impacted by the Attacks chose to continue using FTA in spite of that encouragement. *Id*. Plaintiffs fail to cite to any standard of care requiring a company to force its business customers to upgrade to a newer product when they voluntarily prefer to keep using the old one (based on *their* choices about how to manage *their* duties to *their* customers). Such a standard would wreak commercial havoc by compelling all legacy systems to be decommissioned—effectively making it illegal for Microsoft to continue

1    supporting older versions of Windows, Apple to continue supporting older versions of iPhones, or

2    used car lots to sell older models of cars, to name just a few examples. Simply because a product

3    is older does not imply that it is not reasonably safe. Plaintiffs allege no facts to support the

4    inference that Accellion sold FTA knowing that it was vulnerable to attack—to the contrary, they

5    admit that the vulnerabilities exploited in the Attack were previously unknown to Accellion.

6           Plaintiffs' remaining allegations merely state that hackers exploited vulnerabilities in FTA

7    and from that infer that Accellion "fail[ed] to implement and maintain adequate security

8    measures[.]" CAC ¶ 133; *see also id.* ¶¶ 40-50. In essence, they assert that a data breach is

9    negligence per se. That is not the law in California, and with good reason: no software company,

10   no matter how strong its security program, can prevent all vulnerabilities or guarantee against a

11   breach. It is simply not possible to "entirely rid [a] complex system of all risk of software coding

12   errors" or "eliminate all future breaches or leaks." *Adkins v. Facebook, Inc.*, 2021 WL 1817047,

13   at *2 (N.D. Cal. May 6, 2021). Without a specific allegedly unreasonable act or omission that

14   caused the breach, Plaintiffs lack a factual basis to claim negligence.

15              **3.    Plaintiffs' Alleged Damages Are Not Cognizable in Negligence**

16          Plaintiffs also fail to allege any cognizable damages. None of the categories of "damages"

17   identified by Plaintiffs are recoverable in negligence:

18   - Plaintiffs allege a laundry list of alleged damages they "may, in the future, inc[ur],"
19     primarily involving the risk of future identity theft, CAC ¶¶ 78-103, 143. But
       "speculative harm or the threat of future harm" cannot support a negligence claim. *Aas*
20     *v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000); *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691
       (9th Cir. 2010) (negligence claim requires "appreciable, nonspeculative, present
21     harm"); *Adkins v. Facebook*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019) (rejecting the
       proposition that "future harms from a data breach can anchor a claim for negligence").
22

23   - Plaintiffs also make harm allegations based on "lost time," *e.g.*, CAC ¶ 5 (alleging
       Plaintiff Chavez "devote[d] significantly more time to checking her credit reports"),
24     but such vague harms are not actionable. *Pruchnicki v. Envision Healthcare Corp.*, 845
       F. App'x 613, 614 (9th Cir. 2021); *see also Griffey v. Magellan Health Inc*., 562 F.
25     Supp. 3d 34, 46 (D. Ariz. 2021) ("allegations of lost time addressing [a] data breach"
       and "the danger of future harm are not cognizable injuries for negligence claims");
26     *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *4 (C.D. Cal. Jun. 15,

27

28

2015) ("[G]eneral allegations of lost time are too speculative to constitute cognizable injury.").[1]

- The remaining alleged "present" injuries are also deficient. Plaintiffs claim a "diminution in the value" of their personal information, CAC ¶ 143, but such allegations suffice only if plaintiffs plausibly plead their personal information has "value in general" and "actually lost value" to Plaintiffs due to the alleged conduct. *Pruchnicki*, 845 F. App'x at 614-15. Neither is plausibly pled here, because Plaintiffs do not allege, and it is absurd to believe, that they actually planned to sell or profit from their personal information in any way. *See id.*; *see also Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *4 (N.D. Cal. Mar. 5, 2021) (rejecting "bare assertions" that plaintiff's "PII had value or that an economic market exists").

- Finally, while Plaintiffs claim they were "the victim of identity theft" or experienced "fraudulent charges," they do not explain how the alleged charges were caused by Accellion, other than to say they occurred "after the Data Breach." *E.g.*, CAC ¶¶ 5-11, 13-15. Further, only *one* of the Plaintiffs claims not to have been reimbursed for any alleged fraudulent charges. CAC ¶¶ 94-95. These allegations, too, thus fall short of adequately pleading injury. *See Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *10-11 (N.D. Cal. May 10, 2018) (no actionable injury where plaintiffs failed to tie fraudulent activity to the breach).[2]

Plaintiffs' alleged present injuries are additionally barred by the economic loss rule, which bars recovery under negligence for "purely economic damages unconnected to physical injury or property damage." *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *5 (N.D. Cal. Sept. 14, 2016). California courts addressing allegations of diminution in value of personal information and out-of-pocket expenses have found these claims to be "economic in nature" and thus barred by the economic loss doctrine. *See id.* at *4–5 (out-of-pocket expenses); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016), at *4, *12 (finding "costs associated with prevention of identity theft," "lost opportunity costs," and "diminution in value of information" barred by economic loss rule). This precludes recovery in negligence for Plaintiffs'

---

[1] Plaintiffs do not elaborate on how receiving "an increase in scam and phishing telephone calls" is a cognizable injury, *e.g.*, CAC ¶¶ 6-15, but whether characterized as alleged "lost time" or a risk of "future harm," it fails to plead an injury for the reasons stated above.

