Adam E. Polk (State Bar No. 273000)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

Krysta K. Pachman (State Bar No. 280951)
Michael Gervais (State Bar No. 330731)
Steven G. Sklaver (State Bar No. 237612)
Kevin R. Downs (State Bar No. 331993)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150
kpachman@susmangodfrey.com
mgervais@susmangodfrey.com
ssklaver@susmangodfrey.com
kdowns@susmangodfrey.com

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD <br><br> **PLAINTIFFS' OPPOSITION TO ACCELLION'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> Hon. Edward J. Davila <br> Courtroom: 4 – 5th Floor <br> Sept. 21, 2023 <br> 9:00 a.m. |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................... 2

III.    LEGAL STANDARD .......................................................................................... 3

IV.     ARGUMENT ....................................................................................................... 3

        A.      Plaintiffs' allegations give Accellion notice of the claims asserted against it ............ 3

        B.      Plaintiffs adequately allege Accellion's negligence. .................................. 5

                1.      Accellion owed a duty to secure Plaintiffs' personal information. ................. 5

                2.      Accellion breached its duty of care. ............................................... 10

                3.      Plaintiffs may seek to recover for Accellion's negligence *per se*. ................. 13

        C.      Plaintiffs state a CCPA claim. ..................................................................... 14

                1.      Accellion is a "business" under the CCPA. ....................................... 14

                2.      Accellion failed to implement reasonable security measures. ..................... 16

        D.      Plaintiffs state a CMIA claim. ..................................................................... 17

        E.      Plaintiffs state a CCRA claim. .................................................................... 20

        F.      Plaintiffs' WCPA claim should proceed. ................................................... 21

        G.      Plaintiffs sufficiently allege an invasion of their privacy. ......................... 22

        H.      Plaintiffs adequately plead breach of third-party beneficiary contract. ....... 22

        I.      Plaintiffs adequately plead unjust enrichment. ......................................... 24

V.      CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 3

*Beltran v. Capitol Recs., LLC*,
    2013 WL 968248 (N.D. Cal. Mar. 12, 2013) ................................................................ 23

*Berkley v. Dowds*,
    152 Cal. App. 4th 518 (2007) ....................................................................................... 10

*Boyer v. Becerra*,
    2018 WL 2041995 (N.D. Cal. Apr. 30, 2018) .............................................................. 4

*Bozzio v. EMI Grp. Ltd.*,
    811 F.3d 1144 (9th Cir. 2016) ....................................................................................... 23

*Buckley v. Santander Consumer USA, Inc.*,
    2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) .......................................................... 21

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ...................................................... 6, 12, 21

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    2017 WL 7080237 (C.D. Cal. Nov. 28, 2017) .............................................................. 24

*Comerica Bank v. McDonald*,
    2006 WL 3365599 (N.D. Cal. Nov. 17, 2006) ............................................................. 16

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) .......................................................................... 22

*Cottrell v. AT&T Inc.*,
    2020 WL 4818606 (N.D. Cal. Aug. 19, 2020) .............................................................. 24

*Dobson v. Sprint Nextel Corp.*,
    2014 WL 553314 (D. Nev. Feb. 10, 2014) ................................................................... 22

*Doe I v. Wal-Mart Stores, Inc.*,
    572 F.3d 677 (9th Cir. 2009) ......................................................................................... 25

ii

*Doe v. Regents of Univ. of Cal.*,
   2023 WL 3316766 (N.D. Cal. May 8, 2023) ................................................................17

*Dollar Tree Stores Inc. v. Toyama P'nrs LLC*,
   2011 WL 872724 (N.D. Cal. Mar. 11, 2011)................................................................23

*Falco v. Nissan N. Am. Inc.*,
   96 F. Supp. 3d 1053 (C.D. Cal. 2015) ........................................................................16

*Fernandez v. Leidos, Inc.*,
   127 F. Supp. 3d 1078 (E.D. Cal. 2015)........................................................................18

*Flores-Mendez v. Zoosk, Inc.*,
   2021 WL 308543 (N.D. Cal., Jan. 30, 2021)..........................................................11, 16

*Friedman v. Zimmer*,
   2015 WL 6164787 (C.D. Cal. July 10, 2015) ................................................................4

*Gardiner v. Walmart Inc.*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ...............................................................12

*Gardner v. Health Net, Inc.*,
   2010 WL 11571242 (C.D. Cal. Nov. 29, 2010)..............................................................8

*Green-Cooper v. Brinker, Int'l, Inc.*,
   73 F. 4th 883 (11th Cir. 2023) ....................................................................................12

*Griffey v. Magellan Health Inc.*,
   2022 WL 1811165 (D. Ariz. Jun. 2, 2022) ..................................................................25

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) .......................................................................17, 25

*Hammond v. The Bank of N.Y. Mellon Corp*,
   2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..............................................................10

*Harris v. Burlington N. Santa Fe R.R.*,
   2013 WL 12122668 (C.D. Cal. July 12, 2013)..............................................................13

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
   61 Cal. 4th 988 (2015) ................................................................................................24

*Hrapoff v. Hisamitsu Am., Inc.*,
   2022 WL 2168076 (N.D. Cal. June 16, 2022) ..............................................................24

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020) ............................................................8, 9, 11, 13

*In re Ambry Genetics Data Breach Litig.,*
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...............................................13

*In re Anthem, Inc. Data Breach Litig.,*
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ...........................................12, 23

*In re Arthur J. Gallagher Data Breach Litig.,*
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ..................................................18

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
    2021 WL 3568394 (D.S.C. Aug. 12, 2021) ....................................16, 19

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
    567 F. Supp. 3d 667 (D.S.C. 2021)............................................6, 8, 10

*In re Capital One Consumer Data Sec. Breach Litig.,*
    488 F. Supp. 3d 374 (E.D. Va. 2020) ........................................6, 21, 25

*In re Experian Data Breach Litig.,*
    2016 WL 7973595 (C.D. Cal. Dec. 29, 2016) .................................10, 21

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................11

*In re Facebook, Inc. Tracking Litigation,*
    956 F.3d 589 (9th Cir. 2020) ...............................................................22

*In re Facebook Privacy Litigation,*
    572 F. App'x 494 (9th Cir. 2014) ........................................................12

*In re Flonase Antitrust Litig.,*
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ...................................................25

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
    2016 WL 2897520 (N.D. Ga. May 18, 2016) ..........................................7

*In re Marriott,*
    2020 WL 6290670 (D. Md. Oct. 27, 2020) .............................................6

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................21

*In re Natera Prenatal Testing Litig.,*
    2023 WL 3370737 (N.D. Cal. Mar. 28, 2023).......................................24

*In re Solara,*
    2020 WL 2214152 ....................................................................11, 13, 20

iv

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    64 F. Supp. 3d 1304 (D. Minn. 2014) .......................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ........................................................25

*In re Toyota RAV4 Hybrid Fuel Tank Litig.,*
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ...................................................................24

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..........................................................6, 8, 20

*In re Zappos.com, Inc.,*
    888 F.3d 1020 (9th Cir. 2018) ................................................................................11

*Irwin v. RBS Worldpay, Inc.,*
    2010 WL 11570892 (N.D. Ga. Feb. 5, 2010) ..........................................................23

*Jackson v. Ryder Truck Rental, Inc.,*
    16 Cal. App. 4th 1830 (1993) ...................................................................................8

*Jane Doe No. 1 v. Uber Techs., Inc.,*
    79 Cal. App. 5th 410 (2022) .....................................................................................9

*Ji v. Naver Corporation,*
    2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .........................................................4

*Katsaris v. Cook,*
    180 Cal. App. 3d 256 (1986) ...................................................................................22

*Katz-Lacabe v. Oracle Am., Inc.,*
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ...........................................................24

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ..................................................................................23

*Kirsten v. California Pizza Kitchen, Inc.,*
    2022 WL 16894503 (C.D. Cal. July 29, 2022) .......................................................13

*Leibovic v. United Shore Mortg., LLC,*
    2016 WL 6395954 (E.D. Mich. Oct. 28, 2016) ......................................................23

*Leonel v. Am. Airlines, Inc.,*
    400 F.3d 702 (9th Cir. 2005) ..................................................................................22

*Lewert v. P.F. Chang's China Bistro, Inc.,*
    819 F.3d 963 (7th Cir. 2016) ..................................................................................11

*Maag v. U.S. Bank, Nat'l Ass'n*,
    2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)................................................17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ..................................................................3

*McCoy v. Alphabet, Inc.*,
    2021 WL 405816 (N.D. Cal., Feb. 2, 2021) ............................................12

*McDowell v. CGI Fed. Inc.*,
    2017 WL 2392423 (D.D.C. June 1, 2017)................................................23

