1  LATHAM & WATKINS LLP
   Michael H. Rubin (CA Bar No. 214636)
2   *michael.Rubin@lw.com*
   Melanie M. Blunschi (CA Bar No. 234264)
3   *melanie.Blunschi@lw.com*
   505 Montgomery Street, Suite 2000
4  San Francisco, California 94111-6538
   Telephone: +1.415.391.0600
5
   Serrin Turner (*pro hac vice*)
6   *serrin.Turner@lw.com*
   1271 Avenue of the Americas
7  New York, NY 10020
   Telephone: +1.212.906.1200
8
9  *Attorneys for Defendant Accellion, Inc.*
10
11
12              **UNITED STATES DISTRICT COURT FOR THE**
13              **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN JOSE DIVISION**
14
15  IN RE ACCELLION, INC. DATA BREACH       CASE NO. 5:21-cv-01155-EJD
    LITIGATION.
16                                          **DEFENDANT ACCELLION, INC.'S REPLY**
                                            **IN SUPPORT OF MOTION TO DISMISS**
17                                          **PLAINTIFFS' CONSOLIDATED CLASS**
                                            **ACTION COMPLAINT**
18
                                            Date: Sept. 21, 2023
19                                          Time: 9:00 a.m.
                                            Judge: Hon. Edward J. Davila
20                                          Courtroom: 4 – 5th Floor
21
22
23
24
25
26
27
28

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 1

    A.  Plaintiffs Engage in Impermissible Group Pleading ............................................... 1

    B.  Plaintiffs Do Not Plead a Negligence Duty, Breach, or Injury ............................. 1

    C.  Plaintiffs Cannot Invoke the CCPA Against Accellion Here ................................ 6

    D.  The CMIA Does Not Apply to Accellion or the Allegedly Breached Data ............................................................................................ 9

    E.  Plaintiffs Do Not Plead An Actionable CCRA Claim ......................................... 11

    F.  Plaintiffs Do Not Plead an Unfair Act Under the WCPA .................................... 12

    G.  Plaintiffs Do Not Plead an Intentional Intrusion by Accellion ........................... 13

    H.  Plaintiffs Are Not Third-Party Beneficiaries of the Accellion EULA ......................................................................................................... 13

    I.  Plaintiffs Do Not Adequately Plead a Claim For Unjust Enrichment .................................................................................................... 14

III.  CONCLUSION ............................................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

i

# TABLE OF AUTHORITIES

## CASES

*Agricola Cuyuma SA v. Corona Seeds, Inc.*,
   2021 WL 3930054 (C.D. Cal. June 25, 2021) ................................................................6

*In re Arthur J. Gallagher Data Breach Litig.*,
   631 F. Supp. 3d 573 (N.D. Ill. 2022) .........................................................................10

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........................................................................4

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   567 F. Supp. 3d 667 (D.S.C. 2021) ..........................................................................4, 8

*Brown v. USA Taekwondo*,
   11 Cal. 5th 204 (2021) ...........................................................................................1, 3

*Buckley v. Santander*,
   2018 WL 1532671 (W.D. Was. Mar. 29, 2019) ..............................................................12

*Castillo v. Seagate Tech., LLC*,
   2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ..........................................................5, 12

*Champion v. Feld Ent., Inc.*,
   2021 WL 1812764 (S.D. Cal. May 6, 2021) ...................................................................4

*Damner v. Facebook Inc.*,
   2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ...............................................................13

*Doe v. Uber Techs, Inc.*,
   2022 WL 4281363 (N.D. Cal. Sept. 15, 2022) ................................................................2

*Doe v. Uber Techs., Inc.*,
   79 Cal. App. 5th 410 (2022) ................................................................................1, 2, 3

*Dollar Tree Stores Inc. v. Toyama P'nrs, LLC*,
   2011 WL 872724 (N.D. Cal. Mar. 11, 2011) ................................................................14

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ................................................................13

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986) ..................................................................................................3

*Est. of Hoefer v. ATC Realty Fifteen, Inc.*,
   2021 WL 148087 (N.D. Cal. Jan. 15, 2021) ................................................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

i

*Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC,*
    61 Cal. 4th 830 (2015) ............................................................................................................8

*In re Experian Data Breach Litig.,*
    2016 WL 7973595 (Dec. 29, 2016) ......................................................................................12

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................................4

*Gardiner v. Walmart, Inc.,*
    2021 WL 4992539 (N.D. Cal. July 28, 2021)........................................................................5

*Goonewardene v. ADP, LLC,*
    6 Cal. 5th 817 (2019) ...........................................................................................................13

*Guzman v. Polaris Industries, Inc.,*
    49 F. 4th 1308 (9th Cir. 2022) ..............................................................................................15

*Hunter v. FCA US LLC,*
    2023 WL 4828013 (N.D. Cal. July 27, 2023)......................................................................15

*IP Sols., Inc. v. Cent. Sierra Holdings, Inc.,*
    2023 WL 3224426 (E.D. Cal. May 3, 2023) ........................................................................14

*Jackson v. Airbnb,*
    2022 WL 16752071 (C.D. Cal. Nov. 4, 2022).................................................................2, 3

*Karter v. Epiq Sys., Inc.,*
    2021 WL 4353274 (C.D. Cal. July 16, 2021)........................................................................8

*Katsaris v. Cook,*
    180 Cal. App. 3d 256 (1968) ................................................................................................13

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    568 U.S. 519 (2013)................................................................................................................9

*Leibovich v. United Short Mortgage, LLC,*
    2016 WL 6395954 (E.D. Mich. Oct. 28, 2016) ...................................................................14

*In re Mednax Servs., Inc.,*
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ................................................................................12

*Medoff v. Minka Lighting, LLC,*
    2023 WL 4291973 (C.D. Cal. May 8, 2023) ..........................................................................6

*Portier v. NEO Tech. Sols.,*
    2019 WL 7946103 (D. Mass. Dec. 31, 2019) ........................................................................4

