# Exhibit A

Adam E. Polk (State Bar No. 273000)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
Reid Gaa (State Bar No. 330141)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com

KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
MICHAEL GERVAIS (330731)
mgervais@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KEVIN R. DOWNS (331993)
kdowns@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
[Tel.] (310) 789-3100
[Fax] (310) 789-3150

*Interim Co-Lead Plaintiffs' Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No: 21-cv-01155-EJD |
| | Hon. Edward J. Davila |
| | **JOINT STIPULATION AND [PROPOSED] ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**1.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case.

**2.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**3.    LIAISON**

The parties each have identified or will identify e-discovery liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the e-discovery liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.    PRESERVATION**

(a)    The Parties will take reasonable and proportionate steps to preserve unique ESI that is within their respective possession, custody, or control and is subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1). By preserving or producing information for the purposes of this Litigation, the Parties are not conceding that such material is discoverable or relevant.

(b)    Except upon a showing of good cause, the following data sources and document types are not discoverable in this case, and the Parties shall have no obligation to preserve data contained in the following forms:

1.    Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium, as long as the original data still exists in some other form and is produced or cataloged in an appropriate privilege log.

2.      Back-up data that is substantively duplicative of data that is more reasonably accessible elsewhere.

3.      Deleted, slack, fragmented, unallocated space or other data only accessible by forensics.

4.      On-line access data such as temporary Internet files, history, cache, or cookies.

5.      Non-substantive logs from servers, systems, or networks that were not part of the cyber attack lifecycle.

**5.      PRODUCTION FORMATS**

With the exception of spreadsheets, presentation files, PDF files, image files, Multi Media files, and native files that cannot be converted to image files, the parties shall produce all responsive and non-privileged ESI as Bates stamped single-page 1-bit TIFF images with a load file in standard Opticon OPT or iPro LFP or Summation (DII) format that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

(a)      *Production Media*. The parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (e.g., FTP), or readily accessible computer or electronic media (e.g., CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files;

(3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

(b)    *Color*. Plaintiffs and Defendants shall produce documents in color where the document in its original format contained color (e.g., charts and graphics, tracked changes, or other highlights). Color images should be produced with a high quality setting as to not degrade the original image.

(c)    *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (e.g., ABC000001.TIFF). The Bates number must appear on the face of the image and to the extent practical, not obliterate, conceal, or interfere with any information from the source document. While Bates numbers will not appear on the face of the image for native documents produced, slipsheets shall be provided in accordance with subsection (h).

(d)    *Parent-Child Relationships*. For ESI only, Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

(e)    *Redactions*. A Party may not redact information on the basis that it believes the information to be irrelevant. If the parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), e.g., by blacking out the text. Should the producing party wish to redact information because it is both irrelevant and highly sensitive, the parties shall meet and confer in good faith about the proposed redaction. The

producing party must provide sufficient information for the receiving party to assess the basis for the redaction and whether the information is both irrelevant and highly sensitive. If the parties are unable to agree on redactions for irrelevant and highly sensitive information, the Producing Party must either produce the document in unredacted form or seek a protective order from the Court.

If documents that the parties have agreed to produce in native format need to be redacted, the parties agree that the producing party may produce such documents in TIFF format to permit redactions to be applied. If the TIFF format is insufficient to meet the requesting party's needs, the parties shall meet and confer in good faith regarding how to produce the documents. Extracted text will not be provided for electronic documents that have been redacted. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

(f)    *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.

(g)    *Metadata Fields*. To the extent possible, Plaintiffs and Defendants shall provide the system-generated and metadata fields (the "Production Fields") set forth in Exhibit A, or similarly-named fields containing the information set forth therein.

(h)    *Native Format*. The Responding Party shall produce spreadsheets (e.g., Excel), presentation files (e.g., PowerPoint), PDF files, and any materials not readily convertible to TIFF format (e.g. three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, image (e.g., .gif or .jpg) and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted

JOINT STIPULATION AND [PROPOSED] ORDER RE DISCOVERY
OF ELECTRONICALLY STORED INFORMATION
Case No:  21-cv-01155-EJD

text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively." Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied.

(i)     *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (e.g., ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.

(j)     *Physical/Hard Copy Documents*. Nothing herein shall relieve the parties of any obligations they may have to search for responsive Documents in hard copy form. The parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The documents should be logically unitized for production to the extent reasonably practicable. Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations

where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto skewing" and "auto-rotation" should be turned on during the OCR process. The parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k)     *Databases and Other Structured Data*. The parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management systems (e.g., Oracle, SQL server, DB2), including the types of information stored in the database(s) (e.g., fields), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. Information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To facilitate the meet and confer process and production of this information, sample reports reflecting the types of information and fields contained in the database(s) shall not be unreasonably withheld.

