Fred Norton (SBN 224725)
fnorton@nortonlaw.com
Bree Hann (SBN 215695)
bhann@nortonlaw.com
Janelle Sampana (SBN 336398)
jsampana@nortonlaw.com
Emily Kirk (SBN 348547)
ekirk@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Phone: (510) 906-4900
Fax: (510) 906-4910

Camilo Artiga-Purcell (SBN 273229)
camilo.apurcell@kiteworks.com
ACCELLION, INC.
1510 Fashion Island Blvd, Suite 100
San Mateo, CA 94404
Tel: (415) 515-4724

Attorneys for Defendant
Accellion, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 21-CV-01155-EJD |
| | **DEFENDANT ACCELLION, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Date:     July 18, 2024<br>Time:     9:00 a.m.<br>Judge:   Hon. Edward J. Davila<br>Courtroom:  4 – 5th Floor |

# TABLE OF CONTENTS

I.      ARGUMENT ........................................................................................................... 1

      A.      The Court's Prior Order Does Not Control The Decision On Plaintiffs' Amended
Complaint Because "Law Of The Case" Does Not Apply ......................................... 1

      B.      Plaintiffs Must Establish A Special Relationship To Plead Negligence ..................... 2

      C.      Plaintiffs Fail To Establish A Special Relationship Under California Law ................ 3

      D.      The Claims By Non-California Plaintiffs Are Subject To The Laws Of Their Home
States And Fail To State A Negligence Claim Under That Controlling Law ............... 6

            1.   The Court Should Decide the Choice of Law Issue Now ....................................... 6

            2.   The Negligence Claims of the Non-California Plaintiffs Are Subject to the Laws
of Their Home States ........................................................................................... 7

            3.   If California Would Recognize a "Special Relationship" on the Facts Alleged in
the Amended Complaint, Its Law Conflicts with the Laws of Georgia, Michigan,
Tennessee, Oklahoma, Washington, and Texas ..................................................... 7

            4.   California Has No Interest in Applying Its Law Concerning Special Relationships
to Provide Remedies to Citizens of Foreign States for Alleged Data Breach
Claims ................................................................................................................. 12

            5.   Non-California States' Interests Predominate Over California's Attenuated
Interest ................................................................................................................ 13

II.     CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Askins v. U.S. Dep't of Homeland Sec.*,
    899 F.3d 1035 (9th Cir. 2018) ................................................................ 2

*Barlow v. State*,
    2 Wash. 3d 583 (2024) ........................................................................... 9

*Bartel v. Tokyo Elec. Power Co., Inc*.,
    371 F. Supp. 3d 769 (2019) ............................................................... 6, 12

*Biscan v. Brown*,
    160 S.W.3d 462 (Tenn. 2005) ............................................................. 11

*Bradley Center v. Wessner*,
    250 Ga. 199 (1982) ................................................................................ 8

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) ....................................................................... 2, 4

*Bryan v. Del Monte Foods, Inc.*,
    2023 WL 6959128 (N.D. Cal. Oct. 19, 2023) ...................................... 2

*Buckley v. Santander Consumer USA, Inc.*,
    2018 WL 1532671 (W. D. Wash. Mar. 29, 2018) .............................. 10

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
    19 Cal. 4th 1036 (1999) ...................................................................... 13

*Carr v. Oklahoma Student Loan Auth.*
    2023 WL 6929850 (W.D. Okla. Oct. 19, 2023) ................................. 10

*Carr v. Oklahoma Student Loan Auth.*,
    2023 WL 6929853 (W.D. Okla. Oct. 19, 2023) ............................. 10, 11

*Cassirer v. Thyssen-Nornemisza Collection Found.*,
    89 F.4th 1226 (9th Cir. 2024) ......................................................... 13, 14

*Cimoli v. Alcer Corp.*,
    587 F. Supp. 3d 978 (N.D. Cal. 2022) .............................................. 6, 12

*Clark Fire Equip., Inc. v. Arkema, Inc.*,
    176 F. Supp. 3d 646 (S.D. Tex. 2015) ................................................ 11

ii

*Clothesrigger, Inc. v. GTE Corp.,*
    191 Cal. App. 3d 605 (Ct. App. 1987) ............................................................. 13

*Collins v. Athens Orthopedic Clinic, P.A.,*
    307 Ga. 555 (2019) ............................................................................................ 8

*Cover v. Windsor Surry Co.,*
    2016 WL 520991 (N.D. Cal. 2016) ......................................................... 6, 7, 15

*Dep't. of Labor v. McConnell,*
    828 S.E.2d 352 (Ga. 2019) ................................................................................ 8

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) .............................................................. 6

*Frezza v. Google Inc.,*
    2013 WL 1736788 (N.D. Cal. 2013) .................................................................. 6

*Greyhound Lines, Inc. v. Dep't of Cal. Highway Patrol,*
    213 Cal. App. 4th 1129 (2013) .......................................................................... 3

*Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC.,*
    485 F. Supp. 3d 885 (E.D. Mich. 2020) ............................................................ 9

*Gustavson v. Wrigley Sales Co.,*
    2014 WL 60197 (N.D. Cal. Jan. 7, 2014) .......................................................... 2

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
    567 F. Supp. 3d 667 (D.S.C. 2021) ................................................................. 11

*In re Cap. One Consumer Data Sec. Breach Litig.,*
    488 F. Supp. 3d 374 (E.D. Va. 2020) .............................................................. 12

*In re Yahoo Mail Litig.,*
    308 F.R.D. 577 (N.D. Cal. 2015) ..................................................................... 12

*James v. Walt Disney Co.,*
    2023 WL 7392285 (N.D. Cal. 2023) ............................................................ 6, 14

*Katz-Lacabe v. Oracle Am., Inc.,*
    668 F. Supp. 3d 928 (N.D. Cal. 2023) .......................................................... 7, 14

