Adam E. Polk (SBN 273000)
Kyle P. Quackenbush (SBN 322401)
Samhita Collur (SBN 348448)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
kquackenbush@girardsharp.com
scollur@girardsharp.com

Krysta K. Pachman (SBN 280951)
Michael Gervais (SBN 330731)
Steven G. Sklaver (SBN 237612)
Kevin R. Downs (SBN 331993)
Madeline M. Yzurdiaga (SBN 344676)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150
kpachman@susmangodfrey.com
mgervais@susmangodfrey.com
ssklaver@susmangodfrey.com
kdowns@susmangodfrey.com
myzurdiaga@susmangodfrey.com

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 5:21-cv-01155-EJD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: April 17, 2025<br>Time: 9:00 AM<br>Courtroom: 4 – 5th<br>Hon. Edward J. Davila |

# REDACTED PURSUANT TO ECF NO. 358

# TABLE OF CONTENTS

CITATION GUIDE ................................................................................................................. ix

GLOSSARY OF TERMS ...................................................................................................... xii

I.     INTRODUCTION ........................................................................................................ 1

II.    THE COURT SHOULD CERTIFY THE CLASS AND SUBCLASSES ............................. 3

     A.    Standing Does Not Present an Obstacle to Class Certification ................................... 3

          i.    All Named Plaintiffs Suffered Injuries-In-Fact Sufficient to Confer Standing ................................................................................................ 3

          ii.    Accellion's Arguments Regarding Class Member Standing Misstate the Law ......................................................................................................... 7

     B.    Rule 23(b)(3) is Met Because the Central Questions of Duty, Breach, and Causation Predominate, and a Class Action is Superior to Individual Proceedings ................... 9

          i.    Common Questions Predominate as to Duty ................................................. 10

          ii.    Common Questions Also Predominate as to Breach and Causation ................. 12

              a.    Accellion's Attempts to Blame Its Customers Fail .............................. 13

              b.    Accellion's Status as a Potential Joint Tortfeasor Does Not Preclude a Predominance Finding ................................................................. 14

              c.    Whether Plaintiffs Were Involved in Other Data Breaches Does Not Defeat Predominance ............................................................... 15

          iii.    Whether Class Members Were Injured is Susceptible to Common Proof, and Plaintiffs Have Presented Reliable Models for Calculating Classwide Damages ........................................................................................................ 16

              a.    Plaintiffs' Credit Monitoring and Lost Value of PII Damages Models Can Reliably Calculate Classwide Damages ........................... 16

              b.    Plaintiffs' Reasonable Rate to Reimburse Time Spent is Reliable and Can be Applied Classwide at Claims Administration ...................... 19

              c.    The Court Can Also Certify a Class or Subclass for Nominal Damages .................................................................................... 21

     C.    The Negligence Class and Subclasses Satisfy Rule 23(a) ...................................... 21

    i.  Plaintiffs' Claims are Typical .......................................................... 21

    ii.  Plaintiffs Are Adequate Class and Subclass Representatives.............................22

  D.  In the Alternative, the Court Should Certify an Issues Class Under Rule 23(c)(4) .. 25

III.  CONCLUSION ......................................................................................... 25

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Facebook, Inc.*
 424 F. Supp. 3d 686 (N.D. Cal. 2019)...................................................................25

*Akaosugi v. Benihana Nat. Corp.*
 2012 WL 1657099 (N.D. Cal. May 10, 2012)........................................................22

*Alberghetti v. Corbis Corp.*
 263 F.R.D. 571 (C.D. Cal. 2010)...........................................................................23

*Barlow v. State*
 540 P.3d 783 (Wash. 2024)...................................................................................11

*Bass v. Facebook, Inc.*
 394 F. Supp. 3d 1024 (N.D. Cal. 2019)...............................................................8, 9

*Baton v. Ledger SAS*
 740 F. Supp. 3d 847 (N.D. Cal. 2024)...................................................................13

*Bentley v. Honeywell Int'l, Inc.*
 223 F.R.D. 471 (S.D. Ohio 2004)..........................................................................14

*Briseno v. ConAgra Foods, Inc.*
 844 F.3d 1121 (9th Cir. 2017)...............................................................................20

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*
 141 F.R.D. 144 (N.D. Cal. 1991)..........................................................................24

*Cai v. CMB Exp. LLC*
 2024 WL 2334509 (C.D. Cal. Apr. 4, 2024)........................................................22

*Capaci v. Sports Rsch. Corp.*
 2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ........................................................9

*Carr v. Oklahoma Student Loan Auth.*
 699 F. Supp. 3d 1241 (W.D. Okla. 2023).............................................................11

*Clemens v. ExecuPharm Inc.*
 48 F.4th 146 (3d Cir. 2022) ....................................................................................5

*Corcoran v. CVS Health*
 2017 WL 1065135 (N.D. Cal. Mar. 21, 2017) .....................................................22

*del Campo v. Am. Corrective Counseling Servs., Inc.*
 254 F.R.D. 585 (N.D. Cal. 2008)..........................................................................23

*Doe v. Mindgeek USA Inc.*
 702 F. Supp. 3d 937 (C.D. Cal. 2023)...................................................................24

*Drammeh v. Uber Techs., Inc.*
 2024 WL 4003548 (9th Cir. Aug. 30, 2024).........................................................11

*DZ Rsrv. v. Meta Platforms, Inc.*
 96 F.4th 1223 (9th Cir. 2024)...........................................................................3, 10

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

*Exp.-Imp. Bank of Korea v. ASI Corp.*
2016 WL 10788358 (C.D. Cal. July 28, 2016) ...................................................14

*Flores v. Aon Corp.*
242 N.E.3d 340 (Ill. App. Dist. 2023) ..............................................................11

*Fraser v. Wal-Mart Stores, Inc.*
2014 WL 7336673 (E.D. Cal. Dec. 24, 2014) ....................................................21

*Green-Cooper v. Brinker Int'l, Inc.*
73 F.4th 883 (11th Cir. 2023) ...........................................................................20

*Greenstein v. Noblr Reciprocal Exch.*
2024 WL 3886977 (9th Cir. Aug. 21, 2024) ...................................................3, 5

*Gunaratna v. Dennis Gross Cosmetology LLC*
2023 WL 5505052 (C.D. Cal. Apr. 4, 2023) .......................................................7

*Haney v. Charter Foods N., LLC*
747 F. Supp. 3d 1093 (E.D. Tenn. 2024) ..........................................................11

*Hoctor v. Kittitas Cnty.*
2021 WL 6139625 (E.D. Wash. Oct. 19, 2021) .................................................18

*Huynh v. Quora, Inc.*
508 F. Supp. 3d 633 (N.D. Cal. 2020) .........................................................10, 11

*In re Accellion, Inc. Data Breach Litig.*
2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) ....................................................11

*In re Accellion, Inc. Data Breach Litig.*
713 F. Supp. 623 (N.D. Cal. 2024) ........................................................16, 17, 18

*In re Anthem, Inc. Data Breach Litig.*
162 F. Supp.3d 953 (N.D. Cal. 2016) ................................................................15

*In re Anthem, Inc. Data Breach Litig.*
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .....................................................9

*In re Brinker Data Incident Litig.*
2021 WL 1405508 (M.D. Fl. 2021) ...................................................................20

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*
270 F.R.D. 521 (N.D. Cal. 2010) ......................................................................23

*In re Experian Data Breach Litig.*
2016 WL 7973595 (C.D. Cal. 2016) ..................................................................18

*In re Facebook Biometric Info. Priv. Litig.*
326 F.R.D. 535 (N.D. Cal. 2018) ......................................................................23

*In re Marriott Int'l, Inc. Customer Sec. Breach Litig.*
2022 WL 780799 (D. Md. Mar. 14, 2022) .........................................................16

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*
440 F. Supp. 3d 447 (D. Md. 2020) ..................................................................18

v

*In re Retreat Behav. Health LLC*
  2024 WL 1016368 (E.D. Pa. Mar. 7, 2024) .................................................6

*In re Rubber Chemicals Antitrust Litig.*
  232 F.R.D. 346 (N.D. Cal. 2005) ............................................................8

*In re Samsung Data Sec. Breach Litig.*
  2025 WL 271059 (D.N.J. Jan. 3, 2025) ....................................................6

*In re Sonic Corp. Customer Data Sec. Breach Litig.*
  2021 WL 4060369 (N.D. Ohio Sept. 7, 2021)...........................................13

*In re Sonic Corporation*
  2021 WL 6694843 (6th Cir. 2021) ..............................................10, 16, 25

*In re Telescopes Antitrust Litigation*
  2025 WL 754263 (N.D. Cal. Mar. 10, 2025) ...........................................19

*In re Yahoo! Inc. Customer Data Security Breach Litig.*
  313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..................................................13

*In re Zappos.com, Inc.*
  888 F.3d 1020 (9th Cir. 2018) ..................................................... passim

*Jimenez v. Menzies Aviation Inc.*
  2016 WL 3231106 (N.D. Cal. June 13, 2016) ..........................................24

*Just Film, Inc. v. Buono*
  847 F.3d 1108 (9th Cir. 2017) ...............................................................21

*Kylie S. v. Pearson PLC*
  475 F. Supp. 3d 841 (N.D. Ill. 2020) ......................................................8

*Landon v. TSC Acq. Corp.*
  2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) ...........................................6

*Larson v. Trans Union, LLC*
  2015 WL 3945052 (N.D. Cal. June 26, 2015)..........................................24

*Leyva v. Medline Indus. Inc.*
  716 F.3d 510 (9th Cir. 2013) .................................................................20

*Logacz v. Limansky*
  71 Cal. App. 4th 1149 (1999) ...............................................................14

*Lytle v. Nutramax Lab'ys, Inc.*
  114 F.4th 1011 (9th Cir. 2024)
  *cert. denied*, 2025 WL 663695 (U.S. Mar. 3, 2025).................................18

