Fred Norton (SBN 224725)
fnorton@nortonlaw.com
Bree Hann (SBN 215695)
bhann@nortonlaw.com
Gil Walton (SBN 324113)
gwalton@nortonlaw.com
Emily Kirk (SBN 348547)
ekirk@nortonlaw.com
Rebecca Kutlow (SBN 333944)
rkutlow@nortonlaw.com
Heather Bates (SBN 337703)
hbates@nortonlaw.com
THE NORTON LAW FIRM PC
300 Frank H. Ogawa Plaza, Suite 450
Oakland, CA 94612
Telephone: (510) 906-4900

Camilo Artiga-Purcell (SBN 273229)
camilo.apurcell@kiteworks.com
ACCELLION, INC.
1510 Fashion Island Blvd, Suite 100
San Mateo, CA 94404
Tel: (415) 515-4724

Attorneys for Defendant
*Accellion, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE ACCELLION, INC. DATA BREACH LITIGATION | Case No. 21-CV-01155-EJD (SVK) <br><br> **DEFENDANT ACCELLION, INC.'S SUPPLEMENTAL BRIEF ADDRESSING CLASS CERTIFICATION** <br><br> Hon. Edward J. Davila |

# TABLE OF CONTENTS

I.    *In re Zappos.com* And *Krottner* Are No Longer Good Law On What Constitutes A "Concrete" Injury, But Appear To Remain Good Law On "Imminent" Injury .................................. 1

II.   Determining Whether Class Members' Claimed Injuries Are Analogous To The Harms From The Common-Law Disclosure Of Private Information Tort Raises Countless Individualized Issues. .................................................................................................................................. 3

III.  Individualized Issues As To Damages Defeat Class Certification .................................. 8

IV.   Neither A Rule 23(b)(3) Class Certified Only For Nominal Damages Nor A Rule 23(c)(4) Issue Class Certified Only For Liability Should Be Granted .............................................. 10

V.    The Negligence Class Must First Be Divided Into Subclasses By Accellion Customer, But Class Certification Is Limited By Lack of Standing And Individualized Issues. ................................... 13

   A.    The Negligence Class Must First Be Subdivided By Customer to Address Commonality .......................................................................................................... 13

   B.    The Court Cannot Certify a Kroger, Centene, or WASAO Class Because Plaintiffs Dawes, Olson, Rodriguez, and Worrick Do Not Have Standing. .................................. 13

   C.    The Court Must Narrow the Remaining UC Regents and Flagstar Customer Classes to Satisfy Predominance under Rule 23(b)(3). .................................................. 14

DEFENDANT ACCELLION, INC.'S SUPPLEMENTAL BRIEF ADDRESSING CLASS CERTIFICATION
CASE NO. 21-CV-01155-EJD

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ................................................................................................ 10

*Angus v. Flagstar Bank, FSB,*
    2025 WL 937760 (E.D. Mich. Mar. 27, 2025) ..................................................... 7

*Barclift v. Keystone Credit Servs., LLC,*
    93 F.4th 136 (3d Cir. 2024) ............................................................................... 4, 5

*Black v. IEC Grp., Inc.,*
    2024 WL 3623361 (D. Idaho July 30, 2024) ........................................................ 6

*Bohnak v. Marsh & McLennan Companies, Inc.,*
    79 F.4th 276 (2nd Cir. 2023) ............................................................................. 1, 2

*Busse v. Motorola, Inc.,*
    351 Ill. App. 3d 67 (1st Dist. 2004) ...................................................................... 5

*Cahill v. Mem'l Heart Inst., LLC,*
    2024 WL 4311648 (E.D. Tenn. Sept. 26, 2024) .................................................. 4

*Caraccioli v. Facebook, Inc.,*
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................................................ 7

*Carr v. Oklahoma Student Loan Auth.,*
    2023 WL 6929850 (W.D. Okla. Oct. 19, 2023) ................................................... 7

*Clemens v. ExecuPharm Inc.,*
    48 F.4th 146 (3d Cir. 2022) ................................................................................... 2

*Colston v. Citizens Tri-Cnty. Bank,*
    2004 WL 2363650 (Tenn. Ct. App. Oct. 20, 2004) ........................................... 11

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ............................................................................................... 10

*Covington v. Gifted Nurses, LLC,*
    2023 WL 5167366 (N.D. Ga. July 19, 2023) .................................................... 5, 6

*Cox Broad. Corp. v. Cohn,*
    420 U.S. 469 (1975) ............................................................................................... 4

*Crosby v. City of Chicago,*
    11 Ill. App. 3d 625 (1973) ................................................................................... 11

ii

*Cummings v. Connell,*
   402 F.3d 936 (9th Cir. 2005) ..................................................................... 11

*D.C. by & through Garter v. Cnty. of San Diego,*
   783 F. App'x 766 (9th Cir. 2019) ................................................................. 8

*Doe v. Fertility Centers of Illinois, S.C.,*
   2022 WL 972295 (N.D. Ill. Mar. 31, 2022) ................................................. 4

*Dolmage v. Combined Ins. Co. of Am.,*
   2015 WL 292947 (N.D. Ill. Jan. 21, 2015) ................................................. 6

*Fields v. Napa Mill. Co.,*
   164 Cal.App.2d 442 (1958) ....................................................................... 11

*Gabrielli v. Insider, Inc.,*
   2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ............................................... 4

*Greenstein v. Noblr Reciprocal Exch.,*
   2024 WL 3886977 (9th Cir. Aug. 21, 2024) ................................. 2, 3, 6, 14

*Henry v. Dow Chem. Co.,*
   473 Mich. 63 (2005) ................................................................................. 11

*Hurdsman v. Gleason,*
   2023 WL 2588562 (W.D. Tex. Mar. 21, 2023) ........................................... 7