[2] Plaintiffs also claim they "suffer[ed] anxiety" since learning of the Attacks. CAC ¶¶ 5-15. However, they do not claim this as an injury caused by Accellion's negligence; and in any event, such vague allegations fail as a matter of law. *See Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *3–4 (C.D. Cal. Oct. 21, 2020) (dismissing negligence claim based on "conclusory and vague" claims of "emotional harm and distress").

generic claims of unspecified "diminution in value" and "out-of-pocket costs" and other "costs" allegedly arising from the Attacks (CAC ¶ 143).

### C.      There Is No Claim For "Negligence Per Se"

Plaintiffs attempt to assert an independent claim for "negligence per se," but, in California, "[n]egligence per se is an evidentiary doctrine, rather than an independent cause of action." *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210, (2019). The claim fails accordingly. *Tarob M & C Invs., LLC v. Herbert*, 2015 WL 5728426, at *1 (N.D. Cal. Sept. 30, 2015) (dismissing claim "[b]ecause negligence per se is not an independent cause of action").

To the extent Plaintiffs attempt to allege a duty of care based on the statutes cited in their negligence per se claim, their allegations fall short. A plaintiff may only "borrow" a statute to prove a duty in limited circumstances, including where the defendant's statutory violation "proximately caused death or injury to person or property," which is not alleged here. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 738 (2010) (discussing four-factor showing). Further, the statute allegedly violated must specify a "*particular* course of conduct" that a defendant "must take, or refrain from taking." *Ramirez v. Nelson*, 44 Cal. 4th 908, 919 (2008 (emphasis added). None of the statutes cited by Plaintiffs do so:

- **FTC Act.** The FTC Act, 15 U.S.C. § 45(a)(1), proscribes only "unfair . . . acts or practices," 15 U.S.C. § 45(a)(1), without setting forth a specific standard of conduct. *See In re Sonic Corp. Customer Data Sec. Breach Litig. (Fin. Inst.)*, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (rejecting FTC Act as negligence predicate because it "does not lay out objective standards").

- **HIPAA**. HIPAA does not establish a specific standard of conduct, and is not applicable to Accellion in any event. *See, e.g., Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 672 (Ohio Ct. App. 2015) (finding that HIPAA did not supply a specific standard of care applicable to the conduct alleged, and rejecting HIPAA's general requirements as a standard of care, as that would be "tantamount to authorizing a prohibited private right of action for violation of HIPAA itself"); *Davis v. Progressive Universal Ins. Co.*, 2020 WL 8813621, at *5 (D. Or. Oct. 13, 2020) (dismissing negligence per se claim because "plaintiff has not cited to, and the Court is not aware of, any authority extending HIPAA to non-covered entities such as Progressive").

- **COPPA**. A necessary element of negligence per se is that the plaintiff "was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." *Das*, 186 Cal. 4th at 738. Plaintiffs cannot satisfy that element for COPPA

because the statute is intended to protect children under 13 and none of the Plaintiffs are alleged to be children.

### D.    Plaintiffs Do Not State a Claim Under the CCPA

Plaintiffs' CCPA claim fails because Plaintiffs do not plausibly allege that Accellion collected and controlled the processing of their information, nor do Plaintiffs plead any specific reasonable security practices that Accellion failed to implement.

#### 1.    The CCPA's Data Breach Provision Does Not Apply to Accellion

The CCPA provides California residents with a narrow private right of action where their "personal information, as defined in . . . Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of *the business's* violation of the duty to implement and maintain reasonable security procedures and practices[.]" Cal. Civ. Code § 1798.150(a)(1) (emphasis added). Plaintiffs' CCPA claim against Accellion fails because "the business" to which the statute refers is the entity that collected and controlled the processing of the information at issue—which was not Accellion.

"Business" is a statutory term of art under the CCPA: it is defined as an entity that "*collects* consumers' personal information" and "*determines* the purposes and means of the processing of consumers' personal information[.]" *Id*. § 1798.140(c)(1) (emphasis added). The CCPA specifically distinguishes a "business" from a "service provider," which is defined as an entity "that processes information *on behalf of* a business and to which *the business* discloses a consumer's personal information for a business purpose pursuant to a written contract." *Id.* § 1798.140(v) (emphasis added). While the CCPA grants consumers a limited right to sue "the business" that collects and determines what to do with their information, the CCPA specifies that actions against service providers for CCPA violations may only be brought by the California Attorney General. *Id.* § 1798.155(b). "Accordingly, [a plaintiff] can only state a claim" under the CCPA's private cause of action against entities that "are businesses, not service providers." *Karter v. Epiq Sys., Inc*., 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021).[3]

---

[3] Plaintiffs will undoubtedly cite to *In re Blackbaud Customer Data Breach Litigation*, a South Carolina case holding that a cloud-software company was a "business" under the CCPA, based on

1        Plaintiffs do not (and cannot) allege any facts that could establish that Accellion is "the

2  business" they can sue under the CCPA.[4] Instead, Plaintiffs rely on vague and improper group

3  pleading, making conclusory allegations that "*Defendants* collect [unspecified] personal

4  information" and "*[e]ach Defendant* . . . determines the purposes and means of the processing of

5  consumers' personal information." CAC ¶¶ 157-158. Plaintiffs never explain what information