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010) ..............................................................6, 7

*Mullinix v. US Fertility, LLC*,
    2021 WL 4935975 (C.D. Cal. Apr. 21, 2021) ..........................................5

*Oddei v. Optum, Inc.*,
    2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) .....................................18, 19

*Oddo v. United Techs. Corp.*,
    2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ...............................................24

*Opris v. Sincera Reprod. Med.*,
    2022 WL 1639417 (E.D. Pa. May 24, 2022) ...........................................11

*Oushana v. Lowe's Cos., Inc.*,
    2017 WL 5070271 (E.D. Cal. Nov. 3, 2017)..............................................4

*Portier v. NEO Tech. Sols.*,
    2019 WL 7946103 (D. Mass. Dec. 31, 2019) ............................................6

*Richmond v. Mission Bank*,
    2015 WL 1637835 (E.D. Cal. Apr. 13, 2015)...........................................22

*Rickley v. Goodfriend*,
    212 Cal. App. 4th 1136 (2013) ...............................................................8

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (Cal. 2004)....................................................................13

*Rowland v. Christian*,
    69 Cal. 2d 108 (Cal. 1968).................................................................6, 7

*Ruiz v. Gap, Inc.*,
    380 F. App'x 689 (9th Cir. 2010) ...........................................................22

PLAINTIFFS' OPPOSITION TO ACCELLION'S MOTION TO DISMISS
CASE NO. 5:21-cv-01155-EJD

*Sidhu v. Bayer Healthcare Pharms. Inc.*,
   2022 WL 17170159 (N.D. Cal. Nov. 22, 2022) ........................................................24

*Smith v. Bob Smith Chevrolet, Inc.*,
   275 F. Supp. 2d 808 (W.D. Ky. 2003) ...................................................................22

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...............................................................................24

*Stasi v. Inmediata Health Grp. Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) .............................................................. *passim*

*Veridian Credit Union v. Eddie Bauer, LLC*,
   295 F. Supp. 3d 1140 (W.D. Wash. 2017) .....................................................8, 9, 21

*Veterans Rideshare, Inc. v. Navistar Int'l Corp.*,
   2021 WL 2206479 (S.D. Cal. June 1, 2021) .............................................................9

*Warren v. Whole Foods Mkt. Cal., Inc.*,
   2022 WL 2644103 (N.D. Cal. July 8, 2022) ...........................................................24

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) ...............................................................8, 25

*Weirum v. RKO Gen., Inc.*,
   15 Cal. 3d 40 (Cal. 1975) .......................................................................................8

*Witriol v. LexisNexis Grp.*,
   2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) .........................................................7

*Young v. Buttigieg*,
   2022 WL 1471416 (N.D. Cal. May 10, 2022) ........................................................24

*Yu v. Design Learned, Inc.*,
   2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ..........................................................4

**Statutes**

Cal. Civ. Code § 56.05(j) ...........................................................................................19

Cal. Civ. Code § 56.06(b) ....................................................................................17, 18

Cal. Civ. Code § 1798.82(a) .......................................................................................20

Cal. Civ. Code § 1798.140(d) .....................................................................................15

Cal. Civ. Code § 1798.140(g) .....................................................................................14

Cal. Civ. Code § 1798.150(a)(1) ...........................................................................14, 15

California Customer Records Act ...........................................................................2, 20, 21

Michigan Consumer Protection Act ..................................................................................2

Washington Consumer Protection Act ...........................................................................21

**Other Authorities**

6 Witkin, Summary of Cal. Law, Torts, § 1060 (10th ed. 2005) ......................................8

Merriam-Webster Collegiate Dictionary (11th ed. 2003) .............................................17

PLAINTIFFS' OPPOSITION TO ACCELLION'S MOTION TO DISMISS
CASE NO. 5:21-cv-01155-EJD

## I.    INTRODUCTION

Accellion's failure to implement reasonable security measures in its 20-year-old FTA software resulted in one of the largest data breaches in recent years. In December 2020, and then again in January 2021, Accellion was breached (the "Data Breach"). Plaintiffs' personal information—including some of the most sensitive private data that exist, such as health information, Social Security numbers, passport numbers, driver's license numbers, bank routing and account numbers, and more—was exposed, subjecting them to a lifetime risk of identity theft and fraud. Indeed, soon after the data breaches, Plaintiffs' information was found on the dark web. Much of this information cannot be changed, and once stolen, it can never be restored to Plaintiffs' control. Plaintiffs have been forced to take expensive and time-consuming remedial measures to address the harms occasioned by the breach. Worse, since the breaches, all but one Plaintiff have reported experiencing identity theft or fraud.

As the entity that failed to take reasonable steps to secure the product it created, sold, supported, and promoted as a secure system for transferring personal information, Accellion cannot escape liability for its product's failure simply because it first sold that product to intermediaries before its data security lapses resulted in the exposure of millions of individuals' personal information. Accellion nonetheless seeks to avoid responsibility, disclaiming a duty to safeguard Plaintiffs' information even though courts have repeatedly held that companies must protect highly sensitive personal and medical information from criminal activity. Further, Accellion owed a duty—recognized by many courts, including the Northern District of California—to adequately safeguard Plaintiffs' information because a special relationship arises from the sensitive nature of the information and Accellion's stated objective of protecting it. California courts routinely recognize the injuries Plaintiffs suffered, and the existence of a special relationship takes Plaintiffs' negligence claims squarely outside the scope of the economic loss rule.

Plaintiffs' statutory claims, including under California's robust privacy protection statutes, are well pleaded. Accellion is a business subject to the CCPA because it collects personal information, has annual gross revenues in excess of $25 million, receives the personal information of 50,000 or more consumers or households, and/or derives 50 percent of its annual revenue from selling or sharing consumers' personal information. The CCPA's definition of the word "business" neither requires nor contemplates a direct relationship. Accellion is subject to the CMIA because it provides software to

PLAINTIFFS' OPPOSITION TO ACCELLION'S MOTION TO DISMISS
CASE NO. 5:21-cv-01155-EJD

entities to make personal medical information available to health care providers. Plaintiffs state a claim under the CCRA by alleging that Accellion delayed notifying its customers, which resulted in delayed notification to Plaintiffs about the ongoing breaches. Neither the CMIA nor the CCRA require Accellion to have sold the FTA directly to Plaintiffs. And Plaintiffs' consumer protection claim under Washington law[1] also should proceed: as numerous courts have recognized, the failure to secure personal information may constitute an unfair act or practice.

Plaintiffs have also adequately alleged common-law claims for invasion of privacy, breach of third-party beneficiary contract, and unjust enrichment. Accellion recklessly disregarded the serious risk of a successful hack, and Plaintiffs' allegations give rise to an inference of intent sufficient to state a privacy claim. Accellion's contract with its clients obligated it to protect the confidential information they received, and intent to confer a benefit on Plaintiffs is a fact question unsuitable for resolution at the pleading stage. Finally, Plaintiffs have adequately alleged that they paid fees to Accellion's clients, a portion of which was passed on to Accellion, providing it a financial benefit from Plaintiff's personal information sufficient to state an unjust enrichment claim.

## II.    STATEMENT OF FACTS

Accellion is a cloud solutions company. In the early 2000s, it developed, marketed, and sold a file sharing transfer software product called File Transfer Appliance ("FTA"). The purpose of FTA was to facilitate secure, encrypted file sharing that exceeded limits imposed on the size of email attachments. Instead of transferring documents by email, the intended recipient receives a link to files, hosted on FTA, which can then be viewed or downloaded. (Consol. Class Action Complaint ("CCAC") ¶ 25). By December 2020, however, FTA was almost 20 years old. Aware of the risks from using an outdated product to transfer files containing personal information, Accellion encouraged its customers to switch to its new product, called Kiteworks, for three years leading up to the data breaches. But Accellion continued to sell and support FTA, and tout FTA as secure. (CCAC ¶ 32).

In mid-December 2020, unauthorized third parties, including the ransomware group CLOP, gained access to large amounts of Personally Identifiable Information ("PII") stored on, or being

---

[1] Plaintiffs do not oppose dismissal of their claim under Michigan's Consumer Protection Act.

transferred through, the FTA. Accellion subsequently verified that FTA contained two security vulnerabilities and released two patches. But the damage had been done. Moreover, Accellion's "fix" proved inadequate to secure the 20-year-old FTA product. Shortly after the first attack, a second attack began, on January 20, 2021. (CCAC ¶¶ 42–43, 46, 49).