*Pruchnicki v. Envision Healthcare Corp.,*
    845 F. App'x 613 (9th Cir. 2021) ...........................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

ii

Case No. 5:21-cv-01155-EJD

*Rodriguez v. Oto,*
    212 Cal. App. 4th 1020 (2013) ...............................................................................................14

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.,*
    45 F. Supp.3d 14 (D.D.C. 2014) .............................................................................................15

*Smith v. Apple, Inc.,*
    2023 WL 2095914 (N.D. Cal. Feb. 17, 2023) ........................................................................15

*Sonner v. Premier Nutrition, Corp.,*
    971 F.3d 834 (9th Cir. 2020) .................................................................................................14

*Stafford v. Rite Aid Corp.,*
    2023 WL 2876109 (S.D. Cal. Apr. 10, 2023) ........................................................................14

*Tarob M & C Invs., LLC v. Herbert,*
    2015 WL 5728426 (N.D. Cal. Sept. 30, 2015) .........................................................................6

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
    2016 WL 2897520 (N.D. Ga. May 18, 2016) ...........................................................................4

*Veridian Credit Union v. Eddie Bauer, LLC,*
    295 F. Supp. 3d 1140 (W.D. Wash. 2017) .............................................................................12

*In re Zappos.com,*
    108 F. Supp. 3d 949 (D. Nev. 2015) ......................................................................................15

## STATUTES

Cal. Civ. Code
    § 56.06(a) ...........................................................................................................................9, 10
    § 56.06(b) ...........................................................................................................................9, 10
    § 56.06(d) ..................................................................................................................................9
    § 1798.80(c) ............................................................................................................................12
    § 1798.82(a) ............................................................................................................................11
    § 1798.140(ag) ..........................................................................................................................8
    § 1798.140(c) .............................................................................................................................7

## OTHER AUTHORITIES

Cambridge English Dictionary (4th Ed. 2012) ................................................................................9

Collins English Dictionary (13th Ed. 2018) ....................................................................................9

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
iii
Case No. 5:21-cv-01155-EJD

I.      INTRODUCTION

Plaintiffs' Opposition fails to grapple with the fundamental flaws underlying their complaint: Accellion had no relationship with Plaintiffs and did not collect or control their data. Accellion is therefore not a proper defendant for any of their claims: it did not owe Plaintiffs any duty to safeguard their information; it was not "the business" responsible for their data under the CCPA; it did not provide software to Plaintiffs or any other "consumers" under the CMIA; it did not "own or license" Plaintiffs' data within the meaning of the CCRA; and Plaintiffs were not a beneficiary of any Accellion contract. For these reasons, as well as others detailed below, Plaintiffs' claims fail across the board.

II.     ARGUMENT

A.      Plaintiffs Engage in Impermissible Group Pleading

Plaintiffs defend their group pleading by arguing that they adequately specify which of their *claims* is brought against Accellion, Flagstar, or both Defendants. Opp. at 4. Of course, that was never the problem. The problem is that Plaintiffs repeatedly fail to distinguish their *factual allegations* as between Accellion and Flagstar. And this is not a case where both defendants engaged in "the same" conduct—meaning that Plaintiffs' group pleading fails to put Accellion on notice of the specific factual basis for their claims against Accellion in particular.

B.      Plaintiffs Do Not Plead a Negligence Duty, Breach, or Injury

**No Legal Duty**: Plaintiffs acknowledge that Accellion had no general duty to protect Plaintiffs from third-party criminal acts. Opp. at 6. As previously explained, such a duty arises *only* if (1) Accellion either committed an act of misfeasance toward Plaintiffs, or had a "special relationship" with them; *and* (2) there is sufficient policy justification for extending a duty to Accellion under the so-called "*Rowland* factors." Mot. at 7 (citing *Doe v. Uber Techs., Inc.*, 79 Cal. App. 5th 410 (2022) (citing *Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021)). Plaintiffs' arguments fail to establish that they meet either requirement.

*First*, Plaintiffs allege no misfeasance. They instead allege classic nonfeasance—that Accellion "fail[ed] to implement reasonable security measures." Opp. at 1, 10. Plaintiffs cannot recast this as misfeasance simply by stating that Accellion "affirmatively provided" FTA. Opp. at

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

1

8-9. It is not an act of "misfeasance" merely to provide software; rather, the gravamen of Plaintiffs' allegations is that FTA was not adequately protected against attacks—which amounts to *non*feasance. Similarly, it is insufficient to allege that Accellion "created a risk" of harm by offering software that third parties foreseeably might abuse. Mot. at 7. That was precisely the malfeasance argument rejected in *Uber. See* 79 Cal. App. 5th at 426-27 (rejecting argument that "it was entirely foreseeable to the Uber entities that use of the Uber app could lead to abduction and rape"). Instead, to allege malfeasance based on third-party conduct, a plaintiff must allege that "the third-party conduct was a necessary component of the [defendant's] conduct at issue." *Id.* Plaintiffs come nowhere close to alleging that a criminal hack of FTA was a "necessary component" of any conduct by Accellion; nor do they make any other meaningful attempt to distinguish *Uber*, or the California Supreme Court's decision in *Brown* on which it is based, even though both reflect binding state-law precedent narrowing the scope of duties under California law. *See Doe v. Uber Techs, Inc.*, 2022 WL 4281363, at *4-6 (N.D. Cal. Sept. 15, 2022) (dismissing parallel federal case against Uber in light of *Brown* and *Uber*); *see also Jackson v. Airbnb*, 2022 WL 16752071, at *7 (C.D. Cal. Nov. 4, 2022) ("[T]hat an organization or business 'creates an opportunity for criminal conduct [] and thereby worsens the plaintiff's position does not render such criminal conduct a necessary component of the organization's actions—even when that conduct is foreseeable.") (citation omitted).[1]