(l)     *Duplicates*. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e.,

global level) and the custodian will be provided for each document.

## 6. PRODUCTIONS FROM RELATED PROCEEDINGS AND OTHER LITIGATION

In the event a party intends to produce documents that have already been produced in a prior or related matter, the producing party shall produce those documents in a way that affixes or includes the same labeling, including Bates labeling, as the previously produced documents, unless otherwise agreed to by the parties. The parties also agree to meet and confer regarding other production format issues.

## 7. MATERIAL PROTECTED FROM DISCOVERY

(a)     The production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

The parties agree that, for any information or item otherwise discoverable that is withheld from discovery on the basis of privilege or work product, the parties will record each item on a privilege log. Each party's initial privilege logs need only provide a unique identification number for each document, objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information), and an indication of the privilege or protection being asserted.

1.     For ESI, the privilege log may be generated using available metadata, and to the extent available, must include the following metadata fields: Custodian, File Name, Email Subject, Author, From, To, CC, BCC, Date Sent, Date Received, and Date Created.

2.      In addition to the objective metadata fields, a party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., the name of the attorney will be provided if not included in the objective metadata).

3.      A party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

4.      As an initial production matter, redacted documents need not be logged as long as (i) for emails, the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested); and (ii) for non-email documents, the reason for the redaction is noted on the face of the document in the redacted area. After receipt of the production, the requesting party may request in good faith that the producing party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "Redacted" field in the accompanying data load file.

5.      A Party may not redact information on the basis it believes such information to be irrelevant.

6.      A party that withholds any document entirely on the basis of privilege shall produce a Bates numbered placeholder page/slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." Slip sheets for withheld documents need be produced only for partially-privileged families, where the producing party asserts privilege over a portion but not all of the responsive documents in the family. Slip sheets need not be produced for fully privileged document families.

(b)      For any withheld or redacted documents, a producing party will produce a privilege/redaction log within 35 (thirty-five) days of the substantial completion of the production of documents in which the withheld or redacted document would otherwise have been produced; provided, however, that all privilege logs will be provided with sufficient time to permit the receiving party to review the privilege logs, meet and confer with the producing party about the privilege logs, and bring any motion regarding those privilege logs prior to the close of discovery.

(c)      Communications solely involving trial counsel and a Party that post-date the filing of the complaint need not be placed on a privilege log.

(d)      Notwithstanding the provisions in this section, any privilege log that is submitted to the Court in connection with a discovery dispute must comply with the parameters for privilege logs set forth in Section 12, "Privilege Logs", of the Civil and Discovery Referral Matters Standing Order for Magistrate Judge Susan van Keulen.

**8.      <u>SEARCH</u>**

(a)      Duty to Meet and Confer. The parties recognize that there exist a variety of search tools and methodologies that can be used in advance of producing documents, including

the use of search terms and technology assisted review ("TAR") tools. The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, before any particular tool or methodology is applied to locate and collect documents responsive a party's production requests. Specifically, a producing party shall disclose the custodians or other non-custodial sources, date range, and search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information.

(b)    Search Terms & Source Files. Where a producing party proposes to limit its search obligations by the use of search terms, it will make a good faith and reasonable effort to investigate what search terms and source files will be reasonably likely to uncover responsive information and then propose those search terms and source files for the requesting party's consideration.

Indiscriminate terms, such as the producing party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production, and the parties agree to meet and confer, in good faith, to develop such terms.

Proposed search terms will be subject to negotiation with and input from the requesting party. The requesting party may ask for (and the producing party will not unreasonably withhold) qualitative and quantitative information regarding search methodology, including production of custodian level search term hit reports, with unique document "hit" counts and other information reasonably necessary to allow the requesting parties to evaluate any proposed search methodology.  The parties will reach an agreement on the search terms or queries to be used before the producing party produces documents hitting on those search terms or queries.

Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and

responsive documents of which a party is aware, regardless of whether they contain agreed-upon search terms or collected pursuant to any other search methodology agreed to by the parties or ordered by the Court.

To the extent a party is aware of non-duplicative documents that are relevant, responsive, non-privileged, reasonably accessible, and within the party's possession, custody, and/or control, such documents will be produced regardless of whether they contain search terms or are responsive to any other search methodology agreed to by the parties or ordered by the Court.

The parties reserve their rights to seek modification of any agreed upon search protocol for good cause.

The parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

**9.   COSTS**

Except as otherwise ordered by the Court, each party shall bear its own e-discovery costs, including costs for exemplification and copying.