*Kelley v. AW Distrib., Inc.,*
    2022 WL 2356988 (N.D. Cal. 2022) .............................................................. 14

*Koczera v. Steele,*
  570 S.W.3d 242 (Tenn. Ct. App. 2018) ............................................................... 11

*Lightbourne v. Printroom Inc.,*
  307 F.R.D. 593 (C.D. Cal. 2015) ......................................................................... 12

*Mann v. State of Cal.,*
  70 Cal. App. 3d 773 (1977) ............................................................................... 3, 4

*Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.,*
  2024 WL 86859 (N.D. Cal. Jan. 8, 2024) .............................................................. 2

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ......................................................................... 12, 15

*McCann v. Foster Wheeler LLC,*
  48 Cal. 4th 68 (2010) .................................................................................... 14, 15

*Melton v. Boustred,*
  183 Cal. App. 4th 521 (2010) ................................................................................. 4

*Moriarty v. Bayside Ins. Assocs., Inc.*
  2021 WL 4061105 (9th Cir. Sept. 7, 2021) ........................................................... 4

*Nelson v. F. Hoffmann-La Roche, Inc*.,
  642 F. Supp. 3d 1115 (N.D. Cal. 2022) ......................................................... 12, 15

*O'Connor v. Uber Techs., Inc.,*
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ..................................................................... 2

*Offshore Rental Co. v. Continental Oil Co.,*
  22 Cal. 3d 157 (1978) .................................................................................... 14, 15

*POC USA, LLC v. Expeditors Int'l of Wash., Inc.,*
  2024 WL 1579522 (W. D. Wash. Apr. 11, 2024) ................................................. 10

*Potter v. Chevron Prods. Co.,*
  2018 WL 4053448 (N.D. Cal. 2018) ...................................................................... 6

*Regents of Univ. of Cal. v. Super. Ct.,*
  4 Cal. 5th 607 (2018) ................................................................................... 2, 4, 5

*Route v. Mead Johnson Nutrition Co*.,
  2013 WL 658251 (C.D. Cal. Feb.21, 2013) ........................................................... 7

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
  360 F. Supp. 3d 1039 (S.D. Cal. 2019) .................................................................. 2

iv

*Snow v. Travel Centers of Am. LLC*,
   527 P.3d 741 (Okla. Ct. Civ. App. 2022) ........................................................................... 10

*Strigliabotti v. Franklin Res., Inc.*,
   398 F. Supp. 2d 1094 (N.D. Cal. 2005) .............................................................................. 2

*Stromberg v. Qualcomm Inc.*,
   14 F.4th 1059 (9th Cir. 2021) ............................................................................................ 7

*Todd v. Tempur-Sealy Int'l. Inc.*,
   2016 WL 344479 (N.D. Cal. 2016) .................................................................................. 14

*Torres v. Wendy's Int'l, LLC*,
   2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ................................................................ 11

*United States v. Jingles*,
   702 F.3d 494 (9th Cir. 2012) ............................................................................................. 2

*Wells Fargo Bank, N.A. v. Jenkins*,
   744 S.E.2d 686 (Ga. 2013) ................................................................................................ 8

*Williams v. Cunningham Drug Stores, Inc.*,
   429 Mich. 495 (1988) ........................................................................................................ 9

*Williams v. State of Cal.*,
   34 Cal. 3d 18 (1983) .......................................................................................................... 4

**Statutes**

Cal. Civil Code § 946 ............................................................................................................... 13
Cal. Corporations Code Section 25500 ................................................................................... 13

**Rules**

Fed. R. Civ. Pro. 11 ................................................................................................................... 3

The amended complaint now concedes that Plaintiffs had no actual relationship with Accellion and were unaware that Accellion even existed. Nonetheless, even in the absence of an ***actual relationship***, Plaintiffs somehow claim they had a "***special relationship***" with Accellion that imposed on Accellion an affirmative duty to protect Plaintiffs from the criminal acts of third-party hackers who allegedly accessed Plaintiffs' data from third parties who licensed Accellion's FTA software.

This is not the law in California or anywhere else. It most certainly is not the law of this case. This Court's prior order does not endorse Plaintiffs' novel liability theory; the order relied on materially different—and now abandoned as untrue—allegations that Accellion itself "transferred," "collected," "stored," "received," "maintained," and "handled" Plaintiffs' sensitive data. Applied to the different facts that Plaintiffs plead now, the Court's prior order mandates dismissal under California law.

Further, even if California law could be extended to create Plaintiffs' new liability theory, non-California Plaintiffs' claims are governed by the laws of their home states, which in every case reject Plaintiffs' expansive reading of the special relationship exception. Plaintiffs ask the Court to defer its ruling on choice of law, but Plaintiffs fail to identify any discovery that is necessary to resolve the issue and courts in the Ninth Circuit routinely decide choice of law with similar alleged facts at the motion to dismiss stage. Based on Plaintiffs' new allegations, the non-California states' courts would not find a special relationship between Accellion and non-California Plaintiffs. Those states have substantial interests in applying their own laws to claims that their residents were harmed by conduct that occurred within their borders. These state interests would be materially impaired if California—which has no interest in providing remedies to non-residents—exported its laws to impose duties that otherwise do not exist where Plaintiffs live and were allegedly harmed. The Court should grant Accellion's motion.