*Makaeff v. Trump Univ.*, LLC
  309 F.R.D. 631 (S.D. Cal. 2015) ...........................................................19

*Maupin v. Widling*
  192 Cal. App. 3d 568 (1987) ................................................................13

*McGlenn v. Driveline Retail Merch., Inc.*
  2021 WL 165121 (C.D. Ill. Jan. 19, 2021)..............................................16

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

*McLeod v. Bank of Am., N.A.*
  2017 WL 6373020 (N.D. Cal. Dec. 13, 2017) ...................................................................22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
  31 F.4th 651 (9th Cir. 2022) .............................................................................................7

*Ortham v. Premiere Pediatrics, LLC*
  545 P.3d 124 (Okla. Civ. App. 2024) ..............................................................................12

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*
  674 F. Supp. 3d 799 (C.D. Cal. 2023) ..............................................................................24

*Petersen v. Costco Wholesale Corp.*
  312 F.R.D. 565 (C.D. Cal. 2016) ..............................................................................10, 24

*Regents of Univ. of Cal. v. Superior Ct.*
  4 Cal. 5th 607 (2018) .......................................................................................................11

*Remijas v. Neiman Marcus Grp., LLC*
  794 F.3d 688 (7th Cir. 2015) ...........................................................................................17

*Ruiz Torres v. Mercer Canyons Inc.*
  835 F.3d 1125 (9th Cir. 2016) .......................................................................................7, 9

*Sanchez v. Wal Mart Stores, Inc.*
  2009 WL 1514435 (E.D. Cal. May 28, 2009) ..................................................................25

*Savidge v. Pharm-Save, Inc.*
  727 F. Supp. 3d 661 (W.D. Ky. 2024).............................................................5, 15, 16, 25

*Savidge v. Pharm-Save, Inc.*
  2023 WL 2755305 (W.D. Ky. 2023) ................................................................................20

*Small v. Allianz Life Insurance Company of North America*
  122 F.4th 1182 (9th Cir. 2024) ........................................................................................13

*Smith v. Triad of Alabama, LLC*
  2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)
  *on reconsideration in part*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). ..................15

*Southern Independent Bank v. Fred's, Incorporated*
  2019 WL 1179396 (M.D. Ala. Mar. 13, 2019) ................................................................11

*Stasi v. Inmediata Health Grp. Corp.*
  2020 WL 2126317 (S.D. Cal. May 5, 2020) .....................................................................6

*Staub v. Proctor Hosp.*
  562 U.S. 411 (2011) .........................................................................................................14

*Thompson v. Am. Tobacco Co.*
  189 F.R.D. 544 (D. Minn. 1999) ......................................................................................25

*True Health Chiropractic, Inc. v. McKesson Corp.*
  896 F.3d 923 (9th Cir. 2018) ...........................................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*
  577 U.S. 442 (2016)..........................................................................................................13

*Vaquero v. Ashley Furniture Indus., Inc.*
    824 F.3d 1150 (9th Cir. 2016) .................................................................20

*Webb v. Injured Workers Pharm., LLC*
    72 F.4th 365 (1st Cir. 2023) .....................................................................6

*Webb v. Spec. Electric Co., Inc.*
    370 P.3d 1022 (Cal. 2016) .......................................................................12

*Weiner v. Ocwen Fin. Corp.*
    343 F.R.D. 628 (E.D. Cal. 2023) ..........................................................9, 20

*Wittmeyer v. Heartland All. for Hum. Needs & Rts.*
    2024 WL 182211 (N.D. Ill. Jan. 17, 2024) ............................................12

**Other Authorities**

1 McLaughlin on Class Actions § 5:23 (20th ed.).......................................15

Restatement (Second) of Torts § 886A, cmt. 1(b) (1979) ..........................22

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

**CITATION GUIDE**

| Document | Short Cite | Location |
|---|---|---|
| Plaintiffs' Motion for Class Certification | Mot. | Dkt. No. 317 |
| Expert Report of Mark Lanterman, dated December 16, 2024 | Lanterman Rpt. | Dkt. No. 317-38 |
| Report of Russell W. Mangum III, Ph.D. in Support of Plaintiffs' Motion for Class Certification, dated December 16, 2024 | Mangum Rpt. | Dkt. No. 317-40 |
| Expert Declaration of Daniel J. Korczyk, dated December 16, 2024 | Korczyk Rpt. | Dkt. No. 317-40 |
| Accellion, Inc.'s Opposition to Plaintiffs' Motion for Class Certification | Opp. | Dkt. No. 320 |
| Declaration of Boaz Dolev, dated February 9, 2025 | Dolev Rpt. | Dkt. No. 320-1 |
| Expert Rebuttal Report of Elizabeth Dean, dated February 9, 2025 | Dean Rpt. | Dkt. No. 320-2 |
| Rebuttal Report of Darren J. Mott, dated March 24, 2025 | Mott Rpt. | attached |
| Reply Report of Daniel J. Korczyk, CPA, ABV, CFF, ASA In Support of Plaintiffs' Motion for Class Certification, dated March 24, 2025 | Korczyk Reply | attached |
| Reply Report of Russell W. Mangum III, Ph.D. In Support of Plaintiffs' Motion for Class Certification, dated March 24, 2025 | Mangum Reply | attached |
| Plaintiffs' State Law Comparison Reply Chart | Reply Chart | attached |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

| Document | Short Cite | Location |
|---|---|---|
| Excerpts from the Transcript of the Deposition Jonathan Yaron under Fed. R. Civ. P. 30(b)(6) held on October 10, 2024. | Yaron Dep. | Declaration of Adam E. Polk in Support of Plaintiffs' Reply in Support of Motion for Class Certification ("Polk Reply Decl."), Ex. 1 |
| Excerpts from the Transcript of the Deposition Frank Balonis under Fed. R. Civ. P. 30(b)(6) held on September 17, 2024. | Balonis Dep. | Polk Reply Decl., Ex. 2 |
| Excerpts from the Transcript of the Deposition of Rose Becker held on January 8, 2025. | Becker Dep. | Polk Reply Decl., Ex. 3 |
| Excerpts from the Transcript of the Deposition of Karlina Chavez held on January 16, 2025. | Chavez Dep. | Polk Reply Decl., Ex. 4 |
| Excerpts from the Transcript of the Deposition of Derek Dawes held on January 13, 2025. | Dawes Dep. | Polk Reply Decl., Ex. 5 |
| Excerpts from the Transcript of the Deposition of Alvaro Galvis held on January 21, 2025 | Galvis Dep. | Polk Reply Decl., Ex. 6 |
| Excerpts from the Transcript of the Deposition of Jamie McDole held on December 17, 2024 | McDole Dep. | Polk Reply Decl., Ex. 7 |
| Excerpts from the Transcript of the Deposition of Randy Moniz held on December 20, 2024 | Moniz Dep. | Polk Reply Decl., Ex. 8 |
| Excerpts from the Transcript of the Deposition of Robert Olson Jr. held on December 18, 2024. | Olson Dep. | Polk Reply Decl., Ex. 9 |

| Document | Short Cite | Location |
|----------|-----------|----------|
| Excerpts from the Transcript of the Deposition of Heather Rodriguez held on January 3, 2025. | Rodriguez Dep. | Polk Reply Decl., Ex. 10 |
| Excerpts from the Transcript of the Deposition of Kimberly Worrick held on January 10, 2025. | Worrick Dep. | Polk Reply Decl., Ex. 11 |
| Declaration of Brian Deutschmann on Behalf of Centene, dated March 18, 2025 | Centene Decl. | Polk Reply Decl., Ex. 12 |
| Declaration of Yael Cosset, dated March 21, 2025 | Kroger Decl. | Polk Reply Decl., Ex. 13 |
| Declaration of Cameron R. Azari on Behalf of Epiq Class Action and Claims Solutions, Inc., dated March 7, 2025 | Epiq Decl. | Polk Reply Decl., Ex. 14 |
| Declaration of Kristen Buehring in Response to Subpoena to Produce Documents, dated March 13, 2025 | IDX Decl. | Polk Reply Decl., Ex. 15 |
| Declaration of Janel Roper on Behalf of the Washington State Auditor's Office, dated March 24, 2025 | WASAO Decl. | Polk Reply Decl., Ex. 16 |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

## GLOSSARY OF TERMS

| Abbreviation | Term |
|---|---|
| Centene | Centene Corporation and its affiliates |
| FTA | Accellion's file transfer application |
| Kroger | The Kroger Co. |
| PII | Personally identifiable information |
| PHI | Protected health information |
| UC Regents | The Regents of the University of California |
| WASAO | Washington State Auditor's Office |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD

1    **I.    INTRODUCTION**

2         The Court should grant Plaintiffs' motion because the central questions in this case turn on

3    Accellion's failure to protect its FTA. Accellion's "blame the customer" approach to defending the case

4    notwithstanding, the basic fact remains that between December 16, 2020, and January 20, 2021, the

5    cybercriminal group CL0P twice infiltrated Accellion's FTA, compromising millions of individuals PII

6    and/or PHI (the "Data Breach"). The Data Breach impacted Accellion's FTA customers, including the

7    UC Regents, Flagstar, WASAO, Centene, and Kroger, resulting in, as Accellion's CEO put it,

8    "significant data theft" of these customers. With Accellion's help, each FTA customer conducted a

9    forensic investigation after the Data Breach to determine what information had been exfiltrated. Each

10   customer then notified Plaintiffs that their information had been impacted in the Data Breach. Pursuant

11   to subpoena, each customer has since confirmed through declarations or document productions that

12   specific data elements were impacted, including names, Social Security numbers, PHI, financial

13   account information, dates of birth, and email addresses.