*I.C. v. Zynga, Inc.,*
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........................................ 2, 3, 5, 6

*In re Accellion, Inc. Data Breach Litig.,*
   713 F. Supp. 3d 623 (N.D. Cal. 2024) ..................................................... 4, 7

*In re Am. Med. Sys., Inc.,*
   75 F.3d 1069 (6th Cir. 1996) ................................................................... 14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ..................................................... 7

*In re Numotion Data Incident Litig.,*
   2025 WL 57712 (M.D. Tenn. Jan 9, 2025) ............................................... 7

*In re Practicefirst Data Breach Litig.,*
   2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) ............................................... 4

*In re Zappos.com, Inc.,*
   888 F.3d 1020 (9th Cir. 2018) ................................................................... 1

*Kernodle v. Elder,*
   102 P. 138 (Okla. 1909) ........................................................................... 11

iii

*Kim v. McDonald's USA, LLC,*
  2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) ............................................................. 6

*Krottner v. Starbucks Corp.,*
  628 F.3d 1139 (9th Cir. 2010) ................................................................................... 1

*Lara v. First Nat'l Ins. Co. of Am.,*
  25 F.4th 1134 (9th Cir. 2022) ............................................................................ 9, 10

*Leyva v. Medline Indus. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ..................................................................................... 8

*Lightbourne v. Printroom Inc.,*
  307 F.R.D. 593 (C.D. Cal. 2015) .............................................................................. 9

*Lozano v. AT&T Wireless Servs., Inc.,*
  504 F.3d 718 (9th Cir. 2007) ................................................................................... 14

*Lytle v. Nutramax Lab'ys, Inc.,*
  114 F.4th 1011 (9th Cir. 2024) .................................................................................. 8

*Marlin v. Associated Materials, LLC,*
  2024 WL 2319115 (N.D. Ohio May 22, 2024) ......................................................... 4

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ..................................................................................... 8

*McKenzie v. Allconnect, Inc.,*
  369 F. Supp. 3d 810 (E.D. Ky. 2019) ........................................................................ 7

*McLaughlin v. Am. Tobacco Co.,*
  522 F.3d 215 (2d Cir. 2008) ...................................................................................... 9

*McLaughlin v. Taylor Univ.,*
  2024 WL 4274848 (N.D. Ind. Sept. 23, 2024) .......................................................... 4

*Medoff v. Minka Lighting, LLC,*
  2023 WL 4291973 (C.D. Cal. May 8, 2023) .............................................................. 2

*Nabozny v. Optio Sols. LLC,*
  84 F.4th 731 (7th Cir. 2023) ................................................................................. 4, 5

*Opperman v. Path, Inc.,*
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....................................................................... 4

*Orthman v. Premiere Pediatrics, PLLC,*
  545 P.3d 124 (Okla. Ct. App. 2024) .......................................................................... 7

*Pitoitua v. Gaube,*
  28 Wash. App. 2d 141 (2023) ................................................................................... 11

iv

*Pulliam v. W. Tech. Grp., LLC*,
    2024 WL 356777 (D. Neb. Jan. 19, 2024)....................................................................... 5, 6, 7

*Reade v. New York Times Co.*,
    2022 WL 2396083 (E.D. Cal. July 1, 2022) ............................................................... 4, 5, 6, 7

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)............................................................................................... 9

*Roper v. Rise Interactive Media & Analytics, LLC*,
    2024 WL 1556298 (N.D. Ill. Apr. 10, 2024) ..................................................................... 4

*Schneider v. YouTube, LLC*,
    674 F.Supp.3d 704 (N.D. Cal. 2023) ............................................................................... 10

*Sequoia Benefits & Ins. Data Breach Litig.*,
    2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) .................................................................... 7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................................................... 1

*Tasion Commc'ns, Inc. v. Ubiquiti Networks Inc.*,
    308 F.R.D. 630  (N.D. Cal. 2015) ............................................................................... 11, 12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021).................................................................................................. passim

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ........................................................................................... 8

*Virgil v. Time, Inc.*,
    527 F.2d 1122 (9th Cir. 1975) ........................................................................................... 3

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
    725 F.3d 1213 (10th Cir. 2013) ......................................................................................... 9

*Wal-Mart Stores, Inc. v Dukes*,
    564 U.S. 338 (2011)................................................................................................... 13, 15

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023)........................................................................................... 1, 2

*Webster v. Bradford-Scott Data, LLC*,
    2025 WL 560917 (N.D. Ind. Feb. 20, 2025)..................................................................... 4

*White v. Citywide Title Corp.*,
    2018 WL 5013571 (N.D. Ill. 2018) ................................................................................... 7

*Whitehead v. Cuffie*,
    185 Ga. App. 351 (1987) ................................................................................................. 11

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................................... 14

     Rules

Federal Rule of Civil Procedure 23(b)(3) ................................................................ 3, 8, 10, 11
Rule 23 ............................................................................................................................ 8, 9, 10
Rule 23(a) ................................................................................................................................ 11
Rule 23(b) ................................................................................................................................ 11
Rule 23(c)(4) ..................................................................................................................... 10, 11

     Other Authorities

Restatement (Second) of Torts § 652D ........................................................................... 3, 4, 5, 6

Accellion submits this supplemental brief in response to the five questions the Court posed in its April 21, 2025, Order (Dkt. 362). It is clear, after years of litigation, that there is no path to class certification. As Accellion showed in its brief in opposition to class certification, Dkt. 320, and as the Court's inquiry demonstrates, (1) both class representatives and individual class members lack injury necessary to show standing under *TransUnion*, *Zappos.com*, and *Krottner*, (2) the requirements of the tort of disclosure of private facts only further confirm the pervasive standing issues across the proposed class; (3) individualized damages questions and defects in the damages methodologies, independently and with the other individualized issues, defeat class certification; (4) neither a nominal damages class nor a Rule 23(c)(4) issues class can overcome the proposed classes' other inadequacies and both present significant practical and administrability problems; and (5) subclassing by FTA customer is a necessary initial step that only further exposes why no class or subclass can be certified on the facts of this case. The Court should deny class certification and bring this case to its inevitable end.