6  *Accellion* collected from them, much less how Accellion "determine[d] the purposes and means of

7  the processing" of that information. To the contrary, Plaintiffs allege only that they provided their

8  information to *FTA customers*—CAC ¶¶ 5, 8, 10 (California Plaintiffs Chavez and Moniz

9  "provided [their] PII" to Flagstar); *id.* ¶¶ 9, 12 (California Plaintiffs Olson and Taylor "provided

10  [their] PII" to Health Net entities)—making no mention of Accellion.[5] Plaintiffs further

11  acknowledge that Flagstar "collect[ed], store[d], and maintain[ed] customers' PII" and "knowingly

12  used" FTA "for large file transfers, which included Flagstar's customers' PII (*id.* ¶ 39)—showing

---

the premise that a "'business' is a broader term that encompasses 'service provider.'" 2021 WL
3568394, at *6 (S.D.C. Aug. 12, 2021). That out-of-state holding is plainly incorrect, as the CCPA
defines the two terms in a dichotomous fashion, with the "business" being the entity that collects
and controls the information, and a "service provider" only receiving information from and
processing it on behalf of "the business."  The *Blackbaud* court not only ignored the fundamental
distinction the statute draws between the two terms, but it also misstated the definition of
"business": it mistook an "and" for an "or," and as a result found that an entity qualifies as a
"business" so long as it "determines the purposes and means of the processing of consumers'
personal information," *regardless* of whether the entity *collected* that information. In actuality, the
definition requires both. *Compare Blackbaud,* 2021 WL 3568394, at *4 (quoting definition to
include an "or" after the collection requirement) *with* Cal. Civ. Code § 1798.140(c) (defining the
term as an entity "that collects consumers' personal information, or on the behalf of which such
information is collected *and* that alone, or jointly with others, determines the purposes and means
of the processing of consumers' personal information") (emphasis added).

[4] To be clear, Accellion is not even a *service provider* under the CCPA, as it did not process data
on behalf of its FTA customers, but rather merely licensed software to them, which *they* used to
process data.  But in any event, Plaintiffs cannot plausibly allege that Accellion was "the business"
that *collected and controlled* their data—that plainly would have been FTA customers.

[5] Plaintiffs make a conclusory allegation that unspecified "[e]ntities" hired Accellion "to collect
and securely transfer" PII. CAC ¶ 2. But Plaintiffs do not plead any *facts* to substantiate a claim
that Accellion ever collected any data from Plaintiffs or any other individuals (it did not). Indeed,
Plaintiffs appear to acknowledge in the same paragraph that it was Accellion "*customers*" that
"use[d]" FTA "to store and transfer large quantities of highly sensitive PII." *Id.* Plaintiffs also
never specifically allege that Accellion determined the "purposes and means of the processing" of
consumers' personal information—which is independently fatal, since an entity must meet *both*
requirements under the CCPA to qualify as "the business" for purposes of Section 1798.150(a)(1).

1   that FTA customers like Flagstar collected the relevant data and determined why and how it was

2   processed. This is also reflected in the EULA, which Plaintiffs admit governed customers' use of

3   FTA (CAC ¶ 196), and which provides that customers are solely responsible for their own use of

4   Accellion software and any files they store or transfer with it.  EULA §§ 4.3 & 7.2.

5          Plaintiffs attempt to plead around this deficiency by alleging that "Defendants" collect

6   personal information from *other* consumers in *other* contexts, such as "consumers who request

7   information from them, consumers who use their services, including users of their mobile

8   applications, and consumers who submit customer support requests." *Id.* ¶ 158. That allegation is

9   not only vague but irrelevant: Plaintiffs still fail to allege that Accellion collected *their* information

10  that was subject to the breach at issue here. Without those allegations, Plaintiffs cannot establish

11  that Accellion acted as "the business" with respect to *them* or the data at issue. To construe the

12  data breach provision otherwise—*i.e.*, to eliminate the nexus between data collected by a business

13  and data actually breached—would be inconsistent with the CCPA's text, purpose, and structure.

14  The CCPA gives California consumers certain rights vis-à-vis the "businesses" that collect and

15  control their personal information, and imposes concomitant obligations on those "businesses."

16  *See* Cal. Civ. Code § 1798.100, et seq. The concept of collection and control is key to the statutory

17  scheme—"businesses" cannot implement the CCPA's requirements unless they collect and control

18  the processing of personal information to which those requirements apply. The only interpretation

19  that aligns with the CCPA's framework is that the data breach provision permits suit only against

20  "the business" that collected and controlled the processing of the specific personal information

21  that was breached. *See In re Greg F.*, 55 Cal. 4th 393, 406 (2012) (emphasizing that a provision

22  must be construed "in the context of the statutory framework as a whole").