That hackers were able to locate sensitive PII was no accident. Because the purpose of the FTA was to securely transfer sensitive content, its breach foreseeably resulted in the exposure and theft of highly confidential data. The resulting Data Breach was the largest in the United States in 2021 and one of the largest data breaches during the last five years, affecting millions of individuals. (CCAC ¶ 49).

Plaintiffs now must contend with the fallout from their personal sensitive information being in the hands of unauthorized actors. Not only has each Plaintiff suffered an intrusion on their privacy and a loss of control of their private data, but also the loss of sensitive personal information is a harbinger of identity theft, and the consequences of a data breach may be long lasting, as victims remain vulnerable to identity theft for the rest of their lives. With the stolen information, identity thieves can wreak havoc, including by opening new financial accounts, taking out loans, and obtaining medical services, government benefits, or driver's licenses in the victims' names, requiring constant vigilance over the potential misuse of their information. All Plaintiffs now confront an increased risk of experiencing identity theft in the future. Plaintiffs have suffered actual identity theft or fraud since the Data Breach. All Plaintiffs have spent time and/or money to mitigate their exposure to identity theft or fraud, and their personal information lost value due to being exposed; and some also incurred out-of-pocket losses. Lastly, the release, disclosure, and publication of a person's sensitive private details can be devastating, and many Plaintiffs have experienced emotional distress. (CCAC ¶¶ 94–95, 99, 102–03).

## III.    LEGAL STANDARD

At this stage, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiffs need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.    ARGUMENT

### A.    Plaintiffs' allegations give Accellion notice of the claims asserted against it.

Accellion's lead argument is that Plaintiffs' *entire* complaint should be dismissed because some allegations refer to "Defendants" rather than only to Accellion or Flagstar. However, because the complaint specifies *which* causes of action and *which* allegations apply to Accellion, Plaintiffs did not engage in impermissible group pleading.

Accellion argues that each of Plaintiffs' causes of action "fail[] in each case to specify which allegations pertain to which defendant." (Dkt. 174 at 15). Yet each of Plaintiffs' causes of action specifies in a bolded subheading whether it is brought against Accellion, Flagstar, or both. (*E.g.*, CCAC ¶¶ 153, 166). Every allegation also refers either to Accellion or Flagstar specifically, or to "Defendants" (defined in the complaint to mean *both* Accellion and Flagstar). For example, the CCPA claim includes some allegations that apply equally to Accellion and Flagstar, and some that apply to each of them individually:

> The Data Breach occurred as a result of Defendants' failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. Accellion failed to monitor its systems to identify suspicious activity and allowed unauthorized access to Plaintiffs' and Class members' PII. Flagstar failed to implement a secure system for transferring files.

(CCAC ¶ 162). The fact that *both* Accellion and Flagstar neglected to secure Plaintiffs' data does not absolve them of their respective individual responsibility for the damage. *See Oushana v. Lowe's Cos., Inc.*, 2017 WL 5070271, at *5 (E.D. Cal. Nov. 3, 2017) (rejecting claim of group pleading because the "roles of both [defendants] in the fraud are alleged—they are simply the same"); *Friedman v. Zimmer*, 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015) (holding that dismissal for group pleading is appropriate "only in situations where the pleadings are largely incomprehensible."). Accellion's own cases undermine its position. In *Ji v. Naver Corporation*, 2022 WL 4624898, at *6 (N.D. Cal. Sept. 30, 2022), the district court granted the motion to dismiss because the plaintiffs *did not specify which defendant the claims were asserted against*. Here, each cause of action plainly states that it applies either to Accellion, Flagstar, or both, leaving no room for ambiguity as to whether Accellion must answer a given cause of action. Likewise, in *Boyer* and *Yu* the plaintiff failed to specify which defendant—out of as many as 39—the allegations and claims were brought against. *See Boyer v. Becerra*, 2018 WL 2041995, at *2 (N.D. Cal. Apr. 30, 2018) (*pro se* complaint against nearly 40 defendants did not differentiate which defendant took what action); *Yu v. Design Learned, Inc.*, 2016 WL 1621704, at *5

(N.D. Cal. Apr. 22, 2016) (*pro se* complaint failed to differentiate among seven defendants). Accellion may believe that it is differently situated than Flagstar, but it cannot plausibly argue that Plaintiffs' allegations do not put it on notice of which claims and allegations are asserted against Accellion.

**B.     Plaintiffs adequately allege Accellion's negligence.**

To state a claim for negligence in California,[2] a plaintiff must establish: "(1) the defendant had a duty, or an obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks, (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038–39 (N.D. Cal. 2019) (citing *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)) (quotation omitted). Courts have repeatedly held in similar data breach cases that businesses have a duty to safeguard sensitive personal and medical information from disclosure to hackers.

**1.     Accellion owed a duty to secure Plaintiffs' personal information.**

Plaintiffs allege Accellion "owed them a duty to safeguard their personal and medical information as consistent with medical privacy statutes and industry standards," and "[d]istrict courts have found comparable allegations sufficient to survive motions to dismiss negligence claims." *Mullinix v. US Fertility, LLC*, 2021 WL 4935975, at *3 (C.D. Cal. Apr. 21, 2021). Courts have repeatedly recognized that companies owe a duty to safeguard personal information from exposure under California law. In *Bass*, Judge Alsup evaluated similar claims against Facebook arising out of a 2018 data breach. 394 F. Supp. 3d at 1032. The court rejected Facebook's argument that it did not owe its users a duty of care, concluding that Facebook owed a duty to the plaintiffs to use reasonable care in handling personal information. *Id.* at 1039. The court explained:

> The lack of reasonable care in the handling of personal information can foreseeably harm the individuals providing the information. Further, some of the information here was private, and plaintiff plausibly placed trust in Facebook to employ appropriate data security. From a policy standpoint, to hold that Facebook has no duty of care here "would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks." *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019) (Judge Thomas

---

[2] Although Accellion does not engage in a choice-of-law analysis, for the purposes of this Motion, Plaintiffs do not dispute the application of California law to their common-law claims against Accellion.

Thrash). As such, plaintiff Adkins has met his obligation to plausibly plead duty of care.
*Id.*

Other courts in this District have repeatedly reached the same conclusion. *See, e.g.*, *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at \*3-4 (N.D. Cal. Sept. 14, 2016) ("[T]he *Rowland* factors compel the conclusion Seagate was duty-bound to take reasonable steps to protect *all* personal identifying information it obtained from its employees, including information pertaining to employees' spouses and dependents."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1132 (N.D. Cal. 2018) (concluding "it is evident that a duty was owed by Defendants to Plaintiffs" in connection with data breach). Federal courts around the country have consistently found a duty exists when plaintiffs have alleged that the defendant's conduct in failing to maintain adequate data security measures created a foreseeable risk of harm. *See, e.g.*, *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 394–95 (E.D. Va. 2020) (applying California law and concluding that a special relationship existed); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, \*11–12 (D. Mass. Dec. 31, 2019); *In re Marriott*, 2020 WL 6290670, at \*7 (D. Md. Oct. 27, 2020); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 682 (D.S.C. 2021).

Accellion misreads the complaint in arguing there is "no generalized duty on companies to protect against criminal acts by third parties," citing *Melton v. Boustred*, 183 Cal. App. 4th 521, 536 (2010). (Dkt. 174 at 16). Plaintiffs do not allege that a generalized duty exists, and the facts of *Melton* demonstrate it is inapposite. In *Melton*, the defendant advertised that he was holding a house party. *Id.* at 527. Upon arriving, the plaintiffs "were attacked, beaten, and stabbed by a group of unknown individuals." *Id.* The court held that the criminals' attack was not foreseeable because the plaintiffs had not alleged any knowledge of prior incidents, that the defendant's act of advertising a house party did not "create the peril that harmed plaintiffs," and plaintiffs had not argued there was a special relationship. *Id.* at 533–539. As a result, there was no duty for the defendant to protect the plaintiffs from the assault. *Id.* at 541.

Moreover, Accellion ignores that California courts consider the factors set forth in *Rowland v. Christian*, 69 Cal. 2d 108, 113 (Cal. 1968), to determine whether a duty of care exists, including "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame

6

attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Bass*, 394 F. Supp. 3d at 1039 (citing *Regents of Univ. of Cal. v. Superior Ct.*, 4 Cal. 5th 607, 628 (Cal. 2018)). These *Rowland* factors "must be evaluated at a relatively broad level of factual generality." *Id.*

Unlike with the attack in *Melton*, the foreseeability factor strongly supports the existence of a duty here. Accellion knew that FTA was used to store and transfer sensitive personal information because that is what Accellion designed it to do. (CCAC ¶¶ 25–26). The likelihood of an attack on a 20-year-old technology used to store and transfer sensitive information was so foreseeable that Accellion advised clients to upgrade to its newer system, yet it continued to sell and support FTA. (CCAC ¶ 32). The risk of hacking is well known, and the federal government has even issued warnings to potential targets like Accellion to be prepared for that risk. (CCAC ¶ 33). By January 2021, Accellion had already experienced the first data breach, yet it still did not discontinue FTA, leading to the second breach. (CCAC ¶¶ 42–43, 46, 49). Because data theft is a reasonably foreseeable consequence of deficient security, Accellion had a duty to implement effective data security to protect against such a hack. *See Witriol v. LexisNexis Grp.*, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (recognizing duty to prevent third parties from accessing personal data); *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1308 (D. Minn. 2014) (noting "general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *3–4 (N.D. Ga. May 18, 2016).