*Second*, Plaintiffs allege no special relationship. They argue that one existed because the "end and aim of Defendants' data security measures was to benefit Plaintiffs and Class members," Opp. at 9; but this deliberately conflates Plaintiffs with Accellion's actual customers. Accellion did not offer FTA "to benefit Plaintiffs"—all of whom are strangers to Accellion. It simply licensed FTA to its corporate customers, for them to use as they wished. The mere fact that FTA customers

---

[1] Plaintiffs also suggest that Accellion committed misfeasance by continuing to offer FTA despite knowing it was "outdated" and "vulnerable." Opp. at 8. But the Complaint merely alleges that FTA was legacy software—there are (rightfully) no allegations that Accellion knew of *the vulnerabilities* or other security flaws in FTA. To the extent Plaintiffs are suggesting that it is "misfeasance" to offer customers the choice to continue using legacy software whenever newer software is available, such a rule would drive out virtually every software provider on the market. *See* Mot. at 8-9. Notably, while offering customers this choice, Accellion encouraged them to migrate to its newer product. Opp. at 2. Thus, any customer's continued use of the product was their own decision and could hardly be said to result from Accellion's "misfeasance."

might store—or attackers might subsequently compromise—the information of individuals such as Plaintiffs does not somehow mean that Accellion had any relationship with them, let alone a "special" one. *Cf. Airbnb*, 2022 WL 16752071, at *7 (finding no special relationship between Airbnb and decedent killed on rental property because "merely hosting the opportunity for the misconduct on one's [platform] does not create a special relationship").[2]

Given that Plaintiffs allege neither misfeasance nor a special relationship, there is no justification even to consider the *Rowland* factors; yet Plaintiffs attempt to rely on them as an independent basis to argue that Accellion owed them a duty. *E.g.*, Opp. at 6 ("Accellion ignores that California courts consider the factors set forth in *Rowland* . . . to determine whether a duty of care exists."). Plaintiffs have it backwards: "A court . . . only reaches the *Rowland* factors once it finds a special relationship or other circumstances giving rise to a duty to protect are present; the factors are not 'a freestanding means of establishing duty.'" *Uber*, 79 Cal. App. 5th at 420 (citation omitted). The *Rowland* factors thus cannot excuse Plaintiffs from adequately pleading a duty based on misfeasance or a special relationship—which they have not done.

If anything, *Rowland* is a basis to *negate* such a duty based on policy considerations. *See Brown*, 11 Cal. 5th at 221 ("The purpose of the *Rowland* factors is to determine whether the relevant circumstances warrant limiting a duty already established."). And here, there are compelling policy reasons *not* to extend a duty to a defendant in Accellion's position. Permitting the *customers of a software company's customers* to sue the company directly would negate its ability to contractually manage its own risk, by exposing it to limitless and unforeseeable liability from individuals it never contracted with and whose data it did not collect, use, *or even know about*. Mot. at 8. Plaintiffs cite no case extending a duty in such an indiscriminate manner. *Cf. E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874 (1986) ("Permitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons

---

[2] Plaintiffs cite three cases finding a special relationship, but each case did so under the *Rowland* factors. *See* Opp. at 9 (citing *Stasi*, *Huynh*, and *Veterans Rideshare*, all applying *Rowland* factors). The cases wrongly conflate the special relationship test with the *Rowland* factors, which—as explained immediately below—only come into play where a special relationship (or misfeasance) can be independently established. They cannot alone be used as a basis for creating a legal duty.

1  downstream who may encounter its product."). Plaintiffs entirely fail to engage with this policy

2  concern, which would have sweeping implications for the technology industry.

3      Rather than explain how they satisfy the prevailing *Brown* and *Uber* framework, Plaintiffs

4  merely cite a smattering of data breach complaints that survived a motion to dismiss—and suggest

5  that, *ipso facto*, Accellion had a duty here. *E.g.*, Opp. at 5-6 (stating that "companies" owe a "duty

6  to safeguard personal information"). Only three of these cases are California cases, and each

7  predates, and thus does not reckon with, *Brown* and *Uber*. Moreover, the cases generally involve

8  defendants that had direct relationships with the plaintiffs, unlike Accellion.[3] Simplistically

9  asserting that these other cases had "comparable allegations" or "similar claims" just because they

10  involved a data breach, Opp. at 5, does not make it so.

11      **No Breach of Duty:** Plaintiffs still also fail to specify how any standard of care was

12  violated. They instead lean on the pleading standard, which, they claim, does not require them to

13  allege specific security failings. But a deviation from the standard of care is an element of their

14  negligence claim, and well-pled *facts*, not bare legal conclusions, are required to meet this element

15  just as with any other. The most specific Plaintiffs get is noting that the attackers "obtained the

16  decryption key to the files" (Opp. 10), but that just describes the attack, not *how or why it was the*

17  *result of negligence*. Plaintiffs are not entitled to sue first and develop a negligence theory

18  afterwards. *See Champion v. Feld Ent., Inc.*, 2021 WL 1812764, at *2–3 (S.D. Cal. May 6, 2021)

19  (granting dismissal where plaintiffs failed to sufficiently allege a relevant industry standard of care

20  and facts to show the act causing injury was negligence, versus an inherent risk in the industry).[4]

21

22  [3] *E.g.*, *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, *11–12 (D. Mass. Dec. 31, 2019) (involving PII of employees); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 2897520, at *1-2 (N.D. Ga. May 18, 2016) (involving retail customer PII). The one exception is

23  *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 681 (D.S.C. 2021), which involved a software provider; but there the court found a duty under South Carolina law on

24  the basis that the defendant allegedly "creat[ed] the risk" of breach by offering software that foreseeably could be abused by third parties—precisely the sort of rationale rejected in *Brown* and

25  *Uber*.