**10.   MODIFICATION**

This Order may be modified by Stipulation of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.


DATED: December 15, 2023                     /s/ *Adam E. Polk*
                                                         Adam E. Polk (State Bar No. 273000)
                                                         Jordan Elias (State Bar No. 228731)

JOINT STIPULATION AND [PROPOSED] ORDER RE DISCOVERY
OF ELECTRONICALLY STORED INFORMATION
Case No:  21-cv-01155-EJD

1    Simon S. Grille (State Bar No. 294914)
     Reid Gaa (State Bar No. 330141)
2    GIRARD SHARP LLP
     601 California Street, Suite 1400
3    San Francisco, CA 94108
     Tel: (415) 981-4800
4    Fax: (415) 981-4846
     apolk@girardsharp.com
5    jelias@girardsharp.com
     sgrille@girardsharp.com
6    rgaa@girardsharp.com

7    */s/ Krysta K. Pachman*
     Krysta Kauble Pachman (280951)
8    kpachman@susmangodfrey.com
     Michael Gervais (330731)
9    mgervais@susmangodfrey.com
     Steven G. Sklaver (237612)
10   ssklaver@susmangodfrey.com
     Kevin R. Downs (331993)
11   kdowns@susmangodfrey.com
     SUSMAN GODFREY L.L.P.
12   1900 Avenue of the Stars, Suite 1400
     Los Angeles, California  90067-6029
13   [Tel.] (310) 789-3100
     [Fax] (310) 789-3150

14   *Interim Co-Lead Plaintiffs' Counsel*

15   DATED: December 15, 2023       */s/ Fred Norton*

16                                  Fred Norton
                                    Bree Hann
17                                  THE NORTON LAW FIRM, PC
                                    299 Third Street, Suite 200
18                                  Oakland, CA 94607
                                    Telephone: (510) 906-4900
19                                  Email: fnorton@nortonlaw.com
                                    Email: bhann@nortonlaw.com
20
21                                  *Counsel for Accellion, Inc.*
22
23
24
25
26

1

**FILER'S ATTESTATION**

2     I, Kevin R. Downs, am the ECF User whose ID and password are being used to file this

3 document. In compliance with Civil L.R. 5-1(h)(3), I hereby attest that all counsel have

4 concurred in this filing.

5                                    _/s/ Kevin R. Downs_                                   

6

7                            **O R D E R**

8     PURSUANT TO STIPULATION, IT IS SO ORDERED.

9

10 DATED: _____     _____

11                                                Hon. Edward J. Davila
                                                United States District/Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Exhibit A**
**Production Fields**

| | |
|---|---|
| BEGBATES | Start Bates (including prefix) -- No spaces or special characters |
| ENDBATES | End Bates (including prefix) -- No spaces or special characters |
| BEGATTACH | The identifier of the first page of the first document in a family group. This is used for page-level numbering schemes. |
| ENDATTACH | The identifier of the last page of the first document in a family group. This is used for page-level numbering schemes. |
| ATTACHNAME | File name of the attachment, with any attachments separated by semi-colon |
| ATTACHMENT | Child document list: BEGDOC# of each child (populated ONLY in parent records) |
| CUSTODIAN | Custodian/source/source party of initial instance of document/family collected |
| DUPCUSTODIAN | Custodian(s)/source(s)/source parties of any instances of document/family collected |
| FROM | Sender of an email. |
| TO | Recipient(s) from the to line of an email. |
| CC | Carbon copy recipient(s) on an email. |
| BCC | Blind carbon copy recipient(s) on an email. |
| SUBJECT | Subject line from an email. |
| DATESENT | The date an email was sent. |
| TIMESENT | The time an email was sent. |
| DATERCVD | The date an email was received. |
| TIMERCVD | The time an email was received. |
| FILEEXT | The file extension of the native file. |
| AUTHOR | Person who created the file. A file can have one or no author. |
| MODIFIEDBY | Person who last modified or saved the item, |
| CREATEDATE | The date the file was created. |
| CREATETIME | The time the file was created. |
| DATELASTMOD | The date changes were last made to a file. |
| TIMELASTMOD | The time changes were last made to a file. |
| FILENAME | The original name of the first instance native file. |
| PGCOUNT | The number of pages in a document. |
| DOCTYPE | The kind of file a document came from. |

| PARENTDATE | The date of the parent document. For emails this will be date sent and for non-emails date last modified. |
|---|---|
| HASH | Numeric value of a fixed length that uniquely identifies data. |
| NATIVEPATH | The path to a copy of a file within the production deliverable. |
| TITLE | Available title information extracted from MS Office and PDF documents. |