## I.     ARGUMENT

### A.     The Court's Prior Order Does Not Control The Decision On Plaintiffs' Amended Complaint Because "Law Of The Case" Does Not Apply

Plaintiffs begin by arguing that the Court's order on the prior motion to dismiss compels denial this motion as well, under the law of the case doctrine. Dkt. 250 at 5-6. Not so. "[W]hen a plaintiff has filed an amended complaint, the law of the case doctrine does not apply because the amended complaint is a new complaint which may include additional facts and claims that are different from the original

---

1

complaint requiring a new determination by the court." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1046 (S.D. Cal. 2019). *See also Bryan v. Del Monte Foods, Inc.,* 2023 WL 6959128, at *1 n.5 (N.D. Cal. Oct. 19, 2023) (rejecting argument that motion to dismiss amended complaint was subject to law of case doctrine and dismissing with prejudice claim that was previously upheld); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 996 (N.D. Cal. 2014) (same); *Gustavson v. Wrigley Sales Co.*, 2014 WL 60197, at *6 & n.4 (N.D. Cal. Jan. 7, 2014) (same). Second, the Ninth Circuit has directed that "[t]he law of the case doctrine does not preclude a court from reassessing its own legal rulings in the same case," such that the doctrine "does not [] bar a court from reconsidering its own orders before judgment is entered …." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). Accellion's motion to dismiss must be decided on its own merits.[1]

## B.   Plaintiffs Must Establish A Special Relationship To Plead Negligence

The parties agree that under California law, there is generally no duty to protect others from the criminal conduct of third parties like the hackers who allegedly targeted Plaintiffs' data. *See Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 619 (2018). Thus, to plead a claim for negligence based on failure to protect—nonfeasance—Plaintiffs must establish that they were in a "special relationship" with Accellion. *See Brown v. USA Taekwondo ("USAT")*, 11 Cal. 5th 204, 215 (2021).

In passing, Plaintiffs misread a footnote from *USAT* and suggest that Accellion might owe a duty of care if its "entire conduct created a risk of harm," Dkt. 250 at 13 (quoting *USAT*, 11 Cal. 5th at 215 n.6), even if there is no special relationship. That is not what the Court said. Rather, it explained the existence of a duty does not depend on the "commission or omission of a specific act," but whether the "actor's entire conduct created a risk of harm." *Id.* This is not a separate basis for finding a duty, it is the basis for finding a special relationship that creates a duty. A defendant whose conduct creates a risk of

---

[1] Plaintiffs' cases do not support them. *United States v. Jingles*, 702 F.3d 494, 499, 502 (9th Cir. 2012), involved a criminal defendant's attempt to recast his unsuccessful constructive amendment argument on direct appeal as a fatal variance argument on a habeas appeal, which was no change at all; *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1098 (N.D. Cal. 2005), involved no change in the complaint's allegations but rather defense counsel's belief by that the already decided issue had been "erroneously presented by his co-counsel"; and in *Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, 2024 WL 86859, at *2 (N.D. Cal. Jan. 8, 2024), the defendant conceded its Rule 12(c) argument was identical to its prior 12(b) argument but incorrectly asserted the court had not previously decided the issue.

harm by placing the plaintiff in a uniquely vulnerable position, *see, e.g.*, *Mann v. State of Cal.,* 70 Cal. App. 3d 773, 776-77, 780 (1977), may have a duty to protect that plaintiff from harm. In this case, Plaintiffs must establish a special relationship. They cannot.

### C.   Plaintiffs Fail To Establish A Special Relationship Under California Law

The Court's prior order relied extensively on Plaintiffs' allegations that Accellion itself "transferred," "collected," "stored," "received," "maintained," and "handled" Plaintiffs' data, allegations Plaintiffs have now abandoned. Dkt. 244 at 11-13. Plaintiffs try to minimize this amendment, protesting that it is a "meaningless distinction," Dkt. 250 at 13,[2] whether Accellion had any relationship to Plaintiffs and their data, as opposed to licensing software that third parties used to handle that data. The distinction is ***not*** meaningless.  The amendment cuts the only thread that connected Plaintiffs to plead any relationship, much less a special one.  In contrast, Plaintiffs' approach would render all distinctions "meaningless," because Plaintiffs have no limiting principle of any kind. Plaintiffs ignore the directive that the special relationship rule "is not expansive but, rather, is narrow and is reserved for a very limited class of unusual cases." *See Greyhound Lines, Inc. v. Dep't of Cal. Highway Patrol*, 213 Cal. App. 4th 1129, 1137 (2013). Instead, they treat *Regents'* summary of four common attributes of special relationships as a generic checklist, stripped of the specific context of the cases that have carefully defined the exception's scope. As a result, Plaintiffs allege a relationship that in fact is neither "narrow," nor "limited," nor "unusual"—nor "special."

***First,*** as Accellion showed in its opening brief, the ACC does not plead the kind of dependency *USAT*, *Regents*, and other cases require. Dkt. 244 at 20-22. Plaintiffs no longer claim that in "the ordinary course of doing business with entities that use Accellion's FTA, individuals are typically required to provide PII that is then transferred by Accellion."  Dkt. 217 (quoting Dkt. 170 ¶ 30). To salvage their argument, Plaintiffs resort to word games, arguing that even though Accellion actually never transferred their data, its ***customers*** did, using Accellion's ***product***, and that should be close enough. Dkt. 250 at 15. But no California court has ever used the "special relationship" exception to

---

[2] Prior to the ACC's filing, Accellion demanded Plaintiffs remove allegations that Accellion had access to Plaintiff data, which were false based on information Plaintiffs already had. *See* Fed. R. Civ. Pro. 11. Plaintiffs complied, undermining their assertion now that the amendment was "meaningless."