14        Accellion's attempt to manufacture individualized issues should be rejected. Although

15   Accellion raises the specter of individualized standing inquiries, it does so to only a segment of the

16   proposed class (Accellion does not dispute that the Plaintiffs who were students or employees of UC

17   Regents and Flagstar have standing). Accellion's partial arguments aside, all Plaintiffs have standing

18   because nothing is speculative about their injuries. Their personal information was stolen by a

19   malicious cybercriminal group and posted to the dark web. Plaintiffs' cybersecurity expert—a former

20   FBI agent in charge of investigating cybercrime—opines on the substantial risk Plaintiffs and Class

21   members face due to the Data Breach. As for absent Class members, Plaintiffs have demonstrated

22   through common evidence that all Class members may have standing; no more is required.

23        The core questions here—duty, breach, and whether Accellion caused the Data Breach—will be

24   answered at once using common evidence, satisfying predominance and superiority. This is particularly

25   true of the narrowed Class and Subclasses Plaintiffs seek to certify, which involve just five of

26   Accellion's customers and assert claims under only eight states' laws. Although Accellion claims that

27   the laws of the eight Class states differ regarding the existence of a duty to safeguard their personal

28   information, the handful of differences it has identified are either immaterial or can be managed

through jury instructions. Accellion concedes that whether it breached its duty is a predominant question but claims that causation is an individualized issue because the jury will need to consider the conduct of its FTA customers. At any rate, ascertaining whether any of its customers' conduct constitutes a superseding intervening cause is readily manageable because Plaintiffs limited the number of FTA customers in this case to five. Moreover, courts have repeatedly held in data breach cases that whether an individual's information was previously exposed only goes to the quantum of damages, which does not defeat class treatment.

Plaintiffs have proposed three viable methodologies for calculating damages classwide, and Accellion's critiques each lack merit. Accellion's challenge to Plaintiffs' credit and identity theft damages methodology should be rejected because Plaintiffs establish a significant risk of misuse, and Plaintiffs' expert Daniel Korczyk is qualified to offer his opinions. Contrary to Accellion's unsupported assertions, a market exists for PII. Plaintiffs need not have sought to participate in that market for their PII to have value, and Plaintiffs' experts do not have to run their models at class certification. Both models can (if necessary) be offset for benefits Class members received post-breach based on data Plaintiffs have requested in discovery. Finally, Plaintiffs propose a means of calculating time spent remediating the consequences of the Data Breach that can be applied reliably in claims administration. Accellion has no answer to the fact courts have accepted these methodologies, which remedy the injuries Plaintiffs and Class members suffered.

Accellion's Rule 23(a) challenges focusing on typicality and adequacy are similarly without merit. While Accellion argues that some Plaintiffs are atypical and inadequate class representatives because they sued its FTA customers separately, each of those Plaintiffs alleged and/or testified that Accellion is at least partly responsible for the Data Breach. As such, their interests are aligned with those of the Class and Subclasses, and they will not be preoccupied with any unique defenses. Accellion also attacks the adequacy of certain Plaintiffs based on their failure to satisfy Accellion's self-defined standard for knowledge of the facts and law underlying this case. But Accellion takes their testimony out of context and demands a level of legal and technical understanding that is not required.

The Court should certify the proposed Class and Subclasses.

1

## II.    THE COURT SHOULD CERTIFY THE CLASS AND SUBCLASSES

2

### A.    Standing Does Not Present an Obstacle to Class Certification

3    Accellion concedes that UC Regents Plaintiffs Becker, McDole,[1] Galvis, Chavez, and Flagstar

4    Plaintiff Moniz have standing because they received notice letters stating that specific PII or PHI for

5    each was disclosed in the Data Breach, and for three of these plaintiffs, their information was found on

6    the dark web. Opp. at 25. Accellion, however, argues Plaintiffs Dawes (Kroger), Olson (Centene), and

7    Rodriguez and Worrick (WASAO) (collectively, "Contested Plaintiffs"), as well as significant portions

8    of the Negligence Class and the Oklahoma and Washington Subclasses lack standing because there is

9    purportedly no evidence that PII from Kroger, Centene, and WASAO was exposed in the Data Breach.

10    Opp. at 24-26, 30-32. Accellion is wrong. Each Contested Plaintiff received a notice saying their

11    information was impacted in the Data Breach; Kroger and Centene have confirmed the data elements

12    impacted in the Data Breach, and WASAO confirmed that PHI and/or PHI was impacted. This,

13    combined with Accellion's admission that these FTA customers suffered "significant data theft,"

14    satisfies the standing inquiry at class certification.

15    ### i.    All Named Plaintiffs Suffered Injuries-In-Fact Sufficient to Confer Standing

16    In a data breach case, "'the sensitivity of the personal information, combined with its theft,' can

17    establish an injury when it creates 'a substantial risk that the [ ] hackers will commit identity fraud or

18    identity theft' in the future." *Greenstein v. Noblr Reciprocal Exch.*, 2024 WL 3886977, at *1 (9th Cir.

19    Aug. 21, 2024) (quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018)). Accellion argues

20    that the notice letters sent by Kroger, Centene, and the WASAO to the Contested Plaintiffs "do ***not*** say

21    Plaintiffs' data was stolen" (Opp. at 25), but Accellion's contention fails in the face of the evidence.

22    *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239-40 (9th Cir. 2024) (in a class action,

23    plaintiffs only need to show that one plaintiff has standing based on a preponderance of evidence).

24    Plaintiffs have met their burden of establishing standing at class certification. Accellion's

25    standing argument ignores that its CEO confirmed during his deposition that all five FTA customers

26

27    ---

[1] Plaintiff McDole also received a data breach notice letter from Health Net, a subsidiary of Centene
(Dkt. No. 317-44), and Centene confirmed that her name, Health Net ID, date of birth, and claim

28    number were in the files on the FTA during the Data Breach. *See* Centene Decl., ¶ 5.

suffered "significant data theft" due to the Data Breach. Yaron Dep. at 74:9-76:14. Accellion's CISO testified that data was exfiltrated during the breach and that Accellion kept a log of the affected customers. Balonis Dep. at 43:5-44:6. This testimony is consistent with the evidence. Plaintiff Dawes received a notice letter from Kroger informing him of the Data Breach and stating, "[t]his incident involved your personal information." Dkt. 317-42 at 7. Kroger has since confirmed that Plaintiff Dawes' contact information, date of birth, Social Security number, and certain salary information were impacted in the Data Breach. *See* Kroger Decl., ¶ 16. Plaintiff Olson received a notice letter from Health Net (a subsidiary of Centene) stating, among other things, that "[o]ur investigation determined that your personal information was included in the data files involved in [the Data Breach]." Dkt. No. 317-48 at 7. Centene has since confirmed that Plaintiff Olson's name and insurance ID number were in the files on the FTA during the Data Breach. *See* Centene Decl., ¶ 5. Plaintiffs Rodriguez and Worrick each received a notice from WASAO that stated, "[y]ou are receiving this e-mail because your information was in a data file that was involved in the [Data Breach]." Dkt. Nos. 317-43 at 6; 317-46 at 6, 10. WASAO has since confirmed that Plaintiffs Rodriguez and Worrick's PII and/or PHI were in files on the FTA during the Data Breach. WASAO Decl., ¶ 5.

Plaintiffs also meet their burden because disclosing the above information to a cybercriminal creates a substantial risk of harm. As their cybercrime expert Darren Mott explains, disclosure of sensitive information like that at issue here to cybercriminals like CL0P creates an imminent danger of a variety of harms such as financial fraud and identity theft, mortgage and loan fraud, property and real estate fraud, targeted scams and phishing, and reputational damage. Mott Report, ¶¶ 38-53. Mott also opines that each successive data breach creates additional risk, that cybercriminals combine information from various data breaches to facilitate more effective criminal conduct, and PII exposed in a data breach is bought and sold on the dark web for years. *Id.*, ¶¶ 54-66, 93. This evidence aligns with the allegations the Ninth Circuit found sufficient to confer standing in *Zappos*, 888 F.3d at 1023 (holding plaintiffs that alleged hackers stole names, account numbers, passwords, email addresses, billing and shipping addresses, telephone numbers, and credit and debit card numbers had standing based on a risk of identity theft, despite not suffering "any subsequent illegal activity").

Actual misuse is unnecessary for standing in a data breach case where criminal hackers steal Plaintiffs' PII and PHI, as Accellion concedes. Opp. 31 ("proof of injury [] requires evidence … to show actual … theft of their data by hackers."); *Zappos*, 888 F.3d at 1023-25 (holding that plaintiffs who had their personal information deliberately taken but had not yet suffered "any subsequent illegal activity" had standing) (citing *Krottner v. Starbucks Corp.*, 628 F.3d at 1143 (9th Cir. 2010)); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154 (3d Cir. 2022) ("Of note, misuse is not necessarily required."). Even if actual misuse were required, there is evidence here of actual misuse, so any "assertion that the data stolen in the breach cannot be used for fraud or identity theft" is simply not credible. *Zappos¸* 888 F.3d. at 1027. This hack was carried out by CL0P—a well-known criminal organization. Lanterman Rpt., ¶¶ 26-28. CL0P posted some information compromised in the breach to its dark web page. *Id.*, ¶¶ 31-36. But given that public forums on the dark web (like CL0Ps' page) reflect only the tip of the iceberg and information is often bought and sold on closed marketplaces, additional information from the Data Breach is likely available for sale. *See* Mott Rpt., ¶¶ 25, 90.[2] In addition, Plaintiff Worrick suffered identity theft when a fraudulent tax return was filed in her name shortly after the Data Breach. Dkt. No. 317-46 at 2-3; Worrick Dep. at 185:22-186:24; *see Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 687 (W.D. Ky. 2024) (holding that fraudsters unsuccessfully filing a fraudulent tax return in the plaintiff's name was sufficient for standing). Plaintiff Chavez incurred approximately 34 unauthorized charges on her checking and savings accounts, had two unauthorized accounts opened in her name, had to cancel the direct deposit of her paycheck on the recommendation of her bank, and reported identity theft to her local police department. Chavez Dep. at 124:17-125:7, 131:1-15, 135:15-136:6, 141:2-21. This evidence is sufficient at this stage to support that all Plaintiffs face a substantial risk that bad actors will commit identity fraud or identity theft using the information from the Data Breach.