## I.    *In re Zappos.com* And *Krottner* Are No Longer Good Law On What Constitutes A "Concrete" Injury, But Appear To Remain Good Law On "Imminent" Injury

To establish Article III standing, a "plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury sufficient to satisfy Article III must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

In *Krottner* and *Zappos.com* the Ninth Circuit considered whether a credible threat of real and immediate harm stemming from the theft of sensitive personal information was sufficiently concrete to confer Article III standing, and agreed it was. *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018) (citing *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010)) ("the sensitivity of the personal information, combined with its theft, led us to conclude that the plaintiffs had adequately alleged an injury in fact supporting standing."). *TransUnion* changed that rubric: it established that "the mere risk of future harm, standing alone cannot qualify as a concrete harm." *TransUnion*, 594 U.S. at 436; *see also Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285 (2nd Cir. 2023) (noting *TransUnion* held the "mere risk of future harm does not provide standing to seek retrospective damages where actual harm never materialized"); *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372

(1st Cir. 2023) ("'[A] material risk of future harm can [also] satisfy the concrete-harm requirement,' but only as to injunctive relief, not damages."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1051 (N.D. Cal. 2022). After *TransUnion*, the rule that a credible threat of future harm confers standing to seek damages is no longer good law. A plaintiff **may** still be able to establish standing to pursue damages based on a risk of future harm by showing they have suffered a *separate* concrete harm caused by their exposure to the risk. *See Webb*, 72 F.4th at 372. But in the context of data breaches, no such separate harm is possible for class members who are unaware or unconcerned that the breach occurred. *See TransUnion*, 594 U.S. at 438 (class members who were unaware of false OFAC alerts in their credit files had no standing); *id.* ("It is difficult to see how a risk of future harm could supply the basis for a plaintiff's standing when the plaintiff did not even know that there was a risk of future harm.").

While *TransUnion* rejected the concreteness standard of *Krottner* and *Zappos.com*, other circuits have held that it did not modify the separate requirement that injury be "actual or imminent." *See Bohnak*, 79 F.4th at 287. Other circuits thus continue to apply their pre-*TransUnion* decisions on whether an injury is "actual or imminent." *See id.* ("Our pre-*TransUnion* decision in *McMorris* guides our analysis" of the "actual or imminent" component); *Webb*, 72 F.4th at 375-77; *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152-56 (3d Cir. 2022). Accordingly, *Krottner* and *Zappos.com* still control whether Plaintiffs have demonstrated an injury that is "actual or imminent." *See Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *5-6 (C.D. Cal. May 8, 2023). They have not.

Under *Krottner, Zappos.com*, and the recent guidance of *Greenstein v. Noblr Reciprocal Exch.*, 2024 WL 3886977 (9th Cir. Aug. 21, 2024), only **actual theft** of highly sensitive information can satisfy the imminence requirement. As explained in Accellion's opposition to class certification, Plaintiffs Dawes, Olson, Rodriquez, and Worrick have presented no evidence their PII was stolen and thus they do not have standing. Dkt. 318-4 at 24-26. Specifically, the notice letters upon which they rely state only that the incident **may** have included such information. Dkt. 297-21; Dkt. 297-22; Dkt. 297-25; Dkt. 297-27. The Ninth Circuit has found such evidence fails to establish an actual or imminent injury. *Greenstein,* 2024 WL 3886977, at *2-3. The third-party declarations Plaintiffs submitted on reply are also insufficient, as none suggests those Plaintiffs' information was actually stolen. Rather, the Kroger declaration merely states that some of Dawes' information was "impacted," Dkt. 364-5 ¶ 16; the

Centene declaration only confirms that some of McDole's and Olson's information was in files on the FTA at the time of the incident, Dkt. 345-13 ¶ 5; and the WASAO declaration merely confirms that Worrick's and Rodriquez's information "were in the files that Accellion **indicated** were on the WASAO FTA during the Data Incident." Dkt. 345-17 ¶ 5 (emphasis added). Even if that evidence "confirms that the attackers were able to access [PII], it stops short of confirming that any individual recipient … had his or her [PII] stolen." *Greenstein*, 2024 WL 3886977, at *2 (internal quotation marks omitted). This is insufficient to establish an imminent risk of future harm. *Id.* at *2-3. Accordingly, Plaintiffs Dawes, Olson, Rodriquez, and Worrick have not demonstrated an injury in fact sufficient to confer Article III standing. The same standing defect is present for every other absent member of the proposed classes associated with Kroger, Centene, and WASAO, and likely others as well. Notably, the U.S. Supreme Court will decide this term "[w]hether a federal court may certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) when some members of the proposed class lack any Article III injury." *Laboratory Corp. of Am. Holdings v. Davis*, No. 24-304 (*certiorari* granted Jan. 25, 2025).

## II. Determining Whether Class Members' Claimed Injuries Are Analogous To The Harms From The Common-Law Disclosure Of Private Information Tort Raises Countless Individualized Issues.

In *TransUnion*, the Supreme Court noted that a plaintiff who alleges an intangible injury can satisfy the concrete injury requirement of Article III standing by demonstrating their claimed injury has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts, such as disclosure of private information. *TransUnion*, 594 U.S. at 424. Plaintiffs of course have not relied on any such theory to establish standing here; if they did, the contours of such an injury dictate that individualized issues would overwhelm the case on that issue alone.