23          **2.      Plaintiffs Do Not Specify Any Failure to Implement Reasonable
                       Security Measures**

24

25          Plaintiffs' CCPA claim is also deficient because they do not tie the alleged compromise of

26  their information to any specific alleged failure by Accellion to implement reasonable security

27  measures. Plaintiffs merely parrot the language of the CCPA, alleging that the Attacks "occurred

28  as a result of Defendants' failure to implement and maintain reasonable security procedures and

practices for protecting the exposed information given its nature." CAC ¶ 162. That is insufficient. *See Griffey* , 562 F. Supp. 3d at 57 (dismissing CCPA claim for failure to allege "sufficient facts to establish how or why Magellan's systems were inadequate or unreasonable"); *Maag v. U.S. Bank, N.A*., 2021 WL 5605278, at *2  (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim based on conclusory allegations that defendant "did not 'implement and maintain reasonable security procedures and practices,'" "failed to effectively monitor its systems," and had "lax security"). To find Plaintiffs' conclusory allegations sufficient would imply that the mere fact of a data breach is sufficient by itself to support a CCPA claim, which is not the law. *See Griffey*, 562 F. Supp. 3d at 57 (holding that a CCPA cannot proceed on the bare theory that "because there was a breach, [defendant's] data security was inadequate").

### E.    Plaintiffs Do Not State a Claim Under the CMIA

Plaintiffs' CMIA claim fails because Accellion is not "a provider of healthcare," and in an any event Plaintiffs do not adequately plead that the Attacks affected any qualifying medical data.

#### 1.    Accellion Is Not a Type of Entity Covered by the CMIA

The CMIA prohibits "[a] provider of health care, health care service plan, or contractor" from releasing a person's medical information contrary to the provisions of the statute. Cal. Civ. Code § 56.101. Accellion is none of these things. Plaintiffs allege that Accellion is a "provider of health care," (sic) CAC ¶ 167, but the term does not apply to Accellion.

The CMIA defines a "provider of healthcare" to include: "any clinic, health dispensary, or health facility" licensed under Cal. Civ. Code § 56.05(m); any "business organized for the purpose of maintaining medical information" for purposes of diagnosis, treatment, or "allowing the individual to manage his or her information," *id*. § 56.06(a); and any business that "offers software or hardware to consumers . . . that is designed to maintain medical information" for diagnosis, treatment, or management of a medical condition, id. § 56.06(b). Plaintiffs attempt to rely on the latter two provisions—Sections 56.06(a) and (b)—but neither is apposite.

As to Section 56.06(a), Plaintiffs ignore the statutory language, alleging that Accellion "is organized *in part* for the purpose of maintaining medical information." CAC ¶ 167 (emphasis added). But the provision extends only to businesses "organized for *the* purpose of maintaining

medical information." Cal. Civ. Code § 56.06(a) (emphasis added). That is not Accellion's purpose; to the contrary, Plaintiffs acknowledge that FTA is general-purpose software used for "large file transfers," CAC ¶ 39, and that Accellion's customer base spans a wide array of industries. *Id.* ¶ 77 (listing alleged customers); *see Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021) (conclusory allegation that defendant was "provider of health care" insufficient), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747, at *1 (9th Cir. Dec. 8, 2022); *In re Arthur J. Gallagher Data Breach Litig.*, 2022 WL 4535092, at *12-13 (N.D. Ill. Sept. 28, 2022) (same).

Plaintiffs emphasize that Accellion notes on its website that its file-sharing software can be used by hospitals and medical professionals to facilitate the sharing of medical records. Putting aside that the cited page relates to Kiteworks (Accellion's successor product), not FTA, the fact that FTA was suitable for all industries—including the healthcare industry—does not somehow make Accellion a "provider of healthcare." Concluding otherwise would mean that any vendor whose technology can be used in the healthcare industry—including software manufacturers like Microsoft, cloud-hosting providers like Amazon Web Services, and virtually every manufacturer of computer equipment—would be swept within the CMIA's scope. *See Fernandez v. Leidos, Inc*., 127 F. Supp. 3d 1078, 1089-90 (E.D. Cal. 2015) (dismissing CMIA claim against vendor that "provide[d] electronic information management and data security services," including to facilitate health insurance applications, because vendor was not "an entity governed by CMIA").

As to Section 56.06(b), while Plaintiffs parrot a portion of the statutory language they claim applies to Accellion (CAC ¶ 167), they omit the determinative part—that Section 56.06(b) extends only to a business that "offers software or hardware *to consumers*, including a mobile application or other related device that is designed to maintain medical information." Cal. Civ. Code § 56.06(b) (emphasis added). Plaintiffs do not allege (because they cannot) that Accellion offers its software directly to individual consumers. They certainly do not allege that they themselves ever purchased FTA—much less that they used it to manage their health information or to facilitate medical treatment. Rather, Plaintiffs acknowledge that FTA was designed for and used strictly by "[e]ntities such as government agencies, private businesses, and universities." CAC ¶ 2.

### 2.     Plaintiffs Fail to Plead the Release of Medical Information

Even if the CMIA somehow applied to Accellion, Plaintiffs' claims would still fail because they do not allege that any qualifying medical information of theirs was affected by the Attacks. Medical information is defined by the CMIA as "*substantive* information regarding a patient's medical condition or history that is combined with individually identifiable information." *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 434 (2014) (emphasis added). Here, the two Plaintiffs who bring the CMIA claim against Accellion make no specific allegations that such information was exposed. Instead, Plaintiffs Olson and Taylor generically allege that "medical information" was "taken by unauthorized actors" in the Attacks, CAC ¶¶ 9, 12, but fail to explain what kind of medical information it comprised. That is not sufficient. *See Wilson v. RATER8, LLC*, 2021 WL 4865930, at *4-5 (S.D. Cal. Oct. 18, 2021) (dismissing CMIA claim where disclosure included only "treating physician names, medical treatment appointment information, and medical treatment discharge dates and times").