The other *Rowland* factors also weigh in favor of finding that a duty to safeguard Plaintiffs' information existed. Courts have held that a defendant "bears some 'moral' blame for failing to protect medical information concerning persons who were likely unaware that [the defendant] possessed their medical information in the first place." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020). To find that Accellion owed no duty here "would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks." *Bass*, 394 F. Supp. 3d at 1039. Conversely, "imposing a common law duty on companies that possess personal and medical information to safeguard that information further promotes a policy,

statutorily recognized, of preventing identity theft and protecting the confidentiality of medical information." *Id.*; *see also Yahoo!*, 313 F. Supp. 3d at 1132 (defendant morally culpable for not implementing adequate data security measures and its failure implicated "consumer data protection concerns expressed in California statutes"); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 657–58 (N.D. Cal. 2020); *Gardner v. Health Net, Inc.*, 2010 WL 11571242, at *3 (C.D. Cal. Nov. 29, 2010).

Moreover, Accellion assumed a duty to Plaintiffs by voluntarily undertaking to provide a secure solution for transferring Plaintiffs' personal information, and it was required to do so with ordinary care. Under California law, a "defendant who enters upon an affirmative course of conduct affecting the interests of another is regarded as assuming a duty to act, and will be liable for negligent acts or omissions . . ., because one who undertakes to do an act must do it with care." *Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1156 (2013); *see also* 6 Witkin, Summary of Cal. Law, Torts, § 1060 (10th ed. 2005). Accellion actively sold and promoted its FTA system as a way to safely and securely transfer personal information. Accellion was aware of the risk of harm if it acted negligently—yet it failed to implement adequate security measures to prevent the Data Breach. (See CCAC ¶¶ 117, 121, 136). *See also Blackbaud*, 567 F. Supp. 3d at 682; *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1366–67 (S.D. Fla. 2015) (defendants voluntarily provided EMS with medical billing and payment processing services, through which defendants knowingly received plaintiff's sensitive information).

Accellion incorrectly asserts that "only nonfeasance is at issue" (Dkt. 174 at 16), and therefore a duty of care only arises when the parties have a special relationship. But Plaintiffs allege misfeasance, not nonfeasance. *See Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 49 (Cal. 1975) ("Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention."). Accellion voluntarily undertook to maintain and secure Plaintiffs' data, then created an unreasonable risk that resulted in Plaintiffs' injury by maintaining an outdated, vulnerable FTA system even though it had offered newer and more secure products for years. (*See* CCAC ¶¶ 117, 143); *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1842 (1993) (misfeasance occurs where liability is predicated on the creation of an unreasonable risk of harm). Claiming mere nonfeasance, Accellion points to *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1157-58 (W.D. Wash. 2017),

which held that under Washington law, a company operating a chain of retail stores did not owe a duty of care to a financial institution when it had failed to adopt adequate data security measures. Here, however, Accellion did not merely neglect to adopt adequate data security—it affirmatively provided the software specifically used to transfer sensitive personal information. (CCAC ¶ 25). And, as the *Veridian* court noted, the nonfeasance/misfeasance distinction is relevant only when no special relationship exists.

A special relationship exists in this case because the "end and aim of Defendants' data security measures was to benefit Plaintiffs and Class members by ensuring that their personal information would remain protected and secure." (CCAC ¶ 140). California courts agree that a special relationship exists under such circumstances. *See, e.g.*, *Stasi*, 501 F. Supp. 3d at 914 (rejecting argument "that no special relationship exists between a company that possesses peoples' personal and medical information and those people"); *Huynh*, 508 F. Supp. 3d at 656 (finding a special relationship between parties when the plaintiff provided her personal information). Accellion argues *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 415 (2022) weighs against finding a special relationship here, but *Doe* is inapposite. (Dkt. 174 at 16–17). In *Doe*, the plaintiffs sued Uber after being assaulted by third parties who posed as Uber drivers but who had no affiliation with Uber. *Id.* at 414–15. The *Doe* court's analysis of whether a common carrier relationship existed with passengers waiting for their drivers is irrelevant here, especially when California courts have repeatedly found that companies owe a duty to protect an individual's PII from exposure.

Nor does the lack of direct contact between Plaintiffs and Accellion preclude finding a special relationship, as Accellion maintains. (Dkt. 174 at 16). Under California law a special relationship sufficient to impose a duty may arise even without privity between the parties. *See, e.g.*, *Veterans Rideshare, Inc. v. Navistar Int'l Corp.*, 2021 WL 2206479, at *3 (S.D. Cal. June 1, 2021) (finding a special relationship establishing a duty when the defendant manufactured components of cars that were leased to plaintiffs through a different, unrelated company). Accellion relies on cases that do not involve California law. (Dkt. 174 at 16) (citing *Willingham v. Glob. Payments, Inc.*, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (Georgia law); *Hammond v. The Bank of N.Y. Mellon Corp*, 2010 WL 2643307,

at *9–10 (S.D.N.Y. June 25, 2010) (New York law)).[3]

### 2.    Accellion breached its duty of care.

Despite the far-reaching hack of FTA, Accellion claims that the complaint does not specify "conduct that could constitute a breach," citing *Berkley v. Dowds*, 152 Cal. App. 4th 518, 527 (2007). (Dkt. 174 at 18). But unlike the *Berkley* plaintiff, who did not allege "any particular negligent acts or omissions" and whose counsel conceded that the husband received adequate medical care, here Plaintiffs have pleaded sufficient facts from which it can be inferred that Accellion breached its duty of care. For instance, Accellion knew FTA was outdated yet failed to ensure that its customers stopped using it to transfer highly sensitive personal information, and Accellion failed to adopt "standard information security protocols" because "even though the documents were encrypted, the hackers also obtained the decryption key to the files through the FTA exploit." (CCAC ¶¶ 32, 60). The alleged breach of duty is not, as Accellion maintains, a failure to "'entirely rid [a] complex system of all risk of software coding errors' or 'eliminate all future breaches or leaks.'" (Dkt. 174 at 19) (citing *Adkins v. Facebook, Inc.*, 2021 WL 1817047, at *2 (N.D. Cal. May 6, 2021)). Rather, Accellion breached its duties by failing to implement adequate security measures for FTA in the face of well-known risks reflected in data breaches around the country, by not ensuring that the FTA system was secure even though it knew for years that many of its customers still were using an outdated and vulnerable file transfer system, and by failing to timely notify FTA clients so that Plaintiffs could be notified of the breaches and take necessary protective steps. (CCAC ¶¶ 133–34). Courts have held that similar allegations, including allegations more general

---

[3] In *Blackbaud*, the court acknowledged a software company has a duty "in the absence of any 'actual relationship'" with end users after a data breach where plaintiffs had alleged that Blackbaud "had control over the data and the security measures in place to protect the data; they do not allege that Blackbaud had any ability to monitor, supervise, or control the hackers or their conduct." *Blackbaud*, 567 F. Supp. 3d at 681. Similar allegations are present here and were not present in *Global Payments* or *Hammond* (the latter was decided on summary judgment, not a motion to dismiss). (CCAC ¶¶ 28, 235); s*ee In re Experian Data Breach Litig.*, 2016 WL 7973595, at *3 (C.D. Cal. Dec. 29, 2016) (declining to follow *Hammond* at the motion to dismiss stage because plaintiffs need only allege a duty, not establish its existence).

than Plaintiffs' here, are sufficient to allege a breach of duty in analogous situations. *See, e.g.*, *Bass*, 394 F. Supp. 3d at 1039 (finding allegations of breach of duty sufficient when "Facebook allegedly failed to comply with minimum data-security standards during the period of the data breach."); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019). While Accellion demands that Plaintiffs detail its precise security measures that were derelict, Plaintiffs need not do so, particularly without the benefit of discovery. *See Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal., Jan. 30, 2021) (rejecting similar argument because an "ordinary consumer, however, has no clue what internet companies' security steps are" and the court could "reasonably infer[] at the pleadings stage" that the security measures were inadequate because the breach occurred).