26  [4] Contrary to what Plaintiffs claim, their conclusory allegations are not comparable to the more

27  specific violations deemed sufficient in other cases. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (alleging a failure to adhere to "industry-standard" practices for the lifespan of "access tokens" attackers leveraged); *In re Facebook, Inc., Consumer Priv. User Profile*

28  *Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (alleging Facebook "g[ave] third parties access

**No Cognizable Injury:** Plaintiffs' damages allegations are also insufficient. Plaintiffs are wrong that they can recover for alleged harm that they may incur in the "future." Opp. at 3. Their own cases show this. *E.g.*, *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) ("[T]hose who claim only that they may incur expenses in the future have not [pleaded cognizable injuries]."). The two cases Plaintiffs cite for their reliance on the risk of identity theft are not to the contrary: one (*Zappos*) relates to Article III standing rather than negligence,[5] and the other (*Lewert*) is an out-of-state case that did not apply California law. Opp. at 11. Especially here, where the breach occurred *years* ago—such that any likely harm would have manifested already—Plaintiffs cannot rest their negligence claims on a threat of future harm.

Plaintiffs are also wrong that "lost time" standing alone is a cognizable injury. Opp. at 11. It has been recognized as cognizable only in connection with reasonable out-of-pocket expenses. *E.g.*, *Pruchnicki*, 845 F. App'x at 614. But none are alleged here. The only Plaintiffs who allege out-of-pocket expenses allegedly purchased credit monitoring services, CAC ¶¶ 5, 10, 15; but each were customers of the WSAO and Flagstar—which provided those services *for free* after the Attacks, including identity theft restoration services.[6] Plaintiffs' decision to pay for redundant services is not a reasonable or necessary expense. *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021 ("Plaintiff's allegations again fail to establish that out-of-pocket expenses and lost time spent on credit monitoring were reasonable and necessary.").

Finally, Plaintiffs cite no authority that diminution in value of personal information is a cognizable negligence injury under California law. The *Facebook* case they cite involved Article III standing; the *Anthem* case involved New York law; and the *Alphabet* case dealt with a breach

---

[footnote continued] to [plaintiffs' data] without taking any precautions to constrain that access to protect the plaintiffs' privacy, despite assurances it would do so").

[5] *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) ("Although Pruchnicki alleged sufficient injury-in-fact to support standing, *whether the allegations adequately alleged compensable damages is a different question*.") (emphasis added).

[6] Dkt. No. 107 at 7 (noting Flagstar's offer of credit monitoring and "identity theft restoration" services for affected individuals); State of Washington, Office of Financial Management, *available at* https://ofm.wa.gov/about/news/2021/02/state-auditor-s-office-data-security-incident (offering individuals affected by Attacks "credit monitoring and identity restoration services at no cost").

of contract claim. Opp. at 12. Plaintiffs also do not dispute that such damages are viable only if their PII actually has *economic* value *to them*; yet they make no such allegations. Mot. at 10.

Plaintiffs' alleged economic damages—*i.e.*, "diminution in value" and "out-of-pocket costs" and other "costs"—are also barred by the economic loss rule. Mot. at 10. Plaintiffs argue that "the rule does not apply when a special relationship exists, when there is no privity, or when noneconomic losses are alleged." Opp. at 12. But there is no special relationship between Accellion and Plaintiffs (*supra*); Plaintiffs cite no case holding that the economic loss rule only applies where the parties are in privity[7]; and assuming Plaintiffs have alleged any "noneconomic losses," that does nothing to change that they also allege economic losses, which are barred.[8]

**No Claim for Negligence Per Se:** Plaintiffs do not dispute that they improperly pled negligence per se as a cause of action. Opp. at 13. The Court should dismiss that count accordingly. *See Tarob M & C Invs., LLC v. Herbert*, 2015 WL 5728426, at *1, 4 (N.D. Cal. Sept. 30, 2015).

### C.    Plaintiffs Cannot Invoke the CCPA Against Accellion Here

**No Basis to Conclude Accellion Is a "Business":** Plaintiffs' CCPA arguments continue to ignore the fundamental distinction the statute makes between "the business" that collects and controls a consumer's information as opposed to service providers utilized by the business. The statute only authorizes consumers to sue "the business" responsible for maintaining reasonable security procedures with respect to their information—a term defined to mean an entity that *both* collects consumers' information *and* determines the purposes and means by which it is processed. Plaintiffs fail to adequately allege or explain how Accellion does either, let alone both.

First, as to collection, Plaintiffs merely point to their group-pleading allegations that "Defendants collected and stored Plaintiffs' . . . personal information" and that "[e]ntities . . . hired

---

[7] Plaintiffs cite *Stasi v. Inmediaa Grp. Corp.* for this point, which at most stated the rule was "questionable" under the facts of that case because, *inter alia*, the parties "were not in privity." 501 F.Supp.3d 898, 913 (S.D. Cal. 2020); *compare Agricola Cuyuma SA v. Corona Seeds, Inc.*, 2021 WL 3930054, at *2 (C.D. Cal. June 25, 2021) ("manufacturers cannot be liable to end users for purely economic losses unless an agreement exists through which the user can sue in contract").

[8] Plaintiffs' claimed noneconomic damages—vague allegations of "stress" and "anxiety" (CAC ¶¶ 5-15)—are not cognizable either. *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9 (C.D. Cal. May 8, 2023) ("[A]nxiety and increased concerns for the loss of his privacy . . . are the type of 'conclusory and vague' allegations which courts have held are insufficient to sustain a negligence claim at the motion to dismiss stage.") (citation omitted).