3

create a new theory of product liability and Plaintiffs offer no reason for this Court to be the first. Similarly, Plaintiffs cannot plead they "relied" on Accellion for protection, *see Regents,* 4 Cal. 5th at 620. In this context reliance involves a "particularly vulnerable" person who relies on the words or conduct of the defendant, creating a false sense of security that worsens that person's position. Dkt. 244 at 18 (citing *Regents*, *Mann*, *Williams v. State of Cal.*, 34 Cal. 3d 18, 28 (1983), *Melton v. Boustred*, 183 Cal. App. 4th 521, 527, 535-36 (2010).)  Plaintiffs do not argue any of that is present here, they argue they "relied" on a company they did not interact with, and that they had no knowledge of. Dkt. 250 at 15 ("Nor are Plaintiffs required to have been aware of Accellion to be dependent on its FTA platform."). That is not what "relied" means. In fact, as Plaintiffs admit in their pleadings, they relied on Accellion's ***customers***, not Accellion, to protect their data. Dkt. 244 at 13-14, 21. Plaintiffs also are not "particularly vulnerable" as a special relationship requires, typically involving prisoners (*Regents*, 4 Cal. 5th at 621), passengers trapped in a moving vehicle (*id.*), traffic accident victims (*Mann*, 70 Cal. App. 3d at 776-77), and minor children (*USAT*, 11 Cal. 5th at 210). Rather, Plaintiffs' claimed vulnerability is ***everyone's*** vulnerability in the digital age. Last, especially given that Accellion had no access to Plaintiffs' data, Plaintiffs cannot show it was in a "unique position," *USAT*, 11 Cal. 5th at 216, to protect Plaintiffs from criminal hackers. Accellion was in no more unique a position than any other software company, just as the insurance agent in *Moriarty v. Bayside Ins. Assocs., Inc.* was in no more "unique" a position than the "typical insurance agent." 2021 WL 4061105, at *2 (9th Cir. Sept. 7, 2021).

   ***Second***, the ACC fails to establish "control" by Accellion as required for the special relationship exception. Plaintiffs do not dispute that, as alleged by the ACC, Accellion did not possess, transfer, obtain, or handle Plaintiffs' data, and thus could have no way to know which of its customers stored consumers' PII using the FTA, what kind of PII they stored, or who among Plaintiffs might be affected. The sole means of "control" that Plaintiffs attribute to Accellion was the ability to design and update the FTA its customers licensed. Dkt. 250 at 17-18. To that end, Plaintiffs make much of a clause in the EULA that gave Accellion a right to apply patches to customer software. *Id.* at 10, 16-17. But that fact further disproves Plaintiffs' argument, as Accellion had only such control over patches as its customers—who controlled their own installations—granted Accellion in the contract. Moreover, the Court has already held that Plaintiffs were not third-party beneficiaries of Accellion's contracts with its

customers. Dkt. 217 at 28-29.  Plaintiffs' argument would achieve the same result by other means, claiming that Accellion had a tort duty to exercise its contractual right so as to protect Plaintiffs from criminal conduct by third-party hackers. Not surprisingly, Plaintiffs cite no case supporting that proposition.

*Third*, the ACC fatally undermines any finding that the alleged "special relationship" is limited to specific individuals as *Regents* requires. 4 Cal. 5th at 625-26. Plaintiffs no longer allege that they were "users of services Accellion … provided to" them, Dkt. 217 at 7, Dkt. 170 ¶¶ 119-20. Instead, they say they were "end users of the services Accellion provided to its clients."  Dkt. 250 at 19 (citing Dkt. 230 ¶ 128). With that maneuver, Plaintiffs render the limited community requirement meaningless, as a company would have a "special relationship" with every customer of a customer who ultimately claims to be affected by a product's use in the stream of commerce. Plaintiffs try to shore up this argument by saying that "privity" is not required in a special relationship. *Id.* at 20. But Accellion is not demanding "privity" as necessary; it is rejecting utter anonymity as sufficient. As Accellion noted in its motion, no California court has ever found a special relationship between a defendant and persons the defendant did not even know existed. Dkt. 244 at 23. Plaintiffs offer no response to that point at all; there is none.

*Last*, Plaintiffs argue that "Accellion could not successfully operate without the need for secure transfers of Plaintiffs' sensitive data," Dkt. 250 at 20. That claim is not in the ACC and Plaintiffs offer no cite for it. It is not true. (To the extent the ACC discusses Accellion's business, it generally quotes statements about Accellion's newer Kiteworks offering, not the FTA at issue here.)  Of course, Accellion's business depends on the need for secure transfers of *someone's* data, such as its direct customers' financial documents, strategic plans, and the like. But nothing in the ACC supports an inference that Accellion's business depends on its customers using the FTA to transfer the data of third parties with whom Accellion has no relationship, justifying a duty on Accellion's part to protect those strangers. Once again, Plaintiffs distort the rationale of the special relationship exception to expand it far beyond the limited, unusual circumstances in which it is to apply.

The ACC fails to plead a special relationship and the negligence claim must be dismissed.

### D. The Claims By Non-California Plaintiffs Are Subject To The Laws Of Their Home States And Fail To State A Negligence Claim Under That Controlling Law

Even if Accellion and the California Plaintiffs were in a special relationship, seven Plaintiffs reside outside of California and allege that third party hackers accessed their data from non-California companies that did business in the non-California states. Dkt. 230 ¶¶ 8-9, 14-15, 17-19, 52, 55-62.

As shown below, Georgia, Michigan, Oklahoma, Tennessee, Texas, and Washington would not recognize a special relationship and duty on the facts alleged here. To the extent that California would, there is a material conflict. Yet California has no interest in applying its negligence laws to non-California Plaintiffs who allege harm and injury in a foreign state, while the other states' legitimate interests would be significantly impaired if companies doing business in those states were subject to more extensive duties of care. Each of these states has made its own policy within its borders, a policy that would be impaired by if supplanted by California law to imposing a "special relationship." The laws of the non-California Plaintiffs home states apply and provide Plaintiffs no negligence claims.

#### 1. The Court Should Decide the Choice of Law Issue Now

Plaintiffs first seek to avoid the dispositive choice of law issue. Dkt. 250 at 22. But courts routinely perform a choice of law analysis at the motion to dismiss stage. *See Cimoli v. Alcer Corp.*, 587 F. Supp. 3d 978, 986 (N.D. Cal. 2022) (citing cases). In putative class cases especially, "there is a practical interest in resolving choice of law sooner rather than later – i.e., otherwise, nationwide class discovery would be needed." *James v. Walt Disney Co.*, 2023 WL 7392285, at *16 (N.D. Cal. 2023). Indeed, courts generally conduct a choice of law analysis at the pleading stage unless plaintiffs affirmatively show that discovery is necessary for that analysis. *See, e.g., Cimoli*, 587 F. Supp. 3d at 986; *James*, 2023 WL 7392285, at *16; *Potter v. Chevron Prods. Co.*, 2018 WL 4053448 (N.D. Cal. 2018); *Cover v. Windsor Surry Co.*, 2016 WL 520991 (N.D. Cal. 2016); *Frezza v. Google Inc.*, 2013 WL 1736788, at *7 (N.D. Cal. 2013); *Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769 (2019). Plaintiffs make no effort to meet that burden.