Accellion fails to present any contrary evidence, let alone evidence negating Plaintiffs' standing showing. Instead, Accellion relies exclusively on distinguishable cases. Opp. at 25-26. For example, in *Greenstein*, the plaintiffs claimed their driver's license numbers were exfiltrated in a hack of the

1    defendant's online insurance quote system. 2024 WL 3886977, *2. But the data breach notice letters—

2    which the plaintiffs relied "heavily" on to show injury—only stated that each plaintiff's "name, driver's

3    license number, and address *may* have been accessed." *Id.* at *2 (emphasis in original). Crucially,

4    "[a]side from the factual allegations pulled from the Notice, [p]laintiffs provide[d] *no additional*

5    *allegations* that might provide a credible basis to conclude their driver's license numbers were taken."

6    *Id.* (emphasis added). Here, the notice letters for the Contested Plaintiffs state that cybercriminals took

7    their information. Dkt. No. 317-48 at 7 (letter to Olson confirmed that "your personal information was

8    included in the data files involved in [the Data Breach]"). Moreover, Plaintiffs do not rely exclusively

9    on the letters but on FTA customer declarations and testimony from Accellion's CEO and CISO, which

10   remove any doubt that Plaintiffs' information was exposed in the Data Breach.

11        Accellion's other cited cases are similarly distinguishable because, in each case, the plaintiffs

12   failed to definitively allege that any sensitive personal information was taken. *See, e.g.*, *Landon v. TSC*

13   *Acq. Corp.*, 2024 WL 5317240, at *3 (C.D. Cal. Nov. 1, 2024) (plaintiff lacked standing where she

14   only alleged that her information was "potentially accessed" and she suffered no misuse); *Stasi v.*

15   *Inmediata Health Grp. Corp.*, 2020 WL 2126317, at *5 (S.D. Cal. May 5, 2020) (plaintiff lacked

16   standing where she had not alleged that her Social Security number was exposed); *In re Samsung Data*

17   *Sec. Breach Litig.*, 2025 WL 271059, at *7 (D.N.J. Jan. 3, 2025) (similar); *In re Retreat Behav. Health*

18   *LLC*, 2024 WL 1016368, at *3 (E.D. Pa. Mar. 7, 2024) (similar).

19        Plaintiffs also suffered other concrete injuries sufficient to confer standing. Each Contested

20   Plaintiff received a notice of the Data Breach instructing them to spend time remediating the

21   consequences of the Data Breach, including monitoring for and reporting suspicious activity, which

22   they did. Dkt. Nos. 317-42 at 2-3; 317-48 at 2; 317-43 at 2-3; 317-46 at 2-3. These are concrete

23   injuries. *See Zappos¸* 888 F.3d at 1027-28; *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d

24   623, 637 (N.D. Cal. 2024) (noting plaintiffs "sufficiently alleged injury" because they spent time

25   "responding to a data breach," a "non-economic injury" under California law); *see also Webb v. Injured*

26   *Workers Pharm., LLC*, 72 F.4th 365, 376-77 (1st Cir. 2023) (noting that "loss of this time [mitigating

27   the effects of the data breach] is equivalent to a monetary injury, which is indisputably a concrete

28   injury"); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388-89 (6th Cir. 2016) (similar).

Contested Plaintiffs also experienced emotional distress, another concrete injury. *See, e.g.*, Olson Dep. at 107:17-108:4; Rodriguez Dep. at 117:1-22; Worrick Dep. at 139:8-15; Dawes Dep. at 183:24-184:22; *see Krottner*, 628 F.3d at 1141-42 (allegations of "generalized anxiety and stress" as a result of theft of data was "sufficient to confer standing"). These concrete injuries confer standing in addition to the substantial risk of fraud and identity theft that Plaintiffs face.

For these reasons, all Plaintiffs have sufficiently demonstrated injury to confer standing.

### ii. Accellion's Arguments Regarding Class Member Standing Misstate the Law

As with Plaintiffs' standing, Accellion concedes that absent Class members who provided their PII to Flagstar and UC Regents have standing[3] but argues that no class can be certified because many other Class and Subclass members have suffered no injury. Opp. at 25, 30-32. This misstates the legal standard. At class certification, Plaintiffs need not prove that all absent Class members suffered injury. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 680 (9th Cir. 2022) (rejecting the argument that "plaintiffs must prove that all or nearly all class members were in fact injured" at the certification stage); *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052, at *21 (C.D. Cal. Apr. 4, 2023) (*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) "does not require that Plaintiffs[] *prove* standing as to all members of the class in order to certify the class") (emphasis in original). Plaintiffs have presented evidence that "the class as a whole was exposed" to Accellion's wrongdoing, making it "possible that [absent] class members have suffered an injury." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n. 6, 1138 (9th Cir. 2016) (finding "contrasting litigation positions on the proper scope of liability," which would be resolved at the merits, was not a proper basis to find lack of injury for absent class members). That is all that is required, and the evidence shows there are unlikely many uninjured absent Class members.

---

[3] Accellion argues in passing that absent Class members lack injury because Plaintiffs' expert could not find all the data for UC Regents and Flagstar on the dark web but concedes that finding information on the dark web is not necessary to prove injury. Opp. at 25 (conceding Plaintiffs Becker and Galvis have standing). Given the nature of the dark web, it is impossible to do an exhaustive search. Lanterman Rpt., ¶¶ 37-38; Mott Rpt., ¶¶ 25, 90.

For absent Class members who provided their PII and/or PHI to Centene, Kroger, and WASAO, their data breach notification letters, testimony of Accellion's CEO and CISO, and non-party declarations show that their sensitive information was taken. *See supra* at II.A.i. Accellion argues that *some* absent Class members may have had information exposed that is too "trivial" for standing purposes (Opp at 2, 14-15, 22, 31), but courts within this district have held that "[t]he information taken . . . need not be sensitive to weaponize hackers in their quest to commit further fraud or identity theft." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1034 (N.D. Cal. 2019). Plaintiffs' cybercrime expert also explains how cybercriminals can exploit all types of PII to commit crimes and use each data breach to compile dossiers to commit other crimes, thereby exposing Class members to ongoing risks of harm. *See* Mott Rpt., ¶¶ 37-67, 93.

The out-of-circuit cases Accellion relies on offer no support for its argument because those courts were addressing standing for the named *plaintiffs*, not absent class members. *See, e.g.*, *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 846-48 (N.D. Ill. 2020) (holding that plaintiffs did not face an increased risk of identity theft when their names, emails, and dates of birth had been accessed and they had not suffered any "fallout" from the breach). Unlike those cases, Plaintiffs here can provide an accounting of how PII and PHI was impacted for each Class member on a classwide basis. *Bass*, 394 F. Supp. 3d at 1034; Mangum Reply Rpt., ¶¶ 8-12.[4]

In support of its argument that the information taken is too "trivial" to confer standing, Accellion further relies on the opinion of its expert, Elizabeth Dean, who disclaims any expertise in "cyber security or data breach." Opp. at 15; Dean Rpt., ¶ 108. Conflicting expert opinions are not a reason to deny class certification. *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 353 (N.D. Cal. 2005) (citation omitted) (noting that "[t]he certification stage of this litigation is not . . . the proper

---

[4] Accellion further argues that certain data category descriptions used by UC Regents and Flagstar are "so vague as to be meaningless." Opp. at 2, 14-15. To the extent that information is unclear (it is not), this is a merits question. UC Regents and Flagstar have provided an accounting of what PII and PHI was exposed for each Class member. Mangum Rpt., ¶¶ 31, 47. All Accellion needs to do is ask what each purportedly "undefined" term means during merits discovery, which is still open.

forum in which to resolve this battle [of the experts]"). What's more, the correct inquiry is not whether information is deemed "trivial" by an expert but rather "whether the data taken 'gave hackers the means to commit fraud or identity theft.'" *Bass*, 394 F. Supp. 3d at 1034; *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) (citing *Zappos*, 888 F.3d at 1027). Accellion's expert does not dispute that the information exposed in the Data Breach gives hackers the means to commit fraud, identity theft, and other cybercrimes. Mott Rpt., ¶¶ 38-53.

Finally, even if it later turns out that there are absent Class members who lack standing, the Court can use its inherent power to narrow the class definition. *See, e.g.*, *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *18 (C.D. Cal. Apr. 14, 2022). If there are absent Class members who only had "innocuous" information exposed and are potentially "not entitled to damages," Opp. at 2, those Class members "may be weeded out at the claims phase, preventing any individuals without standing from 'recover[ing] individual damages' just as *TransUnion* envisioned." *Weiner v. Ocwen Fin. Corp.*, 343 F.R.D. 628, 633 (E.D. Cal. 2023); *see also Ruiz*, 835 F.3d at 1137 (holding that uninjured class members "do[] not necessarily defeat certification" as long as they can be "winnow[ed] out" later). Each FTA customer possesses information concerning the specific data elements involved in the Data Breach for absent Class members. *See* Mangum Reply Rpt., ¶¶ 10-11. Armed with this data, Plaintiffs' expert Russel Mangum or the claims administrator can "winnow" out Class members who lack standing. *Ruiz*, 835 F.3d at 1137; *see* Mangum Reply Rpt., ¶¶ 10-12.[5]

For these reasons, Plaintiffs and the absent Class members satisfy the standing requirement.