The common-law invasion-of-privacy tort of "disclosure of private information"—sometimes called "publicity given to private life," "public disclosure of private facts," or "public disclosure of embarrassing facts"—subjects to liability "[o]ne who gives publicity to a matter concerning the private life of another … if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D; *Virgil v. Time, Inc.*, 527 F.2d 1122, 1125-26 (9th Cir. 1975) (same); *Zynga*, 600 F. Supp. 3d at 1048 (same). Like other invasion-of-privacy claims, "public disclosure of private facts" (hereafter, "public

DEFENDANT ACCELLION, INC.'S SUPPLEMENTAL BRIEF ADDRESSING CLASS CERTIFICATION
CASE NO. 21-CV-01155-EJD

disclosure") is an intentional tort. *Reade v. New York Times Co.*, 2022 WL 2396083, at *5 (E.D. Cal. July 1, 2022); *see also In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646-47 (N.D. Cal. 2024) (negligence insufficient for privacy claims). The harm from this tort "stems from both the offensive character of the information and its disclosure to the public." *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 146 (3d Cir. 2024); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 489 (1975).

To be analogous to the common-law tort of public disclosure, the class members' claimed harm need not be an "exact duplicate," but their standing theory cannot "circumvent[] a fundamental requirement" of the tort. *TransUnion*, 594 U.S. at 434 n.6; *see also id.* at 434 (discussing elements "essential to liability"); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) ("[W]here a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing."). Accordingly, determining whether each class member has standing requires individualized inquiry into each of the public disclosure tort's elements to determine whether the harms class members claim to have suffered bear a close relationship to the harms stemming from tort. *Id.* at 424.

***"Publicity."*** Start with "publicity." As used in the Restatement, "publicity" means the matter "is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge"—the communication must be one "that reaches, or is sure to reach, the public." Restatement (Second) of Torts § 652D cmt. a; *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1062 (N.D. Cal. 2014) (same). In the data breach context, courts routinely hold that neither the mere access to or acquisition of information by hackers, *Marlin v. Associated Materials, LLC*, 2024 WL 2319115, at *3 (N.D. Ohio May 22, 2024); *In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022);*Roper v. Rise Interactive Media & Analytics, LLC*, 2024 WL 1556298, at *3 (N.D. Ill. Apr. 10, 2024); *Doe v. Fertility Centers of Illinois, S.C.*, 2022 WL 972295, at *6 (N.D. Ill. Mar. 31, 2022); *Cahill v. Mem'l Heart Inst., LLC*, 2024 WL 4311648, at *15 (E.D. Tenn. Sept. 26, 2024), nor the disclosure of information on the dark web are "communications to the public at large" that satisfy the "publicity" element of public disclosure, *Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917, at *13 (N.D. Ind. Feb. 20, 2025) (dismissing disclosure claim; information disclosed on the dark web did not establish "publicity"); *McLaughlin v.*

4

*Taylor Univ.*, 2024 WL 4274848, at *11 (N.D. Ind. Sept. 23, 2024) (same). As a result, determining whether any class member's information has been made sufficiently "public" would require individualized analysis of (1) whether their information was stolen at all; (2) if it was, whether their information was then disclosed; and (3) if it was disclosed, whether it was disclosed so broadly as to be communicated to the "public at large." *Nabozny*, 84 F.4th at 736 ("Without a public-exposure component, [the] alleged injury is not analogous to the harm at the core of the public-disclosure tort.").

*"Private Life of Another."* The public disclosure tort applies when the defendant has "give[n] publicity to a matter concerning the private life of another." Restatement (Second) of Torts § 652D. Because the "tort protects against the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny," *Nabozny*, 84 F.4th at 736, the tort extends only to disclosure of "intimate details" that one "does not expose to the public eye, but keeps entirely to oneself or at most reveals only to one's family or to close personal friends." Restatement (Second) of Torts § 652D, cmt. b. "If there are no grounds to believe that the information will result in humiliation, then there is no comparable harm under *TransUnion*." *Barclift*, 93 F.4th at 147. In other words, disclosed personal information must be "likely to cause embarrassment." *Reade*, 2022 WL 2396083, at *6.

Applying these principles, courts have held personally identifying information (including several categories of information allegedly disclosed in this case) to be insufficiently embarrassing or humiliating to constitute information about a plaintiff's "private life." *Id.* (social security number not information about private life under California law); *Zynga*, 600 F. Supp. 3d at 1049 ("basic contact information, including one's email address, phone number," and date of birth not private facts; no standing); *Covington v. Gifted Nurses, LLC*, 2023 WL 5167366, at *11 (N.D. Ga. July 19, 2023) (social security number not "embarrassing private fact[]" under Georgia law); *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72 (1st Dist. 2004) (public disclosure tort under Illinois law applies to disclosure of individuals' private conduct, such as "family problems, romantic interests, sex lives, [and] health problems," but not to personal identifying information); *Pulliam v. W. Tech. Grp., LLC*, 2024 WL 356777, at *9 (D. Neb. Jan. 19, 2024) (PII not plaintiff's "private life"; no standing). As a result, the standing inquiry here requires determining not only what  information was disclosed for each class member, whether that information is likely to cause "humiliation" or "embarrassment," ***and*** whether the

DEFENDANT ACCELLION, INC.'S SUPPLEMENTAL BRIEF ADDRESSING CLASS CERTIFICATION
CASE NO. 21-CV-01155-EJD

1   class member had already exposed that information "to the public eye" such that it was no longer

2   "private." *Zynga*, 600 F. Supp. 3d at 1050 ("[C]ourts must examine the nature of the specific

3   information at issue to determine whether privacy interests were implicated at all. Otherwise every data

4   breach ... would confer standing, regardless of whether private information is exposed.").