### 3.     Plaintiffs Fail To Allege That Accellion Acted Negligently

Plaintiffs' failure to plausibly allege negligence by Accellion also precludes their claim under Section 56.101. *See* Cal. Civ. Code § 56.101(a) (covered entity that "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information" is subject to certain remedies and penalties); *id.* § 56.36(b) (allowing suit against person who "negligently released" information). *See supra* § IV.B. Likewise, Plaintiffs' failure to plausibly allege that Accellion "maintains," "preserves," or "stores" Plaintiffs' data—which instead was maintained by FTA customers—equally dooms their CMIA claim.

### F.     Plaintiffs Do Not State a Claim Under the CCRA

Plaintiffs' CCRA claim fails because only a "*customer* injured by a violation" of the statute may sue for damages, and Plaintiffs were not "customers" of Accellion. Cal. Civ. Code § 1798.84(b) (emphasis added). The CCRA defines a "customer" as "an individual who provides personal information to a business for the purpose of purchasing or leasing a product or obtaining a service from the business." Id. § 1798.80(c). Aside from their improper group pleading, Plaintiffs do not allege they provided any information to Accellion; and they certainly do not allege that they

did so for purposes of purchasing or obtaining products or services from Accellion (as opposed to the FTA customers they were dealing with). These deficiencies are fatal to their claim. *See Patton v. Experian Data Corp.*, 2018 WL 6190349, at *8 (C.D. Cal. Jan. 23, 2018) (dismissing CCRA claim under Section 1798.84 where plaintiff "fail[ed] to allege that he was Defendants' customer").

The CCRA claim additionally fails because the only alleged violation that Plaintiffs identify—that "*Defendants* failed to promptly notify Plaintiffs and California Subclass members of the Data Breach," *id*. ¶ 183—does not apply to Accellion. Rather, any requirement to notify Plaintiffs belonged to the FTA customers who held their data—as reflected by Plaintiffs' allegations elsewhere in the Complaint that the notifications they received came from those customers. *See id.* ¶¶ 5, 8, 10 (notifications from Flagstar); ¶¶ 6-7, 13 (notifications from Kroger); ¶¶ 9, 12 (notifications from Health Net entities); ¶¶ 11, 15 (notifications from the WSAO).[6] Plaintiffs do not allege that Accellion was required—or even had the ability—to notify Plaintiffs directly of the breaches of FTA customers.

Plaintiffs cannot salvage their CCRA claim based on vague allegations that Accellion "struggled to notify clients"—*i.e.*, Accellion's customers—of the FTA vulnerabilities after they were discovered. CAC ¶ 45. This conflates separate notifications: Accellion's notification to its customers *concerning software vulnerabilities* is irrelevant to Section 1798.82 of the CCRA, which requires a business to notify consumers of *a data breach* if the business "owns or licenses" the data and it contains PII of California residents. *See* Cal. Civ. Code § 1798.82(a). Plaintiffs do not (and cannot) allege that Accellion was aware after discovering the vulnerabilities which of its customers actually had experienced a data breach (as opposed to knowing which customers had *not yet patched the vulnerability*), much less that Accellion "owned or licensed" the data in question or knew that it contained PII of California residents. Accellion's discovery of the

---

[6] Plaintiff Whittaker alleges that she provided her PII to Kroger as part of receiving pharmacy services. Her allegations mirror those from other plaintiffs impacted by the Kroger breach, except that Whittaker alleges that she received a letter "from Accellion" informing her of the Attacks. CAC ¶ 14. This allegation appears to be in error—and is otherwise implausible as Accellion did not send any consumer notifications—as it is not alleged anywhere in the Complaint that Plaintiff Whittaker (or any other individual) provided any information directly to Accellion, including the necessary contact information that would even permit Accellion to send her a notification letter directly.

1  vulnerabilities did not trigger a CCRA obligation to Plaintiffs, nor can any alleged delay in

2  notifying Accellion's business customers about the vulnerabilities ground a CCRA claim now.[7]

3       Plaintiffs also do not allege a cognizable injury under the CCRA. The statute requires

4  allegations of "incremental harm suffered as a result of the alleged delay in notification, as opposed

5  to harm from the Data Breaches themselves." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

6  2017 WL 3727318, at *40 (N.D. Cal. Aug. 30, 2017) (citation omitted). Plaintiffs list a series of

7  generic actions they allege they could have taken had they received "[t]imely disclosure" of the

8  Attacks (CAC ¶ 183)—such as purchasing credit monitoring services or placing fraud alerts "on a

9  quarterly basis"—but do not actually allege that any purported delay (let alone delay by Accellion)

10  prevented them from taking those actions or that they suffered any incremental harm. *See, e.g.,*

11  *Dugas,* 2016 WL 6523428, at *6–7 (dismissing CCRA claim where it was "entirely unclear how

12  any of the injuries identified by Plaintiff ha[d] been caused or compounded by Defendants' alleged

13  failure to promptly notify Plaintiff").