Accellion further argues that the damages asserted are either too speculative or not cognizable. (Dkt. 174 at 8). But the risk of identity theft is hardly speculative given the scope of the Data Breach and the fact that hackers have already published personal information online, which cybercriminals have accessed. Plaintiffs have already experienced instances of identity theft, such as fraudulent account charges, and at least one Plaintiff has spent money to protect himself from further harm, which he would not have done absent the breaches. (CCAC ¶¶ 5–15). *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (recognizing substantial risk of identity theft where payment card information was taken); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (it was "plausible to infer a substantial risk of harm from the data breach").

Accellion is also wrong that Plaintiffs cannot recover for the additional time and effort they have spent to monitor their accounts, close compromised accounts, and otherwise attempt to remediate the effects of the breaches. Courts recognize these harms as sufficient to support a negligence claim in data breach cases. In *In re Solara Medical Supplies, LLC Customer Data Security Breach Litig*ation, for example, the court recognized that "[i]ncreased time spent monitoring one's credit and other tasks associated with responding to a data breach have been found by other courts to be specific, concrete" harm. 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) (citing *Bass*, 394 F. Supp. 3d at 1039); *Huynh*, 508 F. Supp. 3d at 650 ("[T]his Court agrees with Plaintiff that the time and money she spent on credit monitoring in response to the Data Breach is cognizable harm."); *see also Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *7 (E.D. Pa. May 24, 2022) ("mitigation" efforts from reviewing credit accounts,

purchasing identity theft monitoring services, and replacing credit cards constitute compensable damages); *Green-Cooper v. Brinker, Int'l, Inc.*, 73 F. 4th 883, 893-94 (11th Cir. 2023) (upholding damages methodology used at class certification that measured "the value of cardholder time (whether or not they incurred any out-of-pocket damages)") (quotation omitted).

In addition, Plaintiffs allege that their personal information—a form of property that Plaintiffs entrusted to Accellion but which was compromised—has suffered a diminution in value. (CCAC ¶ 103). In *In re Facebook Privacy Litigation*, 572 F. App'x 494 (9th Cir. 2014), the Ninth Circuit recognized that "losing the sale value" of personal information was "sufficient to show the element of damages." *See also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 994 (N.D. Cal. 2016) (loss in value of PII is cognizable injury); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *12 (N.D. Cal., Feb. 2, 2021). Accellion cites *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *4 (N.D. Cal. Mar. 5, 2021), but that court recognized "that allegations of diminished value of personal information may be sufficient to establish injury"; the plaintiff there, however, conceded that only credit card information was compromised. Far more data was taken here, including static data like names and addresses, Social Security numbers, passport numbers, driver's license numbers, bank routing and account numbers, health and related benefit information, and disability information. (CCAC ¶ 159).

Although Plaintiffs have alleged that they experienced episodes of fraud *after* the Data Breach—which courts have held "raises a reasonable inference" that the fraud was caused by a data breach, *see Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016)—Accellion contests Plaintiffs' causation allegations. It is plausible and indeed likely that these fraudulent activities are attributable to the Data Breach because hackers took large amounts of sensitive data that can be used to commit fraud. (CCAC ¶¶ 1, 54, 159).

Accellion claims that the economic loss rule bars Plaintiffs' recovery. (Dkt. 174 at 20). But the rule does not apply when a special relationship exists, when there is no privity, or when noneconomic losses are alleged, *Stasi*, 501 F. Supp. 3d at 913, and all three exceptions apply here. Plaintiffs have alleged a special relationship with Accellion for the reasons set forth above, *supra* at p. 9, making the economic loss rule inapplicable. Moreover, as in *Stasi*, "[t]he applicability of the economic loss doctrine is . . . questionable given that Plaintiffs and [Accellion] were not in privity of contract." *Id.* Plaintiffs not

only suffered tangible harm but the absence of an express contract with Accellion removes the concern behind the economic loss rule of tort law displacing contract. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004). Further, the doctrine does not bar the non-economic losses Plaintiff suffered, and continue to suffer, such as frustration, anxiety, and stress due to the Data Breach and the loss of privacy from their personal information being compromised. (CCAC ¶¶ 5–15). *See In re Solara*, 2020 WL 2214152, at *4 ("Plaintiffs have alleged they have lost time responding to the Breach as well as suffering from increased anxiety and so do not allege purely economic losses."); *Huynh*, 2019 WL 11502875, at *8; *Bass*, 394 F. Supp. 3d at 1039.

### 3.    Plaintiffs may seek to recover for Accellion's negligence *per se*.

Plaintiffs allege that Accellion was negligent *per se* because its conduct violated numerous statutes. Although not an independent cause of action, Plaintiffs plead negligence *per se* and its elements to lay claim to the evidentiary presumption of negligence.[4] *See, e.g.*, *Harris v. Burlington N. Santa Fe R.R.*, 2013 WL 12122668, at *2 (C.D. Cal. July 12, 2013) ("Notice pleading requirements suggest that plaintiff must plead the specific statute on which he bases his claim for negligence per se."). While Accellion inexplicably argues that Plaintiffs have not alleged that its violations injured "person or property," (Dkt. 174 at 21), the complaint alleges that all Plaintiffs suffered anxiety and stress due to the Data Breach, as well as experiencing a loss in value of their personal information. (CCAC ¶¶ 5–152).

Accellion also asserts that two statutes—the FTC Act and HIPAA—cannot provide a basis for negligence *per se*, citing exclusively out-of-jurisdiction cases. (Dkt. 174 at 21). But federal courts in California have recognized both the FTC Act and HIPAA as a proper basis for negligence *per se* in data breach cases. *See Kirsten v. California Pizza Kitchen, Inc.*, 2022 WL 16894503, at *9 (C.D. Cal. July 29, 2022) (exposure of plaintiffs' PII could be an "unfair practice" under the FTC Act, which provided a basis for negligence *per se*); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (negligence *per se* could be based on HIPAA violations in data breach case). In addition, although Accellion argues that COPPA cannot form the basis for Plaintiffs' negligence *per se* allegations

---

[4] Should the Court find dismissal appropriate because negligence *per se* is not an independent cause of action, Plaintiffs respectfully seek leave to amend to re-plead their negligence *per se* allegations as part of the negligence claim.

because no named plaintiffs are children under 13, Plaintiff Chavez alleges that the personal information of her minor daughter was exposed, and by the end of March 2021, the private information of minors taken in the Data Breach had been unlawfully accessed. (CCAC ¶¶ 5, 81).

### C. Plaintiffs state a CCPA claim.

By virtue of its business model and practice of collecting consumers' personal information, Accellion is a "business" and its challenge to the CCPA claim should be rejected.

#### 1. Accellion is a "business" under the CCPA.

Accellion argues that it was not "*the* business" with respect to Plaintiffs, as it did not directly collect their information. (Dkt. 174 at 22). Accellion's reading of the CCPA, however, requires adding nonexistent language to the statute. The CCPA provides a right of action to any consumer "whose nonencrypted and nonredacted personal information" is "subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." Cal. Civ. Code § 1798.150(a)(1).[5] Nothing in the CCPA requires that Accellion be the sole business that directly collected Plaintiffs' information. The only questions are: (1) whether Plaintiffs are consumers; (2) whether Accellion meets the definition of the term "business" under the CCPA; and (3) whether the disclosure was "a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." *Id.* Accellion does not dispute that the California Plaintiffs are "consumers" under the CCPA, which simply means "a natural person who is a California resident," Cal. Civ. Code § 1798.140(g), and Plaintiffs have more than adequately alleged that their personal information was stolen during the Data Breach. (CCAC ¶¶ 5–15).

Accellion easily meets the CCPA's definition of a "business." The CCPA defined a "business" at the time of the Data Breach as a corporation (1) that collects "personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information. . .."; and (2) that does business in California

---

[5] Plaintiffs cite the language of the CCPA as it existed at the time of the Data Breach, not the amended statute—although there are no material differences for purposes of the arguments in Accellion's motion.

and also either: (a) has more than $25 million in gross revenues; (b) buys, sells, or shares personal information of 50,000 or more consumers or households; or (c) derives "50 percent or more of its annual revenues from selling consumers' personal information." Cal. Civ. Code § 1798.140(d). Accellion does not dispute that the second requirement is met.