1   Accellion . . . to collect and securely transfer sensitive Personally Identifiable Information." Opp.

2   at 15. These vague and conclusory assertions pay lip service to the statutory language without

3   alleging any *specific conduct* sufficient to show *how* Accellion is supposed to have "collected"

4   their data (or anyone else's data for that matter). That Accellion provided file-transfer software to

5   other entities to use does not mean that Accellion collects data about those entities' consumers,

6   any more than Microsoft's provision of email software to a company means that Microsoft collects

7   data about the company's consumers as a result. Curiously, Plaintiffs state that "[w]hether it was

8   Accellion—or Accellion's FTA customers—that specifically collected Plaintiffs' personal

9   information is immaterial," *id.*, but the statutory definition of "business" requires that they allege

10  conduct constituting collection by Accellion specifically. They fail to do so, as to their own

11  information or that of any other consumers.[9]

12          Second, Plaintiffs' argument that Accellion determined the purposes and means of

13  processing their information is even less plausible. Plaintiffs assert that this requirement is

14  somehow met because Accellion "provides a platform" that "facilitate[s] the transfer of personal

15  information." Opp. at 15. But merely providing software that "facilitates" transfer of data by others

16  does not somehow mean that Accellion "*determines the purposes and means* of the processing."

17  Cal. Civ. Code § 1798.140(c). To the contrary, it would be the entity doing the transferring—*i.e.*,

18  the FTA customer—that determines why and how the data is processed. The customer may choose

19  to use FTA as the "means" of the transfer—but that only proves that the customer, not Accellion,

20  "determines" the means. Likewise, Accellion would obviously have no say as to the "purpose" of

21  the transfer; nor do Plaintiffs even attempt to allege otherwise. Mot. at 13-14. For these reasons,

22  the language in the CCPA's definition of "business" emphasized by Plaintiffs—encompassing an

23  entity that "alone, *or jointly with others*, determines the purposes and means of the processing,"

24  Opp. at 15—is of no avail to them. The point remains that the mere allegation that Accellion

25  _____

26  [9] To the extent Plaintiffs' argument is that they can sue Accellion as long as it collected *some*
    consumer's information, even if not *their* information specifically, the position is inconsistent with

27  both the statutory scheme and common sense: it would subject companies to liability under the
    statute even for data that they did not collect or control, and could not have been responsible for

28  securing. Mot. at 14. But regardless, the flaw in Plaintiffs' allegations runs even deeper than this:
    they fail to adequately allege that Accellion itself collected *any* consumers' data, let alone theirs.

1   "facilitates" transfers of data does not imply that Accellion "determines" how or why that data is

2   processed—whether jointly or singly. Plaintiffs do not (and cannot plausibly) allege that Accellion

3   enters into any joint controllership with its customers.

4        Ultimately, Plaintiffs' argument boils down to the position that the CCPA's cause of action

5   should be extended to cover a *service provider—i.e.*, an entity "that processes personal information

6   *on behalf of* a business." Cal. Civ. Code § 1798.140(ag)(1) (emphasis added). However, putting

7   aside that Accellion is not even a service provider under the CCPA (because it does not process

8   data but rather merely licenses software to its customers), Plaintiffs' position ignores that the

9   CCPA's cause of action is expressly limited to suits against "the business" involved in a breach—

10  not any service providers. While Plaintiffs argue that the CCPA must be "liberally construed," no

11  rule of construction can override the plain statutory text. *See Even Zohar Constr. & Remodeling,*

12  *Inc. v. Bellaire Townhouses, LLC*, 61 Cal. 4th 830, 842 (2015) ("The rule that a remedial statute

13  is construed broadly does not permit a court to ignore the statute's plain language.").[10]

14       **No Specific Security Failure Alleged:** Finally, Plaintiffs make no effort to tie the alleged

15  compromise of their information to any specific failure by Accellion to implement reasonable

16  security measures. They cannot distinguish the cases Accellion cites dismissing CCPA claims on

17  these grounds at the pleading stage; in fact, Plaintiffs quote deficient allegations from these cases

18  that are *virtually identical* to the allegations in Plaintiffs' Complaint. *Compare* Mot. at 15 (noting

19  dismissal of CCPA claim in *Maag* where plaintiffs alleged only that the defendant failed to

20  "'implement and maintain reasonable security procedures and practices'" and "failed to effectively

21  monitor its systems for security vulnerabilities'") *with* CAC ¶ 162 (alleging that "[t]he Data Breach

22  occurred as a result of Defendants' failure to implement and maintain reasonable security

23  procedures and practices" and "Accellion failed to monitor its systems for suspicious activity").

---

[10] Plaintiffs perfunctorily cite *In re Blackbaud Customer Data Breach Litigation* for the proposition that the term "business" as used in the CCPA "encompasses 'service provider'" Opp. at 16 (citing 2021 WL 3568394 (S.D.C. Aug. 12, 2021)). However, as Accellion already explained in its opening brief, this out-of-state holding is plainly incorrect, as the two terms are defined dichotomously in the statute, Mot. at 12 n.3, as has been specifically recognized in in-state case law, *see Karter v. Epiq Sys., Inc.*, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021) (holding that the CCPA's cause of action can be asserted only against entities that "are businesses, not service providers"). Plaintiffs ignore these arguments and simply hope that this Court will blindly follow *Blackbaud* over legal precedent from California.

**D.      The CMIA Does Not Apply to Accellion or the Allegedly Breached Data**

Plaintiffs cannot show that Accellion is a type of entity subject to the CMIA. They argue Accellion is a "provider of health care" under Section 56.06(b) of the California Civil Code, but the subsection encompasses only "business[es] that offer[] software or hardware *to consumers . . . that is designed* to maintain medical information . . . for purposes of allowing the individual to manage his or her information, or for the diagnosis, treatment, or management of a medical condition." *Id.* (emphasis added). Plaintiffs do not (and cannot) claim that FTA was specifically "designed" to enable individuals to manage their health data or for diagnosis, treatment, or management of medical conditions. The Opposition itself makes clear that FTA was general-purpose file-sharing software used by customers across industries (such as Flagstar—a *bank*). Opp. at 2. Nor can Plaintiffs credibly contend that Accellion offered FTA "to consumers." They argue that "consumers" should be read to include *businesses* like Accellion's FTA customers because the statute also uses the term "individual," and assert the terms cannot mean the same thing. Opp. at 17-18. But the statute plainly uses the two terms synonymously: *e.g.*, it defines a health care provider to include a business offering "a mental health digital service to *a consumer* for the purpose of allowing *the individual* to manage the individual's information," with "the individual" clearly referring back to "a consumer." Cal. Civ. Code § 56.06(d) (emphasis added); *see Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013) ("We are not aware . . . of any canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing."). That is of course consistent with the most prevalent dictionary definition of "consumer," which is "*a person* who purchases good and services *for personal use.*"[11]