Citing out-of-circuit law, Plaintiffs claim that data breach cases raise "unique problems in choice-of-law analysis." Dkt. 250 at 22. These supposed problems are hardly insurmountable. In *In re Mednax Services, Inc., Customer Data Security Breach Litigation*, the court followed its observation with just three sentences and then held, on a motion to dismiss, that Florida law applied to the data

6

breach claims. 603 F. Supp. 3d 1183, 1189 (S.D. Fla. 2022). This Court faces no greater challenge, as "further development of the factual record" is not "reasonably likely to materially impact the choice of law determination." *Cover*, 2016 WL 520991, at *5 (N.D. Cal. 2016).

The ACC, along with the parties' briefs, give this Court all that it needs for the analysis. According to the ACC, Accellion, a Delaware corporation, has its principal place of business in Palo Alto, Dkt. 230 ¶ 20, Accellion does not control Plaintiffs' PII, Dkt. 244 at 12-13, and each of the non-California Plaintiffs were allegedly harmed and exposed to the data breach in their respective states. Dkt. 230 ¶¶ 5–19. Discovery into Accellion's servers, administration, software, and system patches is not necessary to the choice of law analysis. The Court should not defer decision. *See Route v. Mead Johnson Nutrition Co*., 2013 WL 658251, *8–9 (C.D. Cal. Feb.21, 2013) (refusing to defer ruling on choice of law until class certification as the matter was sufficiently obvious from the pleadings); *Katz-Lacabe v. Oracle Am., Inc*., 668 F. Supp. 3d 928, 947 (N.D. Cal. 2023) (reaching choice of law issue despite plaintiffs' objection that defendant's argument was "superficial" and "not rigorous").

### 2. The Negligence Claims of the Non-California Plaintiffs Are Subject to the Laws of Their Home States

The parties agree that, under California's choice of law rules, the Court should (1) determine if there is a material conflict between the law of California and the other states; (2) if so, determine whether each state has an interest in having its law apply; and (3) if so, decide if one state's interest would be more impaired by not applying its law. Dkt. 244 at 25; Dkt. 250 at 24.

### 3. If California Would Recognize a "Special Relationship" on the Facts Alleged in the Amended Complaint, Its Law Conflicts with the Laws of Georgia, Michigan, Tennessee, Oklahoma, Washington, and Texas

As to the first factor, a difference is material when it "will spell the difference between the success and failure of a claim." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1068 (9th Cir. 2021). Thus, if the Court finds a special relationship exists under California law on these allegations, it must consider whether the laws of the other six states would lead to different results. As Accellion demonstrated, Dkt. 244 at 26-33, and expands on below, each of those states would reject Plaintiffs' special relationship theory. No more is required to show a "material conflict."

***Plaintiff Torres has no claim under Georgia law.*** The Georgia Supreme Court expressly

rejected the theory that a data custodian has a common law duty to protect an individual's personal information in *Dep't. of Labor v. McConnell*, 828 S.E.2d 352, 358 (Ga. 2019). *McConnell* rejected **both** the plaintiff's reliance on the Georgia statutes **and** on the duty "to all the world not to subject [others] to an unreasonable risk of harm" described in *Bradley Center v. Wessner*, 250 Ga. 199, 201 (1982), in the context of a data breach case. *McConnell*, 828 S.E.2d at 358. The Court concluded the plaintiff had identified no Georgia law basis for finding the Department owed him "a duty to protect … information against negligent disclosure." *Id.* at 358.

Plaintiffs point to no facts here that would render the Georgia Supreme Court's rejection of this duty "inapplicable" to Mr. Torres. Opp. at Dkt. 25. Mr. Torres alleges Accellion owed him a duty "to safeguard" and "to preserve and protect the confidentiality of" his PII—the same duty for which *McConnell* found no basis under Georgia law. ACC (Dkt. 230) at ¶¶ 71, 125. Though Plaintiffs argue *McConnell* left open the possibility that there **might** be some other basis for establishing such a duty under Georgia law,[3] Dkt. 250 at 25-26, they have identified no such basis that would apply here.

Moreover, the federal cases Plaintiffs cite are inapposite. ***First***, Georgia courts routinely refuse to "infer[] or supply[]" a duty of care where the legislature has not defined one. *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 688 (Ga. 2013). Thus, even if a Georgia court were swayed by the federal cases recognizing a Georgia common law duty to protect individuals' personal information—contradicting *McConnell*—it would not have the authority to do so under Georgia law. ***Second***, as discussed in Accellion's opening brief, after *McConnell*, federal courts have recognized a duty owed in data breach cases under Georgia law only where there was both foreseeable harm **and** a "direct relationship" between defendants and plaintiffs. Dkt. 244 at 27. No direct relationship exists between Accellion and Mr. Torres, the customer of Accellion's customer.

As Georgia courts would not recognize a duty owed by Accellion to protect Mr. Torres's

---

[3] Plaintiffs cite the Georgia Supreme Court's decision in *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555 (2019), in support. However, *Collins* granted certiorari to review the Court of Appeals' finding that the plaintiffs had not alleged a legally cognizable injury to support a negligence claim. *Id.* at 557. The Georgia Supreme Court did not discuss the claim's duty element because "the Court of Appeals' decision did not turn on this issue." *Id.* at 563. Notably, the *Collins* Court of Appeals decision was issued in June 2018, prior to the Georgia Supreme Court's December 2019 decision in *McConnell* declining to find a data custodian owed a duty to its customers. *See McConnell*, 828 S.E.2d 352.

personal information from a third party's criminal acts, his negligence claim falls under Georgia law.