**B.    Rule 23(b)(3) is Met Because the Central Questions of Duty, Breach, and Causation Predominate, and a Class Action is Superior to Individual Proceedings**

Plaintiffs' claims will be determined using common proof, including whether Accellion's internal data security measures and other policies caused the Data Breach. *See In re Sonic Corporation*,

---

[5] Accellion's arguments concerning "inaccurate or stale" data are speculative or irrelevant. Accellion relies on disputed facts concerning inaccurate data, which will be tested on the merits. Mott Rpt., ¶ 68; Korczyk Reply, ¶ 90. Plaintiffs' experts opine that "stale" information (to the extent it exists) poses a risk of identity theft, fraud, and other crimes. Mott Rpt., ¶ 69; Korczyk Reply, ¶¶ 85-88.

2021 WL 6694843, at *3 (6th Cir. 2021) (denying leave for the defendant to appeal class certification decision in data breach case and noting the propriety of deferring merits issues for trial). Accellion does not deny that whether it breached its duty to safeguard Plaintiffs' PII and PHI is a predominating question that can be answered for everyone. Instead, Accellion maintains that common issues still do not predominate, and a class action is not superior because there are material differences in state laws, and the issues of causation, injury, and damages are individualized. Opp. at 28-35. While not all questions must be common for predominance to be satisfied, *DZ Rsrv.*, 96 F.4th at 1238, the issues Accellion challenges are susceptible to common proof.

### i. Common Questions Predominate as to Duty

Accellion argues that predominance is not met for the Negligence Class (and a class action is not superior) because the laws of California, Georgia, Illinois, Michigan, Oklahoma, Tennessee, Texas, and Washington materially differ. Opp. at 28-29 (citing state law survey). But Accellion repeatedly misstates the law and fails to identify any material differences that would preclude certification. *See Petersen v. Costco Wholesale Corp.*, 312 F.R.D. 565, 580-82 (C.D. Cal. 2016) (granting class certification notwithstanding differences in state laws because the proposed nine single-state subclasses overcame any "state law variation problems").

First, Accellion contends that the duty analysis materially differs across the eight states. But each state has held that companies have a duty to protect individuals' PII from the criminal acts of third-party hackers. Reply Chart, Rule A1. Accellion argues that, unlike California and Washington, the other six states do not recognize a "special relationship" exception in a data breach case, therefore material differences in state law preclude class certification. Opp. at 28-29.[6] But regardless of the test,

---

[6] Accellion also fails to recognize that showing a "special relationship" under California law is necessary only because California prohibits economic damages in tort cases unless Plaintiffs meet the test. *See Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 654 (N.D. Cal. 2020) (noting that an existing "special relationship" between defendant and plaintiff in negligence is the "exception to the economic loss doctrine" under California law). As noted below, Accellion's own state law survey shows that the economic loss doctrine does not apply to a majority of Plaintiffs' other state law claims.

the result is the same: Accellion had a duty to act reasonably to safeguard Plaintiffs' PII and PHI. Reply Chart, Rule A-1; *compare, e.g.*, *In re Accellion, Inc. Data Breach Litig.*, 2024 WL 4592367, at *3 (N.D. Cal. Oct. 28, 2024) (recognizing a duty of care in negligence to protect strangers because special relationship existed under California law); *with Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1247 (W.D. Okla. 2023) (recognizing that website provider for student loan servicer had a duty to protect student loan borrowers' PII from breach by malicious actors, despite lacking privity or a preexisting relationship with students); *and Flores v. Aon Corp.*, 242 N.E.3d 340, 354 (Ill. App. Dist. 2023) (security company had a common law duty of care to protect the PII of plaintiffs, including those who provided their PII to their employers who in turn employed the security company, from third-party malicious attack); *and Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1111 (E.D. Tenn. 2024) (employer had a duty to protect employees from foreseeable data breach).

Accellion claims that California and Washington apply materially different duty analyses under the "special relationship" doctrine, but any minor variation between the states can be addressed via jury instructions. For example, as to California, the jury would determine whether a "special relationship" existed based on dependence, control, scope, and benefit. *See Accellion*, 2024 WL 4592367, at *4 (quoting *Regents of Univ. of Cal. v. Superior Ct.*, 4 Cal. 5th 607, 620–21 (2018)). Contrary to Accellion's assertion, the analysis would be similar for Washington, focusing on dependence and control. *See Barlow v. State*, 540 P.3d 783, 785 (Wash. 2024) (en banc) (citing *Regents* with approval); *Drammeh v. Uber Techs., Inc.*, No. 22-36038, 2024 WL 4003548, at *1 (9th Cir. Aug. 30, 2024) (citing *Barlow* and holding that a rideshare company owes a duty to its independent contract drivers based on the "traits of dependence and control").

Second, Accellion claims the economic loss doctrine differs from state to state. Opp. at 29. But this case is unlike *Southern Independent Bank v. Fred's, Incorporated*, 2019 WL 1179396, at *1 (M.D. Ala. Mar. 13, 2019), where the plaintiffs sought to certify a nationwide class. Accellion admits that the doctrine would only be in play in two states (Dkt. No. 323-51), and those states' courts have found that it does not apply under these circumstances. *See Huynh*, 508 F. Supp. 3d at 654 (noting that a "special relationship" between defendant and plaintiff in a data breach negligence suit constitutes an "exception to the economic loss doctrine"); *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, 2024 WL 182211,

at *3 (N.D. Ill. Jan. 17, 2024) (doctrine inapplicable in data breach negligence suit where the duty was not based in contract between defendant and plaintiff); Reply Chart, Rules B1-B2.

Third, Accellion claims certain states recognize the sophisticated user or intermediary defense. Opp. at 3, 6-9, 22. But, as Accellion's authorities show, those defenses only apply to product liability cases based on a duty to warn or strict liability. *See* Dkt. No. 323-51; *see, e.g.*, *Webb v. Spec. Electric Co., Inc.*, 370 P.3d 1022, 1031, 1033-34 (Cal. 2016) (holding that the sophisticated user and intermediary defense only "applies to failure to warn claims sounding in either strict liability or negligence"); Reply Chart, Rule C1. Neither of those product liability theories apply here.

Finally, Accellion wrongly suggests states differ in what damages are "available" in data breach cases. Opp. at 29. But again, Accellion has not shown that any variations would materially impact the outcome in this case. In Accellion's cited case, *Ortham v. Premiere Pediatrics, LLC*, the court did not find that credit monitoring damages were not available under Oklahoma law as a matter of law; instead, the court determined credit monitoring damages were not available where the plaintiff failed to allege an imminent threat of future harm. 545 P.3d 124, 134 (Okla. Civ. App. 2024). As discussed in Section II.A.i.-ii., all Class members face a substantial threat of misuse.

Accellion's only other argument regarding duty is that the "control" requirement for the "special relationship" exception requires individualized factual inquiries. Opp. at 21-22. Plaintiffs will present common evidence that, among other things, Accellion had the power to control whether to retire its old and under-supported product or issue patches for security vulnerabilities. Mot. at 2-7. Accellion counters that "in reality," individual customers controlled how to configure the FTA. *Id.* at 22. Yet Accellion presents no evidence, and defenses unsupported by evidence do not bar class certification. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018). Regardless, this is a quintessential merits question for the jury.

Duty is a predominating common question susceptible to a common answer.

### ii.   Common Questions Also Predominate as to Breach and Causation

Common issues also predominate because whether Accellion breached its duty of care, causing the Data Breach, can also be determined at once for every Class member. *See* Mot. at 2-7, 15-17.

### a. Accellion's Attempts to Blame Its Customers Fail

Whether Accellion breached its duty and caused the Data Breach can be determined by common evidence. In the context of a data breach, it is "plainly foreseeable that Plaintiffs would suffer injury if Defendants did not adequately protect the PII." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 313 F. Supp. 3d 1113, 1133 (N.D. Cal. 2018). In this case, "[a] reasonabl[e] jury could find that the hack was a foreseeable consequence of" Accellion's marketing the FTA as a safe and secure way to transfer sensitive information and then failing to remediate common types of vulnerabilities or retire its legacy product (Mot. at 2-7), and that the ensuing theft of Class members' information and their "loss" was foreseeable. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2021 WL 4060369, at *6 (N.D. Ohio Sept. 7, 2021); *see Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 910 (N.D. Cal. 2024) ("In data breach cases, where users' data was stolen by hackers, courts often find that [proximate] causation [of plaintiffs' injuries from data breaches] exists where [defendant's security] protections are inadequate," despite intervening criminal acts of hackers).

Accellion argues that whether any of the five FTA customers caused a Class member's injuries will require individualized inquiries, but its attempt to blame its customers does not defeat predominance. Opp. at 5-11, 29. Accellion concedes that, at most, this issue is only "individualized" at the customer level, not at the Class member level, which does not defeat class certification. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("An individual question is one where members of a proposed class will need to present evidence that *varies from member to member*….") (emphasis added). Accellion relies on *Small v. Allianz Life Insurance Company of North America,* where the causation issue was necessarily individualized because it turned on "whether a policyholder intentionally lapsed their policy." 122 F.4th 1182, 1188 (9th Cir. 2024). Here, however, the parties would put forth the same evidence focusing entirely on Accellion and its customers' conduct for hundreds of thousands or millions of class members of each customer and generate common answers for that entire group. Plaintiffs limited the number of FTA customers so that, if necessary, presenting evidence on the issue of Accellion's customers' fault would be manageable.