5           ***"Highly Offensive to the Reasonable Person."*** Further, the public disclosure tort applies only

6   where the publicity the defendant has given to the private life of another "is of a kind that … would be

7   highly offensive to a reasonable person." Restatement (Second) of Torts § 652D. Applying this standard,

8   courts have held that disclosure of social security numbers, names, email addresses, mailing addresses,

9   phone numbers, driver's license numbers, financial information, insurance information, and dates of

10  birth is not "highly offensive," and thus disclosure of that information is not sufficiently analogous to

11  the harms stemming from the public disclosure tort to confer standing. *Greenstein.*, 2024 WL 3886977,

12  at *3 (driver's license number disclosed; no standing); *Zynga*, 600 F. Supp. 3d at 1049 (email address

13  and phone number; no standing); *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, at *7 (N.D. Ill.

14  Sept. 27, 2022) ("email addresses, phone numbers, and delivery addresses"; no standing); *Pulliam*, 2024

15  WL 356777, at *9 ("[P]ublication of personally identifying information such as SSNs is not 'highly

16  offensive to a reasonable person.'"; no standing); *Black v. IEC Grp., Inc.*, 2024 WL 3623361, at *1, *4

17  (D. Idaho July 30, 2024) (disclosure of "names, sensitive financial information, and protected health

18  information" such as "customers member[ ] identification numbers, healthcare provider, and health

19  insurance information" not highly offensive; no standing); *see also Reade*, 2022 WL 2396083, at *7

20  (disclosure of social security number insufficient for public disclosure claim under California law);

21  *Covington*, 2023 WL 5167366, at *11 (same under Georgia law); *Dolmage v. Combined Ins. Co. of Am.*,

22  2015 WL 292947, at *9 (N.D. Ill. Jan. 21, 2015) (date of birth not highly offensive under Illinois law).

23          So again, to assess whether each class members' claimed harm is sufficiently analogous to the

24  "humiliation" that accompanies a "highly offensive" disclosure will require a class-member-by-class-

25  member inquiry into precisely what information (if any) was disclosed.

26          ***Intent.*** Finally, the disclosure of private information tort has an additional element—intent—that

27  prevents Plaintiffs from successfully relying on that analogue tort in this case, though this element

28  would be subject to common proof. Courts around the country—including courts applying the laws of

states comprising the Negligence Class—have concluded invasion-of-privacy torts require intent; mere negligence is not enough. *In re Accellion*, 713 F. Supp. 3d at 646-47 (California law); *Angus v. Flagstar Bank, FSB*, 2025 WL 937760, at *2 (E.D. Mich. Mar. 27, 2025) (Michigan law); *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *11 (M.D. Tenn. Jan 9, 2025) (Tennessee law); *Hurdsman v. Gleason*, 2023 WL 2588562, at *10 (W.D. Tex. Mar. 21, 2023) (Texas law); *Orthman v. Premiere Pediatrics, PLLC*, 545 P.3d 124, 135-36 (Okla. Ct. App. 2024) (Oklahoma law); *White v. Citywide Title Corp.*, 2018 WL 5013571, at *3 (N.D. Ill. 2018) (Illinois law). Further, given that actual intent is necessary, courts regularly hold that the information at issue must have been given "publicity" ***by the defendant***, not by some third party. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) ("Plaintiff has not stated a claim for defamation, libel, false light, or public disclosure of private facts because each of those claims presume a publication *made by the defendant*." (emphasis added)); *Pulliam*, 2024 WL 356777, at *9 (no standing because hackers disclosed information rather than defendant); *Carr v. Oklahoma Student Loan Auth.*, 2023 WL 6929850, at *6 (W.D. Okla. Oct. 19, 2023) (dismissing public disclosure claim premised on data breach because hackers, not defendant, made information "public"); *In re Numotion*, 2025 WL 57712, at *10 (same); *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 820 (E.D. Ky. 2019) (same); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1225-26 (S.D. Fla. 2022) (same).

Courts thus regularly hold that invasion of privacy claims, including public disclosure claims, premised only on negligent conduct fail. *See, e.g.*, *Reade*, 2022 WL 2396083, at *5 (discussing history of "public disclosure of private facts"; intent required for claim under California law); *Carr*, 2023 WL 6929850, at *6 (intent required under Oklahoma law for public disclosure); *see also In re Accellion*, 713 F. Supp. 3d at 646-47 (negligence insufficient for invasion of privacy claims); *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *6 (N.D. Cal. Feb. 22, 2024) (same).

Plaintiffs have not attempted to establish standing by arguing that their claim is analogous to disclosure of private information; if they tried to make that argument they would lose on the merits. But litigating such a claim, and each of its required elements, individualized issues of standing, injury, and liability would swamp any common questions.

### III.    Individualized Issues As To Damages Defeat Class Certification

The rule in the Ninth Circuit is that "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016); *see also Lytle v. Nutramax Lab'ys, Inc.,* 114 F.4th 1011, 1027–28 (9th Cir. 2024). By no means, however, is there a "categorical rule that courts should not consider whether damages are individualized or common when evaluating predominance." Dkt. 362 at 1-2. There are at least four circumstances, relevant here, in which individualized issues as to damages will defeat class certification.

***First***, all legal and factual issues that must be decided to resolve a class action must stand on equal footing in the predominance analysis of Rule 23(b)(3). It is not unusual for there to be individual issues as to damages, yet class certification will still be appropriate—***if*** "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Pro. 23(b)(3). Individual issues as to damages "alone" do not defeat class certification, individual issues as to damages ***that predominate over the common questions*** do. The 1966 Advisory Committee Notes expressly recognize this possibility. *See* 1966 Adv. Comm. Note to Subdivision (b)(3) ("Private damage claims by numerous individuals arising out of concerted antitrust violations may or may not involve predominating common questions."). Were the rule otherwise, proof of damages would have a uniquely special status in the Rule 23(b)(3) predominance inquiry. In a case where proof of, say, reasonable reliance would require thousands of complex, fact-intensive mini-trials, class certification might well be denied, *see, e.g., Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 596 (9th Cir. 2012), but a case in which proof of damages imposed the same (or even greater) burdens relative to common questions, the class would have to be certified. That result finds no support in common sense or in the text of Rule 23. Rather, the Ninth Circuit has held that class certification is appropriate despite individualized damages issues if those damages can be calculated "accurately" and "efficiently" such that the common issues still predominate. *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013). In contrast, when plaintiffs seeking certification fail to "carry their burden of showing damages are capable of efficient calculation," class certification may be denied, even in the face of the rule "that individualized questions of damages cannot alone defeat class certification." *D.C. by & through Garter v. Cnty. of San Diego,* 783 F. App'x 766, 767 (9th Cir. 2019).