14      **G.   Plaintiffs' Privacy Claims Should be Dismissed**

15       Plaintiffs' common-law claim for intrusion upon seclusion fails because it is an intentional

16  tort, and Plaintiffs have not alleged any intentional conduct that could support it. The cause of

17  action requires that "a defendant '*intentionally* intrude[d] into a place, conversation, or matter as

18  to which the plaintiff has a reasonable expectation of privacy," and "the intrusion occur[red] in a

19  manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*,

20  956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs do not allege that Accellion intentionally intruded on

21  Plaintiffs' privacy; they acknowledge that the Attacks were conducted by "[u]nauthorized third

22  parties." CAC ¶¶ 42, 49. Any allegation that Accellion failed to *prevent* a third-party intrusion is

23  insufficient as a matter of law to support an intentional tort claim. *See Damner v. Facebook Inc.*,

24  2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020) (rejecting intrusion-upon-seclusion claim

25

26

27  [7] In any event, Plaintiffs make no claim that any purported delay by Accellion caused notifications *by customers to Plaintiffs* to be unnecessarily delayed. To the contrary, while Plaintiffs allege that

28  Flagstar "delayed" notifying its customers until March 5, 2021, they acknowledge that Accellion informed Flagstar of the Attacks on January 22, 2021. CAC ¶ 55.

LATHAM&WATKINS           ACCELLION'S MOTION TO DISMISS
ATTORNEYS AT LAW          CONSOLIDATED CLASS ACTION COMPLAINT
19         Case No. 5:21-cv-01155-EJD

premised on a "failure to take adequate measures to protect against the intentional intrusion of a third party").

Plaintiffs' privacy claim brought under the California Constitution requires the same elements and fails for similar reasons. *See, e.g.*, *Razuki v. Caliber Home Loans*, 2018 WL 2761818, at *2-3 (S.D. Cal. June 8, 2018) (dismissing California constitutional privacy claim because "[losing] personal data through insufficient security doesn't rise to the level of an egregious breach of social norms underlying the protection of sensitive data"); *Dugas*, 2016 WL 6523428, at *11-12 (dismissing California constitutional privacy claim because the complaint contained no "facts that would suggest that the data breach was an intentional violation of Plaintiffs' and other class members' privacy, as opposed to merely a negligent one"); *Ruiz*, 830 F. App'x at 693 ("California courts have yet to extend the cause of action [for invasion of privacy] to include accidental or negligent conduct").

## H.    Plaintiffs Do Not State a Claim for Breach of Contract

There is no contract between Plaintiffs and Accellion. Plaintiffs instead seek to enforce unspecified terms from contracts between "Accellion and its FTA customers . . . related to the FTA platform" as supposed third-party beneficiaries. CAC ¶ 195. This claim fails, however, because Plaintiffs are not intended beneficiaries of those contracts, and they would have no claim under the contract even if they were.

Under California law, a third party seeking to bring a breach of contract action must establish "not only (1) that it is likely to benefit from the contract, but also (2) that a motivating purpose of the contracting parties is to provide a benefit to the third party, and further (3) that permitting the third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 817, 821 (2019). The intent to benefit a third party must be "inferred solely from the written provisions of the contract." *Cummings v. Energy Int'l Servs., LC*, 271 F. Supp.3d 1182, 1188 (E.D. Cal. 2017).

Here, the governing FTA agreement—the EULA (CAC ¶ 196)—reflects a clear intent to *prohibit* enforcement by third parties. *See* EULA § 12.11 (stating that "[t]here are no third-party

1   beneficiaries of Customer" entitled to enforce the EULA). This clause makes plain that Accellion

2   and its customers did not intend for third parties like Plaintiffs to have rights under the contract.

3   *See Balsam v. Tucows Inc.*, 2009 WL 3463923, at *4–6 (N.D. Cal. Oct. 23, 2009) (dismissing

4   third-party claim where contract "specifically disclaim[ed] any intention to benefit third-parties"

5   and nothing else in the contract evidenced such an intent).

6           Despite this, Plaintiffs make the conclusory allegation that "Accellion and its FTA

7   customers intended for Plaintiffs" to be the "primary beneficiaries" of the EULA, based on a

8   "confidentiality" provision that required Accellion to "not disclose any Confidential Information

9   acquired directly or indirectly from the other party." CAC ¶¶ 196, 198. The quoted provision,

10  however, applies strictly to confidential information "*of the other party*" to the contract—that is,

11  to *FTA customers'* confidential information. EULA § 7.1 (noting that "Confidential Information"

12  includes "matters of a technical, financial, commercial, business, or other proprietary nature"). The

13  EULA specifically distinguishes such proprietary information from *personal information* about

14  FTA customers' *own customers or personnel*, which the EULA states that Accellion "does not

15  need or require access to." *See id.* § 7.2 (providing that Accellion does not need access to "any

16  personally identifiable information about any Customer personnel . . . or customers"). There is

17  nothing in the provision that reflects any intent by Accellion to assume a duty to any third party—

18  much less that granting rights to any third parties was a "motivating purpose" of the provision. *See*

19  *Kalmanovitz v. Bitting,* 43 Cal. App. 4th 311, 314 (Cal. App. 1996) (explaining that "the

20  contracting parties must clearly manifest their intent to benefit the third party").