As to the first requirement, Plaintiffs allege "Defendants collected and stored Plaintiffs' and Class members' personal information, including their names, addresses, telephone numbers, birthdates, Social Security numbers, bank account information, and personal health information." (CCAC ¶ 114). Plaintiffs also allege "[e]ntities such as government agencies, private businesses, and universities hired Accellion—a cloud solutions company—to collect and securely transfer sensitive Personally Identifiable Information." (CCAC ¶ 2). Whether it was Accellion—or Accellion's FTA customers—that specifically collected Plaintiffs' personal information is immaterial to whether Accellion fits the CCPA's definition of a "business," which requires that the company "collects consumers' personal information or on the behalf of which that information is collected." Cal. Civ. Code § 1798.140(d).

Further, Accellion's business provides a platform that purportedly ensured personal information would be securely transmitted between and among consumers and businesses. (CCAC ¶ 25). By facilitating the transfer of personal information, Accellion enabled the use of consumers' PII and determined the means of processing it, satisfying the second half of the requirement that a company collects personal information "and that alone, *or jointly with others*, determines the purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d) (emphasis added). Tellingly, Accellion never denies that it collects consumers' personal information. Instead, it seeks to draw a distinction between "collect[ing] personal information from *other* consumers in *other* contexts" and collecting the specific information that was stolen here. (Dkt. 174 at 24). Accellion thereby attempts to add a nonexistent requirement into the definition of the word "business," by arguing that it is exempt because Plaintiffs provided information to Accellion's customers who used the Accellion FTA. The CCPA, however, already addresses Accellion's concern that there must be a "nexus between data collected by a business and data actually breached" by providing a right of action only for consumers whose information is disclosed "*as a result of* the business's violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a)(1) (emphasis

added). Construing the language of the statute as it was written conforms to the mandate that the CCPA must "be liberally construed to effectuate its purposes to 'further the constitutional right of privacy and to supplement existing laws relating to consumers' personal information[.]'" *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2021 WL 3568394, at \*5 (D.S.C. Aug. 12, 2021) (quoting Cal. Civ. Code, §§ 1798.175, 1798.194) (finding that the defendant was a "business" under the CCPA because it developed software solutions to process customers' personal information, even absent privity with plaintiffs). Adding Accellion's nonexistent requirement into the statutory definition of "business" would lead to an untenable result.

Accellion further argues that there is a distinction between a business and a service provider under the CCPA and only the California Attorney General can bring a CCPA claim against service providers as opposed to businesses.[6] (Dkt. 174 at 22). Courts have rejected this same attempt to sidestep the CCPA's definition of "business" by focusing on the narrower "service provider" definition. *See In re Blackbaud*, 2021 WL 3568394, at \*5 ("[T]he statutory definition of 'service provider' suggests that 'business' is a broader term that encompasses 'service provider.'"). In any case, whether Accellion *also* qualifies as a "service provider" under the CCPA is not relevant because it is a business too.

### 2. Accellion failed to implement reasonable security measures.

Accellion's claim that Plaintiffs have not pleaded how it failed to adopt reasonable security measures echoes its argument about whether it breached a duty, and should be rejected for the same reasons. Accellion faults Plaintiffs for not detailing even more precisely, without the benefit of discovery, how its breached security measures were inadequate. (Dkt. 174 at 24–25). Yet "the requirement of specificity is relaxed" where facts lie exclusively within the defendant's possession. *Comerica Bank v. McDonald*, 2006 WL 3365599, at \*2 (N.D. Cal. Nov. 17, 2006) (citation omitted); *see also Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1062 (C.D. Cal. 2015). Plaintiffs need not plead the precise nature of Accellion's inadequate security defenses. *See Flores-Mendez*, 2021 WL 308543, at \*4 (rejecting similar argument because an "ordinary consumer, however, has no clue what internet companies' security steps are"). It is enough that Plaintiffs alleged details such as those found in the public Mandiant report,

---

[6] Notably, Accellion also claims that it belongs in no category, denying that it is a service provider. (Dkt. 174 at 23 n.4).

*e.g.*, the Accellion vulnerabilities were "of critical severity because they were subject to exploitation via unauthenticated remote code execution." (CCAC ¶ 48).

Nor do the cases Accellion cites support its argument. In *Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021), the plaintiffs did not allege any specific failures, only that the defendant failed to "implement and maintain reasonable security procedures and practices," "failed to effectively monitor its systems for security vulnerabilities," and had "lax security." The court granted leave to amend to allege a specific failure. *Id.* And in *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 57 (D. Ariz. 2021), the plaintiff relied on even less detail, arguing that "because there was a breach, Magellan's data security was inadequate." Here, Plaintiffs alleged specific failures: for example, Accellion's "failure to have adopted standard information security protocols" because "even though the documents were encrypted, the hackers also obtained the decryption key to the files through the FTA exploit." (CCAC ¶ 60).

### D.   Plaintiffs state a CMIA claim.

The CMIA "prohibits the unauthorized 'disclosure' of medical information, the negligent maintenance of medical information, and the negligent 'release' of medical information." *Stasi*, 501 F. Supp. 3d at 908 (citing Cal. Civ. Code, §§ 56.10(a), 56.101(a), 56.36(b)). Civil Code section 56.06(b) "imposes liability on an additional category of entities: businesses that act as intermediaries, maintaining medical information for transmission between patients and providers." *Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, at *4 (N.D. Cal. May 8, 2023).

Accellion urges an incorrect reading of section 56.06(b), arguing that a business is not a "provider of health care" unless the business offers its software or hardware *directly* to end-consumers whose data is at issue. (Dkt. 174 at 26). There is no privity requirement in the statutory text, and the statute includes no requirement that the business offered its software or hardware directly to Plaintiffs for the cause of action to be viable; nor does it implicitly limit "consumers" to individuals as opposed to entities. To the contrary, the plain and ordinary definition of "consumer" is simply "one that utilizes economic goods."[7] Accellion's clients are consumers because they purchase and utilize goods, including Accellion's

---

[7] "Consumer," Merriam-Webster Collegiate Dictionary (11th ed. 2003).

products. In fact, the statute itself suggests that the definition of "consumers" is not intended to be limited to individuals, because that section uses both terms, and it should not be construed in such a way that would erase the distinction between the two terms. The statute requires that the software or hardware be offered "to ***consumers*** . . . in order to make the information available to ***an individual*** or a provider of health care." Cal. Civ. Code § 56.06(b). If the drafters had intended "consumers" to mean "individuals", they would have defined "provider of health care" to include "[a]ny business that offers software or hardware to ***individuals***." The statute should not be construed to erase this distinction in its text.

Accellion also argues that it is not a "provider of health care" under 56.06(a) because, as Plaintiffs allege, Accellion is only "organized *in part* for the purpose of maintaining medical information," (CCAC ¶ 167), and Plaintiffs do not allege that that is Accellion's only purpose. (Dkt. 174 at 25-26). Accellion cites three cases, none of which meaningfully analyze section 56.06(a). In *Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021), the court evaluated whether the defendant offered software or hardware under the terms of 56.06(b). The court did not evaluate whether the defendant was organized for the purpose of maintaining medical information under 56.06(a). *Id.* Likewise, in *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1089 (E.D. Cal. 2015), the court did not evaluate 56.06(a), but rather addressed whether the defendant fell within the definition of 56.05. *Id.* In *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 595 (N.D. Ill. 2022), the court concluded that the defendant did not fall within the category of providers of health care defined in 56.06(a) because the plaintiffs did not allege that the "Defendant is organized *for the purpose* of maintaining medical information"; rather, the plaintiffs had alleged only that the defendant maintained medical information. Here, Plaintiffs allege that Accellion is "organized in part for the purpose of maintaining medical information." (CCAC ¶ 167). Accellion's argument that Plaintiffs' interpretation of 56.06(a) would make any "vendor whose technology can be used in the healthcare industry" subject to the CMIA ignores the section's express language. It applies only to entities organized for the purpose of "maintaining" medical information— not to any vendor whose technology could be used in some way in the healthcare industry.

Adopting Accellion's improper reading would undermine the California Legislature's goal of expanding the number of businesses subject to the CMIA to better protect the medical information of Californians. The Legislature amended section 56.06 in response to the growing popularity of online

"Personal health records" or "PHRs," recognizing that health insurers or medical providers commonly "offer PHRs for their members" including "increasingly . . . through mobile applications, created and maintained by companies who provide many services and products beyond PHRs[.]" Floor Analysis, Assem. Bill No. 658 (2013-2014 Reg. Sess.), as amended Apr. 22, 2013, at p. 2. The Legislature—even though it could have—did *not* exclude from the CMIA those third-party businesses that create and maintain PHRs for medical providers or insurers. The broad framing followed from the Legislature's goal of expanding the CMIA to cover PHR management services firms "regardless of whether the business was organized for that specific purpose[.]" *Id.* at 4. Thus, treating Accellion, a third-party provider of recordkeeping services, as a "provider of health care" under the CMIA upholds the legislative intent as well as subdivision (b) itself. Accordingly, courts that have considered the issue in data breach cases have found companies like Accellion to be providers of health care under the CMIA. *See In re Blackbaud, Inc.*, 2021 WL 3568394, at *7–8 (finding cloud data company a provider of health care because "Clayton claims she provided her PHI to several medical centers in order to receive healthcare services and the medical centers entrusted her PHI to Blackbaud, it is plausible that Blackbaud's software was used "to make the information available to [Clayton] or a provider of health care at the request of [Clayton] or a provider of health care" or "for the diagnosis, treatment, or management of [Clayton's] medical condition[.]").