Plaintiffs also argue that Accellion is a "provider of health care" under Section 56.06(a) because Accellion is "organized *in part* for the purpose of maintaining medical information." Opp. at 18 (emphasis added). Setting aside the lack of pleaded facts suggesting that Accellion is organized *at all* for this purpose, the provision extends only to businesses "organized for *the*

---

[11] "Consumer," Cambridge English Dictionary (4th Ed. 2012); *see also, e.g.,* Collins English Dictionary ("a person who acquires goods and services for his or her own personal needs") (13th Ed. 2018); *see also* Opp. at 14 (acknowledging CCPA definition of "consumer" as "a natural person who is a California resident").

ACCELLION'S REPLY ISO MOTION TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:21-cv-01155-EJD

*purpose* of maintaining medical information." Cal. Civ. Code § 56.06(a) (emphasis added). Maintaining medical information was not "the purpose" of FTA, nor does the fact that some health care companies used FTA somehow make Accellion a "provider of health care." Plaintiffs illustrate the point in attempting to distinguish the cases cited in Accellion's opening brief. Opp. at 18 (discussing *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573 (N.D. Ill. 2022)). They emphasize that the *Arthur* court dismissed a CMIA claim because the plaintiff alleged "only that the defendant maintained medical information" on the breached software, without plausibly alleging that "Defendant [was] organized *for the purpose* of maintaining medical information." Opp. at 18 (emphasis in original). But Plaintiffs' allegations are no different here.

Plaintiffs do not identify any California authority that supports extending the CMIA to a company like Accellion or a product like FTA.[12] Instead, they selectively rely on snippets of legislative history noting that online "personal health records" ("PHRs"), including those offered via third-party applications, may be subject to CMIA prohibitions. Opp. at 18-19. But PHRs are medical history records that *individuals themselves* collect and manage. *See* NIH Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK557757/ (last accessed August 19, 2023) ("[a] personal health record (PHR) refers to the collection of an individual's medical documentation *maintained by the individual themselves*") (emphasis added). This is confirmed by the very same legislative history Plaintiffs cite, which explains that "[t]he main benefit of a PHR is that it *allows an individual to manage his or her own medical information*." Floor Analysis, Assem. Bill No. 658 (2013-2014 Reg. Sess.), at p. 3 (emphasis added). There is no allegation that Plaintiffs ever used FTA themselves at all, much less to manage their medical information. That is for good reason: again, FTA was not designed for such a specialized purpose.

---

[12] The *only* authority cited by Plaintiffs in support of their CMIA positions is the out-of-state holding in *Blackbaud.* Opp. at 19. But *Blackbaud* relied on an incorrect reading of Section 56.06(b), ignoring the statutory requirement that software be used "for purposes of allowing the individual to manage his or her information," or for treatment or diagnosis. 2021 WL 3568394, at *8. The court also relied on the portion of legislative history that Plaintiffs cite here, without considering the contextual language analyzed below. No court has followed *Blackbaud*'s CMIA ruling.

1    Plaintiffs also cannot overcome their failure to plead that they had any qualifying medical

2    information disclosed. They point to a conclusory allegation that unspecified "health benefit

3    information" was exposed, asserting now that this information necessarily included "substantive

4    medical information, such as treatment histories." Opp. at 19. But Plaintiffs cite nothing for this

5    conclusion, and the Complaint does not support it with any facts. Plaintiffs further argue that,

6    because "their personal information has been discovered on the dark web," this raises an

7    "inference" that "individually identifiable" medical information was disclosed. Opp. at 19. Again,

8    they provide nothing to support this inference, and in any event information is not brought within

9    the CMIA's scope merely if it is individually identifiable; it also must be substantive information

10   about medical condition or history. *See* Mot. at 17. It is telling that Plaintiffs were unable to allege,

11   more than two years after the Attacks occurred, that any such information has actually surfaced.

12              **E.        Plaintiffs Do Not Plead An Actionable CCRA Claim**

13   Plaintiffs acknowledge that a CCRA claim may lie only against a business that "owns or

14   licenses" the personal data of California residents that is subject to a breach. Opp. at 20. That

15   acknowledgment by itself is a discussion-ender: Accellion plainly did not "own or license"

16   Plaintiffs' data; nor do Plaintiffs allege otherwise. The *FTA customers* to whom Plaintiffs provided

17   their data would (presumably) be the entities that "owned" or "licensed" the data. Those entities—

18   not Accellion—would thus be the only entities responsible for notifying Plaintiffs about the breach

19   of that data under the CCRA. Cal. Civ. Code § 1798.82(a). Moreover, the CCRA only requires

20   notification to individuals of a *data breach*—and Plaintiffs do not even allege that Accellion had

21   any way to *know* that their data had been breached, let alone that they unreasonably delayed in

22   reporting any such breach. The allegations of "delay" by Accellion that Plaintiffs cite in their brief,

23   Opp. at 20 (citing CAC ¶¶ 45, 138, 183–84), concern Accellion's notifications *to its FTA customers*

24   about *vulnerabilities* in the software. Notifications about mere software vulnerabilities are not

25   required or governed by the CCRA; they were made here on a voluntary basis. Mot. at 18-19.[13]

26

27   [13] Plaintiffs also do not respond to the fact that, after their conclusory allegations are set aside, the Complaint makes clear that any purported "delay" by Accellion in making these notifications did not cause notifications *by customers to Plaintiffs* to be unnecessarily delayed. Mot. at 19 (citing

28   allegations that Accellion informed Flagstar of FTA vulnerabilities on January 22, 2021, but Flagstar did not notify customers until March 5, 2021).