***Plaintiff Whittaker has no claim under Michigan law.*** Plaintiffs ignore clear authority that Michigan would not hold data transfer companies liable for a third-party criminal attack. Michigan has a policy against expanding the duty to protect from criminal acts, *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 498 (1988), and "Michigan courts have been exceptionally hesitant to extend liability to cases of third-party criminal behavior." *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC.*, 485 F. Supp. 3d 885, 897 (E.D. Mich. 2020). Plaintiffs cannot escape this authority and their attempt to distinguish *Grifo* fails. *Grifo* did not "root[] its analysis in contract law," Dkt. 250 at 26, but instead declined to conflate plaintiff's negligence claims with contractual nonfeasance and held the "negligence claim amounts to allegations that Defendant failed to take action to protect Plaintiff from a virus attack." 485 F. Supp. 3d at 896. The court then found that these allegations of negligent nonfeasance were "***outside*** the terms of the parties' contract." *Id.* (emphasis added). Accordingly, under *Grifo* and Michigan law, Accellion would not be liable for negligence. The Court should hold that Ms. Whittaker has no claim for negligence under Michigan law.

***Plaintiffs have no claim under Washington law.*** Plaintiffs argue that, under *Barlow v. State*, 2 Wash. 3d 583 (2024), Accellion would have a special relationship with Ms. Worrick and Ms. Rodriguez. False. *Barlow* declined to create an exception to the general rule that one does not have a duty to protect others from the criminal acts of third parties, *id.* at 593-94, and unequivocally stated, "[w]e have ***never*** recognized such a special relationship and duty between a university and its students" (emphasis added). Instead, a university could only be liable in the same way that "a business operator and possessor of land" is to the public. *Id.* at 590. Plaintiffs' attempt to connect *Barlow* to *Regents* fails—*Barlow* only approved of *Regents* to the extent it limited a university's duty to its students. Consistent with a business' duty to the public, a university could only be liable for activities that it controls. *Id.* at 596.

Thus, *Barlow* does not expand the special relationship duty here—Accellion does not hold land open to the public and has no business invitees. Moreover, the relationship between Accellion and Washington Plaintiffs—the customers of Accellion's ***customers***—is not one of entrustment like that of a business (or university) and its invitee (or student or campus visitor). Accellion had no direct relationship with Ms. Worrick or Ms. Rodriguez. Rather, Accellion licensed the FTA to the Washington

9

1    State Auditor's Office, which requested, collected, transferred, and was entrusted with the safekeeping

2    of Ms. Worrick's and Ms. Rodriguez's PII.

3            Further, federal courts applying Washington law—both before and after *Barlow*—have declined

4    to find a duty owed by data custodians to their customers following a cyber attack. *See POC USA, LLC*

5    *v. Expeditors Int'l of Wash., Inc.*, 2024 WL 1579522, at *3 (W. D. Wash. Apr. 11, 2024) (finding no

6    misfeasance and no duty because Plaintiff's allegations are, at most, allegations of omissions or

7    nonfeasance and not finding the required special relationship); *Buckley v. Santander Consumer USA,*

8    *Inc.*, 2018 WL 1532671, at *6 (W. D. Wash. Mar. 29, 2018) ("[T]he failure to implement adequate data

9    security measures does not implicate a legal duty on its own.").

10           Accordingly, under Washington law, Accellion has neither a duty nor a special relationship with

11   Ms. Worrick and Ms. Rodriguez and had no duty to protect them from the criminal acts of a third party.

12           ***Plaintiff Dawes Has No Claim Under Oklahoma Law.*** Oklahoma has not adopted the

13   Restatement (Third) of Torts, and Oklahoma courts would not expand the list of special relationships

14   enumerated in the Restatement (Second) to encompass the relationship between Ms. Dawes and

15   Accellion. *See Snow v. Travel Centers of Am. LLC*, 527 P.3d 741, 750, 754 (Okla. Ct. Civ. App. 2022).

16   As Plaintiffs concede, no Oklahoma case has found a duty to protect against third-party hackers based

17   on a special relationship. Dkt. 250 at 28. As the relationship between Accellion and Ms. Dawes is not an

18   enumerated "special relationship" under the Restatement (Second), Oklahoma courts would reject the

19   claim that Accellion owed a duty to safeguard Ms. Dawes' PII from third-party hackers.

20           *Carr v. Oklahoma Student Loan Auth.*, 2023 WL 6929853 (W.D. Okla. Oct. 19, 2023) (*Carr II*),[4]

21   finding that defendant Nelnet owed a duty to protect plaintiffs' PII from third-party hackers, does not

22   help Plaintiffs here. In *Carr*, defendant Nelnet argued it had no duty to protect the plaintiffs' information

23   from third-party hackers because it "merely provided an online portal through which Plaintiffs' PII

24   passed." *Carr II*, 2023 WL 6929853, at *3. But the *Carr* court found Nelnet nonetheless owed a duty to

25

26   _____

27   [4] Accellion intentionally quoted both *Carr* opinions (which Plaintiffs refer to as *Carr I* and *Carr II*) in its
     opening brief. *See* Opening Br. (Dkt. 244) at 30-31. The quotation from *Carr II*, 2023 WL 6929853, at

28   *3 ("If Nelnet had access to Plaintiffs' PII such that vulnerabilities in its online portal placed Plaintiffs at
     risk of foreseeable harm, Nelnet held a duty to Plaintiffs."), inadvertently included a citation to *Carr I*,
     2023 WL 6929850, at *3 (W.D. Okla. Oct. 19, 2023) (*Carr I*).

the plaintiffs because Nelnet "*had access to* Plaintiffs' PII such that vulnerabilities in its online portal placed Plaintiffs at risk of foreseeable harm." *Id.* (emphasis added*)*; Dkt. 244 at 31. Here, as the ACC makes clear, Accellion never had access to the plaintiffs' PII. Unlike Nelnet, Accellion did not handle Plaintiffs PII *at all*; Accellion's *customer* did. There is no basis under Oklahoma authority or under *Carr* for finding Accellion owed a duty to Ms. Dawes.