Accellion has also failed to carry its burden of showing that its superseding cause affirmative defense defeats predominance. *Maupin v. Widling*, 192 Cal. App. 3d 568, 578 (1987). To negate

liability under a superseding cause defense, Accellion must show either that the type of harm caused by the superseding cause is "so highly extraordinary as to be unforeseeable" such that it is unfair to hold Accellion responsible or that the superseding cause itself was unforeseeable. Reply Chart, Rules D1-D2. Accellion cannot credibly claim the type of harm is unforeseeable given it also contends Class members' damages must be offset by settlements with the FTA customers (Opp at 2, 32) and where it knew that its customers were using the FTA to store highly sensitive personal information (*see, e.g.*, Mot. at 2-3 ("Accellion marketed the FTA as a 'secure file sharing solution[]' that 'ensures protection of sensitive data' to 'increase data security' and 'reduce[] risk of data breaches'")). Nor can Accellion credibly claim it could not foresee its customers failing to implement a security patch, given it had a web interface where it could monitor in real-time whether a customer had completed a software update. Balonis Dep. at 209:3-13. Regardless, this merits question will be answered with common evidence.

### b. Accellion's Status as a Potential Joint Tortfeasor Does Not Preclude a Predominance Finding

Accellion's argument that predominance is defeated because certain Plaintiffs also sued Accellion's customers (Opp. at 29) ignores the legal doctrine of joint tortfeasors and contributory negligence. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011) (noting it "is common for injuries to have multiple proximate causes"); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (concurring in "sound reasoning" of "other courts" rejecting defendants' argument that "multiple sources and manners of contamination precluded a 23(b)(3) certification" because, "[a]lthough some individualized questions may exist," "there was an alleged single course of conduct and common nucleus of operative fact"). It is hardly unusual that some Plaintiffs separately sued the other potential tortfeasors when joint tortfeasors are not considered indispensable parties. *See Exp.-Imp. Bank of Korea v. ASI Corp.*, 2016 WL 10788358, at *3 (C.D. Cal. July 28, 2016). Any role Accellion's FTA clients might have had in contributing to Class members' injuries will be resolved using the same evidence.

This argument should also be rejected because Accellion misstates those Plaintiffs' allegations and testimony, which fit the law regarding multiple potential tortfeasors. *See, e.g.*, *Logacz v. Limansky*, 71 Cal. App. 4th 1149, 1158 (1999) (a plaintiff need not prove the defendant's negligence was the sole cause of their injury, only that it was *a* cause). Accellion ignores that Plaintiff Olson alleged that *both* Accellion and the FTA customer were negligent. Kirk Decl. Ex. 13. Each Plaintiff involved in separate

14

litigation against FTA customers also testified that Accellion was at fault for the Data Breach. *See, e.g.*, Becker Dep. at 255:20-256:8; Chavez Dep. at 55:11-22; Galvis Dep. at 19:2-20, 138:21-139:4; McDole Dep. at 35:5-38:9, 170:1-8; Moniz Dep. at 149:24-150:11; Olson Dep. at 23:10-25.

### c.    Whether Plaintiffs Were Involved in Other Data Breaches Does Not Defeat Predominance

Courts routinely reject Accellion's argument that predominance is not met because an individualized inquiry is necessary to determine whether Class members' information was involved in another data breach. Opp. at 29-30. Accellion's concerns "do not require a 'causation-related determination of whether class members were injured *at all* by [Accellion]'"—each Class member had their information exfiltrated during the Data Breach. *Savidge*, 727 F. Supp. 3d at 706 (citing 1 McLaughlin on Class Actions § 5:23 (20th ed.)) (emphasis added). Instead, Accellion's arguments that unrelated data breaches may have increased the risk of future harm "go to individual variations in damages," which do not defeat class certification. *Id.*; *see also Smith v. Triad of Alabama, LLC,* 2017 WL 1044692, at *14 (M.D. Ala. Mar. 17, 2017) ("the questions of causation in this case are bound up in the questions of damages, and because causation plays only a minor role in the larger controversy, common questions predominate in this class action."), *on reconsideration in part*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017). This Court should also reject Accellion's causation argument because it "would [] create a perverse incentive for companies: so long as enough data breaches take place, individual companies will never be found liable." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp.3d 953, 988 (N.D. Cal. 2016).

Accellion's argument is also wrong in practice. Plaintiffs' cybercrime expert outlines how each successive data breach "heightens the risks to individual Class members." Mott Rpt., ¶ 63. For example, repeated exposure increases the likelihood that a buyer will purchase and exploit the data for nefarious purposes. *Id.*, ¶ 57, 64. Each additional data breach enables bad actors to add new information to their dossier of a breach victim, updating old information. *Id.*, ¶¶ 58, 93. Consequently, every additional data breach makes it more difficult for an individual to remediate the consequences of the breach and exposes them to additional risk. *Id.*, ¶¶ 65-66. Accellion's reliance on Dean's opinions concerning the prevalence of consumer data breaches—who "do[es] not profess to be a cyber security or data breach expert (Dean Rpt., ¶ 108)—does nothing to rebut Mott's opinion.

The cases Accellion cites do not compel a different result. Opp. at 30. In one case, Accellion quotes the *defendant's* argument in a discovery dispute letter, *not* the court's opinion. *In re Marriott Int'l, Inc. Customer Sec. Breach Litig.*, 2022 WL 780799, at *6 (D. Md. Mar. 14, 2022) (attaching the defendant's letter to the special master). Accellion further relies on *McGlenn v. Driveline Retail Merch., Inc.*, 2021 WL 165121, at *9 (C.D. Ill. Jan. 19, 2021), but the reasoning in *McGlenn* was persuasively called into question by *Savidge*, 727 F. Supp. at 704. The *Savidge* court relied on the Sixth Circuit's *Sonic* opinion, which held that "the alleged elements of a negligence claim—duty, breach, and causation—all arise from common questions: whether Sonic's internal data security measures and its remote access policy caused the data breach, leading to the issuance of the alerts and actions by the plaintiffs to limit or reimburse harms." *Savidge*, 727 F. Supp. 3d at 705-06 (citing *In re Sonic Corporation*, 2021 WL 6694843, at *3) ("Whether Pharm-Save's breach of that duty caused injury to the class members is also a common question, even if there also exists other individualized questions about causation (e.g., whether a class member was a victim of another unrelated data breach that might increase the risk of future harm.")). For these reasons, common questions predominate as to breach and causation.

### iii.    Whether Class Members Were Injured is Susceptible to Common Proof, and Plaintiffs Have Presented Reliable Models for Calculating Classwide Damages

According to Accellion, predominance is not met because whether a Class member's sensitive information was exposed or misused is individualized. Opp. at 30. But Plaintiffs will present common evidence capable of establishing damages for each of their cognizable injuries: (i) risk of future identity theft; (2) loss of value of PII; and (3) time spent remediating the consequences of the Data Breach. *See In re Accellion*, 713 F. Supp. 3d at 637.

#### a.    Plaintiffs' Credit Monitoring and Lost Value of PII Damages Models Can Reliably Calculate Classwide Damages

Plaintiffs will present common evidence of the substantial risk of identity theft, fraud, and other cybercrimes that warrant credit monitoring damages. The Data Breach was perpetrated by a single cybercriminal organization, CL0P, using an automated script, and CL0P posted PII from the breach on the dark web. Mot. at 6; Lanterman Rpt., ¶ 25-36. Each Plaintiff and Class member received a notice letter informing them that their data had been involved in the Data Breach, which is consistent with

Accellion's FTA customers' declarations and Accellion's CEO's testimony. *Supra* at II.A.i. The Data

Breach notices offered credit monitoring and identity theft protection for one to three years and warned

of the risk of identity theft and fraud. *See* Dkt. Nos. 317-41-49. *Galaria*, 663 F. App'x at 388

("Nationwide seems to recognize the severity of the risk, given its offer to provide credit-monitoring

and identity-theft protection for a full year."). Expert evidence will also establish that data breaches

create an increased risk of identity theft, fraud, extortion, and other types of malicious activity and that

credit and identity theft monitoring and protection are recommended after a data breach to mitigate the

risk of harm. *See generally* Korczyk Rpt., Korczyk Reply, Mott Rpt.; *Remijas v. Neiman Marcus Grp.,*

*LLC*, 794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers break into a store's database and

steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make

fraudulent charges or assume those consumers' identities."). All of this common evidence is supported

by Plaintiffs' evidence that they "have already experienced identity theft . . . rendering the risk of future

identity theft sufficiently non-speculative" for those Class members who have not yet experienced

identity theft. *In re Accellion*, 713 F. Supp. 3d at 637; *supra* at II.A.i. (describing Plaintiffs Worrick and

Chavez's evidence of identity theft and fraud).

Based on this common evidence, Plaintiffs' expert Russell Mangum presents a credit

monitoring damages model consistent with Plaintiffs' theory of liability, relying on inputs from expert

Daniel Korczyk. Mangum Rpt., ¶¶ 106-112, 130-135. Korczyk opines, based on his extensive training

and experience with data breach cases and a review of the record, that credit and identity theft

monitoring after a data breach is recommended, that Identity Guard's $300 per-year service is a

reasonable option, and that duration of credit monitoring should range from five, seven, and ten years

depending on the types of data exfiltrated in the Data Breach. Korczyk Rpt., ¶¶ 9-13, 21-63; Korczyk

Reply, ¶¶ 8-92.[7] Korczyk's opinions are supported by Plaintiffs' experts Mark Lanterman and Darren

Mott, who opine on the nature of data breaches and the dark web and how cybercriminals use

---

[7] Accellion's contention that Plaintiffs' expert Daniel Korczyk's opinions regarding a reasonable credit monitoring service and duration are unreliable is a rehash of its motion to exclude (Opp. at 33), which should be rejected for the reasons stated in Plaintiffs' opposition to that motion. Dkt. No. 337.

exfiltrated data to perpetrate identity theft, fraud, and other crimes. Lanterman Rpt., ¶¶ 17-24, 28; *see generally* Mott Rpt. Using Korczyk's credit monitoring duration inputs, Mangum presents a damages methodology capable of establishing credit monitoring damages on a classwide basis using data on breached elements. Mangum Rpt., ¶¶ 130-135; Mangum Reply, ¶¶ 8-12, 80-87.