Here, damages inquiries alone do predominate over any common questions, as a jury would have

8

to decide, for each individual class member whose sensitive information was actually stolen, what was taken; for each data element whether it had value and if so the amount; whether the same information had been stolen in other data breaches; whether the individual reasonably mitigated damages by taking advantage of free data monitoring by FTA customers or other measures; and whether the FTA customer already fully or partially compensated the individual for the claimed injury.

*Second*, and relatedly, the Ninth Circuit rule does not make individualized damages inquiries irrelevant to the Rule 23 predominance analysis. Even if individualized damages calculations "*alone*" would not predominate over common issues to the extent class certification should be denied, those individual inquiries, combined with other individual issues of fact or law, can tip the balance. The Tenth Circuit, which has the same rule as the Ninth Circuit, has explained: "while the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification ... it is nonetheless a factor we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.,* 725 F.3d 1213, 1220 (10th Cir. 2013) (quoting *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 231 (2d Cir. 2008)). The Second Circuit is the same. *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) ("The fact that damages may have to be ascertained on an individual basis was simply one factor that we had to consider in deciding whether issues susceptible to generalized proof outweigh individual issues when certifying the case as a whole.") (cleaned up). Courts in this Circuit apply the rule in the same way. For example, in *Lightbourne v. Printroom Inc.,* 307 F.R.D. 593, 601-03 (C.D. Cal. 2015) the court denied class certification because three individualized issues predominated over common issues: (1) there were fact issues as to consent, (2) right to publicity law varied from state to state, and (3) proof of damages required individual fact inquiries. In this case, the Court should examine the individual issues as to standing, injury, causation, *and* damages and deny class certification.

*Third*, individual issues as to damages are, in some cases, inseparable from individual issues like causation or injury that also may predominate over common issues. Thus, in *Lara v. First Nat'l Ins. Co. of Am.,* 25 F.4th 1134, 1140 (9th Cir. 2022), the Ninth Circuit affirmed denial of class certification, holding that "because figuring out whether each plaintiff was injured would be an individualized process, the district court did not abuse its discretion in finding that individual questions predominated."

9

In this case, as in *Lara*, there are pervasive, fact-intensive individual questions whether each class member suffered an injury at all that caused cognizable damage. This is true even if the Court tried to simplify the damages issues by certifying a nominal damages class, as nominal damages can be awarded only to those individual class members who actually suffered injury.

**Fourth**, in this case, there are individualized issues as to damages that render the class impossible to certify for the reasons the U.S. Supreme Court identified in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). In *Comcast*, an antitrust case, the plaintiffs alleged four independent categories of unlawful conduct for which they sought damages using a single, undifferentiated damages model. *Id.* at 31. The district court had accepted only one of the four categories, and certified the class. *Id.* at 32. The Supreme Court reversed. The plaintiffs' theory of damages purported to be common proof, but it included increased prices that were not caused by the antitrust conduct they were challenging. *Id.* at 36-38. As a result, plaintiffs had no way to address individual questions on damages, such as whether cable subscriber class members in one county had paid higher prices on account of the challenged behavior, while class members in another county paid higher prices for some other reason unrelated to the theory of liability and the class could not be certified under Rule 23(b)(3). *Id.*

Plaintiffs here face the same problem. Plaintiffs seek damages based on the alleged theft and disclosure of their sensitive information, but include in their damages figures information that was not stolen or disclosed; information that was not sensitive; information that was already publicly disclosed such that the attack caused no incremental harm; and disclosures for which they have already been compensated. Just like the plaintiffs in *Comcast*, Plaintiffs here cannot avoid the need for "labyrinthine individual calculations" of damages—and their fatal effect on class certification—by resort to a "methodology that identifies damages that are not the result of the wrong." *Id.* at 37.

For all these reasons the Court can—indeed must—consider the extensive individualized damages issues in this case, and having considered them, deny class certification.

## IV.     Neither A Rule 23(b)(3) Class Certified Only For Nominal Damages Nor A Rule 23(c)(4) Issue Class Certified Only For Liability Should Be Granted.

When deciding whether to certify any class, the court should be guided by the "overall goal" of Rule 23: "to select the method best suited to adjudication of the controversy fairly and efficiently." *See Schneider v. YouTube, LLC,* 674 F.Supp.3d 704, 715 (N.D. Cal. 2023), *citing Amgen Inc. v. Conn. Ret.*

10

*Plans & Tr. Funds,* 568 U.S. 455, 460 (2013). Certification of a class under Rule 23(c)(4) is only appropriate if it "materially advance[s] the litigation." *Tasion Commc'ns, Inc. v. Ubiquiti Networks Inc.,* 308 F.R.D. 630 633 (N.D. Cal. 2015).

In this case, neither a Rule 23(b)(3) class certified only for nominal damages nor a Rule 23(c)(4) issue class is appropriate. Plaintiffs have not met the commonality, typicality, and adequacy requirements of Rule 23(a), nor have they met the predominance and superiority requirements of Rule 23(b), all of which, except for predominance, are required for ***both*** a Rule 23(b)(3) class and a Rule 23(c)(4) class. *See Tasion Commc'ns.,* 308 F.R.D. at 633 ("Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))"). The Court cannot certify a class under Rule 23(b)(3) with nominal damages or under Rule 23(c)(4), because the Plaintiffs face all the same issues that defeat class certification under a standard Rule 23(b)(3) class.