21          Even if Plaintiffs were permitted to enforce the EULA, the Complaint fails to identify any

22  specific contractual provision that Accellion allegedly breached. Plaintiffs' only allegation on this

23  front is that Accellion breached the EULA "by failing to keep the PII and PHI of Plaintiffs and

24  Class members secure and confidential." CAC ¶ 200. But that allegation has no basis in the EULA,

25  which does not impose any duties or obligations on Accellion with respect to Plaintiffs' data

26  specifically. *See Syufy Enters. v. City of Oakland*, 104 Cal. App. 4th 869, 888 (2002) ("[A] third

27  party-beneficiary cannot assert greater rights than those of the promise under the contract."). Nor

28  could Plaintiffs base their claim on a more general contractual duty, as the EULA expressly

1 disclaims any warranty of fitness with respect to the software, and further states that Accellion

2 does not warrant that the software will be "error free." *See* EULA § 8.4.

3       **I.       Plaintiffs Do Not State a Claim for Unjust Enrichment**

4       As the Ninth Circuit reaffirmed in *Sonner v. Premier Nutrition Corp*., claims for equitable

5 relief, such as restitution or disgorgement on an unjust enrichment theory, *see* CAC ¶ 224, are

6 proper only where a plaintiff lacks an adequate legal remedy. *See* 971 F.3d 834, 844 (9th Cir.

7 2020). Here, Plaintiffs make no allegation whatsoever that they lack an adequate legal remedy.

8 Instead, they merely state that their unjust enrichment claim is pled "in the alternative to their

9 claims at law." CAC ¶ 214. That is insufficient under *Sonner*. *See Fan v. Home Depot U.S.A.,*

10 *Inc*., 2022 WL 16964099, at *4 (E.D. Cal. Nov. 16, 2022) (explaining that "multiple district courts

11 have found that alternative pleading of equitable relief does not satisfy Sonner's requirements")

12 (citing cases); *see also Brand v. KSF Acquisition Corp*., 2023 WL 3225409, at *4 (S.D. Cal. Mar.

13 17, 2023) ("'District courts have rejected a plaintiff's attempt to distinguish *Sonner* based on the

14 procedural posture of the case.'") (quoting *Rivera v. Jeld-Wen, Inc*., 2022 WL 3702934, at *12

15 (S.D. Cal. Feb. 4, 2022) (collecting cases)).

16       In any event, Plaintiffs cannot meet the elements of unjust enrichment. While unjust

17 enrichment itself is not a cause of action under California law, a court may construe a claim for

18 unjust enrichment as a quasi-contract claim seeking restitution, the elements of which are "that the

19 defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners,*

20 *LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "The doctrine applies where plaintiffs, while

21 having no enforceable contract, nonetheless have conferred a benefit on defendant which

22 defendant has knowingly accepted under circumstances that make it inequitable for the defendant

23 to retain the benefit without paying for its value." *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938

24 (2009).

25       Here, Plaintiffs do not and cannot allege any facts capable of showing that they conferred

26 any benefit on Accellion, let alone one that Accellion "knowingly accepted" and has unjustly

27 retained, because Plaintiffs had no relationship with Accellion at all. While Plaintiffs claim that

28 they would not have provided their data or paid fees to "Accellion clients" had they known that

their data would not be kept safe, *see* CAC ¶¶ 217-18, they do not allege they ever provided their data or paid fees *to Accellion*. By the same token, they do not explain how Accellion could have knowingly accepted any benefit from Plaintiffs in the absence of any dealings with them. The mere fact that Accellion licensed software to entities Plaintiffs allege they bestowed a benefit on is not sufficient to subject Accellion itself to an unjust enrichment claim. *See Griffey v. Magellan Health Inc.*, 2022 WL 1811165, at *5–6 (D. Ariz. Jun. 2, 2022) (rejecting unjust enrichment claim in data-breach lawsuit where fees paid by plaintiffs were paid to entities that defendant was a service provider for rather than the defendant itself); *cf. Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) (rejecting unjust enrichment claim brought against defendant for profiting from allegedly substandard labor practices at defendant's suppliers where plaintiffs worked: "The lack of any prior relationship between Plaintiffs and Wal–Mart precludes the application of an unjust enrichment theory here.") (citing *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004) (noting that a party generally may not seek to disgorge another's profits unless "a prior relationship between the parties subject to and benefiting from disgorgement originally resulted in unjust enrichment").

**J.    Plaintiffs' Consumer Protection Act Claims are Fatally Deficient**

Plaintiffs do not meet the threshold requirement of pleading that Accellion engaged in an unfair or deceptive practice that is actionable under either the Michigan Consumer Protection Act ("MCPA") or the Washington Consumer Protection Act ("WCPA").

**1.    Plaintiffs Do Not State a Claim Under the MCPA**

The "provisions of the MCPA are to be construed with reference to the common-law tort of fraud," thus requiring Plaintiffs to establish: "(1) that the defendant made a material misrepresentation that was false; (2) the defendant knowingly made the false representation with the intent that the plaintiff would act upon it; (3) that the plaintiff acted in reliance upon it; and (4) resulting damages." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011); *see also Cormier v. PF Fitness-Midland,* LLC, 2018 WL 3594443 (Mich. Ct. App. Jul. 26, 2018). Plaintiffs' MCPA claim fails for multiple reasons.