Accellion's other challenges to the CMIA claim also fail. It argues Plaintiffs do not plead that any "medical information" was disclosed in the Data Breach. (Dkt. 174 at 27). But subdivision (j) defines "medical information" to include "individually identifiable information" from a provider of health care or health care service plan regarding a patient's medical history, condition, or treatment. Cal. Civ. Code § 56.05(j). This includes information that "alone or in combination with other publicly available information" would reveal an individual's identity, such as names, addresses, or social security numbers. *Id.* Plaintiffs Olson and Taylor allege that their "medical information," along with identifying information such as Social Security numbers, were exposed in the breaches. (CCAC ¶¶ 9, 12). Plaintiffs also allege health benefit information was exposed (CCAC ¶ 159), which includes both personally identifying information and substantive medical information, such as treatment histories. Because Plaintiffs allege their personal information has been discovered on the dark web, an inference arises that "individually

1    identifiable" medical information was disclosed in the Data Breach.

2        Accellion claims that Plaintiffs also failed to allege negligence or that Accellion "maintains,"

3    "preserves," or "stores" Plaintiffs' data. (Dkt. 174 at 27). As discussed above, Plaintiffs have plausibly

4    alleged negligence and Plaintiffs expressly allege that Accellion maintains their medical information on

5    its storage platform. (CCAC ¶ 167).

6        **E.    Plaintiffs state a CCRA claim.**

7        The California Customer Records Act ("CCRA") requires a business operating in California that

8    "owns or licenses computerized data that includes personal information" to disclose unauthorized

9    disclosures of personal information "in the most expedient time possible and without unreasonable

10   delay[.]" Cal. Civ. Code § 1798.82(a). Accellion learned of the Data Breach in December 2020 but failed

11   to ensure that Plaintiffs received timely notice of the ongoing breaches. Plaintiffs allege Accellion's delay

12   was unreasonable and deprived them of the chance to take protective measures and exposed them to the

13   risk of further adverse effects from the Data Breach. (CCAC ¶¶ 45, 138, 183–84). Accellion does not

14   claim that its delayed notification was reasonable. Instead, it maintains—without citing a single case in

15   support—that it had no obligations to Plaintiffs under the CCRA because they were not its direct

16   customers, it was unable to notify Plaintiffs of the breaches, and the delay in notifying them did not cause

17   them any harm. (Dkt. 174 at 27–29). These arguments lack legal support, disregard Plaintiffs' allegations,

18   and raise factual questions.

19       Accellion argues that Plaintiffs did not suffer a cognizable injury from its delay (Dkt. 174 at 29),

20   but the delay deprived Plaintiffs of the chance to take self-protective measures such as requesting a credit

21   freeze, scrutinizing their credit report, and placing a fraud alert after—unbeknownst to them—Plaintiffs'

22   personal information was taken and put in the hands of cybercriminals. (CCAC ¶¶ 183–84). Even the

23   cases cited by Accellion recognize that loss of the opportunity to take protective measures is actionable

24   harm under the CCRA. *Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *41 (N.D.

25   Cal., Aug. 30, 2017) (rejecting motion to dismiss CCRA claim because "Plaintiffs could not take these

26   mitigation steps" and were plausibly injured). Other courts have reached similar conclusions. *See, e.g.*,

27   *In re Solara*, 2020 WL 2214152, at *8; *Stasi*, 501 F. Supp. 3d at 924-25.

28       While Accellion argues that Plaintiffs are not "customers" under the Act, courts have held that

individuals do not have to provide their information directly to a business to be "customers" under the CCRA. *See, e.g.*, *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *9 (C.D. Cal. Dec. 29, 2016) (denying motion to dismiss and explaining that "Plaintiffs did, at least indirectly through T-Mobile, provide information to Defendants, so Defendants' argument isn't convincing"); *see also Castillo*, 2016 WL 9280242, at *7 ("Together, these security and reporting provisions plainly require the protection by businesses of non-customer personal information that they maintain."). Accellion's remaining contention that it lacked the ability to notify Plaintiffs of the breaches raises questions of fact—related to its clients, its relationships to its clients, and ability to access their customer lists—that are not capable of resolution on a motion to dismiss.

### F.   Plaintiffs' WCPA claim should proceed.

Accellion's failure to adopt adequate data security qualifies as an unfair practice under the Washington Consumer Protection Act ("WCPA"). *See, e.g.*, *Veridian Credit Union*, 295 F. Supp. 3d at 1162 (denying motion to dismiss and finding that the defendant's alleged failure "to take proper measures to protect account information" and "failure to employ adequate data security measures" caused "'substantial injury' to consumers" and constituted an unfair act under the WCPA); *Buckley v. Santander Consumer USA, Inc.*, 2018 WL 1532671, at *4 (W.D. Wash. Mar. 29, 2018) (denying motion to dismiss and finding that "failure to take reasonably adequate security measures constitutes an unfair act because it knowingly and foreseeably put [the plaintiff] at a risk of harm from data theft"); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1217 (S.D. Fla. 2022) (denying motion to dismiss WCPA claim brought in the wake of data breach); *In re Cap. One*, 488 F. Supp. 3d at 428–29.

Far from being conclusory, Plaintiffs allege that Accellion knew that the relevant information was not secure, recognizing FTA as a 20-year-old product nearing the end of its life. (CCAC ¶ 32). Plaintiffs further allege that Accellion learned of the specific vulnerabilities giving rise to the Data Breach in December 2020, and the cyberattack continued into January 2021, yet still Accellion did not advise clients to shut down their FTA systems until days after the second attack had begun. (CCAC ¶¶ 46–47). Accellion's wrongful acts of continuing to license and sell its software, despite knowing its vulnerabilities, combined with Accellion's failure to take reasonable security measures, constitute unfair and unscrupulous conduct particularly given the highly sensitive data. No more is required.

### G.      Plaintiffs sufficiently allege an invasion of their privacy.

Accellion argues that Plaintiffs cannot maintain an invasion of privacy claim because it did not itself purposely intrude on their privacy. (Dkt. 174 at 29–30). But courts decline to restrict liability only to the party who carried out the invasion. *See Stasi*, 501 F. Supp. 3d at 914 (rejecting argument that "only those who hack or steal information can be held liable" for invasion of privacy) (citing *Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal. 2014)); *see also Ruiz v. Gap, Inc.*, 380 F. App'x 689, 693 (9th Cir. 2010) (noting "California has not explicitly required a finding of intentional conduct as a prerequisite" for a constitutional privacy claim). Accellion's intent may be inferred from its "reckless disregard" of the consequences of its acts or omissions. *Katsaris v. Cook*, 180 Cal. App. 3d 256, 268 (1986)). Plaintiffs allege Accellion acted recklessly by failing to take adequate precautions considering the well-known risk from hackers. (CCAC ¶¶ 142, 190). Courts have held that reckless disregard suffices to establish intent in an invasion of privacy claim. *See Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003); *Dobson v. Sprint Nextel Corp.*, 2014 WL 553314, at *5 (D. Nev. Feb. 10, 2014).

Plaintiffs also allege that Accellion violated their right of privacy enshrined in California's Constitution. To prove this claim, Plaintiffs will show (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 712 (9th Cir. 2005), *opinion amended on denial of reh'g*, 2005 WL 976985 (9th Cir. Apr. 28, 2005) (citations omitted). Accellion does not dispute that Plaintiffs have a legally protected privacy interest in their PII and a reasonable expectation of privacy in that information. The cases relied on by Accellion show that whether its conduct can be viewed as a serious invasion raises factual questions that are not capable of resolution on the pleadings. In *In re Facebook, Inc. Tracking Litigation*, the Ninth Circuit reversed dismissal because "[t]he ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage." 956 F.3d 589, 606 (9th Cir. 2020); *see also, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 491 (N.D. Cal. 2021); *Richmond v. Mission Bank*, 2015 WL 1637835, at *4 (E.D. Cal. Apr. 13, 2015).