1    Along the same lines, Plaintiffs acknowledge that only "customers" of a covered business

2    can bring suit under the CCRA, but they do not show that they qualify as customers *of Accellion*.

3    Opp. at 20-21. Plaintiffs instead breeze past the statutory language, arguing that they do not need

4    to allege that they provided their information "directly" to Accellion to be "customers" under the

5    statute. Opp. at 20-21. But they cite nothing in the CCRA to support that interpretation, which

6    cannot be squared with the statute's plain language. *See* Cal. Civ. Code § 1798.80(c) (defining

7    "customer" as "an individual who *provides personal information to a business* for the purpose of

8    purchasing or leasing a product or obtaining a service *from the business*") (emphasis added).[14]

9        **F.    Plaintiffs Do Not Plead an Unfair Act Under the WCPA**

10       Plaintiffs do not cite any case to support their novel theory that Accellion is liable for an

11   "unfair" act under the WCPA based on breaches of data that its *FTA customers* exclusively

12   collected and controlled. Plaintiffs rely on *Veridian Credit Union v. Eddie Bauer, LLC*, but the

13   court in *Veridian* sustained a CPA claim against a retailer who failed to secure information it

14   collected *directly from customers* and stored on *its own compromised system*. 295 F. Supp. 3d

15   1140, 1162 (W.D. Wash. 2017). Nothing in *Veridian* suggests that the retailer would have been

16   liable to parties further downstream with whom it never interacted.[15] Plaintiffs counter that

17   Accellion "knew that the [unspecified] relevant information was not secure" on FTA and

18   "continu[ed] to license and sell its software, despite knowing its vulnerabilities." Opp. at 21.

19   Nowhere is this alleged in the Complaint, however. To the contrary, the Mandiant report

20

21   _____

     [14] The cases cited by Plaintiffs do not provide competent support for their argument. In *In re*
22   *Experian Data Breach Litig.*, the court found that the plaintiffs were "customers" of Experian for
     purposes of the CCRA because they provided information that was "kept on a server owned by"
23   Experian. 2016 WL 7973595, at *1, 9 (C.D. Cal. Dec. 29, 2016). The case's perfunctory holding
     makes no effort to grapple with the text of the statute; but in any event Plaintiffs make no allegation
24   here that their data was kept on an Accellion-owned server, nor could they. As for *Castillo*, that
     case did not involve a CCRA notification claim at all; instead, it concerned whether an alleged
25   violation of the security provisions of the CCRA could be used as a basis for claim under the
     UCL's unlawful prong. 2016 WL 9280242, at *7.

26   [15] The remaining cases cited by Plaintiffs similarly involved defendants that failed to secure *its*
     *own customers' or patients'* information that the defendants had collected and stored. Opp. at 21
27   (*citing Buckley v. Santander*, 2018 WL 1532671 (W.D. Was. Mar. 29, 2019) (sustaining WCPA
     claim where bank failed to secure its customers' loan information stored on its servers); *In re*
28   *Mednax Servs., Inc.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) (sustaining WCPA claim in the wake
     of phishing attack on defendants' own email systems).

referenced in the Complaint makes clear that the Attacks exploited "zero day" vulnerabilities—*i.e.*, vulnerabilities never previously identified. *See* Mandiant, File Transfer Appliance (FTA) Security Assessment, https://www.kiteworks.com/sites/default/files/trust-center/accellion-fta-attack-mandiant-report-full.pdf, *cited in* CAC ¶ 42, at 3.

### G. Plaintiffs Do Not Plead an Intentional Intrusion by Accellion

Courts have repeatedly held that an invasion-of-privacy claim—whether under the common law or under California's Constitution—requires an *intentional* intrusion by the defendant. Plaintiffs do not dispute that they cannot allege that Accellion intentionally intruded on Plaintiffs' privacy; instead, they suggest that Accellion's intent may be "inferred" from its allegedly "reckless" conduct. But the only California case they cite has nothing to do with invasion of privacy. Opp. at 22 (citing *Katsaris v. Cook*, 180 Cal. App. 3d 256, 268 (1986), which concerned the privilege to kill a trespassing dog). Plaintiffs' attempt to recast allegations that Accellion "fail[ed] to take adequate precautions" against security risks as affirmatively reckless conduct does not withstand even passing scrutiny. *See Damner v. Facebook Inc.*, 2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020) (rejecting intrusion-upon-seclusion claim premised on a "failure to take adequate measures to protect against the intentional intrusion of a third party"); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *11-12 (S.D. Cal. Nov. 3, 2016) (dismissing constitutional privacy claim in the absence of "facts that would suggest that the data breach was an intentional violation of . . . privacy, as opposed to merely a negligent one").

### H. Plaintiffs Are Not Third-Party Beneficiaries of the Accellion EULA

Plaintiffs assert that whether they are intended third-party beneficiaries of the Accellion EULA is a factual question unsuitable to decide on the pleadings. They are wrong. It is plain from the face of the EULA, which the Complaint incorporates by reference, that there are *no* intended third-party beneficiaries of the contract—much less that a "motivating purpose" of the contracting parties was to confer benefits to third parties like Plaintiffs. *See Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 821 (2019) (describing elements of third-party beneficiary contract claim); *see also* Mot. at 20-21 (collecting cases). Plaintiffs acknowledge that the EULA specifically *disclaims* third-party beneficiaries, but assert that "the existence of such a clause serves only as evidence of

the parties' intent." Opp. at 23. However, where a contract itself is unambiguous—as is the EULA—a court need not, and may not, consider any further evidence of intent. *See Rodriguez v. Oto*, 212 Cal. App. 4th 1020, 1027 (2013) (if contract "terms are unambiguous, there is ordinarily no occasion for additional evidence of the parties' subjective intent"); *IP Sols., Inc. v. Cent. Sierra Holdings, Inc*., 2023 WL 3224426, at *4 (E.D. Cal. May 3, 2023) ("If the language is clear and does not lead to absurd results, the inquiry ends here." (internal quotation marks and citation omitted)). The only case Plaintiffs cite on this issue cuts against their argument. Opp. at 23 (citing *Dollar Tree Stores Inc. v. Toyama P'nrs, LLC*, 2011 WL 872724 (N.D. Cal. Mar. 11, 2011) (denying leave to amend third-party claim where contract included "a clause specifically disclaiming any intention to create rights in third-parties")).[16]