> ***Plaintiffs Have No Claims Under Tennessee or Texas Law.*** Tennessee and Texas have never recognized a special relationship on facts analogous to those of the ACC, nor would they. Dkt. 244 at 31-33. Under Tennessee law, nonfeasance generally does not give rise to a duty to act or rescue absent a special relationship listed in the Restatement (Second). *Koczera v. Steele*, 570 S.W.3d 242, 247 (Tenn. Ct. App. 2018). And, like Oklahoma, Tennessee has declined to adopt the Restatement (Third) of Torts, and generally applies the special relationship exception to only the "socially recognized relations" enumerated in the Restatement (Second). *See Biscan v. Brown*, 160 S.W.3d 462, 479 n.4 (Tenn. 2005). Likewise, Texas limits the special relationship to specific enumerated relationships not at issue here, Dkt. 244 at 32, and Texas courts have declined to create a duty to "warn about the criminal acts of third parties, outside of premises liability cases or situations in which the defendant had the ability to control the criminal actor." *Clark Fire Equip., Inc. v. Arkema, Inc.*, 176 F. Supp. 3d 646, 649 (S.D. Tex. 2015).

> In response, Plaintiffs essentially concede defeat, saying "[t]here is no decision from a Tennessee or Texas court examining duty in a data breach case, and no sufficiently analogous cases to offer significant guidance." Dkt. 250 at 29. Though Accellion did cite numerous Tennessee and Texas cases that limited the expansion of the special relationship exception, Plaintiffs call these cases "inapplicable." *Id.* It is not clear why these cases would be "inapplicable" here, yet *Regents* (assault by one university student on another) and *USAT* (sexual abuse of minors by a coach) would be directly on point. The Tennessee and Texas court decisions clearly reject the expansion of tort duties Plaintiff seek here.

> Plaintiffs then cite cases from Florida, South Carolina, and Virgina to try to predict that Tennessee and Texas courts will do something other than what Tennessee and Texas courts have actually said. Dkt. 250 at 22.  What's more, each of those defendants maintained and could exercise control over the plaintiffs' data, unlike Accellion here. *See Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *4 (M.D. Fla. Mar. 21, 2017) (defendant stored its customers' credit card data); *In re*

*Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 682 (D.S.C. 2021) (defendant collected and stored plaintiffs' PII for its customers); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 397 (E.D. Va. 2020) (defendant stored plaintiffs' PII in a "data lake"). Unlike those cases, Ms. Desjardins and Ms. Ringling have not alleged that Accellion collected, transferred, stored, or had any control over their PII, or that they had any relationship with Accellion at all. Rather, as the ACC makes clear, Accellion's customers acquired, stored, and transferred Plaintiffs' data using the FTA, in the course of their own relationships to Plaintiffs. Dkt. 230, ¶ 9.

There is no special relationship between Accellion and Ms. Desjardin or Ms. Ringling under the laws of Tennessee or Texas.

### 4. California Has No Interest in Applying Its Law Concerning Special Relationships to Provide Remedies to Citizens of Foreign States for Alleged Data Breach Claims

As the Ninth Circuit has noted, "California's interest in applying its law to residents of foreign states is attenuated." *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 594 (9th Cir. 2012); *see also Bartel,* 371 F. Supp. 3d at 792 ("California has no interest [in] ensuring compensation for plaintiffs who neither are California residents nor injured in California."). California's interest in regulating its businesses is not achieved by "applying California law to the claims of foreign residents concerning acts that took place in other states," *Mazza,* 666 F.3d at 594; *see also Cimoli,* 587 F. Supp. 3d at 986, so applying non-California law here "will cause minimal impairment to California's interest." *Nelson v. F. Hoffmann-La Roche, Inc.*, 642 F. Supp. 3d 1115, 1137 (N.D. Cal. 2022).

Decisions addressing choice of law in the context of consumer privacy claims, like those here, have recognized the limit on California's interest. *See*, *e.g.*, *In re Yahoo Mail Litig.,* 308 F.R.D. 577, 605 (N.D. Cal. 2015) (finding California had little interest in applying its privacy laws to claims by non-Californians that Yahoo, a California company, had violated their privacy rights); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599 (C.D. Cal. 2015) (finding that non-resident plaintiffs' states, not California, had interest in applying their own law to right of publicity claims). Furthermore, where the nature of the claimed injury is loss of or damage to personal property, as it is here, *see* Dkt. 230 ¶¶ 94, 97, California has explicitly stated its choice of law policy:  "If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed

by the law of his domicile." Cal. Civil Code § 946. California thus has no interest in providing a tort remedy for non-resident plaintiffs who claim injury to personal property in a foreign state.

Plaintiffs' cases fail to establish California's interest in applying its tort law principles extraterritorially. In *Diamond Multimedia Systems, Inc. v. Superior Court,* the California Supreme Court considered whether the California Legislature intended for Cal. Corporations Code Section 25500, which created a remedy for victims of stock market manipulation, to apply to claims by non-resident investors against California companies that engaged in fraud in California. 19 Cal. 4th 1036, 1051-55 (1999). Considering the text of Section 25500 as well as related provisions with express limitations to activity "within this state," the Court concluded that the Legislature could have an interest in and did provide a remedy to foreign investors in California companies. *See id.* at 1064. That textual analysis lends no support to extra-territorial application of the judicially created "special relationship" and corresponding duty to protect.[5]

Accordingly, California has no interest in applying its law to non-California Plaintiffs here.