Common evidence will also be used to show that PII has value and that when this PII was stolen, Plaintiffs lost the value of this PII. Mangum Rpt., ¶¶ 65-101, 114-129; Mangum Reply, ¶¶ 8-79. Accellion's criticisms of Mangum's lost value of PII model are tied to the merits. Opp. at 34-35. Accellion has merely identified a split in authority over recognizing lost value of personal information, and the evidence necessary to prove the damages. As this Court noted, however, a growing number of courts "have now recognized Loss of Value of PII as a viable damages theory." *In re Accellion*, 713 F. Supp. 3d at 637 (citing *In re Experian Data Breach Litig.*, 2016 WL 7973595, at *5 (C.D. Cal. 2016)). Whether to accept the theory is for the Court to decide, and Accellion has not identified any individualized issues associated with it that preclude certification. At trial, Mangum and Dean will present competing opinions. Mangum will opine that "the value of consumer personal information is not derived solely (or even realistically) by its worth in some imagined marketplace where the consumer actually seeks to sell it to the highest bidder." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 462 (D. Md. 2020) (declining to require allegations "that the plaintiffs attempted to sell [their PII] themselves or that they were forced to accept a decreased price for their information"). While Accellion may disagree, the issue can be resolved in one fell swoop for the Class, which supports certification. *Cf. Hoctor v. Kittitas Cnty.*, 2021 WL 6139625, at *3 (E.D. Wash. Oct. 19, 2021) (whether expert applied the correct legal standard was irrelevant when he was "not being proffered to testify about the law").

Accellion faults Mangum for not providing an "aggregate" damages figure for his credit monitoring and lost value of PII damages models. Opp. at 33. But the Ninth Circuit recently held that plaintiffs need not run their damages model to obtain class certification. *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024), *cert. denied*, 2025 WL 663695 (U.S. Mar. 3, 2025). Korczyk's credit monitoring duration methodology and Mangum's damages methodologies related to credit monitoring and lost value of PII are flexible. They can be applied to whatever data breach element

inputs are provided. Korczyk Reply ¶¶ 28-31; *see* Mangum Reply, ¶¶ 9-12. Through discovery, Plaintiffs have obtained breached elements on an individual-by-individual basis for UC Regents and Flagstar and confirmed this information exists for Kroger, Centene, and WASAO. Mangum Reply, ¶¶ 9-12. The credit monitoring and lost value of PII damages models, therefore, can calculate aggregate damages.

Next, Accellion wrongly contends that Plaintiffs' credit monitoring and lost value of PII damages models must (but cannot) be offset by benefits that Class members received from FTA customers. Opp. at 32. Accellion's argument is again unsupported by any authority, misstates Korczyk's testimony, and is wrong on the facts. Plaintiffs need not put forward a damages methodology at class certification that offsets any other benefits Class members received. *See Makaeff v. Trump Univ.*, LLC, 309 F.R.D. 631, 643 (S.D. Cal. 2015) (certifying class that relied on full refund damages model but noting defendants "will be afforded the right to support an offset at the damages phase"); *In re Telescopes Antitrust Litigation*, 2025 WL 754263, at *14 (N.D. Cal. Mar. 10, 2025) (certifying class despite plaintiffs' expert's regression model not considering discounts where "there is no reliable data for discounts"). Korczyk also did not "concede" that offsets were required, as Accellion claims. Dkt. No. 318-25, Kirk Ex. 87 (Korczyk Dep.) at 79:18-24 ("I can't answer that question. I think every case needs to stand on its own"). Regardless, Mangum can offset benefits received from FTA customers using records that the settlement administrators and credit monitoring services responsible for providing those benefits (all of whom have been subpoenaed) have declared they maintain. Mangum Reply, ¶¶ 80-85; IDX Decl., ¶¶ 3-6; Epiq Decl., ¶¶ 3-8.

      **b.**   **Plaintiffs' Reasonable Rate to Reimburse Time Spent is Reliable and Can be Applied Classwide at Claims Administration**

Korczyk opines on a reasonable rate to value Plaintiffs and Class members' time remediating the consequences of the Data Breach using the "market approach" and "matching principles"—two reliable accounting principles. Korczyk Rpt., ¶¶ 64-69; Korczyk Reply, ¶¶ 95-98. Korczyk utilized the market approach instead of opportunity cost (i.e., each individual's salary or lack thereof) as Dean proposes because opportunity cost would under or over-compensate someone for doing equivalent tasks. Korczyk Reply, ¶ 99. Korczyk's opinion on the reasonable rate to compensate an individual who

spent time remediating the consequences of the data breach will "help[] a jury because it provides a starting point to decide damages in a context unfamiliar to many." *Savidge v. Pharm-Save, Inc.*, 2023 WL 2755305, at *18 (W.D. Ky. 2023) (citing *Brinker*, 2021 WL 1405508, at *3).

In criticizing Korczyk's time-spent methodology, Accellion glosses over two decisions that have certified classes in data breach cases where Korczyk proposed the value of time-spent models. Opp. at 32-33. In *Brinker*, the defendant sought to exclude Korczyk's value of time damages model, arguing (as Accellion similarly does here) that the amount of time spent is too variable to establish classwide damages. *In re Brinker Data Incident Litig.*, 3:18-cv-00686 (M.D. Fla. Oct. 30, 2020), ECF No. 142. The court specifically addressed the value of time model, rejecting the defendant's argument that Korczyk's model was unreliable because "all class members would receive a standard dollar amount for … the value of cardholder time (whether or not they spent any time addressing the breach." *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *3 (M.D. Fl. 2021). The Eleventh Circuit affirmed Korczyk's damages models, including the value of time. *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) ("Any individual inquiry into particularized damages resulting from the data breach . . . does not predominate over the three categories of common damages inquiries analyzed by the plaintiffs' expert," but vacating in part on other grounds). Similarly, in *Savidge*, the defendant sought to exclude Korczyk's methodology for the value of time spent. 3:17-CV-186-CHB (W.D. Ky. Apr. 7, 2022), ECF No. 138. The court found the methodology was reliable and fit the facts of the case, "'based on what is known' in the new age of cyber security and the measures necessary to protect against malicious actors." *Savidge*, 2023 WL 2755305, at *20.

In any event, Accellion's criticism that Korczyk's value of time spent methodology requires individualized inquiries is a red herring; it is well-established in the Ninth Circuit that individual damages calculations alone do not defeat class certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). Any individual determination of time spent is something to be addressed in claims administration. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."); *Weiner*, 343 F.R.D. at 627 (uninjured class members can be "weeded out at the claims

phase"). To the extent Accellion wishes to "individually challenge the claims of absent class members" related to time spent, it will have the opportunity to do so "if and when they file claims for damages" with the claim administrator. *Id.*

### c. The Court Can Also Certify a Class or Subclass for Nominal Damages

Even though courts have certified classes for nominal damages, Accellion argues with no legal support that Plaintiffs cannot, in the alternative, certify subclasses seeking nominal damages. Opp. at 35. Its argument further fails because Plaintiffs have satisfied Rules 23(a) and (b).

### C. The Negligence Class and Subclasses Satisfy Rule 23(a)

The requirements of Rule 23(a) are also readily met. Accellion concedes that numerosity is satisfied. While Accellion challenges commonality, its arguments go to standing and whether common questions predominate, which are addressed above. Opp. at 21-22, 24. Plaintiffs' claims are typical, and they and their counsel have demonstrated their adequacy.

### i. Plaintiffs' Claims are Typical

Accellion argues that the Plaintiffs are atypical because they have not suffered the same or similar injury to the Class, and six named Plaintiffs are subject to unique defenses (Opp. at 22-24); neither argument defeats a finding of typicality here. Typicality only requires that Plaintiffs' claims share the "same essential characteristics" as the Class claims; the claims need not be identical. *See Fraser v. Wal-Mart Stores, Inc.*, 2014 WL 7336673, at *4 (E.D. Cal. Dec. 24, 2014).

Plaintiffs satisfy that standard because Plaintiffs and Class members' claims arise out of the same course of conduct—Accellion's breach of duty that caused Plaintiffs' and Class members' PII and/or PHI to be exfiltrated in the Data Breach. Accellion's claim that Plaintiffs have not sufficiently demonstrated an injury that is the "same or similar" to the Class is incorrect and is addressed in Sections II.A.i. & II.B.ii. Although Plaintiffs and Class members may differ in the amount of damages owed, typicality "is not primarily concerned with whether each person in a proposed class suffers the same type of damages" and "it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Accellion next argues that six Plaintiffs will be preoccupied with unique defenses based on separate lawsuits against Accellion's customers, but their allegations and testimony in those cases do

not give rise to unique defenses here. All six Plaintiffs testified or alleged that Accellion is partly liable for the Data Breach. *Supra*, § II.B.ii.b.; *see* Restatement (Second) of Torts § 886A, cmt. 1(b) (1979) (recognizing that "joint tortfeasors" can be "liable to the same person for the same harm," and it is not "necessary that they be joined as defendants"). Plaintiffs' proposed Class is composed entirely of people who shared their PII and/or PHI with Accellion's customers and had no direct relationship with Accellion. Thus, Accellion's superseding cause affirmative defense rooted in shifting liability to its customers (or apportioning liability between Accellion and a particular FTA customer) will be the same for all Class members—if available at all. *See McLeod v. Bank of Am., N.A.*, 2017 WL 6373020, at *12 n. 19 (N.D. Cal. Dec. 13, 2017) (typicality satisfied where "many other class members would face the same prospective defense as Plaintiff"). Plaintiffs' claims are, therefore, typical.