In short, neither a nominal damages class nor an issue class will "materially advance the litigation" though each has its own profound deficiencies. Accellion assumes that the Court's question here is directed at addressing the inadequacies and individualized issues presented by Plaintiffs' proposed damages approaches, assuming all other obstacles to class certification could be overcome. Accordingly, we focus on that aspect, without conceding that such classes could be certified at all.

**Nominal damages class under Rule 23(b)(3).** Nominal damages are used as a "symbolic vindication" of a wrong where actual injury is established, but cannot be measured or proved on a classwide basis. *Cummings v. Connell,* 402 F.3d 936, 946 (9th Cir. 2005). But in this case there are individualized issues as to the ***fact*** of injury, not just liability, and the law of each relevant state requires injury as a mandatory element to obtain nominal damages. *See Fields v. Napa Mill. Co.*, 164 Cal.App.2d 442, 447 (1958) ("It is fundamental that a negligent act is not actionable unless it results in injury to another."); *see also Whitehead v. Cuffie*, 185 Ga. App. 351, 353 (1987) (same); *Crosby v. City of Chicago*, 11 Ill. App. 3d 625, 629 (1973) (same); *Kernodle v. Elder*, 102 P. 138, 140 (Okla. 1909) (same); *Colston v. Citizens Tri-Cnty. Bank*, 2004 WL 2363650, at *5 (Tenn. Ct. App. Oct. 20, 2004) ("Injury or loss (i.e. damages) is a prima facie element of negligence); *Pitoitua v. Gaube*, 28 Wash. App. 2d 141, 151 (2023) (same); *Henry v. Dow Chem. Co.*, 473 Mich. 63, 71-72 (2005) (same). As a result, without an individualized determination of ***who*** in the class was actually injured, it would be impossible

11

to determine a classwide aggregate nominal damages sum, or to know who in the class is entitled to collect. Assuming that problem could be ignored, $1 per person is the standard for nominal damages. If a nominal damages class were tried to verdict and Plaintiffs won, the administrative costs to devise a claim process, provide notice of it, evaluate valid claims, and pay out claims with whatever was left of the $1 at the end would render any victory, in class counsel's term, "Pyrrhic." Dkt. 320-13 at ¶ 55.

**Rule 23(c)(4) class**. Accellion of course asserts that, even if the Court were to certify (and could certify) subclasses based on FTA customer affiliation, there would be individualized issues of standing, injury, causation, and damages. Thus it is far from clear what particular issues the Court could certify. A Rule 23(c)(4) class that left unresolved issues that are necessary to establish liability on a classwide basis would not "materially advance the litigation;" rather it could only hope to bring the parties and the Court down an expensive and time-consuming path to a dead end. In such a case, class certification should be denied. *See Taison,* 308 F.R.D. at 640 ("Unlike the typical Rule 23(c)(4) case where there is certification of liability, leaving only damages to be litigated on an individual bases … certification here of an issue would resolve only one of many issues necessary to establish only liability."). This is not the kind of "material advance" the Rule intends. *Id*.

Alternatively, if the Court is considering certifying a Rule 23(c)(4) class in which everything is certified ***except for*** damages, Accellion does not believe that is feasible or appropriate. *See Taison,* 308 F.R.D. at 639 (holding that it was not appropriate for the court to certify a Rule 23(c)(4) class where the plaintiffs were in effect asking the Court to certify the entire action under Rule 23(c)(4) "where the aggregation of those issues would otherwise not be certifiable under Rule 23(b)(3)"). Assuming, *arguendo*, the Court were to certify a Rule 23(c)(4) class and Plaintiffs won, the claims process would presumably be to provide notice to each individual class member to allow them to submit individual claims based on a court-approved individual damages model that allowed for Accellion's due process right to challenge each claim as to its legitimacy and amount. The ultimate cost of the claims process and any fees for Plaintiffs' counsel's would also have to be deducted from each class member payment. Plaintiffs have not even attempted to explain how this complicated process could feasibly be done. Much to the contrary, in urging the California Superior Court to approve a settlement of the claims by class members here against UC Regents, Plaintiffs' counsel represented that so few class members

would and could attempt to prove damages that the victory, again, would be "Pyrrhic."

Neither a Rule 23(b)(3) class for nominal damages nor a Rule 23(c)(4) class for liability is appropriate or practical in this case.

### V.    The Negligence Class Must First Be Divided Into Subclasses By Accellion Customer, But Class Certification Is Limited By Lack of Standing And Individualized Issues.

To certify any portion of Plaintiffs' proposed negligence class, the Court would need to first divide the negligence class into five separate subclasses—one for each Accellion customer—to address the lack of commonality in the class as currently defined. Once the Court did that, only two subclasses may survive a standing inquiry, UC and Flagstar, and still could not meet the requirements of Rule 23(a) and (b) unless they are limited to include only residents of the state in which class representatives reside (California). Even then, individualized issues on injury and causation and damages still predominate. Plaintiffs did not move for class certification on this basis, and there may be additional issues that would arise with UC and Flagstar subclasses properly presented.