1       As an initial matter, because Plaintiffs' MCPA claim sounds in fraud, they must meet Rule

2  9(b)'s heightened pleading standard. *See In re Sony Gaming Networks and Customer Data Sec.*

3  *Breach Litig.*, 996 F.Supp.2d 942, 997 (S.D. Cal. 2014) (describing pleading standard for non-

4  warranty MCPA claim). But Plaintiffs fail to identify any specific misrepresentation or omission

5  made to them by Accellion, much less allege facts showing that Accellion knowingly attempted to

6  mislead them. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990-91 (N.D.

7  Cal. 2016) (dismissing fraud-based consumer protection claim in data breach case for failure to

8  state the details of the misrepresentations at issue).

9       Plaintiffs also fail to allege facts showing that they relied on Accellion's alleged

10  misrepresentations or omissions, as the MCPA requires. *See In re Am. Med. Collection Agency,*

11  *Inc. Customer Data Security Breach Litig.*, 2021 WL 5937742, at *32 (D. N.J. Dec. 16, 2021)

12  (dismissing MCPA claim because the complaint failed to allege facts sufficient to show that

13  plaintiffs actually relied on any material misrepresentations by defendants); *In re Sony Gaming*

14  *Networks*, 996 F.Supp.2d at 997 (dismissing MCPA claim because Plaintiff failed to allege he

15  "actually relied on Sony's alleged deceptive conduct"). Critically, Plaintiff Whittaker does not

16  plead that she read, let alone acted on, any specific statements by Accellion. *See id.* at 989 (plaintiff

17  "must allege that he was exposed" to misrepresentation).

18       To the extent Plaintiffs' claim is based on alleged omissions, it fails because Plaintiffs do

19  not plausibly allege that Accellion had either (i) a duty to disclose; or (ii) the requisite knowledge.

20  *See Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 678, 713-714 (E.D. Mich. 2022) (an omission-

21  based fraud claim under Michigan law requires "a legal or equitable duty of disclosure," which

22  arises "only if a defendant responds to a plaintiff's inquiry with an answer that omits material

23  information"). Plaintiffs do not allege that Accellion had any such duty to disclose information

24  about its data security measures to *its customers'* customers, who would be unknown to Accellion.

25  Second, Plaintiffs cannot allege the requisite knowledge, as they do not dispute that the Attacks

26  exploited novel vulnerabilities that Accellion was not previously aware of.

27       Finally, Plaintiffs' MCPA claim fails for the additional reason that FTA is a commercial

28  product, and the "MCPA does not supply protection 'if an item is purchased primarily for business

1  or commercial rather than personal purposes.'" *Dusseau Farms LLC v. Wilbur-Ellis Co.*, 2013 WL

2  3895829, *6 (E.D. Mich. July 29, 2013) (quoting *Zine v. Chrysler Corp.*, 600 N.W.2d. 384, 393

3  (Mich. Ct. App. 1999). Plaintiffs acknowledge that FTA was licensed by commercial "[e]ntities

4  such as government agencies, private businesses, and universities," CAC ¶2, and never allege that

5  they purchased FTA for personal use. Plaintiffs' claim is therefore outside the MCPA's scope.[8]

6  ### 2.    Plaintiffs Do Not State a Claim Under the WCPA

7  To prevail in a private action under the WCPA, a plaintiff must establish, inter alia, an

8  "unfair or deceptive act or practice" by the defendant. *Hangman Ridge Training Stables, Inc. v.*

9  *Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986). Plaintiffs cannot meet that

10  threshold requirement.

11  Plaintiffs' allegations of an "unfair" act by Accellion boil down to the conclusory assertion

12  that Accellion failed to "safeguard and protect Plaintiffs' . . . PII" by failing to adopt "appropriate

13  data security processes, controls, policies, procedures, protocols, and software and hardware

14  systems." CAC ¶ 235. But Plaintiffs do not allege *any facts* describing specific data security

15  practices that Accellion allegedly failed to implement, and which they claim were responsible for

16  the Attacks. Plaintiffs merely parrot various requirements of the WCPA—labeling Accellion's

17  unspecified "unfair or deceptive acts or practices" as "substantially injurious" (CAC ¶ 236)—

18  without identifying or putting Accellion on notice of the facts or legal theory underlying Plaintiffs'

19  WCPA claim. That is insufficient. *See Karlsson v. Mangan*, 735 F. App'x 456, 457 (9th Cir. 2018)

20  (affirming dismissal of claim based on allegations that "lack specificity, are devoid of particularity,

21  and are comprised of vague and conclusory statements").

22  ## V.    CONCLUSION

23  Accellion respectfully requests that the Court dismiss all claims against Accellion in

24  Plaintiffs' Consolidated Complaint in their entirety and without leave to amend.

25

26

27  [8] Plaintiffs' request for statutory damages under the MCPA (CAC ¶ 251) should be independently dismissed because Plaintiffs bring their claims as part of a putative class action. When an MCPA claim is brought as part of a class action, a plaintiff may only recover "actual damages." Mich.

28  Comp. Laws § 455.911(4); *see also id.* § 455.911(2) (permitting recovery of statutory damages "[e]xcept in a class action").

1   Dated: July 31, 2023

2

Respectfully submitted,

LATHAM & WATKINS LLP

3

/s/ *Michael H. Rubin*
Michael H. Rubin (CA Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (CA Bar No. 234264)
 *melanie.blunschi@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600

Serrin Turner (*pro hac vice*)
 *serrin.turner@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Attorneys for Defendant *Accellion Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACCELLION'S MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

Case No. 5:21-cv-01155-EJD