### H.      Plaintiffs adequately plead breach of third-party beneficiary contract.

Plaintiffs allege that they are third-party beneficiaries of agreements between Accellion and its

clients that required Accellion to maintain and implement adequate safeguards to protect Plaintiffs' personal information.[8] (CCAC ¶¶ 192–202). "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Beltran v. Capitol Recs., LLC*, 2013 WL 968248, at *2 (N.D. Cal. Mar. 12, 2013). The third party "need not be identified in [the] contract." *Dollar Tree Stores Inc. v. Toyama P'nrs LLC*, 2011 WL 872724, at *3 (N.D. Cal. Mar. 11, 2011). Accellion's claim that Plaintiffs have not shown they were the intended third-party beneficiaries presents a factual question unsuitable to decide on the pleadings. *See Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1153 (9th Cir. 2016) (reversing dismissal of third-party beneficiary claim because it was "a fact-bound inquiry ill-suited to resolution at the motion to dismiss stage"). Courts across the country have upheld third-party beneficiary claims in data breach cases. By entering contracts requiring it to implement reasonable security measures as to the private information with which it was entrusted, Accellion assumed a direct obligation to Plaintiffs to protect their information from hackers. *See In re Anthem*, 162 F. Supp. 3d at 1006 (upholding third-party beneficiary claim in data breach case); *McDowell v. CGI Fed. Inc.*, 2017 WL 2392423, at *7 (D.D.C. June 1, 2017); *Irwin v. RBS Worldpay, Inc.*, 2010 WL 11570892, at *7 (N.D. Ga. Feb. 5, 2010); *Leibovic v. United Shore Mortg., LLC*, 2016 WL 6395954, at *3-4 (E.D. Mich. Oct. 28, 2016).

Plaintiffs have identified specific provisions of Accellion's EULA that it breached related to disclosure of confidential information. (CCAC ¶ 196). Although Accellion argues that the EULA limits "Confidential Information" strictly to its clients' proprietary information, the EULA's definition of the term contradicts that argument, stating that it is "*not* limited to" the clients' proprietary information. (*See* Dkt. 174-2 at 8 (emphasis added)). Accellion also argues that the presence of a third-party beneficiary disclaimer clause warrants dismissal of this claim, but the existence of such a clause serves only as evidence of the parties' intent, and there is no factual record demonstrating intent. *See Dollar Tree*, 2011 WL 872724, at *3. Because Accellion's obligations under its client agreements necessarily included adequate protection of Plaintiffs' personal information, it assumed an obligation to Plaintiffs.

---

[8] Although the Court may take judicial notice of the existence of Accellion's "Solutions License Agreement" with certain customers, the Court should decline to accept the truth of disputed facts reflected in the document. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018).

1   **I.       Plaintiffs adequately plead unjust enrichment.**

2        Accellion seeks to dismiss Plaintiffs' unjust enrichment claim, arguing that Plaintiffs do not

3   sufficiently plead that they lack an adequate remedy at law. (Dkt. 174 at 32) (citing *Sonner v. Premier*

4   *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). But "the majority of courts in this district" have held

5   that *Sonner* does not require dismissal of equitable claims at the pleading stage. *See In re Natera Prenatal*

6   *Testing Litig.*, 2023 WL 3370737, at *10 (N.D. Cal. Mar. 28, 2023) (collecting cases); *Katz-Lacabe v.*

7   *Oracle Am., Inc.*, 2023 WL 2838118, at *13 (N.D. Cal. Apr. 6, 2023); *Hrapoff v. Hisamitsu Am., Inc.*,

8   2022 WL 2168076, at *6 (N.D. Cal. June 16, 2022). Plaintiffs allege that their unjust enrichment claim

9   is asserted in the alternative to their claims at law (CCAC ¶ 214) and "there is still a question of fact as

10  to whether the legal remedies here provide adequate recovery." *Oddo v. United Techs. Corp.*, 2022 WL

11  577663, at *19 (C.D. Cal. Jan. 3, 2022). Plaintiffs' claim of unjust enrichment should therefore be upheld.

12  *See Warren v. Whole Foods Mkt. Cal., Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) ("*Sonner*

13  has limited applicability to the pleading stage and the general liberal policy courts have toward pleading

14  in the alternative allowed the equitable restitution claim to proceed past the pleading stage even though

15  the plaintiff was also seeking contract damages.").

16       While Accellion claims unjust enrichment is not a separate cause of action, "in 2017, the Ninth

17  Circuit recognized that the California Supreme Court later 'clarified California law, allowing an

18  independent claim for unjust enrichment to proceed.'" *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2022 WL

19  17170159, at *9 (N.D. Cal. Nov. 22, 2022) (quoting *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470

20  (9th Cir. 2017); *see Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000, 1008 (2015).

21  Thus, courts in this District have repeatedly held that unjust enrichment may be asserted as a standalone

22  claim under California law. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1120

23  (N.D. Cal. 2021); *Cottrell v. AT&T Inc.*, 2020 WL 4818606, at *4 n.4 (N.D. Cal. Aug. 19, 2020); *Young*

24  *v. Buttigieg*, 2022 WL 1471416, at *4 (N.D. Cal. May 10, 2022).

25       Plaintiffs also sufficiently allege that Accellion was unjustly enriched. "Under California law, the

26  elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the

27  expense of another." *ChromaDex, Inc. v. Elysium Health, Inc.*, 2017 WL 7080237, at *4 (C.D. Cal. Nov.

28  28, 2017). Plaintiffs provided an appreciable benefit to Accellion—Accellion could not perform the

1   services from which it derives profit without their sensitive data. (CCAC ¶¶ 216–17). "[W]here a
2   defendant accepts the benefits accompanying a plaintiff's data and does so at the plaintiff's expense by
3   not implementing adequate safeguards," it is "'inequitable and unconscionable' to permit defendant to
4   retain the benefit of the data (and any benefits received therefrom), while leaving the plaintiff party to
5   live with the consequences." *In re Cap. One*, 488 F. Supp. 3d at 412.

6        While Accellion maintains it had no direct relationship with Plaintiffs, that is irrelevant because
7   the sensitive data from which Accellion profited belongs to *Plaintiffs*, not any of Accellion's customers.
8   Plaintiffs allege they paid fees to Accellion's clients in exchange for the promise that their personal
9   information would be protected, and that Plaintiffs conferred a benefit on Accellion when portions of
10  their fees were paid in exchange for Accellion's services. (*See* CCAC ¶¶ 218–19). In other words,
11  Accellion acquired financial gain from Plaintiffs who reasonably expected their information would be
12  safeguarded. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *8 (N.D. Cal. Sept.
13  28, 2011) ("Whether or not the benefit is directly conferred on the defendant is not the critical inquiry;
14  rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from
15  the challenged conduct."); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1368
16  (S.D. Fla. 2015); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 544 (E.D. Pa. 2010).[9]

17  **V.    CONCLUSION**

18       For the foregoing reasons, Accellion's motion to dismiss should be denied.

19

20

---

[9] *Griffey v. Magellan Health Inc.*, 2022 WL 1811165 (D. Ariz. Jun. 2, 2022) and *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) do not support Accellion's argument. In *Griffey*, the court *upheld* unjust enrichment claims for the plaintiffs who alleged some connection as to how their payments were received by the defendant, dismissing only the unjust enrichment claims of plaintiffs who failed to allege such a connection. *Id.* at *5-6. In *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009), the employees of Wal-Mart's manufacturers could not maintain an unjust enrichment claim because there was no "plausible basis upon which the employee of a manufacturer, without more, may obtain restitution from one who purchases goods from that manufacturer." Here, Plaintiffs allege how they conferred benefits directly on Accellion: they paid fees to its customers, a portion of which were then paid to Accellion, all on the expectation that FTA was secure. (CCAC ¶¶ 218–19).

Dated: August 14, 2023

Respectfully submitted,

By:    /s/ *Krysta K. Pachman*
Krysta K. Pachman (State Bar No. 280951)
Michael Gervais (State Bar No. 330731)
Steven G. Sklaver (State Bar No. 237612)
Kevin R. Downs (State Bar No. 331993)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
kpachman@susmangodfrey.com
mgervais@susmangodfrey.com
ssklaver@susmangodfrey.com
kdowns@susmangodfrey.com

Adam E. Polk (State Bar No. 273000)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com

*Interim Co-Lead Class Counsel*

## ATTESTATION

I, Krysta K. Pachman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all counsel have concurred in this filing.

By:    /s/ *Krysta K. Pachman*

PLAINTIFFS' OPPOSITION TO ACCELLION'S MOTION TO DISMISS
CASE NO. 5:21-cv-01155-EJD