Plaintiffs also fail to identify any provision of the EULA that Accellion allegedly breached. They cite the section of the EULA that addresses "Confidential Information" (Opp. at 23), but that provision applies only to confidential information "*of the other party*"—that is, Accellion's FTA customers. *See* EULA § 7.1; Mot. at 21. It has nothing to do with any data those customers might transfer using FTA, which the EULA addresses separately and makes clear that Accellion "does not need or require access to." EULA § 7.2.

## I.    Plaintiffs Do Not Adequately Plead a Claim For Unjust Enrichment

As Accellion has explained, Plaintiffs do not plausibly allege that they lack an adequate remedy at law and, therefore, their unjust enrichment claim must be dismissed under *Sonner v. Premier Nutrition, Corp.*, 971 F.3d 834 (9th Cir. 2020), and its progeny. Mot. at 22; *see also Stafford v. Rite Aid Corp*., 2023 WL 2876109, at *4 (S.D. Cal. Apr. 10, 2023) (boilerplate allegations are insufficient to "plausibly allege 'the inadequacy of a legal remedy'"). Plaintiffs contend that *Sonner* does not apply at the pleading stage, Opp. at 24, but that argument is

---

[16] Plaintiffs assert that third-party beneficiary claims have been upheld in other data breach cases, but the out-of-state cases cited in the Opposition are distinguishable—in all but one instance, the contracts at issue did not contain a provision disclaiming third-party beneficiaries (which the EULA does contain), and each contained terms that governed the handling of plaintiffs' or the proposed class's personal information (which the EULA does not contain). *See* Opp. at 23 (citing *Anthem*, *McDowell*, and *Irwin*). The remaining case contained ambiguous language, and the court relied on a "split in New York [law]" about whether courts should look beyond the face of a contract to determine whether an intended third-party beneficiary exists to sustain the claim. *See Leibovich v. United Short Mortg., LLC*, 2016 WL 6395954, at *4 (E.D. Mich. Oct. 28, 2016).

1   impossible to square with *Guzman v. Polaris Indus., Inc.*, which Plaintiffs ignore. *See* 49 F. 4th

2   1308 (9th Cir. 2022) (holding that *Sonner* was not limited to its procedural posture, and that the

3   district court should have *dismissed* the plaintiff's equitable UCL claim *on jurisdictional grounds*

4   because plaintiff had an adequate legal remedy). District court cases decided post-*Guzman* have

5   recognized that the case forecloses Plaintiffs' position. *See, e.g., Hunter v. FCA US LLC*, 2023

6   WL 4828013, at *3 (N.D. Cal. July 27, 2023) ("The Court finds that Plaintiff asserts a legal claim

7   and fails to establish the inadequacy of remedies at law, with the consequence that dismissal

8   without prejudice of the claims over which the Court lacks jurisdiction is appropriate."); *Smith v.*

9   *Apple, Inc.*, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (plaintiff cannot "plead[] equitable

10  remedies in the alternative" if they have not plausibly alleged their legal remedies are inadequate).

11          In any event, Plaintiffs cannot meet the elements of unjust enrichment. They argue that

12  they conferred a benefit on Accellion indirectly, through fees paid to FTA customers. Opp. at 25.

13  But Plaintiffs do not explain how Accellion could have *knowingly* accepted any benefit from them,

14  given that they never allege they had any dealings with Accellion in the first place. *Est. of Hoefer*

15  *v. ATC Realty Fifteen, Inc.*, 2021 WL 148087, at *4 (N.D. Cal. Jan. 15, 2021) (unjust enrichment

16  requires that defendant "has knowingly accepted" a benefit from the plaintiff). Further, Plaintiffs

17  allege no facts to support their otherwise conclusory and implausible assertion that "they paid fees

18  to Accellion's clients in exchange for the promise that their personal information would be

19  protected." Opp. at 25. *See, e.g., In re Zappos.com*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015)

20  (finding no standing for unjust enrichment claim where plaintiffs alleged no facts showing "how

21  the price they paid for such goods incorporated some particular sum that was understood by both

22  parties to be allocated to" data security); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape*

23  *Data Theft Litig.*, 45 F. Supp.3d 14, 30 (D.D.C. 2014) (same).

24  **III.   CONCLUSION**

25          Accellion respectfully requests that the Court dismiss all claims against Accellion in

26  Plaintiffs' Consolidated Complaint in their entirety and without leave to amend.

27

28

1    Dated: August 21, 2023                    Respectfully submitted,

2                                              LATHAM & WATKINS LLP

3                                              /s/ *Michael H. Rubin*
                                               Michael H. Rubin (CA Bar No. 214636)
4                                               *michael.rubin@lw.com*
                                               Melanie M. Blunschi (CA Bar No. 234264)
5                                               *melanie.blunschi@lw.com*
                                               505 Montgomery Street, Suite 2000
6                                              San Francisco, California 94111-6538
                                               Telephone: +1.415.391.0600
7

8                                              Serrin Turner (*pro hac vice*)
                                                *serrin.turner@lw.com*
9                                              1271 Avenue of the Americas
                                               New York, NY 10020
10                                             Telephone: +1.212.906.1200

11                                             Attorneys for Defendant *Accellion Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28