**5.  Non-California States' Interests Predominate Over California's Attenuated Interest**

In the third step of the analysis, the Court determines which state interest would be more impaired if its policy were subordinated to the policy of the other. *Cassirer v. Thyssen-Nornemisza Collection Found.*, 89 F.4th 1226, 1234 (9th Cir. 2024). This is not a question of which policy is "better or worthier," *id.*, but "in light of the legal question [] and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *Id.* at 1236–37. Other factors in the analysis include "the current status of a statute;" the "location of the relevant … conduct;" and the extent to which the "application of the other jurisdiction's laws would … impair the interests of the state whose law is not applied." *Id.* at 1237 (cleaned up).

***First***, the status of non-California states' negligence laws calls for their application to non-

---

[5] Plaintiffs' reliance on *Clothesrigger* is even more feeble. In that case, the Court of Appeal faulted the superior court for having conducted no comparative impairment analysis at all, and then offered the broad observation that "[u]nder certain facts California may have an important interest in applying its law to punish and deter the alleged wrongful conduct." *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal. App. 3d 605, 615 (Ct. App. 1987). The decision did not find that California had such an interest on the facts of that case and Plaintiffs make no argument applying it to the facts of this case.

California Plaintiffs. As explained in detail below, these states are actively applying a conservative approach to negligence and would likely find that companies are not liable for the third-party acts of criminal hackers. *See Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157, 166 (1978) ("[A] chief criterion … is the 'maximum attainment of underlying purpose by all governmental entities. This necessitates identifying the focal point of concern of the contending lawmaking groups and ascertaining the comparative pertinence of that concern to the immediate case.'").

***Second***, the location of relevant conduct requires application of non-California law to non-California Plaintiffs, as it "receives significant weight," *Cassirer*, 89 F.4th at 1239, and is where the "the last event necessary for liability" occurred. *Todd v. Tempur-Sealy Int'l. Inc.*, 2016 WL 344479, at *7 (N.D. Cal. 2016); *see also Kelley v. AW Distrib., Inc.*, 2022 WL 2356988, at *4 (N.D. Cal. 2022).

Here, the location of the last event necessary for negligence liability is where the non-California Plaintiffs experienced the data breach—not where the FTA was designed or sold. *See Katz-Lacabe v. Oracle Am., Inc.*, 688 F. Supp. 3d at 948; *James v. Walt Disney Co.*, 2023 WL 7392285, at *17 (N.D. Cal. 2023) ("[T]here is a strong argument that the last event necessary to make Disney liable was when Oracle … intercepted the website users' communications."); *Kelley*, 2022 WL 2356988, at *4 ("Although [] relevant conduct occurred within California, the accident, which occurred in Wisconsin, was the last event necessary [for liability]").

All non-California Plaintiffs allegedly provided their PII, were exposed to the data breach, and experienced harm in their respective states. *See* Dkt. 230, ¶¶ 6–7; 10–11; 13–15. As the location of the alleged data breach for each non-California Plaintiff occurred outside California in their home states, and the breach affected them there, this factor also weighs in favor of applying non-California law.

***Third,*** laws imposing a special relationship and a heightened duty of care would significantly impair the non-California states' laws, which reflect a policy choice ***not*** to impose on companies that do business in those states an affirmative obligation and expense to protect consumers from the illegal behavior of third-party criminal hackers.

*McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68 (2010), demonstrates the significance of the foreign states' interests here and the risk of impairment. There, the plaintiff, a California resident, sued a New York company for personal injuries caused by his exposure to asbestos while working in

Oklahoma. His claim was untimely under Oklahoma law, but timely under California's. *Id.* at 89-90. The appellate court applied California law, holding that Oklahoma's interest was limited to "protecting Oklahoma defendants from liability for conduct occurring in Oklahoma," with no application to the non-Oklahoma defendant or the California plaintiff. *Id.* at 91. The California Supreme Court reversed, reasoning a rule of reduced liability for commercial activity embodies Oklahoma's interest in providing a "business friendly" environment benefitting all companies choosing to do business there. *Id.* at 91-92. If, however, a plaintiff injured in Oklahoma could sue in California and invoke California law, that would "significantly undermine Oklahoma's interest in establishing a reliable rule of law governing a business's potential liability for conduct undertaken in Oklahoma." *Id* at 98. *See also Offshore*, 22 Cal. 3d at 169. Oklahoma's interest would be impaired by applying California's pro-plaintiff rule, so California law did not apply.

Georgia, Michigan, Tennessee, Oklahoma, Washington, and Texas have adopted a policy of a less extensive duty of care; each has "an interest in having that policy of limited liability applied to out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state." *McCann*, 48 Cal. 4th at 91; *see Nelson v. F. Hoffman-La Roche, Inc.*, 642 F. Supp. 3d 1115, 1136 (N.D. Cal. 2022); *Cover*, 2016 WL 520991, at *7. For these non-California states, their policies "promote freedom of investment and enterprise" within the states' respective borders, *Offshore*, 22 Cal. 3d at 168, and "advances the opportunity of state residents to obtain … products and services offered by out-of-state companies [like Accellion]." *McCann*, 48 Cal. 4th at 92. The Court must recognize these policy choices. "It is a principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Mazza*, 666 F.3d 581, 591–92 (cleaned up). In contrast, California has little to no interest in applying its laws to non-California Plaintiffs, so imposing upon Accellion a duty to protect would improperly "strike at the essence" of the other states' policy choices. *Offshore*, 22 Cal. 3d at 168. For these reasons as well, California law cannot be applied to the claims of the non-California Plaintiffs, and the Court should dismiss non-California Plaintiffs' negligence claims.

## II.    CONCLUSION

The Court should dismiss the negligence claims of each Plaintiff, with prejudice.

15

Dated:  May 31, 2024

Respectfully submitted,

THE NORTON LAW FIRM PC

*/s/ Fred Norton*

Fred Norton

Attorneys for Defendant
ACCELLION, INC.

16