### ii.    Plaintiffs Are Adequate Class and Subclass Representatives

Accellion does not contest the adequacy of Proposed Class Counsel to represent the interests of the Class. And contrary to Accellion's claims relying on cherry-picked testimony (Opp. at 17-20, 26-28), Plaintiffs have demonstrated a "sufficient" understanding of the case to meet the "low" "threshold of knowledge" required to satisfy adequacy. *See Akaosugi v. Benihana Nat. Corp.,* 2012 WL 1657099, at *4 (N.D. Cal. May 10, 2012) (noting class representatives do not need a "fine-grained knowledge" of their claims); *Cai v. CMB Exp. LLC*, 2024 WL 2334509, at *10 (C.D. Cal. Apr. 4, 2024); *Corcoran v. CVS Health*, 2017 WL 1065135, at *9 (N.D. Cal. Mar. 21, 2017) (finding the plaintiffs adequate notwithstanding unfamiliarity with some "central concepts in this litigation" because they still had a "basic" understanding of the case and "each has participated in the litigation").

Plaintiffs have confirmed their understanding that (1) Accellion designed and sold software to customers to facilitate the safe transfer of sensitive personal information; (2) Accellion obtained access to Plaintiffs' and Class members' PII through its relationship with its customers; and (3) Accellion's software was not properly maintained and infiltrated in a Data Breach that exposed the personal information of Plaintiffs and proposed Class members to unauthorized third parties. Plaintiffs have also demonstrated sufficient involvement in the case. All Plaintiffs understand their role as class representatives to represent the interests of others harmed by the Data Breach and remain involved in

22

the litigation. And each has substantially contributed to the case by reviewing pleadings, producing documents, communicating with counsel, and preparing for their depositions.[8]

In attempting to portray Plaintiffs as not sufficiently involved or knowledgeable, Accellion mischaracterizes Plaintiffs' testimony and holds Plaintiffs to a standard of its own making unsupported by the case law. For example, Accellion highlights testimony from several Plaintiffs that misstates the scope of the Class, but the law recognizes that plaintiffs are often "laypersons" and "cannot be expected to define the scope of the class. . . in [ ] precise terms." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010). "Even if the named plaintiffs have relied heavily on the advice of attorneys and others, it is hardly a badge of inadequacy to seek help from those with relevant expertise, particularly in a complex case like this one." *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 543 (N.D. Cal. 2018); *see del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 594 (N.D. Cal. 2008) ("Plaintiffs are lay people . . . and thus would not be required to know the 'legal matters' at issue.").

The fact that Plaintiffs do not have a lawyer's understanding of the scope of the Class and civil procedure is not comparable to the failings courts found in the cases Accellion relies on. In *Alberghetti v. Corbis Corp.*, the plaintiff explicitly refused to represent a certain portion of the proposed class during her deposition. 263 F.R.D. 571, 579 (C.D. Cal. 2010). By contrast, no Plaintiff here refused to represent portions of the proposed class. *See, e.g.,* Chavez Dep. at 27:20-28:1 (Chavez is "comfortable" representing individuals outside of California because she "feel[s] the impact is an impact no matter the

---

[8] *See, e.g.*, Becker Dep. at 16:14-17, 18-24:19:4, 22:18-23:17, 24:11-15, 26:21-27:21, 31:7-33:20, 63:22-64:3, 74:7-19, 204:21-206:1; Chavez Dep. at 15:17-17:9, 23:10-24:5, 26:2-30:7, 33:8-12, 49:7-18, 174:8-175:17; Dawes Dep. at 11:13-15, 19:18-21:22, 22:20-24, 26:7-11, 31:14-16, 204:13-21; Galvis Dep. at 19:9-20, 22:20-28:2, 34:5-35:5, 78:10-79:12, 137:18-22; McDole Dep. at 32:2-10, 45:4-20, 48:5-49:7, 51:14-52:10, 55:4-8, 65:8-15, 67:3-7; Moniz Dep. at 17:14-20:19, 27:3-5, 30:3-10, 37:1-38:7, 41:21-42:5, 52:25-56:22, 59:4-22, 76:1-72:9; Olson Dep. at 14:4-15:16, 23:10-25, 27:11-17, 30:14-31:1, 33:3-34:14, 37:8-38:8, 40:3-13, 51:13-52:20, 234:20-236:14; Rodriguez Dep. at 17:21-19:15, 36:7-20, 59:8-60:15, 65:14-66:4, 69:2-10; Worrick Dep. at 19:10-20:3, 23:9-24, 24:10-24, 32:23-33:17, 56:10-23, 82:7-24, 201:8-13.

1   location of the individual"). In the other case Accellion cites, the executive testifying on behalf of the

2   entity plaintiff proved to be an "essentially unknowledgeable client" and lacked insight about all

3   aspects of the case, including the class's scope. *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141

4   F.R.D. 144, 154 (N.D. Cal. 1991). No such egregious knowledge deficit exists here.

5        Accellion also mounts several character attacks that are improper and should be disregarded.

6   ████████████████████████████████████████████████████████████████████████

7   █████████████████████████████████████████████████████████████████████████████

8   ███████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████ Accellion also highlights excerpts from the

10  personal communications of Plaintiffs Becker and Worrick referencing a desire to receive a service

11  award but similarly fails to articulate how these passing remarks made to friends and family create a

12  genuine conflict of interest, especially when such an award is at the discretion of the Court and given

13  the commitment they have already demonstrated. *See Jimenez v. Menzies Aviation Inc.*, 2016 WL

14  3231106, at *7 (N.D. Cal. June 13, 2016) ("Character attacks . . . not combined with a showing of a

15  conflict of interest have generally not been sympathetically received in this district.").

16       Accellion's contention that Plaintiffs are inadequate because they have purportedly abandoned

17  certain class remedies is equally misguided. Opp. at 27-28. Plaintiffs are entitled to pursue litigation

18  strategies that will best advance the interests of the Class. *Petersen*, 312 F.R.D. at 578 ("opting not to

19  assert certain [damages theories] may be an essential part of adequate representation") (citation and

20  quotation omitted); *Doe v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 947-48 (C.D. Cal. 2023) (finding

21  adequacy met even though the plaintiff chose not to pursue certain damages theories because it was

22  "the strongest case for certification"). Plaintiffs' decision to pursue damages methodologies recognized

23  by courts in other data breach cases represent a "strategic decision" to pursue a viable litigation strategy

24  to the *benefit* (not the detriment) of Class members who otherwise would likely have no feasible

25  avenues to seek relief. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda*

26  *Pharm. Co. Ltd.*, 674 F. Supp. 3d 799, 817 (C.D. Cal. 2023) (citation and quotation omitted).

27  Therefore, this case is distinguishable from the cases Accellion cites where the plaintiffs forewent

28  remedies closely tied to the alleged harms. *See Thompson v. Am. Tobacco Co.,* 189 F.R.D. 544 (D.

1    Minn. 1999) (reserving personal injury damages in a case against tobacco manufacturer for marketing

2    dangerous products); *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435 (E.D. Cal. May 28, 2009)

3    (forgoing personal injury claims in case involving dangerous and defective strollers).

4        Finally, Accellion's argument that certain named Plaintiffs are inadequate because they are

5    subject to an "individual" defense fails for the same reasons described in Section II.C.i.

6        **D.    In the Alternative, the Court Should Certify an Issues Class Under Rule 23(c)(4)**

7        Accellion has not shown why, if the Court finds that predominance is not met for any claim, it

8    should not still certify the Class or Subclass under Rule 23(c)(4). It does not deny that courts in this

9    district and elsewhere within the Ninth Circuit have repeatedly certified issue classes, leaving damages

10   to be determined later. Instead, it recycles the same arguments about duty, breach, causation, and

11   standing that have no merit. Opp. at 35. The only case Accellion cites, *Adkins v. Facebook, Inc.*, does

12   not counsel against certifying an issue class if the Court does not find Rule 23(b)(3) is met. There, the

13   court declined to certify a (c)(4) class after the plaintiff could not show he was a member of the class he

14   sought to represent, and there was no evidence that causation could be determined on a classwide basis.

15   424 F. Supp. 3d 686, 696-7 (N.D. Cal. 2019). Here, Plaintiffs have shown whether Accellion's conduct

16   caused the Data Breach can be determined for the entire Class. And since *Adkins* was decided, courts

17   have held that whether a plaintiff's information was previously exposed goes to damages and does not

18   preclude class certification. *Savidge*, 727 F. Supp. 3d at 705-06; *In re Sonic Corporation*, 2021 WL

19   6694843, at *3. Because Accellion's liability can be determined once and for all for each member of

20   the Class and Subclasses, (c)(4) certification is appropriate even if predominance is not met.

21   **III.    CONCLUSION**

22       For all these reasons and the reasons stated in their Motion for Class Certification, Plaintiffs

23   request that the Court certify the Negligence Class and WCPA Subclass and appoint them as class

24   representatives, appoint Girard Sharp LLP and Susman Godfrey L.L.P. as Class counsel, and direct the

25   parties to submit a proposed plan of notice.

26

27

28

Dated: April 21, 2025

Respectfully submitted,

By: /s/ *Adam E. Polk*

Adam E. Polk (SBN 273000)
Kyle P. Quackenbush (SBN 322401)
Samhita Collur (SBN 348448)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
apolk@girardsharp.com
kquackenbush@girardsharp.com
scollur@girardsharp.com

Krysta K. Pachman (SBN 280951)
Michael Gervais (SBN. 330731)
Steven G. Sklaver (SBN 237612)
Madeline M. Yzurdiaga (SBN 344676)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
kpachman@susmangodfrey.com
mgervais@susmangodfrey.com
ssklaver@susmangodfrey.com
myzurdiaga@susmangodfrey.com

Kevin R. Downs (SBN 331993)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
kdowns@susmangodfrey.com

*Interim Co-Lead Class Counsel*

26

**ATTESTATION**

I, Adam E. Polk, am the ECF User whose ID and password are being used to file this document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

By:   /s/ *Adam E. Polk*
Adam E. Polk

---

27

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
CASE NO. 5:21-cv-01155-EJD