### A.    The Negligence Class Must First Be Subdivided By Customer to Address Commonality.

Plaintiffs' sprawling negligence class, spanning five FTA customers and class members from eight states, as well as their fallback state subclasses lack common questions of fact that would generate common answers in classwide proceedings. *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 350 (2011). Questions with answers unique to each Accellion customer are necessary to resolve whether Accellion is liable to Plaintiffs or the class for negligence (e.g., whether each sophisticated Accellion customer controlled its own FTA, whether Accellion relied on the customers to make independent decisions, whether Plaintiffs or the class relied on the customers to protect data, and what the customers' roles were in causing any data loss). Dkt. 318-4 at 21-22. Plaintiffs did not actually seek to certify a subclass for each of the five Accellion customers. But the only way to address the lack of commonality within the broad negligence class Plaintiffs *did* propose is to divide it into five subclasses, one each for Kroger, Centene, WASAO, UC Regents, and Flagstar.

### B.    The Court Cannot Certify a Kroger, Centene, or WASAO Class Because Plaintiffs Dawes, Olson, Rodriguez, and Worrick Do Not Have Standing.

Even if the Court were to divide the negligence class into these five subclasses, three of the five would immediately fail for lack of standing. The Court cannot certify a subclass unless at least one

---

13

named Plaintiff for that subclass proves they have a concrete injury that is actual or imminent. *TransUnion*, 594 US. at 423; Dkt. 318-4 at 24-25. But as Accellion has explained, the Kroger, Centene, and WASAO Plaintiffs do not and cannot make that showing. Dkt. 318-4 at 24-26. Plaintiffs' expert found no data for Kroger, Centene, or WASAO on the dark web, let alone data specific to Plaintiffs Dawes (Kroger), Olson (Centene), Rodriguez, or Worrick (WASAO). Dkt. 318-4 at 25. Kroger paid a ransom to recover its FTA data without exposure; Centene says its data was never exposed. *Id.* And the notice letters and declarations from Kroger, Centene, and WASAO do not say Plaintiffs' data was stolen, only that it may have been "impacted" or "involved." *Id.*; Dkt. 365-5 ¶ 16 (Kroger); Dkt. 345-13 ¶ 5 (Centene); Dkt. 345-17 ¶ 5 (WASAO). All three customers' letters affirmed they had ***no*** evidence of fraud or misuse of Plaintiffs' data. Statements that Plaintiffs' data was "impacted" or "involved" in the FTA attacks is insufficient to confer standing. *Greenstein*, 2024 WL 3886977, at *2-3.

Because the potential Kroger, Centene, and WASAO subclasses lack a Plaintiff with standing, no Kroger, Centene, or WASAO class can be certified, even before considering their other defects.

### C. The Court Must Narrow the Remaining UC Regents and Flagstar Customer Classes to Satisfy Predominance under Rule 23(b)(3).

Even if the Court determined that Plaintiffs Becker, McDole, Galvis (UC), and Moniz (Flagstar) have shown standing for themselves, it still must find that they are adequate representatives of the subclasses (they are not, Dkt. 318-4 at 26-28). Then the Court would need to address the individualized questions of state law, causation, and injury among class members that still predominate in these classes before it could certify them. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) ("[T]he law on predominance requires the district court to consider variations in state law when a class action involves multiple jurisdictions.").

***Variation in state negligence law defeats predominance.*** If the UC Regents class and the Flagstar class were to proceed as multi-state classes, individualized issues would swamp any common ones. Contrary to Plaintiffs' assertions, negligence law varies materially and in multiple ways across the eight states that comprise Plaintiffs' negligence class. Dkt. 318-4 at 28-29; 323-51 (Accellion State Law Survey). Of the eight states at issue, only California and Washington have some version of the "special relationship" doctrine that Plaintiffs rely on to allege Accellion had a duty to protect Plaintiffs, and the

14

"special relationship" analyses under California and Washington law differ significantly (though neither gives rise to a duty for Accellion). Dkt. 318-4 at 29. Available affirmative defenses and remedies also vary by state. *Id.* The need for a state-by-state analysis of each class member can be resolved while preserving plaintiffs' ability to represent the classes, *see Dukes*, 564 U.S. at 348, by limiting the scope of the UC Regents and Flagstar classes to include only impacted residents of California—Plaintiffs Becker, McDole, Galvis (UC), and Moniz (Flagstar), all happen to be California residents.

   ***Individualized issues of causation, fact of injury, and damages still predominate over any common questions.*** Limiting the classes to a UC Regents/California subclass and a Flagstar/California subclass would avoid some individualized issues, but others persist. First, it is impossible to establish through common proof that Plaintiffs' and the absent class members' PII and PHI was "compromised as a result of the Data Breaches," when Plaintiffs and many putative class members' PII and PHI had already been "compromised" in prior, unrelated data breaches, some of which involved UC and Flagstar. Dkt. 318-4 at 16-17; 29-30. Second, whether ***any*** information was disclosed for a particular class member, and whether any information disclosed was sensitive enough to impose liability on Accellion, is an individualized inquiry. Dkt. 318-4 at 30-32. Third, Plaintiffs have presented no feasible method to calculate damages on a classwide basis. Dkt. 318-4 at 32-35. These individualized issues still predominate over any common ones within the California FTA customer subclasses.

   The Court can address the lack of commonality in Plaintiffs' proposed classes, and ***some*** of the predominance issues, by subdividing the proposed negligence class by Accellion customer and limiting the scope of the classes to include only residents of California. But issues of causation, injury, and damages are highly individualized and cannot be resolved on a classwide basis under any subdivision of the negligence class. Under these facts, the Court could ***at most*** certify the California/UC Regents and California/Flagstar classes as nominal damages classes under Rule 23(b)(3). Dkt. 318-4 at 35. For the reasons given above in response to Question 4, however, even this substantially narrower approach would not "materially advance the litigation."

DEFENDANT ACCELLION, INC.'S SUPPLEMENTAL BRIEF ADDRESSING CLASS CERTIFICATION
CASE NO. 21-CV-01155-EJD

Dated: May 9, 2025

Respectfully submitted,
THE NORTON LAW FIRM PC
*/s/ Fred Norton*

Fred Norton

Attorneys for Defendant
ACCELLION, INC.